JEFFREY M. SHOHET (Cal. Bar No. 067529)
Jeffrey.shohet@dlapiper.com
CHRISTOPHER J. BEAL (Cal. Bar No. 216579)
cris.beal@dlapiper.com
VERONICA L. JACKSON (Cal. Bar No. 243095)
veronica.jackson@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

RAJIV DHARNIDHARKA (Cal. Bar No. 234756)
rajiv.dharnidharka@dlapiper.com
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel: 650.833.2000
Fax: 650.833.2001

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| GSI TECHNOLOGY, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED MEMORIES, INC., a Colorado Corporation,<br><br>    Defendant. | CASE NO. 13-CV-1081-PSG<br><br>**DECLARATION OF DIDIER LASSERRE IN SUPPORT OF GSI TECHNOLOGY, INC.'S *EX PARTE* APPLICATION FOR (1) TEMPORARY RESTRAINING ORDER; (2) ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION; AND (3) EXPEDITED DISCOVERY IN THE ALTERNATIVE**<br><br>Date:   March 26, 2013<br>Time:  Ex Parte<br>Judge: Ex Parte |

I, Didier Lasserre, declare and state as follows:

1. I am Vice President of World Wide Sales at GSI Technology, Inc. ("GSI Tech"), the Plaintiff in this matter. I make this declaration in support of GSI Tech's Ex Parte Application for Temporary Restraining Order; Order to Show Cause Regarding Preliminary Injunction; and Expedited Discovery. I have personal knowledge of each of the facts set forth in this declaration and if required, could and would competently testify thereto.

2. GSI Tech designs, develops, and markets a broad range of high performance memory products for networking, military, medical, automotive, and other applications. It specializes in memory products featuring very high transaction rates, high density, low latency, high bandwidth, fast clock access times, and low power consumption.

3. In approximately July 2007, GSI Tech and another memory supplier, NEC Electronics (now named and referred to herein as "Renesas"), were selected by a router manufacturer (the "Customer") to design, develop, and manufacture a "low latency / high random address rate" Dynamic Random Access Memory chip (a "LLDRAM Product"). This family was a "Type III" LLDRAM Product.

4. An LLDRAM chip is a high end device, particularly well-suited for advanced data networking applications. In computing, memory latency is the time between initiating a query to memory and the retrieval of the queried information. Latency is a fundamental measure of the speed of memory, so that the less the latency, the faster the reading operation.

5. The Customer sought to secure two suppliers who could supply its LLDRAM Product according to its unique needs, but allowed for the possibility that the vendors could later market and sell the final LLDRAM Product to others as well. The preliminary specifications were determined initially by the Customer and agreed to, within design tradeoffs, by GSI Tech, Defendant United Memories, Inc. ("UMI") (working as a contract designer for GSI Tech), and Renesas. These specifications defined various elements of the chip, including its size; operating current; pin count and placement; interface; commands, addresses, and control signals; as well as other features and functionality. The specifications of the LLDRAM Product were unique and were held in confidence by the Customer, GSI Tech, UMI, and Renesas.

6. After the specifications were determined, GSI Tech engaged UMI to provide design and development services for a different class of LLDRAM Product. This new product was a LLDRAM Type II versus the LLDRAM Type III, which was defined and intended for the Customer (see Paragraph 5). UMI is a contract memory design service provider. Although it holds itself out as specializing in the design of DRAM chips, at that time it had no history or experience in designing LLDRAM chips. GSI Tech, on the other hand, had the necessary

knowledge and experience in high transaction rate memory design technology and could impart that knowledge to UMI in the course of the anticipated project.

7. The details of this engagement with UMI are more particularly described in the Declaration of Lee-Lean Shu, filed in connection with the present application for Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction ("Shu Declaration").

8. Ultimately, however, and as more fully described in the Shu Declaration, UMI was unable to complete the LLDRAM Type II Product because of the apparent insolvency of its parent company, ProMOS. Because of the delay caused by UMI and its parent company, GSI Tech was substantially delayed in beginning design and development work on the LLDRAM Type III Product for its Customer. Following this delay, the Customer dropped GSI Tech as one of its two suppliers for the LLDRAM Type III Product, deciding that it would depend upon Renesas as sole source.

9. Later, in approximately mid-2012, the Customer reconsidered that decision and began to pursue a second source for the "Type III" LLDRAM Product. For that reason, it invited certain DRAM suppliers, including GSI Tech, to bid to become the Customer's second source supplier. GSI Tech, however, was not awarded the bid.

10. After the bid, I met with one of the decision-makers at the Customer to discuss GSI Tech's bid and the Customer's decision to award the LLDRAM Project to a competitor. During that discussion, the Customer would not identify which memory supplier had been selected to be its second source for the LLDRAM Product. They did say, however, that in selecting a second source, the Customer was "going with one of our original guys," or words to that effect. Because the "original guys" were Renesas, GSI Tech, and UMI, I understood from what the Customer said—and I believe they intended to convey—that UMI was part of the winning bid proposal. That is, I believed from my conversation with this decision-maker at the Customer that the supplier who won the bid included as part of its proposal that it would use the design services of UMI.

I declare under penalty of perjury under the laws of the United States of America that the

-3-

foregoing is true and correct. Executed this 26 day of March, 2013.

_____
Didier Lasserre