JEFFREY M. SHOHET (Cal. Bar No. 067529)
jeffrey.shohet@dlapiper.com
BROOKE KILLIAN KIM (Cal. Bar No. 239298)
brooke.kim@dlapiper.com
KELLIN CHATFIELD (Cal. Bar No. 288389)
kellin.chatfield@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  619.699.2700
Fax:  619.699.2701

RAJIV DHARNIDHARKA (Cal. Bar No. 234756)
rajiv.dharnidharka@dlapiper.com
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA  94303-2214
Tel:  650.833.2000
Fax:  650.833.2001

Attorneys for Plaintiff GSI Technology, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| GSI TECHNOLOGY, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED MEMORIES, INC., a Colorado Corporation, and INTEGRATED SILICON SOLUTION, INC., a Delaware Corporation,<br><br>    Defendants. | CASE NO.  Civ. Action No. 13-CV-1081-PSG<br><br>**OPPOSITION BRIEF OF GSI TECHNOLOGY, INC. TO MOTION OF INTEGRATED SILICON SOLUTION, INC. TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date:          February 25, 2014<br>Time:         10:00 a.m.<br>Dept.:        5, 4th Floor<br>Judge:       Hon. Paul S. Grewal |

REDACTED VERSION

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II. GSI TECH PROPERLY ALLEGES ANTITRUST CLAIMS. ...................................... 2

    A.  GSI Tech Sufficiently Alleges Antitrust Standing. ................................................. 2

        1.  Plaintiff's Injury Is The Type Covered By The Antitrust Laws. ................. 3

        2.  Plaintiff's Injury Flows From The Alleged Anticompetitive
           Conduct. ...................................................................................................... 4

    B.  GSI Tech Sufficiently Alleges A Relevant Market. ............................................... 5

        1.  The Per Se Rule Of Illegality Applies ......................................................... 5

        2.  GSI Tech Properly Alleges The Relevant Market. ...................................... 6

        3.  The Market Involves High Entry Barriers And Technical
           Limitations. ................................................................................................. 7

    C.  GSI Tech Sufficiently Alleges Concerted Action Required For Section 1 ............. 8

        1.  UMI And Integrated Silicon Entered Into An Oral Agreement. ................. 8

        2.  UMI And Integrated Silicon Entered Into Written Agreements. ................ 8

        3.  GSI Tech Properly Alleges The Existence Of The Conspiracy. .................. 9

    D.  GSI Tech Sufficiently Alleges A Claim For Attempted Monopolization. ............. 10

        1.  GSI Tech Sufficiently Alleges That Integrated Silicon Has A
           Dangerous Probability Of Achieving Monopoly Power. ......................... 11

        2.  GSI Tech Sufficiently Alleges That Integrated Silicon Engaged In
           Predatory Or Anticompetitive Conduct. ................................................... 12

III. GSI TECH ADEQUATELY ALLEGES CLAIMS FOR VIOLATIONS OF CIVIL
    RICO AND CONSPIRACY UNDER 18 U.S.C. §1962(C) AND 18 U.S.C.
    §1962(D). ...................................................................................................................... 14

    A.  GSI Tech Has Standing To Assert RICO Claims. ................................................. 14

        1.  GSI Tech Suffered An Actual Loss. ......................................................... 14

        2.  GSI Tech's Harm Was Proximately Caused By The RICO
           Enterprise. ................................................................................................. 14

        3.  The Enterprise Was The "But-For" Cause Of GSI Tech's Harm. ............. 15

    B.  GSI Tech Pleaded Wire And Mail Fraud With Particularity. .............................. 15

    C.  GSI Tech Adequately Alleges A RICO Enterprise. ............................................. 16

        1.  The Enterprise Is An "Association-In-Fact." ........................................... 16

    D.  GSI Adequately Alleges A Pattern Of Racketeering. .......................................... 16

    E.  GSI Tech Adequately Alleges A RICO Conspiracy Claim. ................................. 18

IV. THE SAC SUFFICIENTLY ALLEGES THAT INTEGRATED SILICON
    TORTIOUSLY INTERFERED WITH THE UMI-GSI TECH AGREEMENT. ........... 18

V.  THE SAC ADEQUATELY PLEADS TRADE SECRET MISAPPROPRIATION. ....... 20

1

**TABLE OF CONTENTS**
**(continued)**

2

**Page**

3    VI.     THE SAC ALLEGES CLAIMS FOR UNLAWFUL AND FRAUDULENT
             CONDUCT UNDER SECTION 17200.................................................................. 22

4              A.     Integrated Silicon Has Engaged, And Continues to Engage In Unfair
                      Conduct. ................................................................................................. 22
5

6              B.     Integrated Silicon Engaged, And Continues To Engage, In Unlawful
                      Conduct. ................................................................................................. 23

7    VII.    THE SAC ADEQUATELY ALLEGES TORTIOUS INTERFERENCE WITH
             PROSPECTIVE ECONOMIC ADVANTAGE............................................... 25

8    VIII.   CONCLUSION .......................................................................................................... 25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

C<small>ASES</small>

4

*625 3rd St. Assocs., L.P. v. Alliant Credit Union,*
   633 F. Supp. 2d 1040 (N.D. Cal. 2009) ......................................................................... 18, 19

5

6

*Altera Corp. v. Clear Logic, Inc.,*
   424 F.3d 1079 (9th Cir.2005)........................................................................................... 19

7

8

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal,*
   108 F.3d 1147 (9th Cir. 1997).......................................................................................... 13

9

*Anderson News, LLC v. Am. Media, Inc.,*
   680 F.3d 162 (2d Cir. 2012).............................................................................................. 10

10

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,*
   472 U.S. 585 (1985) ......................................................................................................... 13

11

12

*Barr Labs., Inc. v. Abbott Labs.,*
   978 F.2d 98 (3d Cir. 1992)............................................................................................... 11

13

14

*Bell Atl. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................................... 9

15

16

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,*
   873 F. Supp. 2d 1192 (N.D. Cal. 2012) ..................................................................... 19, 20

17

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
   429 U.S. 477 (1977) ....................................................................................................... 2, 4

18

19

*Burroughs Payment Sys., Inc. v. Symco Grp., Inc.,*
   No. C–11–06268 JCS, 2012 WL 1670163 (N.D. Cal. May 14, 2012) ................................. 21

20

21

*Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
   637 F.3d 1047 (9th Cir. 2011).......................................................................................... 15

22

*Cal. ex rel. Harris v. Safeway, Inc.,*
   651 F.3d 1118 (9th Cir. 2011)............................................................................................. 5

23

24

*Cel–Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.,*
   20 Cal. 4th 163 (1999) ............................................................................................... 22, 23

25

*Comm. Cleaning Servs., LLC v. Colin Serv. Sys., Inc.,*
   271 F.3d 374 (2d Cir. 2001) ............................................................................................ 14

26

27

*Courtesy Temp. Serv., Inc. v. Camacho,*
   222 Cal. App. 3d 1278 (1990)........................................................................................... 24

28

DLA P<small>IPER</small> LLP (US)
E<small>AST</small> P<small>ALO</small> A<small>LTO</small>

-iii-

WEST\245603744.8          GSI'S OPPOSITION TO INTEGRATED SILICON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
                                                                    CASE NO. 13-CV-1081-PSG

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Credit Chequers Info. Servs., Inc. v. CBA, Inc.*,
   No. 98 CIV. 3868(RPP), 1999 WL 253600 at*10 (S.D.N.Y. Apr. 29, 1999) ......................... 7

4

*Della Penna v. Toyota Motor Sales*,
   11 Cal. 4th 376 (1995) ................................................................................................. 25

5

6

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ......................................................................................................... 5

7

*Evergreen Partnering Gr., Inc. v. Pactiv Corp.*,
   720 F.3d 33 (1st Cir. 2013) .......................................................................................... 10

8

9

*E–Smart Tech., Inc. v. Drizin*,
   No. C 06–05528–MHP, 2009 WL 35228 (N.D. Cal., Jan.6, 2009) ...................................... 24

10

*Farmers Ins. Exch. v. Superior Court*,
   2 Cal. 4th 377 (1992) ................................................................................................... 23

11

12

*Fed. Trade Comm'n v. H.J. Heinz Co.*,
   246 F.3d 708 (D.C. Cir. 2001) ................................................................................... 3, 4

13

14

*Fotinos v. Fotinos*,
   No. C 12-953 CW, 2013 WL 1195644 (N.D. Cal. Mar. 22, 2013)...................................... 17

15

*H.J., Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989).................................................................................................... 18

16

17

*Hannah's Boutique, Inc. v. Surdej*,
   No. 13 C 2564, 2013 WL 4553313 (N.D. Ill. Aug. 28, 2013) ................................................ 8

18

*Heatransfer Corp. v. Volkswagenwerk, A.G.*,
   553 F.2d 964 (5th Cir. 1977).......................................................................................... 2

19

20

*Hirel Connectors, Inc. v. U.S.*,
   No. CV 01-11069 DSF, 2004 WL 5639770 (C.D. Cal. Jan. 23, 2004) ........................... 24, 25

21

22

*In re High-Tech Emp. Antitrust Litig.*,
   856 F. Supp. 2d 1103 (N.D. Cal. 2012) ....................................................................... 11

23

24

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010)............................................................................................ 5

25

*Int'l Equp. Trading, Ltd. v. AB SCIEX LLC*,
   No. 13 C 1129, 2013 WL 4599903 (N.D. Ill. Aug. 29, 2013) ............................................ 6, 7

26

27

28

1

## TABLE OF AUTHORITIES
### (continued)

2
**Page**

3    *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*,

4        23 F. Supp. 2d 771 (N.D. Ohio 1998) ................................................................ 14

5    *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*,
         407 F.3d 1027 (9th Cir. 2005) ............................................................................. 8

6    *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*,

7        171 Cal. App. 4th 939 (2009) ............................................................................ 24

8    *Kendall v. Visa U.S.A., Inc.*,
         518 F.3d 1042 (9th Cir. 2008) ........................................................................... 10

9

10   *Lee v. Gen. Nutrition Cos., Inc.*,
         No. CV 00-13550LGB, 2001 WL 34032651 (C.D. Cal. Nov. 26, 2001) .............. 18

11   *Lockheed Martin Corp. v. Boeing Co.*,

12       314 F. Supp. 2d 1198 (M.D. Fla. 2004) ............................................................... 2

13   *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
         871 F. Supp. 2d 933 (N.D. Cal. 2012) ............................................................... 17

14

15   *Nat'l Soc'y of Prof'l Eng'rs v. U.S.*,
         435 U.S. 679 (1978) ...................................................................................... 5, 11

16   *Newcal Indus., Inc. v. Ikon Office Solution*,

17       513 F.3d 1038 (9th Cir. 2008) ............................................................................. 6

18   *Oltz v. St. Peter's Cmty. Hosp.*,
         861 F.2d 1440 (9th Cir. 1988) ............................................................................. 6

19

20   *Palmer v. BRG of Ga., Inc.*,
         498 U.S. 46 (1990) ............................................................................................. 4

21   *Pool Water Prods. v. Olin Corp.*,

22       258 F.3d 1024 (9th Cir. 2001) ......................................................................... 2, 4

23   *Quelimane Co. v. Stewart Title Guar. Co.*,
         19 Cal. 4th 26 (1998) ....................................................................................... 19

24

25   *Ralph Andrews Prods., Inc. v. Paramount Pictures Corp.*,
         222 Cal. App. 3d 676 (1990) ............................................................................ 21

26   *Rebel Oil Co. v. Atl. Richfield Co.*,

27       51 F.3d 1421 (9th Cir. 1995) ................................................................ 2, 7, 11, 12

28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Rolite, Inc. v. Wheelabrator Envtl. Sys., Inc.,*
    958 F. Supp. 992 (E.D. Pa. 1997) ........................................................................... 11

4

*Saunders v. Superior Court,*
    27 Cal. App. 4th 832 (1994)............................................................................ 23, 24

5

6

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.,*
    No. C-07-0635 JCS, 2007 WL 1455903 (N.D. Cal. May 16, 2007) ...................... 23

7

8

*Skelly v. Richman,*
    10 Cal. App. 3d 844 (1970)..................................................................................... 19

9

*Spectrum Sports, Inc. v. McQuillan,*
    506 U.S. 447 (1993) ................................................................................................ 11

10

11

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011)................................................................................. 10

12

13

*Sun Sav. & Loan Assn. v. Dierdorff,*
    825 F.2d 187 (9th Cir. 1987)................................................................................... 17

14

*SunPower Corp. v. SolarCity Corp.,*
    No. 12-691 LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012)........................... 24

15

16

*Taylor Publ'g Co. v. Jostens, Inc.,*
    216 F.3d 465 (5th Cir. 2000).............................................................................. 12, 13

17

18

*Titan Global LLC v. Organ Gold Int'l, Inc.,*
    No. 12-CV-2104-LHK, 2012 WL 6019285 (N.D. Cal. Dec. 2, 2012) ................... 24

19

*Tunis Bros. Co., Inc. v. Ford Motor Co.,*
    823 F.2d 49 (3d Cir. 1987)........................................................................................ 9

20

21

*Turner v. Cook,*
    362 F.3d 1219 (9th Cir. 2004)................................................................................. 17

22

23

*U.S. v. Delta Dental of R.I.,*
    943 F. Supp. 172 (D.R.I. 1996)................................................................................. 8

24

*U.S. v. E.I. DuPont de Nemours & Co.,*
    351 U.S. 377 (1956) ................................................................................................ 11

25

26

*W. Penn Allegheny Health Sys., Inc. v. UPMC,*
    627 F.3d 85 (3d Cir. 2010) ...................................................................................... 10

27

28

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3

*Williams v. Mohawk Indus., Inc.,*

4

465 F.3d 1277 (11th Cir. 2006)................................................................. 14

5

*Winchester Mystery House, LLC v. Global Asylum, Inc.,*
210 Cal. App. 4th 579 (2012)................................................................ 20

6

**STATUTES**

7

15 U.S.C. § 1 ...................................................................................... 2, 8

8

15 U.S.C. § 2 ......................................................................................... 2

9

15 U.S.C. § 15(a) .................................................................................... 2

10

18 U.S.C. §1962(c) .......................................................................... 14, 18

11

18 U.S.C. §1962(d) ......................................................................... 14, 18

12

2B Areeda & Hovenkamp, Antitrust Law ¶ 570b (3d ed. 2007) ................................... 7

13

Cal. Bus. & Prof. Code § 17200 ........................................................... 22, 24

14

Cal. Civ. Code § 3426.1(b)(2)(B) .............................................................. 21

15

**OTHER AUTHORITIES**

16

Fed. R. Civ. P. 12(b)(6)....................................................................... 6, 10

17

Restatement (Third) of Unfair Competition § 40 (1995) ........................................ 21

18
19
20
21
22
23
24
25
26
27
28

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\245603744.8

-vii-

GSI'S OPPOSITION TO INTEGRATED SILICON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-1081-PSG

1        Plaintiff GSI Technology, Inc. ("GSI Tech") hereby submits the following opposition to

2    the Motion to Dismiss the Second Amended Complaint ("Motion") of Defendant Integrated

3    Silicon Solution, Inc. ("Integrated Silicon").

4    **I.    INTRODUCTION**

5        Integrated Silicon's deceptive tactics speak for themselves. First, Integrated Silicon

6    ███████████████████████████████████████ and clear the way for an

7    otherwise forbidden alliance with co-Defendant United Memories, Inc. ("UMI"). When that

8    failed, it engaged in a complex shell game ████████████████████████

9    ██████. This motion to dismiss is only the latest battle in that effort. Delay allows Integrated

10   Silicon to complete the technology at the heart of this dispute, thereby cementing Integrated

11   Silicon's power in the market and making it more difficult for GSI Tech to seek relief.

12       GSI Tech's Second Amended Complaint ("SAC") more than satisfies its obligation to

13   state a plausible claim for relief. Integrated Silicon's strategy is to ignore the SAC and the

14   reasonable inferences from the facts alleged and assert its own facts and inferences and draw

15   different conclusions. Indeed, Integrated Silicon even challenges the factual underpinnings of the

16   Court's own ruling on GSI Tech's motion for preliminary injunction—in which the Court, after

17   considering extensive evidence, briefing, and argument, determined that GSI Tech has a

18   reasonable likelihood of succeeding on the merits of its claims against UMI.[1]

19       Instead, the inquiry must focus on all plausible allegations in the SAC and all reasonable

20   inferences in GSI Tech's favor. If those allegations and inferences state a claim for relief, the

21   motion must be denied. On this, the correct, standard, Integrated Silicon's motion must be denied.

---

[1] Integrated Silicon also improperly infers that GSI Tech should have more evidence in support of
its claim against Integrated Silicon because it has taken "months of discovery and depositions of
two of ISSI's witnesses." (Mot. at 1.) Of course, evidence has no bearing on a motion to dismiss,
but in this case, it is improper and surprising that Integrated Silicon would rely on that discovery,
which it vigorously opposed. Integrated Silicon refused to produce any witness in response to GSI
Tech's subpoena, and produced its witnesses—each of whom had sudden memory loss—only
after this Court compelled it to do so, producing a minimal amount of responsive documents at
the close of business the day prior to the first deposition. Integrated Silicon's "compliance" with
discovery can hardly be characterized as complete, and should not be a basis for Integrated
Silicon's argument that GSI Tech has been unable to uncover evidence of wrongdoing. Not only
has GSI Tech alleged significant wrongdoing despite minimal discovery, but such arguments are
simply improper at this stage. In any event, none of that discovery related to the new claims
alleged in the SAC, including all of the claims against Integrated Silicon.

1    **II.    GSI TECH PROPERLY ALLEGES ANTITRUST CLAIMS.**[2]

2          Integrated Silicon argues that GSI Tech's claims under sections 1 and 2 of the Sherman

3    Act, 15 U.S.C. §§ 1, 2 should be dismissed because GSI Tech lacks antitrust standing and fails to

4    properly allege a relevant market, concerted action required for a section 1 claim, and a dangerous

5    probability of achieving monopoly and predatory conduct required for a section 2 claim.

6    Integrated Silicon's arguments ignore entire portions of the SAC and misstate the law in several

7    areas. As set forth in more detail below, GSI Tech has antitrust standing and the antitrust claims

8    have been sufficiently alleged.[3]

9          **A.    GSI Tech Sufficiently Alleges Antitrust Standing.**

10          The federal antitrust statute dictates the standing requirements a plaintiff must satisfy in

11   all private antitrust suits seeking monetary damages. *See* 15 U.S.C. § 15(a). Antitrust injury is an

12   important element of antitrust standing. *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1034

13   (9th Cir. 2001). Antitrust injury is "injury of the type the antitrust laws were intended to prevent

14   and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo

15   Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). "To show antitrust injury, a plaintiff must prove that

16   his loss flows from an anticompetitive aspect or effect of the defendant's behavior . . . ." *Rebel

17   Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995). Integrated Silicon argues that

18   GSI Tech lacks antitrust standing because it lacks antitrust injury. (Mot. at 4:4-5:24.) Integrated

19   Silicon is *wrong* because GSI Tech sufficiently alleges an injury that (1) is the type covered by

20   the antitrust laws, and (2) flows from the unlawful conduct.

21   ─────────────────────
     [2] The legal standard applicable to motions to dismiss is described fully in the "Legal Standard"
22   section of GSI Tech's brief in opposition to the Motion to Dismiss of UMI, filed concurrently
     herewith. Rather than repeating the standard here, GSI Tech incorporates it herein.
     [3] Integrated Silicon also argues that GSI Tech's antitrust claims are state law claims "dressed up
23   to look like federal antitrust claims." (Mot. at 3:14-26.) Its argument reflects a misunderstanding
     of both the claims alleged and fundamental principles of antitrust law. The SAC alleges far more
24   than the loss of a single contract, but even if that were the only allegation of antitrust harm, there
     is no categorical rule that an antitrust claim cannot be based on the loss of a single contract for a
25   single customer. In certain situations, as here, an antitrust claim may be based on a single product
     for a single purchaser where there are distinct features for that customer compared to the market
26   as a whole and suppliers concentrate their efforts on such customer. *See, e.g.*, *Heatransfer Corp.
     v. Volkswagenwerk, A.G.*, 553 F.2d 964, 980 (5th Cir. 1977) (automobile air conditioners for
27   Volkswagen importers); *Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1227
     (M.D. Fla. 2004) (U.S. Government market for launch services might be a legally sufficient
28   proposed relevant market under certain conditions).

-2-

DLA Piper LLP (US)
East Palo Alto

WEST\245603744.8                                GSI'S OPPOSITION TO INTEGRATED SILICON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-1081-PSG

1             **1.   Plaintiff's Injury Is The Type Covered By The Antitrust Laws.**

2         GSI Tech alleges that Defendants' conduct substantially impedes the entry of a crucial

3 potential competitor, GSI Tech, into a highly-concentrated market with high-entry barriers, thus

4 allowing Integrated Silicon to raise prices or lower its quality. (SAC ¶¶ 20, 106, 117.) GSI Tech

5 alleges that Defendants' illegal conduct resulted in eliminating or impeding a new competitor in a

6 market with only two substantial competitors where two competitors (the primary and secondary

7 supplier) are each capable of exercising market power. (SAC ¶¶ 20-24, 67-89, 95-98, 103.) More

8 specifically, the result of Defendants' conduct is a market with two substantial competitors—

9 Renesas and Integrated Silicon—rather than three.[4] (SAC ¶¶ 63, 67.) Reducing a market from

10 three competitors to two impairs competition. *See*, *e.g.*, *Fed. Trade Comm'n v. H.J. Heinz Co.*,

11 246 F.3d 708, 717-19 (D.C. Cir. 2001) (merger would eliminate competition between the second

12 and third players in the market).

13         GSI Tech alleges that, absent Defendants' anticompetitive conduct, it would have entered

14 the high-performance DRAM (the "Market") immediately, but instead, has been delayed and

15 thwarted from entering the market as a serious competitor.[5] (SAC ¶¶ 67, 97-98.) This constitutes

16 antitrust injury—rather than mere injury to a competitor—because the Market is sufficiently

17 concentrated and difficult to enter. GSI Tech's entry would have competitively-disciplined

18 Integrated Silicon's exercise of market power. (SAC ¶¶ 24, 97-98, 104.) Indeed, for this reason,

19 Defendants, and particularly Integrated Silicon, attempted to remove GSI Tech from the Market,

20 through anticompetitive conduct ████████. (SAC ¶¶ 68-83.) "Without GSI Tech in the

21 market, Integrated Silicon can charge supra-competitive prices for lower-quality products." (SAC

---

22 [4] Integrated Silicon lists Micron as a separate competitor, but ignores GSI Tech's allegations that
23 Micron "teams up [and partners] with Integrated Silicon" in the relevant market, so it is unlikely
that Micron would competitively discipline Integrated Silicon in the way that GSI Tech or
24 another unaffiliated competitor could. (SAC ¶ 18.) In any event, even if Micron were a separate
viable competitor, it remains an issue of fact as to whether, in this unique market, a reduction
25 from four significant players to three would result in competitive injury. (SAC ¶ 24.) The
potential elimination of Renesas from the Market (SAC ¶ 63) further threatens competition.
26 [5] Paragraph 17 of the SAC alleges that GSI Tech is one of four competitors "engaged" in the
Market. (SAC ¶ 18.) Integrated Silicon misconstrues that allegation and attempts to minimize the
27 anti-competitive impact of its conduct by incorrectly suggesting that GSI Tech has already
entered into and is participating in the sale of products in the Market. (Mot. at 5.) To the contrary,
28 GSI Tech alleges that the Cisco contract, which it did not receive, was its "underline{primary opportunity to
<u>enter</u> into the [Market] as an effective competitor." (SAC ¶ 64 (emphasis added).)

¶ 106.) Suppliers thus face "higher prices for lower quality goods and have fewer supplier choices." (*Id.*) This is injury to competition. *See Pool Water*, 258 F.3d at 1034 ("Antitrust injury means injury from higher prices or lower output.") (internal quotation marks & citation omitted).

Integrated Silicon argues that eliminating a competitor does not alone demonstrate anticompetitive harm. (Mot. at 4:23-5:24.) This might be true in a mature market with low barriers to entry and sufficient competitors to inhibit exercise of market power. The SAC, however, alleges a much narrower and specialized market with high entry barriers where Defendants' conduct reduced the number of effective competitors from three to two, thus allowing Integrated Silicon to continue to exercise market power. (SAC ¶ 104.) Indeed, after Defendants succeeded in delaying the entry of GSI Tech into the Market through the Cisco bid, Integrated Silicon declared that it anticipates "further market share gains and revenue growth" in the future. (SAC ¶ 109.)

Finally, GSI Tech alleges that the conspiracy includes an agreement between Integrated Silicon and UMI/ProMOS (one of the few potential competitors in the relevant product market) to refrain from separately entering the Market. (SAC ¶¶ 97-98, 110.) This conduct in furtherance of the conspiracy—a straightforward market allocation—also tends to injure competition.[6] *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49-50 (1990) (market allocation is a *per se* violation).

### 2.     Plaintiff's Injury Flows From The Alleged Anticompetitive Conduct.

GSI Tech has also satisfied the second aspect of antitrust injury by alleging that its own injury flows from Defendants' anticompetitive conduct. Integrated Silicon cites to irrelevant merger challenges where the mergers had nothing to do with plaintiff. (Mot. at 6:23-28.)

But the analysis here is simple: GSI Tech alleges that Defendants injured competition by "impeding the entry of a crucial competitor—GSI Tech—into the high-performance DRAM market." (SAC ¶ 106.) With that premise, GSI Tech must allege actual injury from the resulting delay in entry into Market. It has. (SAC ¶¶ 111, 118.) Thus, GSI Tech's actual injury flows from the competition-reducing aspect of Defendants' conduct. *Brunswick*, 429 U.S. at 488-89.

---

[6] Unlike the non-compete agreement between GSI Tech and ProMOS, which was supported by the separate chip fabrication agreement with ProMOS, ████████████████████ ████████████████████████████████████████████ (a claim for which Integrated Silicon would bear the burden of proof, if advanced).

1    Moreover, the means Defendants used to injure competition—stealing GSI's trade secrets and

2    engaging in "an aggressive" disparagement campaign—is directly connected to GSI's actual

3    injury.[7] (SAC ¶¶ 68-84.)

4         Integrated Silicon disputes the well-pleaded facts and speculates about why GSI Tech did

5    not win the Atris contract. (Mot. 6:8-16.) But those factual musings are irrelevant to the issue and

6    not appropriate on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

7         **B.    GSI Tech Sufficiently Alleges A Relevant Market.**

8         Integrated Silicon argues that GSI Tech's Market definition is under-inclusive and should

9    include traditional DRAM and SRAM because DRAM and SRAM companies would convert

10   their production to production of high-performance DRAM if the price were right. (Mot. at 8:3-

11   6.) Apart from the fact that this argument relies on facts not alleged in the SAC, Integrated Silicon

12   is wrong for three reasons: (1) market definition allegations are unnecessary where the *per se*

13   standard applies; (2) cross-elasticity of supply is irrelevant; and (3) even if cross-elasticity of

14   supply were relevant, entry barriers make supply inelastic to changes in price.

15            **1.    The *Per Se* Rule Of Illegality Applies.**

16        Where, as here, plaintiffs allege an antitrust claim under the *per se* illegality standard,

17   plaintiffs are not required to define the relevant markets, allege market power, or demonstrate

18   anticompetitive harm. *Nat'l Soc'y of Prof'l Eng'rs v. U.S.*, 435 U.S. 679, 692 (1978); s*ee In re*

19   *Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 316 (3d Cir. 2010).[8] Market-allocation agreements

20   among competitors are *per se* antitrust violations. *Cal. ex rel. Harris v. Safeway, Inc.*, 651 F.3d

21   1118, 1137 (9th Cir. 2011).

22   /////

23   /////

24

25   _____

[7] Integrated Silicon makes the hallow assertion that GSI Tech would have suffered the same
injury if Cisco "awarded the Atris contract to *anyone* other than Plaintiff." (Mot. at 6.) As
Integrated Silicon is aware, and as GSI Tech alleges, Integrated Silicon was GSI Tech's only
26   competition for the Atris award. (SAC ¶ 67.) Integrate Silicon's argument highlights GSI Tech's
point: the reality of this Market is that it is narrow.

27   [8] But GSI Tech has nevertheless included allegations of the relevant market definition (*see*
Sections II.B, *infra*), market power (*see* Section II.D, *infra*), and anticompetitive harm (*see*
28   Section III.A, *supra*) sufficient to satisfy the rule of reason standard.

DLA PIPER LLP (US)
EAST PALO ALTO

-5-

WEST\245603744.8                                GSI'S OPPOSITION TO INTEGRATED SILICON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-1081-PSG

1    Here, GSI Tech alleges a market allocation agreement and boycott of GSI Tech between

2    competitors Integrated Silicon and UMI/ProMOS, to allocate the Market to Integrated Silicon and

3    to prevent or delay GSI Tech from entering the Market. (SAC ¶¶ 24-25, 67-83.)

4              **2.      GSI Tech Properly Alleges The Relevant Market.**

5              Integrated Silicon suggests that the relevant market definition is under-inclusive because it

6    fails to consider the effect of potential entry by other suppliers. Integrated Silicon misstates the

7    applicable legal standard on the issue of market definition. The ease by which a supplier can

8    switch its production capabilities from one product to another is not the test for whether a plaintiff

9    has properly defined a relevant market at the pleading stage. (Mot. at 7:16-8:2.) A properly defined

10   product market "includes the pool of goods or services that enjoy reasonable interchangeability of

11   use and cross-elasticity of demand." *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1446 (9th Cir.

12   1988) (citation omitted). An antitrust complaint "survives a Rule 12(b)(6) motion unless it is

13   apparent from the face of the complaint that the alleged market suffers a fatal legal defect"; the

14   "validity of the 'relevant market' is typically a factual element rather than a legal element."

15   *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008).

16             GSI Tech alleges that high-performance DRAM is the relevant market and conventional

17   DRAM and SRAM are not reasonably interchangeable with high-performance DRAM because of

18   technical and practical reasons.[9] (SAC ¶¶ 11-24.) GSI Tech also alleges that there is no cross-

19   elasticity of demand between high-performance DRAM and conventional DRAM and SRAM.

20   (SAC ¶ 16.) Case law supports the adequacy of GSI Tech's market definition allegations. *Int'l*

21   *Equp. Trading, Ltd. v. AB SCIEX LLC*, No. 13 C 1129, 2013 WL 4599903 (N.D. Ill. Aug. 29,

22   2013). The court in *AB SCIEX* did not dismiss the antitrust claims because plaintiff failed to

23   allege facts showing the absence of "cross-elasticities of supply" as Integrated Silicon asserts.

24   (Mot. at 8:11-13). Rather, the court dismissed the claims because the complaint affirmatively

25   demonstrated the cross-elasticity of demand between products which had been improperly

26   _____

[9] DRAM and SRAM are not interchangeable with high-performance DRAM for the technical reason that each purchaser must design its product to be technically and spatially compatible with
27   the type of chip used. (*See* SAC ¶¶ 13, 20-22, 27, 49, 216-218.) For a designer to shift from DRAM or SRAM to high-performance DRAM, a new mask set must be designed in order to
28   produce the chip. (*Id.*) This process requires substantial design effort and expense. (*Id.*)

1   excluded from the market definition.[10] *AB SCIEX LLC*, 2013 WL 4599903, at *4. The ease of

2   suppliers in switching from one product to another had no bearing on the court's determination,

3   and should not guide this Court. *Id.*

**3.      The Market Involves High Entry Barriers And Technical Limitations.**

5   Integrated Silicon mischaracterizes the allegations in the SAC. Supply elasticity measures

6   the responsiveness of producers to price increases; "[i]f producers of product X can readily shift

7   their production facilities to produce product Y, then the sales of both should be included in the

8   relevant market." *Rebel Oil*, 51 F.3d at 1436 (citation omitted). Integrated Silicon claims that GSI

9   Tech "admits that other DRAM and SRAM companies could and would be willing to convert

10  their production of traditional DRAM and SRAM into production of high-performance DRAM

11  when the price is right." (Mot. at 8:4-6 [citing SAC ¶¶ 20, 21].) The SAC, however, alleges

12  significant technical limitations and entry barriers to the Market that limit the competitive

13  pressure exerted by the potential entry from conventional DRAM and SRAM suppliers who

14  cannot readily shift their production facilities to the high-performance DRAM product. (SAC

15  ¶¶ 20-22.) Obviously, at some price point, new suppliers would enter any market and change the

16  competitive dynamics between the existing suppliers—but that is not the test. The test is whether

17  the presence of suppliers in adjacent markets exerts sufficient competitive pressure such that they

18  should be included in the relevant market definition. *See Rebel Oil*, 51 F.3d at 1436. In sum, GSI

19  Tech sufficiently alleges the relevant Market and the extent to which suppliers in adjacent

20  markets might shift production and enter the market in response to a price increase or supply

21  constraint is a question of fact not properly resolved on the pleadings.

22  /////

23  /////

24

25  [10] Integrated Silicon improperly relies on cases decided on summary judgment or at trial referring
    to evidentiary disputes over the degree of market power held by the defendant in a particular
26  market. (*See* Mot. at 7:16-8:2.) The antitrust treatise on which Integrated Silicon relies (2B
    Areeda & Hovenkamp, Antitrust Law ¶ 570b, at 418 (3d ed. 2007)) is even less apposite because
27  it states that elasticity of supply is an appropriate consideration only in "special situations"
    dealing with vertical mergers and more particularly mergers within the medical services field. *Id.*;
28  *accord Credit Chequers Info. Servs., Inc. v. CBA, Inc.*, No. 98 CIV. 3868(RPP), 1999 WL 253600
    at *10 (S.D.N.Y. Apr. 29, 1999) (supply foreclosure case). Neither special situation applies here.

C.      **GSI Tech Sufficiently Alleges Concerted Action Required For Section 1.**

Section 1 of the Sherman Act prohibits every contract, combination, or conspiracy in restraint of trade. 15 U.S.C. § 1. Integrated Silicon focuses solely on the conspiracy prong alleged in the SAC, and ignores GSI Tech's allegations of specific oral and written agreements, which independently satisfy the concerted action requirement. (*See* Mot. at 8:20-9:9.)

1.      **UMI And Integrated Silicon Entered Into An Oral Agreement.**

"[C]oncerted action may be amply demonstrated by an express agreement." *U.S. v. Delta Dental of R.I.*, 943 F. Supp. 172, 175 (D.R.I. 1996) (citation omitted). UMI/ProMOS are alleged to be a single economic entity for the purposes of the claim under section 1 of the Sherman Act. (SAC ¶ 94.) A parent and its subsidiary are considered a single economic entity where (1) they share common economic goals or have a unity of economic interest, and (2) they do not compete against each other. *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005). Here, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ They also do not compete against each other. (SAC ¶ 95.) These allegations are sufficient at the pleading stage. *See Hannah's Boutique, Inc. v. Surdej*, No. 13 C 2564, 2013 WL 4553313, at *3 (N.D. Ill. Aug. 28, 2013) ("A plaintiff need not assert all facts sufficient to prove its case.").

GSI Tech alleges the who (UMI/ProMOS and Integrated Silicon); what (an oral agreement to win the Atris bid ██████████████████████████ ███████████████, to allocate the Market, and to keep GSI Tech from competing); where (UMI approached by Integrated Silicon through ProMOS); and when (mid-August 2012). (SAC ¶¶ 64, 68-73, 95-98.) GSI Tech's allegations are more than sufficient to allege an oral agreement.

2.      **UMI And Integrated Silicon Entered Into Written Agreements.**

The SAC sufficiently alleges that UMI/ProMOS and Integrated Silicon entered into written agreements to effectuate their allocation of, and to keep GSI Tech from competing in, the Market. ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████



Such evidence of "trickery and chicanery" tends to show concerted action between UMI/ProMOS and Integrated Silicon. *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 823 F.2d 49, 51 (3d Cir. 1987).

### 3.   GSI Tech Properly Alleges The Existence Of The Conspiracy.

Integrated Silicon miscites *Bell Atl. v. Twombly*, 550 U.S. 544 (2007), for the argument that GSI Tech is required to allege conduct excluding the possibility of independent action. (Mot. at 8:22-23) *Twombly* applies specifically and exclusively in situations where a plaintiff fails to provide "any independent allegation of actual agreement" among horizontal competitors and "proceed[s] exclusively via allegations of parallel conduct." *Twombly*, 550 U.S. at 564, 565 n.11.[11] Here, by contrast, the SAC details specific agreements among Defendants by which their conspiracy was formed and implemented and does not depend on inferences from circumstantial

---

[11] The conduct challenged in *Twombly* was parallel pricing by competitors in an oligopolistic market, not concerted action. *Id.* at 564-569. As the *Twombly* court noted, parallel pricing alone is not indicative of a conspiracy because suppliers in such markets will often follow each other as a matter of sound unilateral profit maximization. *Id.* at 554, 566.

1    evidence that are not probative of conspiracy. That alone is a sufficient basis to deny the Motion.

2    *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010).

3         Under the correct standard at the pleading stage, GSI Tech has more than sufficiently

4    provided non-conclusory allegations that include references to direct evidence of a conspiracy, as

5    well as a combination of direct and circumstantial evidence of a conspiracy (SAC ¶¶ 68-89). For

6    example, GSI Tech alleges: the conspiracy began in August 2012 (SAC ¶ 68); in the

7    August/September 2012 timeframe, ███████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████; ProMOS decided to not enter the

10   market after the conspiracy was formed, even though it desired and was planning to do so before

11   the conspiracy was formed, pursuant to a market-allocation agreement for which it was paid a

12   forbearance fee (SAC ¶¶ 96-98); ████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████; and after the conspiracy

15   was formed, Integrated Silicon's sales people began disparaging GSI Tech's business (SAC ¶ 87).

16        Collectively, these allegations are far from conclusory and answer the "basic questions" of

17   "who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518

18   F.3d 1042, 1048 (9th Cir. 2008). These allegations make it plausible that Defendants had a unity

19   of purpose in an agreement to allocate the market and boycott GSI Tech. Importantly, even if two

20   plausible inferences may be drawn from particular factual allegations, the choice between the two

21   cannot be made on a Rule 12(b)(6) motion. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)

22   ("If there are two alternative explanations, one advanced by defendant and the other advanced by

23   plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under

24   Rule 12(b)(6)."); *see also Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir.

25   2012); *Evergreen Partnering Gr., Inc. v. Pactiv Corp.*, 720 F.3d 33, 45 (1st Cir. 2013).

26        **D.    GSI Tech Sufficiently Alleges A Claim For Attempted Monopolization.**

27        The elements of attempted monopolization are (1) specific intent to monopolize, and

28   (2) anticompetitive [or predatory] conduct which, as a whole, creates (3) a dangerous probability

-10-

1  of achieving monopoly power.[12]  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

2  Integrated Silicon argues the SAC fails to allege a dangerous probability of achieving monopoly

3  power and predatory conduct. As set forth below, both elements have been sufficiently alleged.

4              **1.      GSI Tech Sufficiently Alleges That Integrated Silicon Has A
                          Dangerous Probability Of Achieving Monopoly Power.**

5

6           In challenging the sufficiency of the market power allegations required for a section 2

7  attempted monopolization claim, Integrated Silicon falsely assumes the Court should apply a rule

8  of reason analysis. At the pleading phase, "the Court need not decide now whether *per se* or rule

9  of reason analysis applies."  *In re High-Tech Emp. Antitrust Litig*., 856 F. Supp. 2d 1103, 1122

10  (N.D. Cal. 2012). Because GSI Tech alleges anticompetitive conduct that is *per se* unlawful, GSI

11  Tech is not required to allege market power. *Nat'l Soc'y of Prof'l Eng'rs*, 435 U.S. at 692.

12          Still, GSI Tech sufficiently alleges market power. Monopoly or market power is the power

13  to control prices or exclude competition. *See U.S. v. E.I. DuPont de Nemours & Co.*, 351 U.S.

14  377, 391 (1956). A plaintiff may establish market or monopoly power either by direct or

15  circumstantial evidence. *See Rebel Oil*, 51 F.3d at 1434. Here, GSI Tech has alleged both.

16          Contrary to Integrated Silicon's argument (*see* Mot. at 10:2-3), market share is not

17  required to plead circumstantial evidence of market power. *Rolite, Inc. v. Wheelabrator Envtl.*

18  *Sys., Inc.*, 958 F. Supp. 992, 1000 (E.D. Pa. 1997). Courts may consider alternative factors in

19  addition to or in lieu of market share, such as the strength of competition, barriers to entry, the

20  nature of the anticompetitive conduct, and the elasticity of consumer demand. *Barr Labs., Inc. v.*

21  *Abbott Labs.,* 978 F.2d 98, 112 (3d Cir. 1992). Here, GSI Tech alleges the strength of

22  competition, including patents and market entry timing (SAC ¶¶ 17-24); significant technical and

23  structural barriers to entry (SAC ¶¶ 20-22); nature of the anticompetitive conduct (SAC ¶¶ 68-

24  89); and elasticity of demand (SAC ¶¶ 16, 23-24.) All of these factors demonstrate Integrated

25  Silicon's market or monopoly power.

26  /////

27

28

---

[12] Because GSI Tech alleges only a claim for *attempted* monopolization (*see* SAC ¶¶ 122-132), GSI Tech will not address Integrated Silicon's arguments relating to actual monopolization.

1   Pleading direct evidence of monopoly or market power requires a showing of (1) supra-

2   competitive prices or lower quality, and (2) restricted output. *Rebel Oil*, 51 F.3d at 1434. GSI

3   Tech alleges direct evidence of market power: "[w]ithout GSI Tech in the market, Integrated

4   Silicon can charge supra-competitive prices for lower-quality products." (SAC ¶ 106.) After

5   winning the Atris bid, Integrated Silicon solidified its market power, resulting in fewer supplier

6   choices—because now the only competitor who could competitively discipline the market (GSI

7   Tech) was excluded—higher prices and lower-quality products. (SAC ¶¶ 17-24, 104-107.)

8   In addition, GSI Tech sufficiently alleges restricted output. Specifically, GSI Tech alleges

9   that, due to significant technical and structural barriers to entering the Market, systems

10  manufacturer requirements, product customization, and economies of scale, the first and second

11  supplier can exercise market or monopoly power. (SAC ¶¶ 20-24.) GSI Tech alleges that

12  ProMOS would have entered the high performance DRAM market but for its agreement with

13  Integrated Silicon that it will not separately enter the market. (SAC ¶¶ 95-97.) NEC/Renesas

14  already is the sole supplier of the Atris chip for Cisco. (SAC ¶ 63.) Micron has a supply/licensing

15  arrangement with Integrated Silicon and ███████████████████████████

16  ████████████████ Because of these relationships, and considering that Integrated Silicon

17  was already an established player in the market, GSI Tech presented a "prospective alternative to

18  Integrated Silicon for customers in that highly concentrated market that other companies cannot

19  fulfill." (SAC ¶¶ 67, 104.) Thus, by delaying and impeding GSI Tech's entry in the market, there

20  are only two effective competitors in the market instead of three, and those two competitors are

21  alone competing for two supplier positions. GSI Tech's allegations are more than sufficient to

22  satisfy market power pleading standards. *Rebel Oil*, 51 F.3d at 1434.

23          **2.      GSI Tech Sufficiently Alleges That Integrated Silicon Engaged In
24                    Predatory Or Anticompetitive Conduct.**

25  "Exclusionary" and "predatory" conduct are interchangeable terms, *Taylor Publ'g Co. v.*

26  *Jostens, Inc.*, 216 F.3d 465, 476 n.2 (5th Cir. 2000), which refer to conduct, that "not only (1)

27  tends to impair the opportunities of rivals, but also (2) either does not further competition on the

28  /////

DLA Piper LLP (US)
East Palo Alto

-12-

GSI'S OPPOSITION TO INTEGRATED SILICON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
WEST\245603744.8                                                            CASE NO. 13-CV-1081-PSG

1   merits or does so in an unnecessarily restrictive way." *Aspen Skiing Co. v. Aspen Highlands*

2   *Skiing Corp.*, 472 U.S. 585, 605 n.32 (1985) (internal quotation marks and citation omitted).

3          GSI Tech sufficiently alleges that Integrated Silicon engaged in anticompetitive conduct.

4   (*See* SAC ¶¶ 63-83, 105-106; Section II.A, *supra*.); *accord*, *Taylor*, 216 F.3d at 480-82 (predatory

5   conduct may exist where a defendant acquires a plaintiff's confidential and proprietary

6   information which could potentially harm competition). Integrated Silicon either ignores entire

7   portions of the SAC or disputes the SAC's allegations in making its arguments that GSI Tech

8   fails to allege predatory conduct. For example, this case is not about whether Integrated Silicon

9   competed "aggressively" against GSI Tech to win the Atris contract. (Mot. at 10:9-11.) Despite

10  Integrated Silicon's claims to the contrary, the SAC contains numerous allegations that not only

11  did Integrated Silicon know that UMI possessed GSI Tech's IP, but Integrated Silicon set out to

12  misappropriate it when the conspiracy began in order to prevent GSI Tech's entry into the

13  relevant market. (*Compare* Mot. at 10:14-15 *with* SAC ¶¶ 17-19, 62-63, 68 n.4, 78, 81, 228, 239.)

14         Finally, disparagement can be the basis of an antitrust violation where, as here, GSI Tech

15  alleged sufficient facts to overcome the *de minimis* presumption. *Am. Prof'l Testing Serv., Inc. v.*

16  *Harcourt Brace Jovanovich Legal*, 108 F.3d 1147, 1152 (9th Cir. 1997). GSI Tech alleges that

17  the disparagement was (1) false; (2) material; (3) likely to induce reasonable reliance (quality and

18  stability of supply are important customer concerns and the disparagement relates to both areas);

19  (4) made to buyers without knowledge of the subject matter; (5) continued for prolonged periods;

20  and (6) not readily susceptible of neutralization or other offset by rivals (Renases and Micron

21  both have supply/licensing arrangements with Integrated Silicon in the Market). (SAC ¶¶ 18, 64,

22  84-87, 89, 96.) This is sufficient at the pleading stage to meet GSI Tech's burden.

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

**III.    GSI TECH ADEQUATELY ALLEGES CLAIMS FOR VIOLATIONS OF CIVIL RICO AND CONSPIRACY UNDER 18 U.S.C. §1962(C) AND 18 U.S.C. §1962(D).[13]**

**A.    GSI Tech Has Standing To Assert RICO Claims.**

**1.    GSI Tech Suffered An Actual Loss.**

GSI Tech suffered an actual loss as a direct result of Defendants' RICO violations. GSI Tech lost the Atris bid to Integrated Silicon, its only competitor. (SAC ¶¶ 28-29, 63-64, 67, 84-88, 138-149.) Further, GSI Tech (1) lost its confidential and proprietary information, which Defendants used and continue to use to develop the Atris product; and (2) lost the opportunity to partner with Cisco, and resulting reputational support and ability to compete with Defendants in the DRAM marketplace. (SAC ¶¶ 106-107, 138-147, 149.) These are losses of both business and property interests suffered by GSI Tech by reason of the RICO violations. *See e.g. Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1286-87 (11th Cir. 2006); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 23 F. Supp. 2d 771, 785 (N.D. Ohio 1998).

**2.    GSI Tech's Harm Was Proximately Caused By The RICO Enterprise.**

Wrongfully advancing that GSI Tech did not allege that it would have received the bid but for Defendants' RICO violations, Integrated Silicon contends that GSI Tech's injuries are too attenuated to establish proximate causation. (Mot. at 11:19-20.) To the contrary, GSI Tech specifically alleges that it *would have received the Atris contract* absent the RICO violations. (SAC ¶¶ 103, 107, 111.) The chain of causation between the RICO violations and GSI Tech's losses is direct and supported by the specific allegations of the SAC. (SAC ¶¶ 29, 64, 67, 69-73, 80-81, 102-107, 117, 128, 141-42, 144, 146-47, 149-150; Opp'n to UMI Motion, at IV.A.2); *see Comm. Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 383-85 (2d Cir. 2001).

/////

/////

---

[13] In moving to dismiss GSI Tech's RICO claims, Integrated Silicon asserts near identical arguments to those asserted by UMI. Rather than repeating its opposition here, GSI Tech incorporates by reference the portions of its brief in opposition to UMI's Motion to Dismiss, Sections IV and V, fully herein. Out of an abundance of caution, GSI Tech highlights the most salient points of its opposition, as well as arguments specific only to Integrated Silicon's motion, in this section.

3.   **The Enterprise Was The "But-For" Cause Of GSI Tech's Harm.**

Defendants' RICO violations are the reason GSI Tech lost its confidential and proprietary information, lost the second Atris bid, and is now unable to expand in the Market while Defendants continue to develop the Atris chip with Cisco's reputational support. "GSI Tech's only competition for the bid was Integrated Silicon" (SAC ¶ 67) and the Market is narrow and limited (SAC ¶¶ 17-22). To eliminate GSI Tech as a competitor, Integrated Silicon only had to win the Atris bid. (SAC ¶¶ 67, 149-150.) This was accomplished by the RICO violations, including both mail and wire fraud predicate acts described in the SAC. (SAC ¶¶ 69-73, 77-80, 82, 85-89, 140-149.) ████████████████████████████████

███████████████████████████████████████████████████████

But for the RICO violations, GSI Tech would not have lost the Atris bid and its ability to expand its business operations with the reputational support of Cisco. (SAC ¶¶ 64, 67, 102-107, 128.)

B.   **GSI Tech Pleaded Wire And Mail Fraud With Particularity.**

The SAC clearly identifies the "who, what, when, where, and how" of each act of mail and wire fraud underlying the RICO claim, "as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and citation omitted). For example,

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

Integrated Silicon points to two single examples of "deficiencies" in GSI Tech's allegations of wire and mail fraud, that GSI Tech failed to allege that Integrated Silicon: (1) had

-15-

1   reason to believe the material it acquired from UMI contained GSI Tech's information; or

2   (2) ever acquired or used anything belonging to GSI Tech in designing its Atris chip. That

3   Integrated Silicon used GSI Tech's confidential and proprietary information knowing it belonged

4   to GSI Tech is a pillar of nearly every claim in the SAC, and is clearly alleged. (*E.g.*, SAC ¶¶ 79,

5   133, 152, 215-221, 225-227.) GSI Tech has, without a doubt, satisfied the pleading standards

6   applicable to wire and mail fraud.

## C.   GSI Tech Adequately Alleges A RICO Enterprise.

### 1.   The Enterprise Is An "Association-In-Fact."

9   Integrated Silicon questions when the RICO enterprise began and the roles of its alleged

10   members. For the purposes of this Motion, the SAC demonstrates the formation of a RICO

11   enterprise by at least September 2012.[14] (SAC ¶¶ 140-148). By that time, the enterprise included

12   UMI, ProMOS, Integrated Silicon, and Mr. Bagchi (acting for Integrated Silicon but still

13   employed at Cisco). (SAC ¶¶ 68-73, 77-80, 82, 85-89, 107-108, 136, 140-149.) The members of

14   the enterprise were associated for the common purpose of suppressing GSI Tech as a competitor

15   in the DRAM chip marketplace, by, among other things, taking GSI Tech's confidential and

16   proprietary information and using it win the Atris bid, thereby preventing GSI Tech from entering

17   into the Market or enjoying the reputational support of Cisco. (SAC ¶¶ 64, 67, 69-73, 77-80, 82,

18   85-89, 103-104, 117, 128, 136, 140-149, 150.) These facts show an association in fact operating

19   for the common purpose of suppressing GSI Tech as a competitor in the Market. (SAC ¶¶ 64-67,

20   102-103, 106-107, 136, 149-150.)

## D.   GSI Adequately Alleges A Pattern Of Racketeering.

22   Integrated Silicon also claims GSI Tech has not established a pattern of racketeering

23   activity. (Mot. at 13:18-14:8.) However, among the predicate acts alleged by GSI Tech are:

24   ███████████████████████████████████████████████████████████████

---

[14] GSI Tech alleges that the RICO enterprise and predicate acts began as early as 2009; however, for purposes of this motion, the SAC certainly alleges an enterprise by no later than August or September 2012 followed by multiple predicate acts of wire fraud. The contention of Integrated Silicon that "a single predicate act of fraud occurred one month later in September 2012, and that no predicate acts have occurred since" is obviously incorrect based on the multiple allegations of mail and wire fraud between August 2012 and mid-2013 alone. (Mot. at 13:15-17.)

1  ████████████████████████████████████████████

2  ██████████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████ These predicate acts form a distinct and ongoing

7  pattern of racketeering activity within a ten-year period.[15] (*Id.*)

8        Integrated Silicon improperly asserts that there is no threat of continuing activity because

9  Defendants have already exchanged the Atris chip information. (Mot. at 13.) This argument

10  ignores GSI Tech's allegations that: (1) Defendants continue to use GSI Tech's confidential and

11  proprietary information to produce and market Atris chips while keeping GSI Tech out of the

12  DRAM chip market as a meaningful competitor; (2) ████████████████████████████████████

13  ██████████████████████████ and (3) Defendants are still telling Cisco that their product is

14  based solely on their own designs and work product. (SAC ¶¶ 67, 80, 102-103, 187.) Thus, the

15  pattern of racketeering activity continues, imposing a distinct threat of future activity.

16        Integrated Silicon suggests the SAC fails to allege a pattern of racketeering activity

17  because it involves a single act of fraud on a single victim. (Mot. at 13:20-14:8.) Integrated

18  Silicon's "single fraud" theory is not supported by case law, *see Turner*, 362 F.3d at 1229

19  ("Evidence of multiple schemes is not required to show a threat of continued criminal activity,

20  and indeed proof of a single scheme can be sufficient so long as the predicate acts involved are

21  not isolated or sporadic.") and is contrary to the SAC, which alleges multiple acts of fraud.[16]

---

22  [15] Integrated Silicon also objects that GSI Tech does not allege either "open-ended" or "closed-ended" continuity. (Mot. at 13.) Here, GSI Tech pleads facts showing a closed-ended continuity

23  with a threat of continued criminal acts into the future. *See Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). The SAC alleges that the enterprise was continuous and on-going from at least

24  September 2012 to the present. (SAC ¶¶ 69-73, 77-80, 82, 85-89, 140-149, 187.) This time period is sufficient to establish that the various acts continued over time, were not isolated events, and

25  were part of a pattern of racketeering behavior. *See Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 871 F. Supp. 2d 933, 943 (N.D. Cal. 2012).

26  [16] The *Medallion* line of cases cited by Integrated Silicon is inapplicable because those cases involve acts "designed to bring about a single event or injury to a single plaintiff." *Fotinos v.*

27  *Fotinos*, No. C 12-953 CW, 2013 WL 1195644, at *7 (N.D. Cal. Mar. 22, 2013). Nothing requires GSI Tech to allege more than a single fraudulent scheme to establish a pattern. *Sun Sav. & Loan*

28  *Assn. v. Dierdorff*, 825 F.2d 187, 193 (9th Cir. 1987). Indeed, the "insufficiency of a single fraud"

-17-

(SAC ¶¶ 69-73, 77-80, 82, 85-89, 140-149, 187.)

### E.     GSI Tech Adequately Alleges A RICO Conspiracy Claim.

Integrated Silicon contends that GSI Tech's claim for violation of section 1962(d) fails for two reasons: (1) GSI Tech fails to allege a claim for civil RICO under §1962(c), and therefore cannot allege a claim for conspiracy to violate RICO, and (2) GSI fails to allege facts showing an agreement between Defendants to commit at least two predicate acts of racketeering (i.e., the conspiracy). In fact, the SAC identifies multiple instances of manifest agreement between Defendants, including but not limited to ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████    Further, for all the reasons set forth in Section III.A-D, GSI Tech adequately alleges a civil RICO claim under §1962(c), and therefore GSI Tech's §1962(d ) claim is not susceptible to dismissal for failure to plead a violation of §1962(c). *See e.g., Lee v. Gen. Nutrition Cos., Inc.*, No. CV 00-13550LGB, 2001 WL 34032651, at *14 (C.D. Cal. Nov. 26, 2001).

## IV.   THE SAC SUFFICIENTLY ALLEGES THAT INTEGRATED SILICON TORTIOUSLY INTERFERED WITH THE UMI-GSI TECH AGREEMENT.

GSI Tech has sufficiently stated a claim for tortious interference with contract. The elements of interference with contractual relations are: (1) existence of a valid contract; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce the breach of the contract; (4) breach; and (5) damages. *625 3rd St. Assocs., L.P. v. Alliant Credit Union*, 633 F. Supp. 2d 1040, 1047-48 (N.D. Cal. 2009) (citation omitted). Integrated Silicon concedes that most of these elements are properly alleged in the SAC. Its only argument is that GSI Tech did not allege that "UMI told [Integrated Silicon] about the contract, or that [Integrated Silicon] ever saw the contract or otherwise knew about the highly specific non-compete provision." (Mot. at 16:1-2.) This argument fails because GSI Tech is not required to plead these

___

theory of the *Medallion* line of cases was harmonized with *Sun Savings & Loan* in *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989), which found "[i]t is implausible to suppose that Congress thought continuity might be shown only by proof of multiple schemes," and adopted a less inflexible requirement that a plaintiff show only continuity of racketeering activity or its threat

1  facts. Indeed, GSI Tech does not have to plead knowledge of specific contract terms at all. *Altera*

2  *Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir.2005) ("When the defendant performs

3  the act that causes the interference, the defendant need not know exactly who is a party to the

4  contract, so long as he knows he is interfering with a contractual relationship.") (citation omitted);

5  *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1221-22 (N.D. Cal.

6  2012) ("[Plaintiffs] need only show that Defendants had 'knowledge of the contract,' not that they

7  knew the precise terms of the contract."); *625 3rd St. Assocs.*, 633 F. Supp. 2d at 1048 (the tort

8  requires only that defendant "had knowledge of the existence of the contract."); *Skelly v.*

9  *Richman*, 10 Cal. App. 3d 844, 859 (1970) (knowledge of the terms of the contract is

10  unnecessary). That is, GSI Tech must allege only facts that plausibly support the inference

11  Integrated Silicon was aware of the contract between UMI and GSI Tech. This inference can be

12  supported by circumstantial facts demonstrating the defendant was aware of the contract and

13  acted accordingly. *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56-57 (1998) (court

14  implied knowledge of the contract based on circumstantial allegations of Defendants conduct,

15  even though specific evidence of knowledge not alleged).

16         This standard is met here. Indeed, although not necessary, the SAC contains specific facts

17  showing that Integrated Silicon was aware of the Agreement and the non-compete provision.

18  These facts include that: ███████████████████████████

19  ████████████████████████████████████

20  ████████████████████████████████

21  █████████████████████████████████████

22  ██████████████████████████████████

23  ████████████████████████

24         The reasonable inference from these facts is that Integrated Silicon knew that UMI was

25  obligated not to compete with GSI Tech on high performance DRAM products. This inference is

26  strengthened by Integrated Silicon's subsequent efforts to circumvent the specific non-compete

27  provision at issue ████████████████████████████

28  ████████████████████████████

1    Integrated Silicon argues that these facts require "extrapolations" to satisfy GSI Tech's

2    burden. If, by "extrapolations" Integrated Silicon is suggesting that such allegations rely on

3    inferences from Integrated Silicon's deceptive conduct, such inferences are permissible and more

4    than sufficient to survive the pleading stage. *E.g.*, *Brocade*, 873 F. Supp. 2d at 1222. For example,

5    the court in *Brocade* denied summary judgment (involving a much higher standard on a motion to

6    dismiss), holding that the evidence the defendant had entered similar agreements in the past and

7    took efforts to conceal the breach gave rise to a reasonable inference that he knew about the

8    underlying contract. *Id.* The SAC alleges these facts (and more).

9    Integrated Silicon does not cite to any cases requiring more than what is alleged here. The

10   cases it does cite are largely summary judgment and trial decisions, applying a rigorous standard

11   that is not appropriate at the pleading stage. Furthermore, the cases are distinguishable. For

12   instance, Integrated Silicon relies heavily upon *Winchester Mystery House, LLC v. Global*

13   *Asylum, Inc*., 210 Cal. App. 4th 579 (2012). There, the plaintiff claimed the defendant

14   intentionally interfered with its exclusive contract with another party for the rights to the

15   "Winchester story."  *Id.* at 597-98. However, the facts adduced through discovery showed that the

16   plaintiff never told the defendant the scope of the exclusivity provision (i.e., what types of

17   projects it applied to), never identified the party to the contract, and primarily warned the

18   defendant about its trademark rights (not a contract). *Id.* This did not constitute evidence that the

19   defendant was aware its creation of a film based on the Winchester family, using a different

20   location for filming and acting independently of plaintiff, would induce a breach of contract. *Id.*

21   Here, the allegations show that Integrated Silicon knew UMI owed duties to GSI Tech to not

22   compete on high performance DRAM projects and that it conspired with UMI to breach those

23   duties. This is much more than was alleged in *Winchester.* Integrated Silicon's motion to dismiss

24   the tortious interference with contract claim for failure to plead knowledge should therefore be

25   rejected.

26   **V.      THE SAC ADEQUATELY PLEADS TRADE SECRET MISAPPROPRIATION.**

27   In order to sustain a claim for misappropriation of trade secrets, GSI Tech must plead

28   (1) the existence of a trade secret, and (2) misappropriation. *Burroughs Payment Sys., Inc. v.*

-20-

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\245603744.8                    GSI'S OPPOSITION TO INTEGRATED SILICON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
                                                                                      CASE NO. 13-CV-1081-PSG

1   *Symco Grp., Inc.*, No. C–11–06268 JCS, 2012 WL 1670163, at *13 (N.D. Cal. May 14, 2012). A

2   plaintiff may establish misappropriation by pleading facts which show the defendant "knew or

3   *had reason to know*" that its knowledge of the trade secret was "[d]erived from or through a

4   person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." Cal.

5   Civ. Code § 3426.1(b)(2)(B) (emphasis added). This constructive knowledge can be inferred from

6   facts that would "make a reasonably prudent person suspicious." *Ralph Andrews Prods., Inc. v.*

7   *Paramount Pictures Corp.,* 222 Cal. App. 3d 676, 682 (1990) (internal quotation marks and

8   citation omitted); Restatement (Third) of Unfair Competition § 40 (1995) ("Studious ignorance of

9   the circumstances surrounding the acquisition of the information thus will not necessarily avoid

10   liability under this Section.").

11          Integrated Silicon reads the SAC's allegations out of context, and in isolation, arguing that

12   none of them standing alone supports the conclusion that Integrated Silicon knew it acquired or

13   was using GSI Tech's trade secrets. However, the allegations must be read as a whole. As they

14   demonstrate, ███████████████████████████████████████████████

15   ███████████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████

17   ██████▆████████████

18          From these facts, Integrated Silicon should, at a minimum, have *suspected* that the

19   information it was acquiring was the trade secret of one of its competitors. *Ralph Andrews.,* 222

20   Cal. App. 3d at 682. But the SAC goes further. █████████████████████

21   ██████████████████████████████   ████████████████████████

22   ████████████████████   ██████████████████   ████████████

23   ██████████████████████████████████████████

24   ████████████████████   It is reasonable to conclude that, due to UMI's earlier warnings

25   _____

26   [17] Integrated Silicon claims that the trade secrets conveyed to Mr. Bagchi have not been
    sufficiently identified to give Integrated Silicon notice of the trade secrets at issue. (Mot. at 19:23-
    28.) Integrated Silicon misses the point. Mr. Bagchi is the Integrated Silicon employee

27   responsible for the Atris project, and was given detailed information about the prior relationship
    between GSI Tech and UMI. (SAC ¶ 71.) This provided Integrated Silicon with constructive

28   notice that the Atris database contains GSI Tech's trade secrets.

about a "conflict," and the efforts necessary to hide the UMI-Integrated Silicon relationship and sale of Atris, Integrated Silicon knew (*or should have suspected*) that UMI owed a duty to GSI Tech (or another competitor) to keep the underlying information secret.[18]

Thus, considered together, the SAC's allegations provide more than an adequate basis from which to infer that Integrated Silicon knew, *or should have known*, when it acquired and used the Atris database that it was acquiring and using GSI Tech's confidential and trade secret information. That is all that is required at this stage. Integrated Silicon's motion to dismiss the trade secrets claims should therefore be dismissed.

## VI.   THE SAC ALLEGES CLAIMS FOR UNLAWFUL AND FRAUDULENT CONDUCT UNDER SECTION 17200.

Section 17200 is "sweeping, embracing 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Cel–Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). It is intended to reach unfair and unlawful practices that may not fall within the precise contours of existing torts and statutory violations. *Id.* at 181. In other words, courts are "not impotent to frustrate its consummation because the scheme is an original one." *Id.* (internal quotation marks and citation omitted). Rather, they are given express authority to hold entities liable for any "unlawful" or "unfair" business practice. Cal. Bus. & Prof. Code § 17200. As discussed below, the SAC meets these liberal standards for pleading "unfair" and "unlawful" practices under 17200.

### A.   Integrated Silicon Has Engaged, And Continues To Engage In Unfair Conduct.

"Unfair" business practices under 17200 reach any conduct that significantly threatens or harms competition, even conduct not specifically prohibited by some other law. *Cel–Tech*, 20 Cal. 4th at 187. As discussed *supra* in Sections II, the SAC alleges that Integrated Silicon is engaged in anticompetitive conduct in violation of the Sherman Act, which significantly threatens

---

[18] Contrary to Integrated Silicon's contention, GSI Tech has never "conceded" that Integrated Silicon did not learn of the misappropriation until after the lawsuit was acquired. (Mot. at 19:16-20:3.) Rather, Integrated Silicon's continued use of the trade secrets even after GSI Tech specifically made claim to them emphasizes Integrated Silicon's bad faith conduct in acquiring the Atris database and concealing its relationship with UMI from GSI Tech.

1  competition in the Market. Integrated Silicon's motion to dismiss the "unfair" claim based on

2  these allegations therefore fails.

3      Further, GSI Tech does not have to plead a violation of the antitrust laws to sustain a

4  claim, provided Integrated Silicon's conduct significantly threatens competition. *Cel–Tech*, 20

5  Cal. 4th at 187. It does. As alleged in the SAC, Integrated Silicon engaged in a pattern of tortious

6  and fraudulent conduct, which injured competition, and continues to threaten competition in the

7  Market, including fraudulently obtaining information about GSI Tech's Atris bid and trade

8  secrets, conspiring with UMI to breach its non-compete obligations, and engaging in a pattern of

9  fraud to pass GSI Tech's information off as its own in order to obtain a bid from Cisco.[19] (SAC

10  ¶¶ 184-187.) These acts had the effect of—and were intended to—exclude GSI Tech from the

11  Market. ███████████████████████████████████████████████████

12  ██████████████████████████████████ This pattern of conduct is sufficient to state a

13  claim under the unfair prong, whether or not it states a federal antitrust violation. *Silicon Image,*

14  *Inc. v. Analogix Semiconductor, Inc.*, No. C-07-0635 JCS, 2007 WL 1455903, at *6 (N.D. Cal.

15  May 16, 2007) (unfair practices where allegations of tortious interference, false advertising, and

16  misappropriation gave rise to inference competition may be harmed).

17      **B.    Integrated Silicon Engaged, And Continues To Engage, In Unlawful Conduct.**

18      "Unlawful" practices are those prohibited by law, whether civil or criminal. *See Saunders*

19  *v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994); *Farmers Ins. Exch. v. Superior Court*, 2 Cal.

20  4th 377, 383 (1992). The SAC adequately pleads claims for "unlawful" conduct based on the

21  antitrust, civil RICO, tortious interference with contract, and tortious interference with

22  prospective economic advantage claims discussed herein. (*See* Sections II-IV, *supra* and Section

23  VII, *infra*; SAC ¶ 182 (incorporating all other allegations).) Each of these claims provides an

24  independent basis for liability under the "unlawful" prong. *See Saunders*, 27 Cal. App. 4th at 839.

[19] Integrated Silicon contends that it cannot be liable for holding out GSI Tech's trade secrets as its own. However, the cases it cites in support are all Lanham Act claims for "reverse palming off." (*See* Mot. at 23.) The SAC does not assert claims for "reverse palming off." Nor does it assert an independent claim for false advertising. Rather, Integrated Silicon's deception in passing GSI Tech's trade secrets as its own, in furtherance of its conspiracy with UMI to usurp a competitive opportunity and exclude GSI Tech from the market, supports GSI Tech's claims under the UCL when considered along with Integrated Silicon's other conduct. (SAC ¶¶ 68-89.)

1    Moreover, Integrated Silicon's theft of GSI Tech's trade secrets, when considered as part

2 of Integrated Silicon's pattern of fraudulent, tortious, and anticompetitive conduct, supports a

3 claim under the "unlawful" prong of Section 17200. (*See* Section V, *supra*.) Integrated Silicon

4 wrongly argues that the UCL claims should be dismissed because they are preempted by the

5 CUTSA. (Mot. at 22:24-23:11.) However, as even Integrated Silicon's cases acknowledge, there

6 is no preemption unless the UCL claim and the misappropriation claim share the same "nucleus

7 of fact." *See, e.g.*, *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*, 171 Cal. App. 4th

8 939, 957-60 (2009).[20]  In other words, "[a] claim is not preempted under § 3426.7 if it is based

9 upon alleged facts beyond trade secret misappropriation." *Titan Global LLC v. Organ Gold Int'l,*

10 *Inc.*, No. 12-CV-2104-LHK, 2012 WL 6019285, at *10 (N.D. Cal. Dec. 2, 2012).

11    This is met here. Integrated Silicon's misappropriation of GSI Tech's trade secrets is only

12 part of its scheme to steal GSI Tech's business, tortiously interfere with its contracts, and exclude

13 GSI Tech from the market. (SAC ¶ 68-89, 184-188.) This gives rise to a valid claim for unlawful

14 conduct under Section 17200. *E–Smart Tech., Inc. v. Drizin*, No. C 06–05528–MHP, 2009 WL

15 35228, at *6 (N.D. Cal., Jan.6, 2009) (no preemption where UCL based on misappropriation of

16 trade secrets and business opportunities); *Hirel Connectors, Inc. v. U.S.*, No. CV 01-11069 DSF

17 (VBKx), 2004 WL 5639770, * 27 (C.D. Cal. Jan. 23, 2004) (misappropriation supported UCL

18 claims when considered with tortious interference claims); *Courtesy Temp. Serv., Inc. v.*

19 *Camacho*, 222 Cal. App. 3d 1278, 1292 (1990) (no preemption because "use of confidential

20 information obtained from his former employer to compete with him and to solicit the business of

21 his former employer's customers, is regarded as unfair competition") (citation omitted).

22 /////

23 /////

24 /////

---

[20] In *SunPower Corp. v. SolarCity Corp.*, No. 12-691 LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012), the plaintiff alleged claims under the UCL for misappropriation of "non-trade secrets" and argued that, because there were no trade secrets, the claim could not arise under the same "nucleus of facts" as the UTSA claim. *Id.* at *4. The court rejected this argument, explaining the purpose of the UTSA is to regulate certain types of property and it cannot be avoided simply by failing to allege one of its elements. *Id.* at *4-5. The decision is inapposite. Here, there are allegations of misappropriation, but they are sufficiently joined by other wrongful acts to avoid preemption.

1
2

**VII.    THE SAC ADEQUATELY ALLEGES TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.**

3        Integrated Silicon contends that the SAC does not state a claim for tortious interference

4   with a prospective economic advantage because it does not allege an "independently wrongful

5   act." (Mot. at 24.) Not so. For the reasons discussed above, the SAC adequately alleges

6   anticompetitive conduct, racketeering, fraudulent conduct, misrepresentation, and

7   misappropriation of trade secrets. (*See* Sections II-VI, *supra*.) Any one of these is sufficient to

8   establish "conduct that was wrongful by some legal measure other than the fact of interference

9   itself." *Della Penna v. Toyota Motor Sales*, 11 Cal. 4th 376, 393 (1995).

10       Further, to the extent the "independently wrongful act" is based upon misappropriation,

11  the tortious interference claim is not preempted because it is based upon additional allegations not

12  present in the misappropriation claim. *See, e.g., Hirel Connectors*, 2004 WL 5639770, at *27

13  (misappropriation supported UCL claims when considered with tortious interference claims).[21]

14  Accordingly, Integrated Silicon's motion to dismiss the tortious interference with prospective

15  economic advantage should be denied.

16  **VIII.   CONCLUSION**

17       For the foregoing reasons, GSI Tech respectfully requests that the Court deny Integrated

18  Silicon's motion to dismiss in its entirety. In the alternative, GSI Tech seeks leave to amend its

19  Second Amended Complaint.

20  Dated:  January 3, 2013              DLA PIPER LLP (US)

21

22                                      By /s/ Brooke Killian Kim
                                            _____
23                                          JEFFREY M. SHOHET
                                            BROOKE KILLIAN KIM
24                                          KELLIN CHATFIELD
                                            Attorneys for Plaintiff GSI Technology, Inc.
25

26

27  _____
    [21] Integrated Silicon devotes much of its argument to whether the SAC asserts independent claims
28  for trade disparagement or trade libel. (Mot. at 24:25-25:18.) This is irrelevant. Such claims are
    not necessary to establish wrongful conduct.

DLA PIPER LLP (US)
EAST PALO ALTO

-25-

WEST\245603744.8                GSI'S OPPOSITION TO INTEGRATED SILICON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
                                                                       CASE NO. 13-CV-1081-PSG