JEFFREY M. SHOHET (Cal. Bar No. 067529)
jeffrey.shohet@dlapiper.com
BROOKE KILLIAN KIM (Cal. Bar No. 239298)
brooke.kim@dlapiper.com
KELLIN CHATFIELD (Cal. Bar No. 288389)
kellin.chatfield@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  619.699.2700
Fax:  619.699.2701

RAJIV DHARNIDHARKA (Cal. Bar No. 234756)
rajiv.dharnidharka@dlapiper.com
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA  94303-2214
Tel:  650.833.2000
Fax:  650.833.2001

Attorneys for Plaintiff GSI Technology, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| GSI TECHNOLOGY, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED MEMORIES, INC., a Colorado Corporation, and INTEGRATED SILICON SOLUTION, INC., a Delaware Corporation,<br><br>    Defendants. | CASE NO.  Civ. Action No. 13-CV-1081-PSG<br><br>**OPPOSITION BRIEF OF GSI TECHNOLOGY, INC. TO PARTIAL MOTION OF UNITED MEMORIES, INC. TO DISMISS THE SECOND AMENDED COMPLAINT UNDER FEDERAL RULE 12(b)(6)**<br><br>Date:        February 25, 2014<br>Time:       10:00 a.m.<br>Dept.:       5, 4th Floor<br>Judge:      Hon. Paul S. Grewal |

REDACTED VERSION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................ 1

II.    LEGAL STANDARD ................................................................................................. 1

III.   GSI TECH HAS PROPERLY ALLEGES A CLAIM UNDER SHERMAN ACT
       § 1............................................................................................................................... 3

       A.     GSI Tech Sufficiently Alleges Antitrust Injury Required For Standing And
              Injury To Competition Required Under the Rule of Reason Standard. ............... 4

              1.     Plaintiff's Injury Is of the Type Covered by the Antitrust Laws. ............... 4

              2.     Plaintiff's Injury Flows From The Alleges Anticompetitive
                     Conduct. ...................................................................................................... 6

       B.     GSI Tech Sufficiently Alleges Concerted Action. .................................................. 7

              1.     UMI And Integrated Silicon Entered Into An Oral Agreement. ................. 7

              2.     UMI And Integrated Silicon Entered Into Written Agreements. ............... 8

              3.     GSI Tech Properly Alleges the Existence of a Conspiracy. ...................... 9

       C.     GSI Tech Sufficiently Alleges Intent To Harm Or Restrain Trade. .................... 10

IV.    GSI TECH ADEQUATELY ALLEGES CLAIMS FOR VIOLATIONS OF CIVIL
       RICO UNDER 18 U.S.C. §1962(c). ........................................................................ 12

       A.     GSI Tech Has Standing to Assert RICO Claims. ................................................. 13

              1.     GSI Tech Suffered An Actual Loss. ........................................................ 13

              2.     GSI Tech's Harm Was Proximately Caused By The RICO
                     Enterprise. ................................................................................................. 13

              3.     The Enterprise's Conduct Was The "But-For" Cause Of The Harm. ....... 15

       B.     GSI Tech Pleads Wire And Mail Fraud With Particularity. ................................ 16

       C.     GSI Adequately Alleges A RICO Enterprise. ..................................................... 18

              1.     The Enterprise Is An "Association-In-Fact." ........................................... 18

       D.     GSI Adequately Alleges A Pattern Of Racketeering. ......................................... 20

V.     GSI TECH ADEQUATELY ALLEGES A RICO CONSPIRACY CLAIM. ................. 21

VI.    THE SAC ADEQUATELY DEFINES THE SCOPE OF THE TRADE SECRETS
       AT ISSUE. ................................................................................................................ 22

       A.     The Trade Secrets Are Defined With Sufficient Particularity. ............................ 22

       B.     The SAC Makes Clear The 576Mb Schematic And Layout Are Not In The
              Public Domain ....................................................................................................... 23

       C.     The Atris Database Contains GSI Tech's Trade Secrets. ..................................... 24

VII.   CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*al-Kidd v. Ashcroft,*
  580 F.3d 949 (9th Cir. 2009), *rev'd on other grounds by Ashcroft v. al-Kidd*, 131 S.Ct. 2074 (2011) ............................................................................................................ 2

*Anderson News, LLC v. Am. Media, Inc.,*
  680 F.3d 162 (2d Cir. 2012) ...................................................................... 2, 10, 11, 14

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006) ........................................................................................................ 16

*Ariz. v. Maricopa Cnty. Med. Soc'y,*
  457 U.S. 332 (1988) .......................................................................................................... 3

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................ 1, 2, 3

*Atl. Richfield Co. v. USA Petroleum Co.,*
  495 U.S. 328 (1990) .......................................................................................................... 3

*Balistreri v. Pacifica Police Dep't,*
  901 F.2d 696 (9th Cir. 1990) .......................................................................................... 1

*Bell Atl. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................................. 1, 2, 9

*Brantley v. NBC Universal, Inc.,*
  675 F.3d 1192 (9th Cir. 2012) ........................................................................................ 3

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,*
  429 U.S. 477 (1977) ...................................................................................................... 4, 6

*Burroughs Payment Sys., Inc. v. Symco Grp., Inc.,*
  No. C–11–06268 JCS, 2012 WL 1670163 (N.D. Cal. 2012) .................................. 23, 24, 25

*Cal. Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.,*
  818 F.2d 1466 (9th Cir. 1987) ...................................................................................... 21

*Cal. ex rel. Harris v. Safeway, Inc.,*
  651 F.3d 1118 (9th Cir. 2011) ...................................................................................... 10

*Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.,*
  271 F.3d 374 (2d Cir. 2001) .......................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2

<u>Page</u>

3

*Diodes, Inc. v. Franzen*,
   260 Cal. App. 2d 244 (1968)........................................................................... 22, 23

4

5

*Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance, Inc.*,
   123 F.3d 301 (5th Cir. 1997)........................................................................... 4

6

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ......................................................................................... 2, 6

7

8

*Erie Cnty., Ohio v. Morton Salt, Inc.*,
   702 F.3d 860 (6th Cir. 2012).......................................................................... 7

9

*Evergreen Partnering Gr., Inc. v. Pactiv Corp.*,
   720 F.3d 33 (1st Cir. 2013) ............................................................................ 2, 10

10

11

*Fed. Trade Comm'n v. H.J. Heinz Co.*,
   246 F.3d 708 (D.C. Cir. 2001) ....................................................................... 5

12

13

*Hannah's Boutique, Inc. v. Surdej*,
   No. 13 C 2564, 2013 WL 4553313 (N.D. Ill. Aug. 28, 2013) ....................... 8

14

*Haroco v. Am. Nat'l Bank & Trust Co.*,
   747 F.2d 384 n.22 (7th Cir.1984), *aff'd on other grounds*, 473 U.S. 606 (1985) ................... 19

15

16

*Heatransfer Corp. v. Volkswagenwerk, A.G.*,
   553 F.2d 964 (5th Cir. 1977).......................................................................... 12

17

18

*Holmes v. Secs. Investor Prot. Corp.*,
   503 U.S. 258 (1992) ....................................................................................... 12, 13, 15

19

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3rd Cir. 2010) ......................................................................... 3

20

21

*In re Lupron Mktg. & Sales Practices Litig.*,
   295 F. Supp. 2d 148 (D. Mass. 2003) ............................................................ 21, 22

22

23

*In re Neurontin Mktg. & Sales Practices Litig.*,
   712 F.3d 21 (1st Cir. 2013) ............................................................................ 13, 15

24

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*,
   23 F. Supp. 2d 771 (1998).............................................................................. 13

25

26

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*,
   407 F.3d 1027 (9th Cir. 2005)........................................................................ 7

27

28

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\245603746.7

-iii-

GSI'S OPPOSITION TO UMI'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-1081-PSG

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Jalali v. Far. E. Nat'l Bank,*
    No. C 12-5962 SBA, 2013 WL 5312716 (N.D. Cal. Sept. 23, 2013) ..................................... 18

4

5

*Kendall v. Visa U.S.A., Inc.,*
    518 F.3d 1042 (9th Cir.2008) ............................................................................................ 3, 9, 10

6

*Lee v. Gen. Nutrition Cos., Inc.,*
    No. CV 00-13550LGB, 2001 WL 34032651 (C.D. Cal. Nov. 26, 2001) ............................... 22

7

8

*Lockheed Martin Corp. v. Boeing Co.,*
    314 F. Supp. 2d 1198 (M.D. Fla. 2004) ................................................................................... 12

9

10

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.,*
    871 F. Supp. 2d 933 (N.D. Cal. 2012) ..................................................................................... 20

11

*Nat'l Soc'y of Prof'l Eng'rs v. U.S.,*
    435 U.S. 679 (1978) .......................................................................................................... 3, 10

12

13

*Occulus Innovative Sciences, Inc. v. Nofil Corp.,*
    No. C 06-1686-SI, 2007 WL 4044867 (N.D. Cal. Nov. 15, 2007) ........................................ 23

14

15

*Odom v. Microsoft Corp.,*
    486 F.3d 541 (9th Cir. 2007) (*en banc*) ............................................................................ 18, 19

16

17

*Oltz v. St. Peter's Cmty. Hosp.,*
    861 F.2d 1440 (9th Cir.1988) .................................................................................................... 3

18

*Palmer v. BRG of Ga., Inc.,*
    498 U.S. 46 (1990) ..................................................................................................................... 6

19

20

*Pool Water Prods. v. Olin Corp.,*
    258 F.3d 1024 (9th Cir. 2001) ............................................................................................... 4, 5

21

*Premier Innovations, Inc. v. IWAS Indus., LLC,*
    No. 07cv1083 BTM(BLM), 2007 WL 2873442 (S.D. Cal. 2007) ......................................... 23

22

23

*Rebel Oil Co. v. ARCO,*
    51 F.3d 1421 (9th Cir. 1995) ..................................................................................................... 4

24

25

*River City Markets, Inc. v. Fleming Foods W., Inc.,*
    960 F.2d 1458 (9th Cir. 1992) ........................................................................................... 20, 22

26

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
    806 F.2d 1393 (9th Cir. 1986) ................................................................................................. 18

27

28

1

2

## TABLE OF AUTHORITIES
### (continued)

Page

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
  473 U.S. 479 (1985) ................................................................... 12

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ........................................... passim

*Sun Sav. & Loan Assn. v. Dierdorff*,
  825 F.2d 187 (9th Cir. 1987) ..................................................... 21

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ................................................... 15

*Tunis Bros. Co., Inc. v. Ford Motor Co.*,
  823 F.2d 49 (3d Cir. 1987) ........................................................... 9

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004) ................................................... 20

*U.S. v. Delta Dental of R.I.*,
  943 F. Supp. 172 (D.R.I. 1996) ............................................. 7, 9

*U.S. v. Turkette*,
  452 U.S. 576 (1981) ................................................................... 19

*Williams v. Mohawk Indus., Inc.*,
  465 F.3d 1277 (11th Cir. 2006) ........................................ 13, 15

STATUTES

15 U.S.C. § 1 ........................................................................... 3, 7

18 U.S.C. §1961(4) ...................................................................... 18

18 U.S.C. §1961(5) ...................................................................... 20

18 U.S.C. §1962 ........................................................................... 21

18 U.S.C. §1962(c) ................................................................ 12, 22

18 U.S.C. §1962(d) ............................................................ 12, 21, 22

OTHER AUTHORITIES

Fed. R. Civ. P. 8 ............................................................................. 2

Fed. R. Civ. P. 8(a) ........................................................................ 1

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1, 2, 7, 10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff GSI Technology, Inc. ("GSI Tech") hereby submits the following brief in

2  opposition to the Partial Motion to Dismiss the Second Amended Complaint ("Motion") of

3  Defendant United Memories, Inc. ("United Memories" or "UMI").

4  **I.    INTRODUCTION**

5    United Memories and co-Defendant Integrated Silicon Solutions, Inc. ("Integrated

6  Silicon") have engaged in an elaborate deception to avoid liability for the acts properly alleged in

7  the Second Amended Complaint ("SAC")—███████████████████████

8  ████████████████████████████████ to engaging in creative efforts to

9  evade discovery—and this motion to dismiss is only the latest battle in that effort.

10    GSI Tech's Second Amended Complaint ("SAC") more than satisfies its obligation to

11  state a plausible claim for relief. Yet, United Memories, like its co-Defendant, asserts its own

12  factual allegations and inferences and asks the Court to draw different conclusions than were

13  asserted in the SAC. United Memories wholly ignores allegations made throughout the SAC, and

14  worse, selectively quotes portions of the SAC, omitting relevant allegations in the same

15  paragraph. This is not how the Court should assess the SAC.

16    Instead, the inquiry must focus on all plausible allegations in the SAC and reasonable

17  inferences which may be made in GSI Tech's favor. If those allegations and inferences state a

18  claim for relief, the motion must be denied. On this—the correct—standard, with respect to each

19  cause of action in the SAC, United Memories's motion must be denied.

20  **II.    LEGAL STANDARD**

21    Under the Federal Rules of Civil Procedure, a complaint need only contain a "short and

22  plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

23  The complaint should give the defendant "fair notice of what the claim is and the grounds upon

24  which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks,

25  modification, and citation omitted). To meet this requirement, the complaint must be supported

26  by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dismissal under Rule 12(b)(6)

27  is appropriate only if the complaint lacks a cognizable legal theory or sufficient facts to support a

28  cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

1990). A complaint need contain "only enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678.

*Twombly* defines plausibility in terms of what it is not: It is not a probability requirement. *Iqbal*, 556 U.S. at 678. As the Ninth Circuit explained:

> *Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden. "Asking for plausible grounds to infer" the existence of a claim for relief "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to prove that claim.

*al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), *rev'd on other grounds by Ashcroft v. al-Kidd*, 131 S.Ct. 2074 (2011) (quoting *Twombly*, 550 U.S. at 556). And as the *Twombly* Court explained, pleading a plausible claim does not require "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 555, 570; *see Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations.'") (citation omitted).

Nor does *Twombly* obligate a plaintiff to plead facts sufficient to eliminate all reasonable alternative inferences: "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *accord Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion."). It "is not for the court to decide, at the pleading stage, which inferences are more plausible than competing inferences, since those questions are properly left to the factfinder." *Evergreen Partnering Gr., Inc. v. Pactiv Corp.*, 720 F.3d 33, 44 (1st Cir. 2013) (also noting that "unreasonably high pleading requirements at the earliest stages of antitrust litigation has in part resulted from citations to case law evaluating antitrust claims at the summary judgment and post-trial stages.").

Moreover, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity . . . ."). After accepting

/////

1    as true plaintiff's allegations and drawing all reasonable inferences in its favor, a court must then

2    determine whether the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679.

3    **III.   GSI TECH PROPERLY ALLEGES A CLAIM UNDER SHERMAN ACT § 1.**

4            To assert a claim under section one of the Sherman Act, a plaintiff must plead facts that, if

5    true, will prove "(1) a contract, combination or conspiracy among two or more persons or distinct

6    business entities; (2) by which the persons or entities intended to harm or restrain trade or

7    commerce among the several States, or with foreign nations; (3) which actually injures

8    competition." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012) (citing

9    *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir.2008)); s*ee Oltz v. St. Peter's Cmty.*

10   *Hosp.*, 861 F.2d 1440, 1445 (9th Cir.1988). In addition to these elements, a plaintiff must also

11   plead (4) that it was harmed by the defendant's anti-competitive contract, combination, or

12   conspiracy, and (5) that this harm flowed from an "anti-competitive aspect of the practice under

13   scrutiny." *Brantley*, 675 F.3d at 1197 (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S.

14   328, 334 (1990)). Where, as here, a plaintiff properly alleges conduct that is *per se* illegal under

15   the Sherman Act,[1] such conduct is "conclusively presumed to unreasonably restrain competition."

16   *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 317 (3rd Cir. 2010) (quotations and citation

17   omitted). Plaintiffs who allege *per se* offenses, like GSI Tech, are not required to allege the

18   second and third elements (intent to injure and actual injury to competition). *See id.*

19           The fourth element is generally referred to as "antitrust injury." This element is distinct

20   from the merits-based injury to competition requirement (the third element, which is also

21   sometimes confusingly referred to as antitrust injury but is only applicable to claims asserted

22   under the rule of reason). Antitrust injury is a narrow inquiry applicable to all antitrust claims. It

23   does not require plaintiff to demonstrate harm to the markets or the competitive process. *See*

---

24   [1] There are two complementary categories of antitrust analysis. "In the first category are
     agreements whose nature and necessary effect are so plainly anticompetitive that no elaborate

25   study of the industry is needed to establish their illegality—they are 'illegal *per se*.'" *Nat'l Soc'y
     of Prof'l Eng'rs v. U.S.*, 435 U.S. 679, 692 (1978). Agreements in this category include a

26   horizontal component (parties who compete against one another) plus price fixing, division of
     markets, group boycotts, and tying arrangements. *Ariz. v. Maricopa Cnty. Med. Soc'y*, 457 U.S.

27   332, 344 n.15 (1988). "In the second category are agreements whose competitive effect can only
     be evaluated by analyzing the facts peculiar to the business, the history of the restraint, and the

28   reasons why it was imposed." *Nat'l Soc'y*, 435 U.S. at 692.

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\245603746.7                              -3-
                                GSI'S OPPOSITION TO UMI'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT
                                CASE NO. 13-CV-1081-PSG

1   *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance, Inc.*, 123 F.3d 301, 305 (5th Cir. 1997). To

2   the contrary, it requires only that the plaintiff establish injury-in-fact of the kind contemplated by

3   the antitrust laws. *See id.* That is, the "injury to competition" requirement assesses the defendant's

4   conduct on the overall market whereas antitrust injury relates to the nature of plaintiff's injury in

5   the market. *Id.* Together the fourth and fifth elements are referred to as antitrust standing. *See*

6   *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977).

7        United Memories argues that the SAC should be dismissed because GSI Tech fails to

8   allege the first (concerted action), second (intent to harm or restrain trade), third (injury to

9   competition), and fourth (antitrust injury) elements required to state a section one claim. As set

10  forth in more detail below, each and every claim is sufficiently alleged.[2]

11  **A.   GSI Tech Sufficiently Alleges Antitrust Injury Required For Standing And**
12       **Injury To Competition Required Under the Rule of Reason Standard.**

13       Antitrust injury is an important element of antitrust standing. *Pool Water Prods. v. Olin*

14  *Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001). Antitrust injury is "injury of the type the antitrust

15  laws were intended to prevent and that flows from that which makes defendants' acts unlawful."

16  *Brunswick*, 429 U.S. at 489. "To show antitrust injury, a plaintiff must prove that his loss flows

17  from an anticompetitive aspect or effect of the defendant's behavior . . . ." *Rebel Oil Co. v.*

18  *ARCO*, 51 F.3d 1421, 1433 (9th Cir. 1995). United Memories argues that GSI Tech fails to allege

19  antitrust injury. (Mot. at 9:13-11:20.) United Memories is *wrong* because GSI Tech alleges an

20  injury that (1) is the type covered by the antitrust laws, and (2) flows from the unlawful conduct.

21       **1.   Plaintiff's Injury Is of the Type Covered by the Antitrust Laws.**

22       GSI Tech sufficiently alleges an injury of the type covered by the antitrust laws in alleging

23  that Defendants' conduct substantially impedes the entry of a new potential competitor, GSI

24  Tech, into a highly-concentrated market with high-entry barriers, thereby allowing Integrated

25  Silicon to raise prices or lower quality. (SAC ¶¶ 20, 106, 117.) GSI Tech alleges that Defendants'

26  illegal conduct resulted in eliminating or impeding a new competitor in a market with only two

27       [2] UMI combines its discussion of antitrust injury and injury to competition under a single heading
28  referencing only "antitrust standing," conflating these two distinct requirements. GSI Tech will
    address these elements together to avoid further confusion.

1    substantial competitors[3] where two competitors (the primary and secondary supplier) are each

2    capable of exercising market power. (SAC ¶¶ 20-24, 67-89, 95-98, 103.) More specifically, the

3    result of Defendants' conduct is a market with only two effective competitors—Renesas and

4    Integrated Silicon—rather than three or potentially four.[4] (SAC ¶¶ 63, 67.) Reducing a market

5    from three competitors to two impairs competition. *See*, *e.g.*, *Fed. Trade Comm'n  v. H.J. Heinz*

6    *Co*., 246 F.3d 708, 717-19 (D.C. Cir. 2001).

7         GSI Tech alleges that absent Defendants' anticompetitive conduct, it would have entered

8    the market immediately, but instead has been delayed and thwarted from entering the market as a

9    serious competitor. (SAC ¶¶ 67, 97-98.) This constitutes antitrust injury—rather than just injury

10   to a competitor—because the market is sufficiently concentrated and difficult to enter. GSI

11   Tech's entry would have competitively-disciplined Integrated Silicon's exercise of market power.

12   (SAC ¶¶ 24, 97-98, 104.) Indeed, that is why Defendants were trying to remove GSI Tech from

13   the market. (SAC ¶¶ 68-83.) "Without GSI Tech in the market, Integrated Silicon can charge

14   supra-competitive prices for lower-quality products." (SAC ¶ 106.) Suppliers thus face "higher

15   prices for lower quality goods and have fewer supplier choices." (SAC ¶ 106.) This is injury to

16   competition. *See Pool Water*, 258 F.3d at 1034 ("Antitrust injury means injury from higher prices

17   or lower output") (internal quotation marks & citation omitted).

18        In addition, GSI Tech alleges that the conspiracy includes an agreement between

19   Integrated Silicon and UMI/ProMOS (one of the few potential competitors in the Market) to

20   refrain from separately entering the Market. (SAC ¶¶ 97-98, 110.) This conduct in furtherance of

21   /////

22   /////

23   _____

24   [3] Paragraph 17 of the SAC alleges that GSI Tech is one of four competitors "engaged" in the
     Market. United Memories misconstrues that allegation by incorrectly treating Micron and

25   Integrated Silicon as distinct competitors and suggesting that GSI Tech has already entered into
     and is participating in the sale of products in the Market. To the contrary, GSI Tech alleges that

26   the Cisco contract, which it did not receive, was its "primary opportunity to *enter* into the
     [Market] as an effective competitor." (SAC ¶ 64 (emphasis added).) Moreover, Micron and

27   Integrated Silicon partner in the area of high-performance DRAM and are not properly treated as
     separate competitors. (SAC ¶ 18.) Therefore, only two effective competitors exist in the Market.

28   [4] Specifically, absent the unlawful agreement, GSI Tech's entry would not have been delayed or
     entirely frustrated and ProMOS would have been free to enter the market. (SAC ¶ 95-98.)

1   the conspiracy is a straightforward market allocation and tends to injure competition.[5] *See Palmer*

2   *v. BRG of Ga., Inc*., 498 U.S. 46, 49-50 (1990) (market allocation a *per se* violation).

3                   **2.      Plaintiff's Injury Flows From The Alleged Anticompetitive Conduct.**

4           GSI Tech also satisfied the second aspect of antitrust injury by alleging that its own injury

5   flows from Defendants' anticompetitive conduct. The analysis here is simple: Defendants injured

6   competition by "impeding the entry of a crucial competitor—GSI Tech—into the high-

7   performance DRAM market." (SAC ¶ 106.) With that premise, GSI Tech must allege actual

8   injury from the resulting delay or entry into the relevant market as a significant competitor. It has.

9   (SAC ¶¶ 111, 118 [lost profits and business and lost financial flexibility].) Thus, GSI Tech's

10  actual injury flows from the competition-reducing aspect of Defendants' conduct. *Brunswick*, 429

11  U.S. at 488-89. Moreover, the means that Defendants utilized to injure competition—stealing

12  GSI's trade secrets and engaging in "an aggressive" disparagement campaign—is directly

13  connected to GSI's actual injury. (SAC ¶¶ 68-84.)

14          United Memories asserts that GSI Tech's antitrust-injury allegations are contradictory,

15  unsupported, and consistent with legal conduct. (Mot. at 10:5-11:17.) But these self-serving

16  characterizations ignore GSI Tech's allegations about the relevant market's structure and the

17  effect of Defendants' actions on GSI Tech and the Market. For example, United Memories argues

18  that GSI Tech's allegation that it has been prevented from entering the relevant market

19  contradicts GSI Tech's allegations that Cisco selected GSI Tech as a supplier in 2007. (Mot. at

20  10:8-15; *but see* SAC ¶¶ 32, 240.) But at that point, GSI Tech was seeking to enter the market—

21  "the specification was still in development." (SAC ¶ 32.) It did not, in fact, substantially enter the

22  market in 2007 because of failures of United Memories and ProMOS. (SAC ¶ 62.)

23          United Memories also argues that GSI Tech's antitrust allegations are "pure speculation"

24  and "unsupported." (Mot. at 10:5-20.) While United Memories may disagree with GSI Tech's

25  alleged facts, the Court "must accept as true all of the factual allegations contained in the

26  ――――――――――――――
    [5] Unlike the non-compete agreement between GSI Tech and ProMOS, which was supported by
27  the separate chip fabrication agreement with ProMOS, ███████████████████████████████████
    ████████████████████████████████████████████████████████████████████████
28  ██████████████████████████████████ (a claim for which Integrated Silicon would bear the
    burden of proof, if advanced).

1  complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). United Memories's speculation

2  regarding the reasons why GSI Tech lost the Cisco bid, and whether certain aspects of its own

3  agreement with Integrated Silicon actually eliminated GSI Tech as a competitive threat, are more

4  appropriately addressed at summary judgment and trial.[6] Finally, United Memories's arguments

5  that GSI Tech's allegations are consistent with United Memories's own less anticompetitive-

6  theories cannot support dismissal. *Starr*, 652 F.3d at 1216 ("If there are two alternative

7  explanations, one advanced by defendant and the other advanced by plaintiff, both of which are

8  plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."). At this stage,

9  GSI Tech "need not allege a fact pattern that 'tends to exclude the possibility' of lawful,

10 independent conduct." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 868 (6th Cir. 2012).

11 GSI Tech alleges detailed plausible facts showing that it suffered antitrust injury from

12 Defendants' conduct. That is enough.

### B.    GSI Tech Sufficiently Alleges Concerted Action.

14       Section 1 of the Sherman Act prohibits every contract, combination, or conspiracy in

15 restraint of trade. 15 U.S.C. § 1. United Memories's motion should be denied because GSI Tech

16 alleges both oral and written contracts, as well as a *per se* conspiracy, which satisfy the concerted

17 action element, the first element required to state a claim for violation of section 1 of the Sherman

18 Act.

### 1.    UMI And Integrated Silicon Entered Into An Oral Agreement.

20       "[C]oncerted action may be amply demonstrated by an express agreement." *U.S. v. Delta*

21 *Dental of R.I.*, 943 F. Supp. 172, 175 (D.R.I. 1996) (citation omitted). UMI/ProMOS are alleged

22 to be a single economic entity for the purposes of the claim under section 1 of the Sherman Act.

23 (SAC ¶ 94.) A parent and its subsidiary are considered a single economic entity where (a) they

24 share common economic goals or have a unity of economic interest, and (b) they do not compete

25 against each other. *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d

26

27 [6] There are numerous factual issues relating to whether GSI Tech lost the Cisco bid pursuant to
the conspiracy. For example, GSI Tech alleges that Integrated Silicon used one of its current
employees to extract competitively-sensitive information from GSI Tech, which made the
28 difference in Integrated Silicon winning the Cisco bid. (SAC ¶ 69-71.)

DLA PIPER LLP (US)
EAST PALO ALTO

1  1027, 1034 (9th Cir. 2005). Here, 

2

3

4  ████████ They also do not compete against each other. (SAC ¶ 95.) These allegations are

5  sufficient at the pleading stage. *See Hannah's Boutique, Inc. v. Surdej*, No. 13 C 2564, 2013 WL

6  4553313, at *3 (N.D. Ill. Aug. 28, 2013) ("A plaintiff need not assert all facts sufficient to prove

7  its case.").

8         GSI Tech alleges the who (UMI/ProMOS and Integrated Silicon); what (an oral

9  agreement to win the Atris bid ████████████████████████████

10  ████████████████ to allocate the high-performance DRAM market ("Market"), and

11  to keep GSI Tech from competing in that market); where (UMI approached by Integrated Silicon

12  through ProMOS); and when (beginning mid-August 2012). (SAC ¶¶ 64, 68-73, 95-98.) GSI

13  Tech's allegations are more than sufficient to establish that UMI/ProMOS and Integrated Silicon

14  entered into an oral agreement to allocate the Market and obstruct GSI Tech's efforts to

15  participate in it.

16         United Memories claims that it is "unclear" whether GSI Tech alleges that the "antitrust

17  conspiracy" involves only United Memories and Integrated Silicon or also United Memories's

18  parent ProMOS, because "GSI's conspiracy allegations rely on the concerted behavior of no less

19  than three companies." (Mot. at 7:6-9.) To the contrary, the SAC, as discussed above, clearly

20  identifies each participant's role in the specific agreements implementing the conspiracy as

21  discussed further below in this section. (*See*, *e.g.*, SAC ¶¶ 64, 68-73, 95-98.)

22         **2.**    **UMI And Integrated Silicon Entered Into Written Agreements.**

23         The SAC sufficiently alleges that UMI/ProMOS and Integrated Silicon entered into

24  written agreements to effectuate their allocation of the Market and keep GSI Tech from

25  competing in it. ████████████████████████████████

26

27

28

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\245603746.7

1    ███████████████████████████████████████████

2    ████████████████████████████████████████████████

3    ████████████████████████████████████████████████

4    ███████████████

5    ██████████████████████████████████████████████████████

6    █████████████████████████████████████████████████████

7    ████████████████████████████████████████████

8    █████████  ████████████████████████████████████

9    █████████████████████████████████████████████

10   █████████████████████████████████████ Such evidence of "trickery

11   and chicanery" tends to show concerted action between UMI/ProMOS and Integrated Silicon.

12   *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 823 F.2d 49, 51 (3d Cir. 1987). ███████████

13   ████████████████████████████████████████████

14   ████████████████████████████████████████████████

15   ████████████████████████████████████████████

16   █████████████████████████████████████

17       Despite United Memories's arguments that the agreement has not been adequately alleged

18   (Mot. at 7:18-8:4), these allegations amply allege that UMI/ProMOS and Integrated Silicon

19   entered into written agreements to effectuate their allocation of the Market and to keep GSI Tech

20   from competing in it. GSI Tech alleges ███████████████████████████████████

21   ████████████████████████████████████████████████

22   ███████████████████████ *See Delta Dental*, 943 F. Supp. at 175 (express

23   agreements amply demonstrate the concerted action requirement).

24           **3.     GSI Tech Properly Alleges the Existence of a Conspiracy.**

25       A plaintiff must allege sufficient facts supporting the existence of a conspiracy beyond the

26   conclusory allegation that a conspiracy exists. *Twombly*, 550 U.S. at 557; *Kendall*, 518 F.3d at

27   1047. The SAC includes factual allegations that raise GSI Tech's right to relief above mere

28   speculation. United Memories does not address GSI Tech's allegations relating to the *per se*

-9-

unlawful conspiracy between UMI/ProMOS and Integrated Silicon. A Market-allocation agreement among competitors at the same market level is a *per se* antitrust violation. *Cal. ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1137 (9th Cir. 2011). Here, GSI Tech alleges that, with the agreement of ProMOS—a memory chip supplier/fabricator and a potential competitor of Integrated Silicon—Defendants agreed to allocate the Market to Integrated Silicon and to boycott GSI Tech and prevent it from entering the market. (SAC ¶¶ 68-88, 97-98.)

In addition to these non-conclusory allegations of a conspiracy, GSI Tech also alleges a combination of direct and circumstantial evidence of a conspiracy. (SAC ¶¶ 68-89.) For example, GSI Tech alleges: the conspiracy began in August 2012, during which time ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Shortly after the formation of the conspiracy, ProMOS entered into a market allocation agreement with Integrated Silicon for which it was paid a forbearance fee for refraining from entering the Market, even though it desired and was planning to do so before the conspiracy was formed. (SAC ¶¶ 96-98.) ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████ and after the conspiracy was formed, Integrated Silicon's sales people began disparaging GSI Tech's business. (SAC ¶¶ 77-82, 87.)

Collectively, these allegations are far from conclusory and answer the "basic questions" of "who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048. These allegations make it plausible that Defendants had a unity of purpose in an agreement to allocate the market and boycott GSI Tech.[7]

**C.    GSI Tech Sufficiently Alleges Intent To Harm Or Restrain Trade.**

In challenging the sufficiency of the intent to harm or restrain trade element, United Memories incorrectly assumes that the Court should apply a rule of reason analysis. Because GSI Tech alleges a conspiracy that is illegal *per se*, GSI Tech need not allege this element. *Nat'l Soc'y*

---

[7] Importantly, even if two plausible inferences may be drawn from particular factual allegations, the choice between the two cannot be made on a Rule 12(b)(6) motion. *Starr*, 652 F.3d at 1216; *Anderson News, LLC*, 680 F.3d at 185; *Evergreen*, 720 F.3d at 45.

1    *of Prof'l Eng'rs*, 435 U.S. at 692.

2         Notwithstanding, GSI Tech sufficiently alleges an intent to harm or restrain trade. (*See*

3    Section III.A, *supra*.) United Memories's arguments reflect a misunderstanding of the SAC and

4    the correct standard applicable to competing inferences. For example, United Memories asks the

5    Court to accept its inference that the intent of its collaboration with Integrated Silicon was limited

6    to winning the Cisco bid but did not include the intent to cause the resulting competitive injury as

7    alleged in the SAC. (Mot. at 8:6-15.) Of course, United Memories has it backwards—the Court

8    must accept the reasonable inferences supporting GSI Tech's allegations and reject the competing

9    inferences advanced by United Memories. *Starr*, 652 F.3d at 1216; *Anderson News, LLC*, 680

10   F.3d at 185.

11        Similarly unavailing is United Memories's argument that the SAC is incoherent because it

12   alleges, on the one hand, that Defendants conspired to prevent GSI Tech from entering the Market

13   while, on the other hand, alleging that GSI Tech is already a competitor in that market. (Mot. at

14   8:16-9:1.)  Again, United Memories misconstrues the allegations in the SAC, which expressly

15   asserts that the Cisco contract was GSI Tech's "primary opportunity to *enter* into the [Market] as

16   an effective competitor." (SAC ¶ 64 (emphasis added); *see also* footnote 3, *supra*.) As GSI Tech

17   did not obtain the bid, it has not entered the market.[8] (*See id.*)

18        Grasping at straws, United Memories claims that an "intent to win a competitive bid to be

19   a second supplier to a specific customer for a specific product, in a market that is inherently

20   difficult to enter (yet in which the plaintiff remains an active competitor) cannot support a claim."

21   (Mot. at 9:2-11.) This argument reflects a misunderstanding of the SAC and of antitrust law. First,

22   although the loss of the Cisco business was an important component of the conspiracy, it was

---

23   [8] Paragraph 17 alleges that GSI Tech was "engaged" in the market. (SAC ¶ 17.) By this

24   allegation, GSI Tech refers to its acts in developing the Atris specification, designing an Atris
     chip, and attempting to win the Atris bid. To suggest that GSI Tech is already a competitor in the

25   Market takes the allegation in Paragraph 17 out of context. (*See, e.g.*, SAC ¶ 64.) Further, United
     Memories's argument ignores the allegations of the SAC detailing the technical and structural

26   features of the Market and the competitive dynamics of that Market, including the number of
     competitors, the effect of patents and market entry timing, significant technical and structural

27   barriers to entry, the nature of the anticompetitive conduct, and the elasticity of demand. (SAC
     ¶¶ 16-24, 68-88.) Each of these factors support GSI Tech's allegations that Defendants intended

28   to injure and actually injured competition through, among other conduct, the exclusion or delayed
     entry of GSI Tech into the Market.

1    only one part of a larger plan for a "market-allocation agreement or understanding between

2    Integrated Silicon and UMI/ProMOS that UMI/ProMOS would not separately enter the [Market],

3    except as part of a venture with Integrated Silicon" and for "a boycott of GSI Tech from

4    competing in the [Market]." (SAC ¶¶ 63-83, 98.) Second, even if capturing the Cisco business

5    was the sole act in furtherance of the broader exclusionary goals of the conspiracy (which it is

6    not) and carried with it benefits that did not depend upon total elimination of GSI Tech from the

7    market, there is no categorical rule that an antitrust claim cannot be based on the loss of a single

8    contract for a single customer. An antitrust claim may be based on a single product for a single

9    purchaser where the customer, like Cisco, requires distinct features compared to the market as a

10   whole and suppliers concentrate their efforts on such customer. *See, e.g.*, *Heatransfer Corp. v.*

11   *Volkswagenwerk, A.G.*, 553 F.2d 964, 980 (5th Cir. 1977) (automobile air conditioners for

12   Volkswagen importers); *Lockheed Martin Corp. v. Boeing Co*., 314 F. Supp. 2d 1198, 1227

13   (M.D. Fla. 2004) (U.S. Government market for launch services might be a legally sufficient

14   proposed relevant market under certain conditions). Accordingly, none of these arguments take

15   away from the fact that GSI Tech, although not required to allege an intent to harm or restrain

16   trade, has sufficiently done so in the SAC.

17   **IV.    GSI TECH ADEQUATELY ALLEGES CLAIMS FOR VIOLATIONS OF CIVIL**
          **RICO UNDER 18 U.S.C. §1962(c).**
18

19          To establish a claim for a violation of RICO under 18 U.S.C. §1962(c), or for conspiracy

20   to violate RICO under 18 U.S.C. §1962(d), GSI Tech must allege: (1) conduct (2) of an enterprise

21   (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S.

22   479, 496 (1985). Under section 1962(c), GSI Tech must also allege standing by asserting a loss of

23   "business or property" caused by a RICO violation. *Id.* The RICO statute and all of its provisions

24   must be liberally construed. *Sedima*, 473 U.S. 479, at 497-98. Under this standard, GSI Tech's

25   SAC adequately alleges facts sufficient to establish civil RICO violations of §§1962(c) and (d).

26   /////

27   /////

28   /////

### A.    GSI Tech Has Standing to Assert RICO Claims.

To establish standing, GSI must and does allege an injury to business or property that was factually and proximately caused by RICO violations. *See Holmes v. Secs. Investor Prot. Corp.,* 503 U.S. 258, 266-68 (1992).

#### 1.    GSI Tech Suffered An Actual Loss.

GSI Tech suffered an actual loss of business or property as a direct result of the RICO violations. As alleged in the SAC, Integrated Silicon was GSI Tech's only competitor for the Atris bid, and Defendants used GSI Tech's confidential and proprietary information to win the Atris bid while disparaging GSI Tech. (SAC ¶¶ 67, 84-88, 148.)  By reason of the alleged RICO violations, GSI Tech lost (1) the Atris chip bid; (1) its confidential and proprietary information, which Defendants continue to use to develop the Atris chip; and (3) the opportunity to partner with Cisco resulting in reputational support and an ability to compete with Defendants in the DRAM marketplace. (SAC ¶¶ 28-29, 63-64, 67, 106-07, 138-149.) These are losses of both business and property interests suffered by GSI Tech by reason of the RICO violations. *See e.g. Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1286-87 (11th Cir. 2006) (allegations of hiring illegal workers to depress wages paid to legal workers sufficient); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 23 F. Supp. 2d 771, 785 (1998) (allegations that tobacco company shifted health costs of smoking to plaintiffs sufficient).

#### 2.    GSI Tech's Harm Was Proximately Caused By The RICO Enterprise.

Pleading proximate cause under RICO requires allegations establishing a direct relationship between the injury and the RICO conduct and consideration of three "functional factors:" (1) the less direct an injury, the greater difficulty determining the damages attributable to a RICO violation, (2) avoidance of complicated rules to apportion damages to indirectly injured plaintiffs at different levels of injury, and (3) deterrence of injurious conduct since direct victims vindicate their rights without the challenges experienced by the remotely injured. *Holmes*, 503 U.S. at 269-70. But, "[b]ecause of 'the infinite variety of claims that may arise' in which a court must analyze proximate causation, it is 'virtually impossible to announce a black-letter rule that will dictate the result in every case.'" *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21,

-13-

1    35 (1st Cir. 2013) (quoting *Holmes*, 502 U.S. at 272 n.20).

2        United Memories contends that GSI Tech's injuries are too attenuated to establish

3    proximate causation, arguing that (1) GSI Tech does not assert that it would have received the

4    Atris bid and (2) Cisco made an independent decision to award the Atris bid to Integrated Silicon.

5    (Mot. at 15:3-5.) Both contentions are false. GSI Tech specifically alleges that it *would have*

6    *received the Atris contract* absent the RICO violations. (SAC ¶¶ 103, 107, 111.) Further, GSI

7    Tech alleges that Integrated Silicon was GSI Tech's only competitor, that Integrated Silicon

8    engaged in unfair acts—such as stealing GSI Tech's bid information, intellectual property, and

9    trade secrets—to gain an advantage against GSI Tech, and that as a result, GSI Tech lost its

10   business opportunity with Cisco on the Atris project. (SAC ¶ 67, 84-88, 150.) The RICO

11   violations ensured that Cisco would choose Integrated Silicon over GSI Tech, but absent those

12   RICO violations GSI Tech would have won the bid. (SAC ¶¶ 103, 107, 111.) United Memories's

13   speculation that Cisco engaged in an independent decision to award the Atris bid to Integrated

14   Silicon ignores the allegations of the SAC, and in any event, must be disregarded. Once again, the

15   Court must accept reasonable inferences supporting GSI Tech's allegations and reject competing

16   inferences advanced by United Memories. *Starr*, 652 F.3d at 1216; *Anderson News, LLC*, 680

17   F.3d at 185.

18       The chain of causation between the RICO violations and GSI Tech's losses is direct and

19   supported by the specific allegations of the SAC. GSI Tech alleges that Defendants partnered to

20   deprive GSI Tech of the Atris bid and business relationship with Cisco and to suppress GSI Tech

21   as a competitor, directly harming GSI Tech. (SAC ¶ 29, 103-107, 149-150.) As alleged in the

22   SAC, in or before August 2012, █████████████████████

23   ████████████████████████████████████

24   ██████████████████████████ On September 21, 2012, Anand

25   Bagchi of Cisco required GSI Tech to divulge details of its bid. (SAC ¶¶ 69-70.) Two weeks later,

26   Mr. Bagchi began working at Integrated Silicon. (SAC ¶¶ 71-72, 102.) █████████

27   ████████████████████████████████████

28   ████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████

5 █████████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ██████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ████████████

11    These facts demonstrate a direct chain of events designed to cause GSI Tech to lose the

12 Atris bid to Integrated Silicon and to exclude GSI Tech from the Market. (SAC ¶¶ 117, 128, 149-

13 150); *see Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 383-85 (2d

14 Cir. 2001) (applying *Holmes* factors to bidding among direct competitors to find proximately

15 caused injury if plaintiff would have won the contract and earned a profit); *In re Neurontin*,

16 712 F.3d at 38-39 ("the causal chain in this case is anything but attenuated" where fraudulent

17 marketing plan to physicians resulted in payments from plaintiff health plans for additional

18 prescriptions generated under the plan); *Williams,* 465 F.3d at 1288-89 (finding sufficient causal

19 connection between scheme to hire illegal workers and depression of wages for legal workers).

20 No intervening or independent acts disturb causation.[9]

21         **3.      The Enterprise's Conduct Was The "But-For" Cause Of The Harm.**

22    Defendants' RICO violations directly caused GSI Tech to lose its confidential and

23 proprietary information, the second Atris bid, and its ability expand into the Market. "GSI Tech's

24 only competition for the bid was Integrated Silicon," and the market place is narrow and limited.

25 (SAC ¶¶ 17-22, 67.) To win the business and eliminate GSI Tech as a competitor, Integrated

26 Silicon needed only to eliminate GSI Tech from the Atris opportunity, thereby depriving GSI

27 _____

[9] Unlike *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008), the SAC reveals
28 no other parties with more direct injuries than GSI Tech and, according, there is no need for
complicated or intricate inquiries to apportion damages.

1   Tech of the ability to expand its business and compete in the Market. (SAC ¶¶ 67, 149-150.)

2   Defendants accomplished this by the RICO violations, including both mail and wire fraud,

3   predicate acts described in the SAC. (SAC ¶¶ 69-73, 77-80, 82, 85-89, 140-149.) ███████

4   ████████████████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████ But-for the repeated RICO

6   violations, GSI Tech would not have lost the Atris bid or its ability to expand its business

7   operations with the reputational support of Cisco. (SAC ¶¶ 64, 67, 102-107, 128.)

8          *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), cited by United Memories, is not a

9   comparable RICO claim. (Mot. at 15:15-18.) In *Anza*, claims by a business of lost sales because

10  its competitor unlawfully sold competing products without charging sales tax were too attenuated

11  because many reasons can explain a decrease in sales. *Anza*, 547 U.S. at 459. While general gains

12  and losses of business customers may preclude but-for causation, here the fact that there are only

13  two Market competitors, that the Market is highly technical with high entry barriers, and that

14  Integrated Silicon was GSI Tech's sole competitor for the Atris bid (SAC ¶¶ 17-22, 67) confirm

15  that but-for the RICO violations, GSI Tech would have been awarded the Atris bid and would not

16  have lost the associated opportunities for business expansion and Cisco's reputational support.

17         **B.      GSI Tech Pleads Wire And Mail Fraud With Particularity.**

18         The SAC clearly identifies the "time, place, and specific content of the false

19  representations" of each act of mail and wire fraud underlying the RICO claim, "as well as the

20  identities of the parties to the misrepresentation." (Mot. at 12:12-19.) For example, ██████

21  ████████████████████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████████████████

28  /////

1     United Memories complains that GSI Tech did not describe why the following statements

2  in the email were false: ███████████████████████████████████████████

3  ███████████████████████████████████ GSI Tech does not

4  contend that the first statement is false; with regard to the second, as described above, the

5  paragraph alleges that the statement is false because ██████████████████████

6  ████████████████████████████████ ██████████

7     GSI Tech alleges each subsequent act of wire or mail fraud with particularity. (SAC

8  ¶¶ 142-47.) United Memories suggests that none of these paragraphs explain "what information in

9  each communication was false or misleading." (Mot. at 13:6-9.) This argument is perplexing, as

10  the SAC specifically, and in painstaking detail describes, each falsity. (SAC ¶¶ 142-47.) United

11  Memories identifies only two specific examples of deficiencies in GSI Tech's mail and wire fraud

12  allegations. First, citing Paragraph 141, United Memories suggests that the SAC fails to identify

13  the information that United Memories and Integrated Silicon exchanged beginning on August 2,

14  2012. (Mot. at 13:10-12.) But Paragraph 141 was not intended to describe a predicate act of wire

15  or mail fraud. Paragraph 141 describes when the enterprise expanded to include Integrated

16  Silicon, and Paragraphs 142 through 147 describe the predicate acts of mail and wire fraud

17  perpetrated while Integrated Silicon was a member of the enterprise.

18     Second, United Memories complains that it is "unclear" how the information described in

19  paragraphs 145 and 146 were false or misleading. (Mot. at 13:12-14.) In these paragraphs, GSI

20  Tech alleges that, using interstate mail and wire transmittal, ███████████████

21  ███████████████████████████████████████████

22

23  [10] United Memories also complains that GSI Tech could not describe which portions of the Atris

24  design belonged to GSI Tech. (Mot. at 12:20-13:16.) GSI Tech is not required for the purpose of a wire fraud allegation to identify which portions of the database belonged to it. It is more than sufficient that GSI Tech alleges that portions of the database leveraged from GSI Tech's IP

25  belonged to it. Moreover, GSI Tech sufficiently alleges facts on which it can allege "on information and belief" that the Atris paper design was leveraged from GSI Tech's own design,

26  for example: █████████████████████████████████████████████

27  ████████████████████████████████████████████████

28  ████████████████████████████████████████████████

1  ███████████████████████████████████████████████████████████████

2  ███████████████████████████████████████████████████████████████

3  ████████████████████████  These acts were undertaken to deceive GSI Tech into believing that

4  United Memories was not competing against it in violation of its non-compete obligations and to

5  carry out the enterprise's fraudulent scheme of deceiving Cisco into believing that United

6  Memories's and Integrated Silicon's Atris design derived solely from their creative efforts and to

7  harm GSI Tech's business relationship with Cisco. (*Id.*) United Memories seemingly suggests

8  that GSI Tech must identify a specific falsity in each email. However, mail and wire fraud require

9  only a showing of: (1) formation of a scheme to defraud; (2) use of the mail or wire; and (3)

10 specific intent to deceive or defraud. *Jalali v. Far. E. Nat'l Bank*, No. C 12-5962 SBA, 2013 WL

11 5312716, at *4 (N.D. Cal. Sept. 23, 2013) (citing *Schreiber Distrib. Co. v. Serv-Well Furniture*

12 *Co.*, 806 F.2d 1393, 1399-1400 (9th Cir. 1986)).

13     Here, GSI Tech alleges each act was in furtherance of the scheme to defraud Cisco and

14 GSI Tech and made with specific intent to deceive. ██████████████████████████████

15 ███████████████████████████████████████████████████████████████

16 ███████████████████████████████████████████████████████████████

17 ██████████████████████████████████████████████████

18 █████████████████████████████████████████████████  Accordingly,

19 United Memories does not identify a single act of wire or mail fraud for which GSI Tech has not

20 pleaded with specificity.

21     **C.     GSI Adequately Alleges A RICO Enterprise.**

22          **1.     The Enterprise Is An "Association-In-Fact."**

23     Under RICO, an enterprise "includes any individual, partnership, corporation, association,

24 or other legal entity, and any union or group of individuals associated in fact although not a legal

25 entity." 18 U.S.C. §1961(4). "As is evident from the text, this definition is not very demanding."

26 *Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007) (*en banc*). GSI Tech alleges an

27 "associated in fact" enterprise, which does not require any particular organizational structure, and

28 /////

is merely "a group of persons associated together for a common purpose of engaging in a course of conduct."[11] *Id.* at 551-52 (quoting *U.S. v. Turkette,* 452 U.S. 576, 583 (1981)).

Although United Memories's questions when the RICO enterprise began and the roles of its alleged members at various times, for the purposes of this Motion, the SAC demonstrates the formation of a RICO enterprise by no later than August or September 2012 ██████████

████████████████████████████████████████████████████████████████

████████████████████████[12] By that time, the enterprise included United Memories, ProMOS, Integrated Silicon, and Mr. Bagchi (acting for Integrated Silicon but employed by Cisco). (SAC ¶¶ 68-73, 77-80, 82, 85-89, 107-108, 136, 140-149.) The members of the enterprise associated for the common purpose of suppressing GSI Tech as a competitor in the Market, by, among other things, taking GSI Tech's confidential and proprietary information and using it to win the Atris bid, thereby preventing GSI Tech from expanding into the Market or enjoying the reputational support of Cisco. (SAC ¶¶ 64, 67, 69-73, 77-80, 82, 85-89, 103-104, 117, 128, 136, 140-149, 150.) ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ These facts show not an "arms-length and commercially standard contractual relationship between two companies," (Mot. at 19:2-4) but an association-in-fact operating for the common purpose of suppressing GSI Tech as a competitor in the narrow Market.[13] (SAC ¶¶ 64-67, 102-103, 106-107, 136, 149-150.)

---

[11] United Memories asserts that ProMOS and United Memories "function as the same entity" because the Complaint alleges that they "act in tandem and their business and relations are coordinated." (Mot. at 17:23-28.) However, the mere fact that United Memories and ProMOS operate as a single "economic entity" for the purpose of antitrust law (which requires only a showing of unity of interest and that they do not compete against each other, *see* Section III.B.1, *supra*) does not mean that United Memories and ProMOS are incapable of forming an "enterprise" for the purposes of RICO. *Haroco v. Am. Nat'l Bank & Trust Co.*, 747 F.2d 384, 402 & 403 n.22 (7th Cir.1984), *aff'd on other grounds*, 473 U.S. 606 (1985) (holding that "subsection [1962(c)] requires only some separate and distinct existence for the person and the enterprise, and a subsidiary corporation is certainly a legal entity distinct from its parent" and distinguishing RICO from the Sherman Act on the grounds that RICO is not premised on the distinction between concerted and independent action).

[12] GSI Tech alleges that the RICO enterprise and predicate acts began as early as 2009, however for purposes of this Motion to Dismiss, the Complaint certainly alleges an enterprise by no later than August or September 2012 followed by multiple predicate acts of wire fraud.

[13] *River City Markets, Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458 (9th Cir. 1992), cited by United Memories for the proposition that "[v]irtually every business contact can be called an

D.     **GSI Adequately Alleges A Pattern Of Racketeering.**

United Memories also claims GSI Tech fails to allege a pattern of racketeering activity. (Mot, at 19:12-20:20.) To establish a pattern, GSI Tech must plead "at least two acts of racketeering activity" within ten years of each other and a showing of a relationship between those predicate acts and the threat of continuing activity. 18 U.S.C. §1961(5). Among the predicate acts GSI Tech alleges are: ███████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████ These predicate acts form a distinct and on-going pattern of racketeering activity within a ten-year period. (*Id.*)

United Memories also complains that GSI Tech does not allege an "open-ended" or "closed-ended" continuity. (Mot. at 19:12-20:20.) Here, GSI Tech pleads facts showing a closed-ended continuity with a threat of continued criminal acts into the future. *See Turner v. Cook,* 362 F.3d 1219, 1229 (9th Cir. 2004) (defining closed-ended continuity). The SAC alleges that, at a minimum, the enterprise was continuous and on-going from August/September 2012 to present. (SAC ¶¶ 69-73, 77-80, 82, 85-89, 140-149, 187.) This time period is sufficient to establish that the various acts continued over time, were not isolated events, and were part of a pattern of racketeering behavior. *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.,* 871 F. Supp. 2d 933, 943 (N.D. Cal. 2012) (scheme to charge wrongful shipping charges from 2007-2011 was on-going activity satisfying continuity requirement); *Cal. Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir. 1987) (continuity requirement satisfied by conduct that lasted five months).

'association in fact,' disregards the allegations of the Complaint detailing the formation and operation of a RICO enterprise that far exceeds any contractual relationship. (SAC ¶¶ 136-149.)

1    United Memories improperly asserts that no threat of continuing activity exists because

2  Defendants have already exchanged the Atris chip information. (Mot. at 19:25-20:3.) This

3  argument ignores GSI Tech's allegations that: (1) Defendants continue to use GSI Tech's

4  confidential and proprietary information to develop the Atris chip while keeping GSI Tech out of

5  the Market; ███████████████████████████████████████████████

6  ████████ and (3) Defendants continue to represent to Cisco that their product is based solely on

7  their own designs and work product. (SAC ¶¶ 67, 80, 102-103, 187.) Thus, the pattern of

8  racketeering activity continues, imposing a distinct threat of future activity.

9    This pattern of racketeering activity is analogous to the threat of future criminal activity

10  found in *Sun Sav. & Loan Assn. v. Dierdorff,* 825 F.2d 187, 193 (9th Cir. 1987), where the pattern

11  of racketeering activity included several acts of mail fraud by a bank executive to cover up a

12  scheme of kickbacks for loans. A threat of continuing activity existed because the activity masked

13  the kickbacks and favors and did not complete the criminal scheme. *Id.* Here, Defendants also

14  continue to cover up their misappropriation of GSI Tech's confidential information by continuing

15  to represent that GSI Tech's confidential and proprietary information is their work product. (SAC

16  ¶¶ 67, 102-103, 187.)

17  **V.      GSI TECH ADEQUATELY ALLEGES A RICO CONSPIRACY CLAIM.**

18    Section 1962(d) makes it "unlawful for any person to conspire to violate any of the

19  provisions of subsection (a), (b), or (c)" of 18 U.S.C. §1962. To establish a RICO conspiracy

20  under §1962(d), GSI Tech must show: (1) the existence of an enterprise affecting interstate

21  commerce; (2) that United Memories knowingly joined a conspiracy to participate in the conduct

22  of the affairs of the enterprise; (3) that United Memories participated in the conduct of the affairs

23  of the enterprise; and (4) that United Memories did so through a pattern of RICO activity by

24  agreeing to commit or committing two or more predicate offenses. *In re Lupron Mktg. & Sales*

25  *Practices Litig.*, 295 F. Supp. 2d 148, 176 (D. Mass. 2003).

26    United Memories contends that GSI Tech's claim for violation of section 1962(d) fails for

27  two reasons: (1) GSI Tech fails to allege a claim for civil RICO under §1962(c), and therefore

28  cannot allege a claim for conspiracy to violate RICO, and (2) GSI fails to allege facts showing an

-21-

1  agreement between Defendants to commit at least two predicate acts of racketeering (i.e., the

2  conspiracy). (Mot. at 20:23-21:7.) In fact, the SAC identifies multiple instances of agreement

3  between Defendants, including but not limited to agreements to partner for the Atris bid, to use

4  GSI Tech's confidential and proprietary information, and to misrepresent to Cisco that

5  Defendants' Atris chip product is based solely on their own innovation and work product. (SAC

6  ¶¶ 69-73, 77-80, 82, 85-89, 140-149, 187.) These factual allegations are more than adequate to

7  establish both agreement and the commission of numerous predicate acts.[14] Further, for all the

8  reasons set forth in Section IV.A-C, GSI Tech adequately alleges a RICO claim under section

9  1962(c), and therefore conspiracy claim is not susceptible to dismissal for failure to plead a

10 violation of §1962(c). *See e.g.*, *Lee v. Gen. Nutrition Cos., Inc.*, No. CV 00-13550LGB,  2001

11 WL 34032651, at *14 (C.D. Cal. Nov. 26, 2001).

12 **VI.   THE SAC ADEQUATELY DEFINES THE SCOPE OF THE TRADE SECRETS**
13 **AT ISSUE.**

14        United Memories claims that GSI Tech's misappropriation of trade secrets claim cannot

15 stand because the SAC does not define the trade secrets at issue or resolve factual issues such as

16 whether the alleged trade secrets contain public information and whether the Atris database

17 includes the trade secrets. (Mot. at 21-22.) All of these arguments fail.

18        **A.    The Trade Secrets Are Defined With Sufficient Particularity.**

19        The CUTSA does not require a plaintiff to "spell out" the specific details of its trade

20 secrets. *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252 (1968). It requires only that the

21 complaint give the defendant "reasonable notice of the issues which must be met at the time of

22 trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." *Id.* at

23 253; *see also Burroughs Payment Sys., Inc. v. Symco Grp., Inc.*, No. C–11–06268 JCS, 2012 WL

24 1670163, at *14 n.7 (N.D. Cal. 2012) (noting that the Ninth Circuit adopted *Diodes*).

25 /////

---

26 [14] Conspiracies are, by their nature, secretive and must often be proved by circumstantial
    evidence. *See River City Markets*, 960 F.2d at 1463; *Lupron*, 295 F.Supp.2d at 176 (finding RICO
27 conspiracy claim adequately pleaded even though "plaintiffs provide no intimate details on how
    or when the conspiratorial agreement was formed, but it would be the exceptional case in which
28 such details were known to a stranger to the illicit pact.")

These requirements are met here. The SAC defines the trade secrets as the schematic database and layout for the 576Mb chip. (SAC ¶ 216.) This database and schematic are identified in the Agreement between United Memories and GSI Tech as information owned by GSI Tech. (SAC ¶ 42.) The SAC also specifically alleges that the 576Mb schematic and database were maintained on a restricted part of GSI Tech's server, to which only those working on the 576Mb chip had access. (SAC ¶ 220.) Moreover, the SAC states that the design for the 576Mb chip contained within the schematic and database is "unique and not like any other chip." (SAC ¶ 217.)

Facts such as these, which specifically identify the trade secrets, and allege that they are unique and confidential product designs, provide United Memories with more than "reasonable notice" of the claims. *See Occulus Innovative Sciences, Inc. v. Nofil Corp.*, No. C 06-1686-SI, 2007 WL 4044867, *7 (N.D. Cal. Nov. 15, 2007) (at the pleading stage, it was sufficient to identify trade secrets as the products covered by an NDA); *see also Premier Innovations, Inc. v. IWAS Indus., LLC*, No. 07cv1083 BTM(BLM), 2007 WL 2873442, at *4 (S.D. Cal. 2007) (trade secret sufficiently identified in pleading as "the Products' design, manufacture, pricing, and market opportunity").

**B.     The SAC Makes Clear The 576Mb Schematic And Layout Are Not In The Public Domain.**

United Memories isolates one clause from the SAC—language stating that the 576Mb chip was designed to the Micron specification—to contend that the trade secret definition does not distinguish the trade secrets from publicly available information. (Mot. at 21:27-23:6.) However, United Memories ignores the rest of that sentence, that "although" the 576Mb chip was designed to the Micron Spec, the design for the 576Mb chip was "unique and not like any other chip." (SAC ¶ 217.) It also ignores the allegation that the design for the 576Mb chip, embodied in the schematic and layout, derived value from being kept secret. (*Id.* ¶¶ 216-220.) Accepting these allegations as true—as the Court must—there is no basis from which to infer any portion of the schematic or database contains public information that would make it not a trade secret.

/////

1    Whether United Memories may, after discovery, show that portions of GSI Tech's

2   asserted trade secrets are publicly available is an issue for another day. *Burroughs*, 2012 WL

3   1670163, at *6, 15 (it is inappropriate, at the pleading stage, for courts to adjudicate factual

4   issues). Indeed, in *Burroughs*, the defendant made similar arguments, contending that the

5   complaint failed to distinguish what parts of the diagnostic software at issue constituted trade

6   secrets and what parts were publicly available. *Id.* at *15. The court disagreed, finding it

7   sufficient that the plaintiff alleged that its "computer programs and accompanying materials,"

8   contained trade secrets that were "password protected." *Id.* at *2, 15. Here, GSI Tech alleges the

9   information is secret and not part of the public record. (SAC ¶¶ 216-220.) As in *Burroughs*,

10  United Memories's unsupported arguments to the contrary should be rejected.

11   United Memories also tries to contend it had no notice the Atris database contained GSI

12  Tech's trade secrets, because the Atris chip was designed to the Cisco specification. (Mot. at

13  23:7-9.) This is a *non sequitur*. ███████████████████████████████████████████

14  ████████████████████████████████████████████████████████ Whether

15  United Memories designed that Atris database to Cisco's specification or not, does not change the

16  fact that United Memories knew or should have known it was using GSI Tech's trade secrets to

17  do so. Moreover, as with the 576Mb chip, just because a chip is designed to a public specification

18  does not mean that the specific design to meet that specification is not a trade secret. United

19  Memories's argument, at best, highlights an issue for discovery.

20       **C.    The Atris Database Contains GSI Tech's Trade Secrets.**

21   United Memories also asks this Court to dismiss the trade secret claims based on United

22  Memories's speculation that it may have leveraged its own IP and not GSI Tech's trade secrets to

23  design the Atris database. (Mot. at 22:12-23:5.) This argument is not supported by the factual

24  allegations of the SAC, which set forth the contract language giving GSI Tech "sole ownership"

25  of the 576Mb specification and layout. (SAC ¶ 42.) It further ignores the allegation that ██████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ████████████████████████████████ These allegations, which United Memories overlooks,

DLA Piper LLP (US)
East Palo Alto

WEST\245603746.7          GSI'S OPPOSITION TO UMI'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-1081-PSG

1   are sufficient to give rise to an inference that the 576Mb schematic and layout are owned by GSI

2   Tech and contained within the Atris database.

3          Notably, there is no allegation supporting UMI's contention that it owned the schematic

4   and database. At best, United Memories has identified potential factual issues which can only be

5   resolved through discovery, not at the pleading stage. *Burroughs*, 2012 WL 1670163, at *6, 15.

6   Accordingly, United Memories's motion to dismiss Count Eleven should be denied.

7   **VII.    CONCLUSION**

8          For the foregoing reasons, GSI Tech respectfully requests that the Court deny United

9   Memories's motion to dismiss in its entirety. In the alternative, GSI Tech seeks leave to amend its

10  Second Amended Complaint.

11  Dated:  January 3, 2013                    DLA PIPER LLP (US)

12

13                                             By  /s/ Brooke Killian Kim
                                                  JEFFREY M. SHOHET
14                                                BROOKE KILLIAN KIM
                                                  KELLIN CHATFIELD
15                                                Attorneys for Plaintiff GSI Technology, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28