1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                               SAN JOSE DIVISION

11  GSI TECHNOLOGY, a Delaware corporation,  )   Case No. 5:13-cv-01081-PSG
                                             )
12                        Plaintiff,         )   **ORDER GRANTING-IN-PART**
                                             )   **DEFENDANTS' MOTIONS TO**
13            v.                             )   **DISMISS**
                                             )
14  UNITED MEMORIES, INC., a Colorado        )   **(Re: Docket Nos. 206, 207)**
    corporation, and INTEGRATED SILICON      )
15  SOLUTION, INC., a Delaware corporation,  )
                                             )
16                        Defendants.        )
                                             )
17  _____)

18        What began as a dispute under state law between two parties has grown to something much

19  more.  A third party has been brought into the fray, and that fray has expanded to include not only

20  state law contract and trade secret claims but also allegations of violations of federal antitrust and

21  anti-racketeering laws. Whatever the ultimate merits of at least certain of the state law claims, this

22  dispute as alleged cannot give rise to either federal racketeering or antitrust liability.  Having

23  considered the papers and the arguments of counsel, the court GRANTS Defendants' motions to

24  dismiss, but only IN-PART.

25

26

27

28

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

*United States District Court*
*For the Northern District of California*

# I. BACKGROUND

The court has previously set out the full history of this dispute.[1]  Here, the court will provide only the necessary highlights.

In January 2007, Plaintiff GSI Technology contacted Defendant United Memories, Inc. about designing a 576 Mb Low-Latency Dynamic Random Access Memory chip ("LLDRAM").[2] These negotiations continued for over a year, and eventually, the parties entered into an agreement to design and develop the chip.[3]  The agreement established six Project Milestones.[4]

As GSI and UMI were negotiating their agreement, Cisco independently issued a "Request For Information" for another, more advanced LLDRAM chip, later named "Atris."[5]  Because GSI was interested in submitting a bid to Cisco for the development of this second chip, it again reached out to UMI again to see if UMI would be interested in acting as a contract designer.[6]  The parties agreed that UMI would first design the 576Mb chip, then leverage the work product into developing the Atris chip for GSI after the original project was completed.[7]  While the specification for the Atris was still in development, Cisco selected GSI, along with NEC (later renamed Renesas), as one of its two Atris chip suppliers.[8]

Meanwhile, UMI was still actively working on designing and developing the 576Mb chip. It successfully met the first four milestones set out in its agreement with GSI, but problems arose at

---

[1] *See* Docket No. 203.

[2] *See* Docket No. 187-4 at ¶ 25.

[3] *See id.* at ¶ 37.

[4] *See id.* at ¶ 38; *see also* Ex. 1 to 187-4.

[5] *See id.* at ¶ 28.

[6] *See id.* at ¶ 29-30.

[7] *See id.*

[8] *See id.* at ¶ 32.

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

the fifth milestone, which required actual tests of the design specifications.[9]  GSI was supposed to provide raw materials for UMI to conduct the chip testing before the testing commenced.[10]  Unfortunately, the materials were never produced.[11]  GSI had been negotiating with ProMOS, UMI's parent company, and received information that ProMOS was insolvent and seeking bailouts. These reports caused GSI to worry that UMI would not be able to complete the contract.[12]  Eventually, the parties concluded that UMI could not proceed with the agreement.[13]  After UMI delivered a final layout and schematic database for the 576Mb chip to GSI, the contract between UMI and GSI was terminated.[14]  Because GSI had failed to deliver on its agreement with Cisco (after the underlying work with UMI fell through), Cisco terminated GSI as a supplier for the Atris chip.[15]

In late 2012, Cisco again solicited bids to find a second supply of Atris chips.[16]  Only two companies submitted bids in this process: GSI and ISSI.[17]  ISSI was an established player in the DRAM market, but GSI was hoping to get back into Cisco's good graces to enter the market and finally establish itself.  Unbeknownst to GSI, in pursuit of the deal, ISSI had partnered with UMI.[18]

---

[9] *See id.* at ¶¶ 52-56.

[10] *See id.* at ¶ 56.

[11] *See id.*

[12] *See id.* at ¶¶ 53-55.

[13] *See id.* at ¶ 55.

[14] *See id.* at ¶¶ 57-59.

[15] *See id.* at ¶ 62.

[16] *See id.* at ¶ 63.

[17] *See id.* at ¶ 67.

[18] *See id.* at ¶ 68.

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

While negotiations between Cisco and both GSI and ISSI were ongoing, Anand Bagchi, a Cisco employee, called a meeting with representatives of GSI and sought a variety of details about GSI's Atris bid.[19]  GSI provided all the information requested, so that Cisco could make its decision about which vendor to choose.[20]  Two weeks later, Bagchi left Cisco's employment to work for ISSI.[21]  He then became ISSI's point person on the Atris bid negotiations.[22]

ISSI sent a letter to GSI expressing interest in acquiring the company.[23]  Shortly thereafter, Cisco awarded the contract for the Atris chip to ISSI, rejecting GSI's bid.  GSI then rejected ISSI's initial attempt to purchase GSI, as well as a follow up offer.[24]  Some time after that, ISSI informed UMI that it was going to need to take UMI's design team "temporarily" in house to work on the Atris matter.[25]  At present, six UMI employees are currently working at UMI's offices and using UMI's resources, but being paid and technically employed by ISSI.[26]  Other UMI employees continue to work with both ISSI and Cisco to develop, refine, and produce the Atris chip.[27]

On March 8, 2013, GSI filed this lawsuit against UMI, asserting causes of action for breach of contract, a declaratory judgment as to the rights conferred by the 576Mb Agreement and damages under California's Unfair Competition Law.[28]  GSI later amended this complaint to

---

[19] *See id.* at ¶ 69.

[20] *See id.* at ¶ 70.

[21] *See id.* at ¶ 71.

[22] *See id.*

[23] *See id.* at ¶ 74.

[24] *See id.* at ¶ 76.

[25] *See id.* at ¶ 77.

[26] *See id.* at ¶ 80.

[27] *See id.* at ¶ 83.

[28] Cal. Bus. & Prof. Code § 17200.

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

include four additional state law causes of action: fraud, false promise, misappropriation of trade secrets, and intentional interference with prospective economic advantage.[29]  After permitting significant discovery, the court denied GSI's motion for a preliminary injunction,[30] but later the court granted GSI leave to file still another amended complaint.[31]  GSI filed its new complaint that same day, adding ISSI as a defendant, a new state law claims for intentional interference with a contract and new federal claims for violations of the Sherman and RICO Acts[32]  UMI and ISSI now move to dismiss this second amended complaint in its entirety.[33]

## II. LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[34]  When a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[35]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36]  Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[37]  Dismissal with prejudice and

---

[29] *See* Docket No. 159.

[30] *See* Docket No. 176.

[31] *See* Docket No. 191.

[32] *See* Docket No. 196.

[33] *See* Docket Nos. 206-07.

[34] Fed. R. Civ. P. 8(a)(2).

[35] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[37] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment.[38]

## III. DISCUSSION

### A. GSI's Antitrust Claims Must Be Dismissed Because There Is No Antitrust Injury, and Therefore No Antitrust Standing.

In order to assert a claim under Section 1 or Section 2 of the Sherman Act, a plaintiff must first demonstrate that it has suffered an "antitrust injury" sufficient to provide standing.  This injury must consist of "(1) unlawful conduct, (2) causing injury to plaintiff (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent."[39]  In applying these provisions, courts are mindful that the law was designed for "the protection of competition not competitors."[40]

Here, GSI's asserted "antitrust injury" is that "Defendants' conduct substantially imped[ed] the entry of a crucial potential competitor, GSI Tech, into a highly concentrated market with high-entry barriers."[41]   But even if the loss of a single bid for a single contract for a single customer could establish antitrust injury,[42] GSI's allegations fail to establish standing for antitrust purposes for four reasons.  First, GSI's claimed injury is undermined by its own complaint, which alleges that GSI had already entered the market as one of four primary players in the high performance DRAM market.[43]  In particular, the complaint alleges that as far back as 2008 and 2009, GSI was

---

[38] *See Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment.") (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)).

[39] *Somers v. Apple, Inc.,* 729 F.3d 953, 963 (9th Cir. 2013).

[40] *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977)

[41] *See* Docket No. 212 at 3.

[42] *See, e.g., Heatransfer Corp. v. Volkswagenwerk, A. G.*, 553 F.2d 964 (5th Cir. 1977); *Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198 (M.D. Fla. 2004).

[43] *See* Docket No. 187-4 at ¶ 17.

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

being considered for and, in fact, awarded contracts to design and supply high performance DRAM chips.[44]   Although GSI claims that the missed opportunity to contract with Cisco was its "primary opportunity to enter into the Market as an effective competitor,"[45] that conclusory claim does not square with these other allegations, which establish that GSI had been operating in the high-performance DRAM market for years by the time it lost the second-round Cisco bid.  Thus, even taking the facts alleged in the complaint as true, the claim is not plausible.

Second, even if GSI were completely shut out of the high-performance DRAM market, it still lacks antitrust standing because "the elimination of a single competitor, standing alone, does not prove anticompetitive effect.  Impact upon the market must be proven." [46]   While eliminating one player from a market will certainly cause injury to the eliminated party, that injury is not "of the type the antitrust laws were intended to prevent," so long as other participants are not harmed and competition remains in the market.[47]   Here, there is no allegation that Renesas or any other competitor was impacted in any way by Defendants' conduct, and while GSI alleges that Micron, yet another competitor, has worked with ISSI on other projects,[48] there is no allegation that the companies are cooperating on all products in the high-performance DRAM market.  Substantial competition thus remains in the marketplace, such that no matter who won the 2012 Atris bid, the

---

[44] *See id.* at ¶¶ 25-32.

[45] *See* Docket No. 212 at 3 n. 5; Docket No. 187-4 at ¶ 64.

[46] *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 291 (9th Cir. 1979); *see also* Docket No. 206 at 4-5 (*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010) (no antitrust injury if plaintiff had "the clear opportunity to compete and did compete"); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 456 (6th Cir. 2007) (en banc) ("When one exclusive dealer is replaced by another exclusive dealer, the victim of the competition does not state an antitrust injury."); *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 430 (2d Cir. 1945) (Hand, J.) ("The successful competitor, having been urged to compete, must not be turned upon when he wins.").

[47] *See Gorlick Distribution Centers, LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1025 (9th Cir. 2013); *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 75-76 (3rd Cir. 2010).

[48] *See* Docket No. 187-4 at ¶ 18.

7

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

1   total number of supplier of Atris chips would remain stable.  This more than suggests that the
2   market power also would remain the same.  GSI also has not plead any facts, such as reduced
3   output, rising prices or deteriorating quality, to demonstrate any other detrimental impact on the
4   market because it lost the contract with Cisco.[49]

5       Third, to the extent that GSI claims an antitrust injury from an alleged market allocation
6   agreement between ISSI and UMI, GSI does not have standing because it is a competitor in the
7   marketplace, rather than a consumer.[50]  Even if it were permitted to bring such a claim, then claim
8   here has been plead in a conclusory fashion, lacking any specific factual allegations to substantiate
9   the conclusion that such an agreement existed.

10      Finally, even if Defendants' conduct completely shut GSI out of the market and GSI could
11  plead facts demonstrating harm to competition, GSI's alleged injury would still not convey
12  antitrust standing because Cisco's intervening, independent decision to award the contract to ISSI
13  precludes a finding that GSI's injury "flows from" Defendants' conduct.   Basic tort law principles
14  teach that the independent act of a third party that is also a factual cause of a plaintiff's harm
15  breaks the chain of causation and relieves the original tortfeasor of liability.[51]  Cisco made the
16  independent business decision to award ISSI the contract; although GSI alleges that this decision
17  was a direct result of Defendants' anticompetitive conduct, it does not allege any facts to
18  substantiate that claim.  Because GSI's alleged injury could have occurred even absent the alleged

---

[49] *See Pool Water Products v. Olin Corp.*, 258 F.3d 1024, 1034-35 (9th Cir. 2001) (affirming grant of motion to dismiss where plaintiff failed to plead facts demonstrating impact of anti-competitive behavior on the market); *see also Image Tech Servs, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997) ("Courts generally require a 65% market share to establish a prima facie case of market power to restrict output and raise prices.").

[50] *See Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 583 (holding that competitors in a market "cannot recover for a conspiracy to impose nonprice restraints that have the effect of either raising market price or limiting output.").

[51] Restatement (Third) of Torts: Phys. & Emot. Harm § 34 (2010).

8

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

anti-competitive conduct, GSI does not have the standing required to assert an antitrust claim.[52]

Those claims are therefore dismissed.

### B.  GSI's RICO Claims Must Also Be Dismissed

To maintain a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege (1) conduct

(2) of an enterprise (3) through a pattern (4) of racketeering activity.[53]  Under 18 U.S.C. § 1962(d),

a plaintiff also must allege that Defendants "conspired to violate" Section 1962(c).  If the Section

1962(c) claim fails, there can be no Section 1962(d) claim.[54]

Defendants offer a plethora of arguments that GSI's RICO claim should fail, some of which

are rather muddled,[55] and others of which are plainly erroneous.[56]  However, their argument that

GSI has failed to plead a "pattern" within the meaning of RICO is persuasive.  The Ninth Circuit

addressed the RICO pattern requirement in detail in *Sever v. Alaska Pulp Corporation*, noting that

identifying such a pattern has "proven a challenging task for courts."[57]   In that case, the Circuit

identified two factors that led it to conclude that no "pattern" existed in the case before it.  First,

"although [Plaintiff] alleges a number of 'acts,' [Defendants'] collective conduct is in a sense a

single episode having the singular purpose of impoverishing [Plaintiff], rather than a series of

---

[52] *Cf.  Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977); *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1111-12 (6th Cir. 1989).

[53] *See Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (discussing the essential elements of a claim under 18 U.S.C. 1962(c)).

[54] *See Neibel v. Trans World Assurance Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997).

[55] *See, e.g.,* Docket No. 217 at 10 (addressing the continuity requirement for a pattern of racketeering activities as a requirement to find an "enterprise.").

[56] *See id.*  (arguing that GSI failed to allege that ISSI had reason to believe that the material it acquired from UMI and that ISSI used that information in designing the Atris chip).  The complaint clearly alleges that "Integrated Silicon knew or had reason to do that [the Atris layout and schematic] was obtained by United Memories under circumstances giving rise to a duty to maintain its secrecy." Docket No. 187-4 at ¶ 225.  It sets forth several factual allegations as to why and how ISSI "knew or should have known" this information, *see id.* at ¶¶ 225-27, and it alleges that "Integrated Silicon continues to use GSI Tech's trade secrets,"  *id.* at ¶ 228.

[57] 978 F.2d 1529, 1535 (9th Cir. 1992).

9

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

separate, related acts," and second "there is no suggestion that these defendants would have continued [their criminal acts], or that they ever intended anyone but [Plaintiff] any harm."[58]

        The same two factors are present in this case.  GSI's complaint makes it clear that any fraudulent acts perpetuated by Defendants were in service of a single goal—the acquisition of the Cisco contract—rather than a series of separate but related criminal aims.  As in *Server*, this conclusion is reinforced by the fact that there is but a single victim of the alleged "pattern." Although there may have been numerous instances of mail and wire fraud, each of these instances was part of "a single episode with a single purpose which happened to involve more than one act taken to achieve that purpose."[59]  GSI also fails to satisfy the "continuity" requirement for a RICO pattern.  To satisfy this requirement, GSI would need to demonstrate "that the predicate [acts] pose a threat of continued criminal activity, such as when the illegal conduct is 'a regular way of conducting [a] defendant's ongoing legitimate business.'"[60]  Although its opposition briefs cite to six paragraphs in the complaint to show that there is a "distinct threat of future activity,"[61] four of those six paragraphs describe past events, and the two that do address future conduct do not describe criminal activity.[62]  The continued effects of past acts do not constitute "ongoing criminal activity," nor do perfectly legal activities which may have in the past been to the detriment of the

---

[58] *Id.*

[59] *Id.* GSI cites *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004), in support of its argument that a single scheme is sufficient to constitute a pattern under RICO.  In that case, however, the Circuit found that the district court had appropriately dismissed the appellant's RICO claims for lack of a pattern, despite the perpetuation of a fraud against multiple victims, and in doing so, it cited *Server* with approval.  *Turner* is thus in line with this court's reasoning.

[60] *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450 (9th Cir. 1991).

[61] Docket No. 212 at 17.

[62] *See* Docket No. 187-4 at ¶¶ 67, 80, 102-03, 187.

10

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

plaintiff.[63]  In sum, for the same reasons that the Ninth Circuit found that there was no pattern in *Server*, this court finds that for RICO purposes, there is no pattern here.

Because a pattern is a required element of a RICO claim under Section 1962(c), the 1962(c) claim must be dismissed, and without an underlying 1962(c) claim, the Section 1962 (d) claim must be dismissed as well.

**C.   Despite The Absence Of A Federal Cause Of Action, This Court Will Exercise Its Jurisdiction To Retain Subject Matter Jurisdiction Over The Remaining Claims In The Present Action**

Stripped of the federal causes of action, GSI's second amended complaint presents a series of state law claims against multiple defendants, one of whom is a citizen of the same state as GSI. Because there is neither a federal question presented,[64] nor complete diversity among the parties,[65] the court may retain jurisdiction over the pendant state law claims only if it will serve the objectives of economy, fairness, convenience, and comity.[66]  In this case, the court finds that those objectives would be served by maintaining this action in federal court.   The parties have already invested time and energy in early discovery, and after issuing an order denying a preliminary injunction, this court is now intimately familiar with the facts and circumstances of the matter; substantial energy and resources will have been wasted if the case is now dismissed.  In addition, there remains the possibility that GSI cures the deficiencies of its federal claims by further amendment.   Therefore, the court will exercise its discretion to retain jurisdiction over the remaining state law claims.

---

[63] *Cf. Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000);

[64] *Cf.* 28 U.S.C. § 1331.

[65] *Cf.* 28 U.S.C. § 1332.

[66] *See Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003).

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

### D.  GSI Pleads A Sufficient Claim For Misappropriation of Trade Secrets

In order to bring a claim for misappropriation of trade secrets, GSI must allege two primary elements: (1) the existence of a trade secret, and (2) misappropriation of the trade secret.[67]   A "trade secret" is "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[68]  Misappropriation is defined as:

(1)  acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2)  disclosure or use of a trade secret of another without express or implied consent by a person who:
    (A)  used improper means to acquire knowledge of the trade secret; or
    (B)  at the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
        (i)  derived from or through a person who had utilized improper means to acquire it;
        (ii)  acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
        (iii)  derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
    (C)  before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.[69]

Here, GSI alleges, multiple times, that "the 576 Mb layout [and chip schematic database have] independent economic value because [they were] a secret"[70] and that "GSI maintained as a secret the 576 Mb chip layout and schematic database."[71]  Whatever the merits of these broad

---

[67] *See* Cal. Civ.Code § 3426.1(b); *see also AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003).

[68] Cal. Civ. Code § 3426.1(d).

[69] *Id.*

[70] *See, e.g.,* Docket No. 187-4 at ¶¶ 218-19.

[71] *See id.* at ¶ 220.

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1  allegations, this is sufficient to establish a trade secret for purposes of overcoming a motion to

2  dismiss.[72]

3      GSI further alleges that ISSI acquired its trade secrets from UMI and knew at the time that

4  it did so that UMI had acquired the trade secrets by improper means. [73]  The complaint goes on to

5  explain exactly how ISSI knew or should have known that the information was obtained was a

6  trade secret.  At the time it purchased the Atris schematics and layout, ISSI had hired Bagachi to

7  lead its work on the Atris project. [74]  Three months earlier, while Bagachi was still working for

8  Cisco, GSI had disclosed to him the details of its prior agreement with UMI to work on the Atris

9  project.[75]  The employee in primary control of the project thus had direct knowledge that UMI had

10  been working for GSI in developing the Atris chip at least three months before ISSI bought UMI's

11  work on the project.  Once again, whatever the ultimate merits, this is sufficient to establish

12  misappropriation of the trade secret under Section 3426.1(b)(1), such that the "safe harbor"

13  provision advanced by ISSI does not apply.[76]  In sum, GSI has met its pleading burden under Rule

14  12, *Iqbal*, and *Twombly*, such that both ISSI and UMI's motions are denied as to the eleventh cause

15  of action.

---

[72] *See, e.g., Farhang v. Indian Inst. of Tech., Kharagpur*, Case No. 5:08-08-02658-RMW, 2010 WL 3504897, at *5 (N.D. Cal. Sept. 7, 2010) (finding that plaintiff had alleged reasonable efforts to keep information secret despite disclosing to multiple third parties); *Memry Corp. v. Kentucky Oil Tech., N.V.*, Case No. 5:04-cv-03843-RMW, 2006 WL 3734384, at *4 (N.D. Cal. Dec. 18, 2006).

[73] *See* Docket No. 187-4 at ¶¶ 225-26.

[74] *See* Docket No. 187-4 at ¶ 71.

[75] *See id.* at ¶ 225.

[76] The court notes, however, that even if Section 3426.1(b)(2)(C) did apply, ISSI has pointed to no case law indicating that that section operates as a "safe harbor," and the requirements of that provision do not seem to fit the facts at hand.

13

**E.   GSI's Claim For Intentional Interference With A Contract Fails Because It Does Not Allege That ISSI Knew The GSI-UMI Non-Compete Agreement Remained In Effect**

In order to plead an intentional interference claim, GSI must set forth facts which, if proven, would establish five elements: (1) GSI had a valid contract with UMI; (2) ISSI had knowledge of the contract; (3) ISSI engaged in intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contract; and (5) damages.[77]  The only element that ISSI contests in this case is the second, that it had knowledge of the contract.   GSI argues that this element is satisfied because it pleads that ISSI learned in March 2009 that UMI was working on an LLDRAM project for another customer, so it could not work on a competing project, that ISSI learned in 2012 that UMI had previously worked with GSI to develop the Atris chip, and that, as an industry participant, ISSI knows that non-competes are common.[78]

These allegations are insufficient to establish knowledge.  They might provide a basis for knowledge if ISSI retained UMI to work on the Atris chip in 2009, or if ISSI learned in 2012 that the non-compete clause between UMI and ISSI remained in effect.  However, as it stands, there is a three-year gap between the time that ISSI was told that UMI could not work on the Atris project and the time that ISSI and UMI allegedly began working on the project together.  Indeed, the fact that UMI once refused to work on the Atris project on the grounds of a non-compete agreement, then later agreed to work on it with ISSI, could  give rise to a perfectly reasonable inference that the non-compete agreement was no longer a barrier to their relationship.  Because GSI fails to allege that ISSI knew that the non-compete clause remained "viable" in December of 2012, its claim for intentional interference with a contract must be dismissed.[79]

---

[77] *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)

[78] *See* Docket No. 212 at 19 (citing Docket No. 187-4 at ¶¶ 226, 233).

[79] *See Davis v. Nadrich*, 174 Cal.App.4th 1, 10-11 (2009).

14

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

**F. GSI's Claim For Intentional Interference With Prospective Economic Advantage Stand Against ISSI Because It Successfully Alleges Misappropriation Of Trade Secrets As Part Of The Interference**

A claim for intentional interference with prospective economic advantage requires five elements: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional and wrongful acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."[80]  These elements are to be considered with the "understanding that a plaintiff must plead that the defendant engaged in an act that is wrongful apart from the interference itself."[81]

GSI claims that it "adequately alleges anticompetitive conduct, racketeering, fraudulent conduct, misrepresentation, and misappropriation of trade secrets."[82]  As described above, GSI has not adequately alleged anticompetitive conduct or racketeering, and it only alleges that UMI, not ISSI, engaged in fraudulent conduct and misrepresentation.  However, its allegations regarding misappropriation of trade secrets are sufficient to sustain that cause of action.  That misappropriation of trade secrets, if proven, was an essential part of ISSI's alleged interference with GSI's relationship with Cisco.  As such, it provides the independent "wrongfulness" aspect of ISSI's acts to disrupt the relationship.[83]  As ISSI does not take issue with any of the other elements of the claim, its motion is denied as to the thirteenth cause of action.

---

[80] *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

[81] *Id.*

[82] *See* Docket No. 212 at 25.

[83] *Cf. Della Penna v. Toyota Motor Sales*, 11 Cal. 4th 376, 393 (1995).

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### G.   GSI's Claim Under California's Unfair Competition Law Stands

California Business and Professions Code Section 17200 provides three avenues of relief under the Unfair Competition Law: an unfair prong, an unlawful prong, and a fraudulent prong. The statute was designed to reach sketchy business practices that fall outside the precise contours of existing torts and statutory violations.[84]   However, an underlying, unlawful act is required to sustain a cause of action under the unlawful prong.

Here, GSI argues that it has alleged claims under both the unfair and unlawful prong of the UCL.[85]   In its reply, ISSI fails to respond to GSI's argument that its conduct constitutes "unfair" conduct within the meaning of the contract.[86]   In fact, the conduct alleged[87] constitutes precisely the type of behavior that the UCL was aimed at: a scheme of sufficient originality that it may not be precisely illegal under a standard theory of liability.   This conduct also smacks of antitrust-like misconduct, although it does not meet the full requirements for a federal antitrust claim, such that it is appropriately considered under an unfair competition claim between competitors.[88]   For these reasons, and in the absence of any objections in the reply, GSI's claim under the unfair prong of the UCL stands.

GSI's claim under the unlawful prong also stands because, as in *E-Smart Technologies, Inc. v. Drizin*, "plaintiffs have alleged facts relating not only to defendants' alleged misappropriation of their intellectual property, but also to misappropriation of business opportunities."[89]   As described

---

[84] *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

[85] *See* Docket No. 212 at 22.

[86] *See* Docket No. 217 at 14-15.

[87] Namely, hiring an employee of a mutual customer, but only after he mined a competitor for details about their business plan, then partnering with another former employee corporation to usurp the competitor's bid.

[88] *See Cal-Tech*, 20 Cal. 4th at 187.

[89] Case No. 3:06-cv-05528-MHP, 2009 WL 35228 (N.D. Cal. Jan. 6, 2009)

16

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

1    above, GSI's claim for intentional interference with prospective economic advantage stands against

2    ISSI, creating an underlying unlawful act that is not subject to preemption.  The unlawful prong

3    claim therefore also stands.

### IV. CONCLUSION

5        GSI's Sherman Act and RICO claims are dismissed in their entirety, as is its claim for

6    intentional interference with a contract.  However, GSI's claim for misappropriation of trade

7    secrets stands against both UMI and ISSI, and its claims under the UCL and for intentional

8    interference with prospective economic advantage stand against ISSI.  Because the court is not yet

9    persuaded that any amendment would be futile, the causes of action that are dismissed are

10   dismissed without prejudice and with leave to amend.  Having permitted GSI to amend its

11   complaint three times, and after substantial discovery, the court nevertheless warns that any further

12   dismissal will likely be with prejudice. While the court will permit any amended pleading to be

13   filed by May 17, 2014, it urges all parties to consider the practical merit of any further amendments

14   to the pleadings and preliminary motion practice and to focus on getting the dispute ready for

15   dispositive motion practice, trial, or settlement.

16   **IT IS SO ORDERED.**

17

18   Dated: April 18, 2014

19

20                                              _____
                                                 PAUL S. GREWAL
21                                               United States Magistrate Judge

United States District Court
For the Northern District of California