# EXHIBIT A

# UMI – GSI Product Design and Development Agreement
## 576 Mb Low Latency DRAM

---

THIS PRODUCT DESIGN AND DEVELOPMENT AGREEMENT is between United Memories, Inc., a Colorado U.S.A. corporation ("UMI"); and GSI Technology, Inc., a Delaware corporation ("GSI").

W I T N E S S E T H:

RECITALS:

A. UMI is experienced in the development and design of semiconductor memory components and UMI's employees based at UMI's headquarters facility in Colorado Springs, Colorado, U.S.A. have expertise in the design of semiconductor memory components.

B. GSI is experienced in the production, packaging, and sales of semiconductor memory components.

C. GSI wishes to retain UMI to design a DRAM chip according to the specifications set forth in Exhibit A attached hereto and incorporated herein by this reference (the "Product").

D. UMI is willing to undertake the design of the Product in consideration of payments provided herein.

E. UMI and GSI wish to set forth herein certain agreements covering and relating to their respective rights and obligations with respect to the Product and other matters as provided herein.

F. UMI and GSI acknowledge that the low latency / high random address rate DRAM market is a very small and highly specialized segment of the DRAM market and is expected to remain a small and highly specialized, high performance segment of the DRAM market.

G. UMI and GSI acknowledge that because of UMI's position as a contract memory design service provider, the exposure UMI will gain in the course of providing contract design services to GSI's confidential, proprietary information and trade secrets, and UMI's potential ability to use said information to assist potential competitors to GSI to produce low latency / high random address rate DRAMs to compete with GSI, make the non-compete provisions of this Agreement is necessary to protect GSI's trade secrets and legitimate and significant business interests.  In the absence of the restrictions contained in this Agreement, GSI would not have considered selecting UMI to manufacture produce low latency / high random address rate DRAM products and would not have considered sharing GSI's trade secrets with UMI.

NOW, THEREFORE, in consideration of the Recitals and the mutual covenants contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, UMI and GSI hereby agree as follows:

CONFIDENTIAL                                                                                                                                    GSI0007481

# UMI – GSI Product Design and Development Agreement
## 576 Mb Low Latency DRAM

ARTICLE I:    Definitions.

When used in this Agreement, the following terms shall have the following respective meanings:

I.1    "Confidential Information" means all non-public information that the party disclosing the information (the "Disclosing Party") designates at the time of disclosure as being confidential, or if disclosed orally or visually is identified as such prior to disclosure and summarized, in writing, by the Disclosing Party to the receiving party (the "Receiving Party") within thirty (30) days, or which, under the circumstances surrounding disclosure, the Receiving Party knows or has reason to know should be treated as confidential without the need to be marked as "confidential."

I.2    "Dollars" or "$" means United States Dollars.

I.3    "Effective Date" has the meaning set forth in Section 7.1.

I.4    "Fab" means a factory where devices such as semiconductors are manufactured.

I.5    "Project" means the design and testing of the Product.

I.6    "Project Patent" has the meaning set forth in Section 4.1.

I.7    "Product" has the meaning set forth in Recital C and as specified in Exhibit A.

I.8    "Trade Secret" means information, including a formula, pattern, compilation, program, device, method, technique or process, that:

(a)    Derives independent economic value, present or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

I.9    "Manufacturing Release" means the product has passed GSI internal qualification requirements (GSI Spec B-004.2, Appendix 1) and is achieving repaired probe yield within 10 percentage points of ProMOS product of similar density in the same process technology.

ARTICLE II:    The Project: Development and Design of the Product and UMI's Remuneration.

II.1    In order for UMI to design and develop the Product as soon as possible, UMI and GSI shall undertake and carry out their respective responsibilities with respect to the Project as described in Sections 2.1.1 and 2.1.2, and shall assist and cooperate with each other in the performance of their respective tasks, in commercial good faith and with the goal of completing the Project as soon as possible, but in no event later than the completion date set forth in the development schedule set forth on Exhibit B.

# UMI – GSI Product Design and Development Agreement
## 576 Mb Low Latency DRAM

II.1.1   UMI shall do the following:

(a)   Design the Product (including, without limitation, circuit simulation and layout), at UMI's Colorado facility, including any future minor design modifications required to make the Product meet the requirements of Exhibit A.  If the requirements of Exhibit A are changed after the Effective Date and, as a result, a major product design modification or redesign is required in order to meet the revised requirements, such as circuit resimulation and redesign of peripheral circuits, then any agreed upon supplemental payments to UMI for such major design modifications will be incremental to the payments already provided for in this Agreement. The amount of any supplement payments will be negotiated in good faith between GSI and UMI, if and when necessary as a result of a material change in the time or cost for performance.  If such a redesign is required, the due dates for all remaining milestones that have not been attained shall also be renegotiated in good faith. No changes to the amounts payable under this Agreement or the due dates for performance shall be effective and binding on the parties unless agreed upon in writing by the other party in a written amendment to this Agreement.

(b)   Deliver the items listed in Exhibit B (attached hereto and incorporated herein by this reference) on or before the milestone dates indicated; and

(c)   Provide adequate and sufficient work space at the Colorado Springs facility for GSI engineer(s) participation in the Project according to the schedule of Exhibit C.

(d)   Provide consulting support of failure analysis efforts undertaken by GSI on a timely basis at fees negotiated in good faith for a period of three (3) years after Manufacturing Release.

II.1.2   GSI shall do the following:

(a)   Provide sufficient wafer starts (at GSI's expense) to perform the required development and provide all necessary raw materials, including masks and reticles; and

(b)   If the Product is designed for manufacture at a Fab other than ProMOS, provide design rules, electrical rules, HSPICE parameters on each transistor, layout rules, layer tables, DRC/LVS rule file, sheet resistances, contact resistances, and parasitic capacitances for the chosen Fab.

II.2   At the completion of each item of 2.1.1 and Exhibit B, UMI shall deliver to GSI the relevant deliverables accompanied by a written certification of the completion of such item. At the completion of each item of 2.1.2, GSI shall, upon request, deliver to UMI written certification of the completion of such item.  If either party believes an item of 2.1.1, Exhibit B or 2.1.2 is incomplete, the parties shall meet and resolve the issue in good faith negotiations.

II.3   During the Project, representatives of UMI and GSI shall meet as frequently as may be required to assess the progress of the Project against the time line schedule on Exhibit B

CONFIDENTIAL                                                                                            GSI0007483

for their respective performances of services as provided in Sections 2.1.1 and 2.1.2 and Exhibit B (Project Milestones).  In addition, it is expected that GSI engineers will participate in the Project as outlined in Exhibit C.

II.4   For and in consideration of UMI's services to be rendered as provided in this Article II, GSI shall pay to UMI the following amounts according to II.5:

II.4.1   Seventy Five Thousand Dollars ($75,000) concurrently with the execution of this Agreement.

II.4.2   One Hundred Thousand Dollars ($100,000) at the successful conclusion of the preliminary design review specified by Project Milestone No. 2 of Exhibit B.

II.4.3   One Hundred Fifty Thousand Dollars ($150,000) at the successful tape out of the database specified by Project Milestone No. 3 of Exhibit B.

II.4.4   Two Hundred Thousand Dollars ($200,000) at the successful conclusion of the final design review specified by Project Milestone No. 4 of Exhibit B.

II.4.5   Two Hundred Fifty Thousand Dollars ($250,000) at the successful conclusion of the testing of the Product specified by Project Milestone No. 5 of Exhibit B.

II.4.6   Seventy Five Thousand Dollars ($75,000) at Manufacturing Release specified by Project Milestone No. 6 of Exhibit B.

II.5   At the successful completion of each Project Milestone described in Section 2.4, UMI shall invoice GSI at the address given in 10.8 herein.  GSI shall pay such invoice within thirty (30) calendar days or shall object in writing within thirty (30) days to UMI to such payment.  If GSI objects to payment, UMI has ten (10) calendar days to prove such payment is due. If a disagreement still exists, the two parties shall meet within twenty (20) calendar days to resolve the issue in good faith negotiations. If the parties cannot resolve the disagreement or issue within three (3) business days after commencement of such meeting, then a party may pursue any rights or remedies available to it under this Agreement, at law or in equity. For the avoidance of doubt, any payments based on completion of the any milestone shall not be payable until GSI's acceptance of the relevant deliverable associated therewith, as set forth in Section 2.7 below.

II.6   UMI acknowledges and agrees that time is of the essence for the provision of services hereunder and that the full and timely provision of all services hereunder is a material condition of this Agreement. Notwithstanding the foregoing, the due date for any deliverable, the performance of which was delayed on account of failure of GSI to complete any of its prerequisite obligations in timely fashion, shall be extended by one (1) day for each day of GSI's lateness, except to the extent GSI's lateness is due to an act or omission of UMI.  Further, the due date for any deliverable to be provided by GSI to UMI under the development schedule, performance of which was delayed on account of failure of UMI to complete any of its prerequisite obligations in timely fashion, shall be extended by one (1) day for each day of

CONFIDENTIAL                                                                                                               GSI0007484

UMI'S lateness. Any such extension of time for GSI's performance hereunder shall be in addition to any other rights or remedies of GSI, whether available under this Agreement, at law or in equity.

II.7   Upon delivery of each deliverable to GSI, GSI will review the applicable deliverable to determine whether it conforms to the applicable portions of the specifications and the requirements of this Agreement. GSI will accept or reject each deliverable in writing within thirty (30) days after receipt; provided, however, that if a particular deliverable reasonably cannot be reviewed and tested within such 30-day period, GSI shall have such additional time to perform acceptance testing on that deliverable as may reasonably be required. If GSI fails to accept or reject a deliverable in writing within the specified time period, then, within thirty (30) days of a request by UMI, GSI must provide written notice of acceptance or rejection. Otherwise the deliverable will be considered accepted. GSI may reject any deliverable that does not conform to the applicable portions of the specifications or the requirement of this Agreement. GSI may provide notice to UMI describing such deliverable's deficiencies ("Deficiencies"). Within thirty (30) days of receiving each report regarding Deficiencies (or such longer period of time that may be authorized by GSI in writing) (the "Correction Period"), UMI shall correct the Deficiencies so that the applicable deliverable conforms to the applicable portion of the specifications and the requirements of this Agreement. Following correction, UMI shall immediately redeliver the corrected deliverable to GSI, which corrected deliverable shall be subject to the approval procedure set forth in this Section 2.7. This acceptance testing procedure will be repeated with respect to each revised deliverable until it is accepted by GSI. Notwithstanding the foregoing, if GSI rejects a deliverable after two (2) or more correction attempts by UMI, GSI shall have the right to terminate this Agreement immediately upon written notice to UMI. In such case, UMI shall immediately refund to GSI all fees paid by GSI under this Agreement. The foregoing remedy shall be in addition to any other rights or remedies of GSI, whether available under this Agreement, at law or in equity. Payment shall not constitute acceptance.

ARTICLE III:   Ownership.

III.1   GSI shall have sole ownership of all deliverables and the Product, and all associated intellectual property rights (excluding solely any Project Patents that UMI owns under the terms of Article IV) and all other works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyright laws), inventions (whether or not protectable under patent laws), discoveries, designs, developments, suggestions, ideas, improvements, know-how, and other intellectual property rights conceived, developed or reduced to practice by GSI, alone or with others, during the course of the Project (collectively, the "GSI IP")  This includes, without limitation, the following: the specification of the Product, the layout (database) of the Product, circuit simulations and/or HDL descriptions of the Product. UMI hereby irrevocably transfers, conveys and assigns to GSI all of its right, title and interest in and to all GSI IP. UMI will execute such documents, render such assistance, and take such other action as GSI may reasonably request, at GSI's reasonable expense, to apply for, register, perfect, confirm and protect GSI's rights to the GSI IP. UMI hereby grants to GSI, under all of UMI's intellectual property rights, a worldwide, non-exclusive, perpetual, irrevocable, fully paid,

CONFIDENTIAL                                                                                    GSI0007485

royalty-free, transferable license, under all UMI's intellectual property rights (including, without limitation, any Project Patents) to (a) make, have made, use, offer for sale, sell, have sold and import products and to practice any methods, and (b) use, reproduce, modify, distribute, perform, display, create derivative works of, offer for sale, sell, have sold, import, make, have made and otherwise fully exploit any and all intellectual property that has been created, conceived, developed, reduce to practice, licensed, or otherwise acquired by UMI prior to the execution of, or independent from, this Agreement that is incorporated by UMI into the Product or other deliverables owned by GSI hereunder in any manner and through any medium, whether known or to become known.  GSI shall also have the right to sublicense the foregoing rights and licenses granted herein through multiple tiers.

   III.2  UMI hereby waives any and all moral rights, including, without limitation, any right to identification of authorship or limitation on subsequent modification that UMI (or its employees, agents or consultants) has or may have in any GSI IP and any derivatives, improvements or modifications thereof.

   III.3  UMI agrees that if, GSI is unable because of UMI's unavailability, dissolution or incapacity, refusal to act or failure to act in a timely manner such that intellectual property rights protection may be impaired, to secure UMI's signature to apply for, or pursue, any application for any United States or foreign patents or mask work or copyright registrations covering the GSI IP assigned to GSI in Section 3.1 above, UMI hereby irrevocably designates and appoints GSI and its duly authorized officers and agents as UMI's agent and attorney in fact, to act for, and in UMI's behalf and stead, to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of patents, copyright and mask work registrations thereon with the same legal force and effect as if executed by UMI.

   III.4  Execution of this Agreement shall not include any rights for UMI to use, or any interest in or to, any trademark, service mark or trade name of GSI.

   III.5  Execution of this Agreement shall not include any rights for GSI to use, or any interest in or to, any trademark, service mark or trade name of UMI.

   III.6  [Except for the Product being designed and developed by UMI for GSI hereunder,] UMI agrees it shall not, directly or indirectly, design or develop, or contribute to the design or development of, a Low Latency DRAM Product (as defined below) during the term of this Agreement.  "Low Latency DRAM Product" means a latency optimized and/or address rate optimized memory product that employs a capacitive charge-based memory cell technology, including, but not limited to, RLDRAM and FCRAM products.

ARTICLE IV: <u>Project Patents</u>.

   IV.1  If, during the course of the Project, a UMI engineer alone makes any patentable inventions in the course or performance of UMI's development obligations hereunder, that invention and any resulting patent shall be owned by UMI (each, a "UMI Project Patent").  All costs for the patent filing and prosecution with respect to a UMI Project Patent shall be UMI's responsibility.

CONFIDENTIAL    GSI0007486

IV.2     If, during the course of the Project, a GSI engineer alone makes any patentable inventions in the course or performance of GSI's development activities, that invention and any resulting patent shall be owned by GSI (each, a "GSI Project Patent"). All costs for the patent filing and prosecution with respect to a GSI Project Patent shall be GSI's responsibility.

IV.3     UMI shall apply for, prosecute and maintain the UMI Project Patents at all times during and after the term of this Agreement. The application filings, prosecution, maintenance and payment of all fees and expenses, including legal fees, relating to the UMI Project Patents shall be the responsibility of UMI. Patent attorneys chosen by UMI shall handle all patent filings and prosecutions, on behalf of UMI; provided, however, that GSI shall be entitled to review and comment upon and approve all actions undertaken in the prosecution of all patents and applications. If UMI declines to apply for, prosecute or maintain any UMI Project Patent, GSI shall have the right to pursue the same at GSI's expense and UMI shall have no rights under GSI's interest therein.

IV.4     If UMI decides not to, abandons or fails to apply for, prosecute or maintain any UMI Project Patents (each, an "Abandoned Patent Right"), UMI shall give sufficient and timely written notice to GSI of not less than thirty (30) days so as to permit GSI to apply for, prosecute and maintain each such Abandoned Patent Right. GSI will have the option, at its sole election, to assume all rights and obligations with respect to the prosecution and maintenance of each such Abandoned Patent Right. In the event GSI exercises its option, UMI shall transfer and assign its rights in, to and under each such Abandoned Patent Right to GSI and transfer the file histories and GSI will then be responsible for assuming the prosecution and maintenance of each such Abandoned Patent Right at GSI's own expense. UMI will also provide GSI with all information necessary or useful for the filing and prosecution of each such transferred Abandoned Patent Right. UMI shall cooperate fully with GSI to perfect such assignment, including, without limitation, taking such actions and promptly executing such documents as may be necessary or reasonably required.

IV.5     If UMI learns of the infringement of any UMI Project Patent by a third party, UMI shall promptly notify GSI in writing and provide GSI with any evidence possessed by UMI of such infringement. At any time, GSI may ask UMI to file, prosecute, and settle any suit or action for any actual or suspected infringement of any UMI Project Patent and UMI agrees to take all such actions as requested by GSI or assign ownership of such UMI Project Patent to GSI, as instructed by GSI. UMI shall promptly execute all papers and perform all such other acts as may be reasonably required by GSI in order to bring such suits or actions or make such assignments to GSI.

# UMI – GSI Product Design and Development Agreement
## 576 Mb Low Latency DRAM

ARTICLE V:    <u>Certain Warranties, Disclaimers of Warranties and Limitations of Liability</u>.

      V.1    The payments to UMI and the substance of the other rights and duties of GSI and UMI set forth in this Agreement have been negotiated in reliance on, and are based upon the applicability and enforceability of, the warranties, disclaimers of warranties and limitations of liability contained in this Article V.

      V.2    UMI represents and warrants to GSI only, and not to any third party (including, but not limited to, any customers (retail or wholesale) or sub-licensees of GSI), that (i) UMI shall abide by the terms and conditions of this Agreement and perform its services to be rendered as provided in Article II in commercial good faith, and in a professional and workmanlike manner by qualified personnel in full compliance with all relevant laws, ordinances, rules and regulations; (ii) services to be performed by UMI will not constitute breach of contractual obligations of UMI with any third parties; and (iii) UMI's design of the Product shall conform in accordance with the specifications set forth in Exhibit A.  In the event that within six (6) months from the completion of the Project pursuant to Article II, the Product supplied by UMI to GSI does not perform in accordance with the requirements of Exhibit A, UMI shall promptly correct or modify such deliverables so that they are so performing and without any additional charge to GSI.  If UMI materially breaches the warranty contained in this Section 5.2, GSI shall have the right to terminate this Agreement by delivering to UMI written notice of such termination pursuant to Section 7.3, without limiting any other rights or remedies available to GSI, whether under this Agreement, at law or in equity.

      V.3    Except specifically as provided in this Article V, UMI makes no warranties to GSI or to any other party by virtue of this Agreement and UMI expressly disclaims all warranties, whether express, implied or arising by usage of trade, including all implied warranties of merchantability and fitness for a particular purpose, with respect to UMI's services to be provided pursuant to this Agreement.  GSI shall not make or pass on to its customers (wholesale or retail) or sub-licensees any warranty or representation on behalf of UMI.  Except for a breach of confidentiality obligations under Article 6 or a claim for indemnification made under Section 5.5, a party shall not be liable to the other for any consequential, incidental, special or punitive losses or damages under any circumstances whatever, whether asserted as a claim in contract, tort, negligence, product liability or strict liability and whether arising out of or resulting from any matter, information or thing made available or not made available under this Agreement or the use thereof.  Except as specifically provided in this Article V and without limiting any warranty made by UMI or other obligation of UMI hereunder, including, without limitation, those with respect to the design, development and correction of the Product, UMI has not undertaken, and shall not have, any responsibility or liability whatever for the inability of GSI to manufacture the Product on a commercial scale or for the quality or performance of any of the Product, or for any claims of any third parties arising from any use of any of the Product.

      V.4    A party shall not be liable to the other or to any third party by reason of termination of this Agreement for compensation, reimbursement or damages on account of any loss of prospective profits on anticipated sales or on account of expenditures, investments, leases, employment or labor contracts or other commitments relating to the business or goodwill of such party notwithstanding any law to the contrary.  Without limiting the generality of the foregoing,

CONFIDENTIAL        GSI0007488

**UMI – GSI Product Design and Development Agreement**
**576 Mb Low Latency DRAM**

GSI assumes all risks arising out of or relating to its inability to meet any commitments made to, and/or perform any agreements entered into with, any customer (wholesale or retail) or sub-licensee of GSI in the event of any termination of this Agreement, and UMI assumes all risks arising out of or relating to its decision to hire any employees for performing under this Agreement and its inability to meet any commitments made to, and/or perform any agreements entered into with, any GSI contractor in the event of any termination of this Agreement .

V.5  UMI shall provide GSI with all information and services necessary or useful to support the defense of GSI, its officers, directors, affiliates, employees, agents, resellers, distributors and customers from and against any claim, action, suit or proceeding brought by a third party alleging infringement, misappropriation or violation of that party's patent, copyright, trade secret or other intellectual property rights by any deliverables provided hereunder, including the Product.

V.6  If upon inspection of any/all deliverables the manufacture, use or sale of any Product and/or deliverable is, in GSI's opinion, likely to become subject to an infringement suit, UMI shall recommend and make such design modifications, as seem prudent to GSI and UMI and/or provide non-monetary support to GSI in GSI attempts to obtain licenses to necessary intellectual property

ARTICLE VI:   Confidentiality.

VI.1  Each party acknowledges that in the course of the performance of this Agreement, it may obtain the Confidential Information of the other party.  The Receiving Party shall keep in confidence all of the Disclosing Party's Confidential Information received by it.  All Confidential Information received by the Receiving Party shall be kept strictly confidential and shall not be used or disclosed to any person or entity by the Receiving Party except as necessary to exercise its rights and fulfill its obligations under this Agreement.  The Receiving Party shall take all reasonable steps to prevent unauthorized disclosure or use of the Disclosing Party's Confidential Information and to prevent it from falling into the public domain or into the possession of unauthorized persons.  Only UMI and GSI personnel needing access to such Confidential Information to effect the intent of this Agreement shall receive such information and who have entered into written confidentiality agreements with the Receiving Party which protects the Confidential Information of the Disclosing Party, and then only to the extent needed.  The Receiving Party shall immediately give notice to the Disclosing Party of any unauthorized use or disclosure of Disclosing Party's Confidential Information.  The Receiving Party agrees to assist the Disclosing Party in remedying such unauthorized use or disclosure of its Confidential Information.

VI.2  These obligations shall not apply to the extent that Confidential Information includes information which:

VI.2.1  was in the public domain at the time it was disclosed;

VI.2.2  was known to the receiving party at the time of disclosure absent an obligation of confidentiality;

CONFIDENTIAL                                                                                             GSI0007489

VI.2.3  is disclosed with the prior written approval of the disclosing party;

VI.2.4  is inherently disclosed by the Product once on sale (wholesale or retail);

VI.2.5  is developed by the Receiving Party without any use of, or reference to, the Confidential Information;

VI.2.6  becomes known to the Receiving Party from a source other than the Disclosing Party without breach of this Agreement by the Receiving Party and absent an obligation of confidentiality; or

VI.2.7  is disclosed to a third party by the Disclosing Party free of any obligation of confidence.

A disclosure of Confidential Information that is disclosed pursuant to an order or requirement of a court, administrative agency, or other governmental body or otherwise required by law, shall not be considered to be a breach of this Agreement or a waiver of confidentiality for other purposes, provided that the receiving party shall as soon as practical give the disclosing party written notice of such order or requirement at least fourteen (14) days prior to disclosure of the confidential information to enable it to seek a protective order or otherwise prevent or limit such disclosure.

The burden of proof to establish that one of the foregoing seven exceptions applies shall be upon the Receiving Party.

VI.3  In furtherance, but not in limitation, of the provisions of Sections 6.1 and 6.2, each party shall use its customary and reasonable endeavors to cause all written materials and other physical documents and materials of all types relating to or containing confidential information or trade secrets disclosed by either party to the other under this Agreement, to be plainly marked to indicate the secret, proprietary and confidential nature thereof and to prevent the unauthorized use, disclosure or reproduction thereof, directly or indirectly.

VI.4  All the Confidential Information disclosed by GSI shall be and remain the sole property of GSI.  Upon the earlier of termination of this Agreement or GSI's request, UMI agrees, within ten (10) days after the termination, to return to GSI all of the Confidential Information of GSI in its custody, possession or control, and any copies of the same. In lieu of returning Confidential Information of GSI, UMI may destroy such Confidential Information and promptly certify destruction in writing.

VI.5  Notwithstanding Section 6.1, GSI may disclose the confidential information and Trade Secret and materials of UMI to (i) its subsidiaries which exercise sub-license under Section 3.1 and (ii) its and its subsidiaries' respective contractors and other third parties for the design, development, layout, manufacture, testing and packaging of the Product or derivative of the Product to the extent necessary to exercise their duty, provided that such disclosures shall be made under reasonable terms of confidentiality.

**UMI – GSI Product Design and Development Agreement**
576 Mb Low Latency DRAM

VI.6     Notwithstanding any term in this Agreement to the contrary, GSI shall be entitled to retain copies of all UMI Confidential Information reasonably required to continue to develop, maintain, support the Product or any derivative products or otherwise exploit the Product or to exercise any other surviving rights and obligations of GSI pursuant to this Agreement.

ARTICLE VII:   Term and Termination.

VII.1    The effective date of this Agreement shall for all purposes be the date this Agreement is executed by UMI and GSI (the "Effective Date").

VII.2    The term of this Agreement shall commence on the Effective Date and shall expire and be ended at the close of business on the day five (5) years from the Effective Date, unless earlier terminated by either party pursuant to this Article VII, or upon the expiration of the three (3) year support period detailed in Article II, paragraph 1.1 (d).

VII.3    Either party may terminate this Agreement on thirty (30) days' written notice to the other party if such other party is in default or breach of or with respect to any material provision of this Agreement; provided, however, that if the party receiving such notice of termination cures the breach or default prior to the expiration of the thirty (30) day period or, if the breach is such that it cannot be cured within the thirty (30) day period, diligently commences to cure the same within such thirty (30) day period and prosecutes such cure uninterruptedly to completion, this Agreement shall continue in full force and effect. The aggrieved party's right to terminate this Agreement pursuant to this Section 7.3 shall be in addition to any other right, remedy or benefit the aggrieved party may have under this Agreement or applicable law.

VII.4    Notwithstanding any other provision of this Agreement and in addition to any other right, remedy or benefit a party may have under this Agreement or applicable law, such party shall have the unconditional right to terminate this Agreement, effective immediately, if at any time if the other party is adjudged by a court of law to be bankrupt or insolvent, or files a petition in bankruptcy or an answer admitting the material facts recited in such petition if filed by another, or is put, or makes an election to go, into dissolution or liquidation, or otherwise discontinues its business, makes an assignment for the benefit of its creditors or enters into any other general arrangement with its creditors, or has a receiver or custodian of any kind appointed to administer any substantial amount of its property, or is placed or enters into any comparable situation under the laws of any state or province in which its operations may be conducted, or otherwise seeks to take advantage of any bankruptcy or insolvency statute now or hereafter in effect in any country.

VII.5    The provisions of Articles III, IV and V of this Agreement shall survive expiration or termination of this Agreement permanently. Article VI shall survive for ten (10) years any expiration or termination of this Agreement. The definitions and all other rights, duties and obligations of the parties that by their nature continue and survive shall survive any termination or expiration of this Agreement.

CONFIDENTIAL                                                                                                          GSI0007491

VII.6    GSI may terminate this Agreement at any time by written notice. In such case, GSI shall remain responsible for making payment for work successfully completed to that point that has been accepted by GSI.

VII.7    Immediately upon termination, UMI shall collect and deliver to GSI in a manner reasonably prescribed by GSI, whatever work product then exists with regard to the Product.

ARTICLE VIII: Governmental Requirements.

VIII.1    In performing their respective duties hereunder and in carrying out their activities as part of the Project, each of GSI and UMI shall comply with all applicable laws, regulations, procedures, ordinances and rulings of any governmental authority having jurisdiction over them.

ARTICLE IX:    Certain Costs and Expenses of the Project.

IX.1    Each of UMI and GSI shall bear their respective costs incurred in the performance of the Project, including all direct and indirect costs of all personnel involved in the Project from time to time.

ARTICLE X:    Miscellaneous.

X.1    Independent Contractors. It is understood and agreed that each of GSI and UMI are independent contractors and are, and shall continue to be, engaged in the conduct of their own respective businesses, including with respect to the design and development of the Product. Neither UMI nor GSI is to be considered the agent, joint venturer or employee of the other for any purpose, and neither party has the right or authority to enter into any contracts or assume obligations for the other or to give any warranty or make any representation on behalf of the other party except where and to the extent specifically authorized in writing to do so.

X.2    Entire Agreement. This Agreement (including all exhibits hereto) contains the entire and only agreement of GSI and UMI with respect to the subject matter hereof, and supersedes entirely any and all other prior or contemporaneous agreements, either oral or written, between the parties with respect thereto. No agreement, statement or promise relating to the subject matter of this Agreement which is not contained herein shall be valid or binding.

X.3    Assignment. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors and permitted assigns; provided, however, that neither party may assign its rights under this Agreement, in whole or in part, whether by contract, operation of law or otherwise, or to delegate any duties hereunder without the prior written consent of the other, except that GSI may assign its rights under this Agreement in connection with a merger, acquisition, divestiture, corporate reorganization or sale of all or substantially all of its assets to which this Agreement relates. Any attempt by one party to assign its rights under this Agreement or to delegate any duties hereunder contrary to the provisions of this clause shall be null and void.

X.4     Severability. All agreements and covenants contained herein are severable and if any of them shall be held to be unenforceable or invalid, the remaining provisions or parts of this Agreement shall continue to remain in full force and effect and the unenforceable or invalid provision shall be amended to fulfill as closely as possible the original purpose of the unenforceable or invalid provision.

X.5     Governing Law. This Agreement shall take effect under, be construed and enforced according to, and be governed by, the laws of the State of Colorado.

X.6     Changes or Amendment. Any change, revision, termination, or attempted waiver of any of the provisions contained in this Agreement shall not be binding unless in writing and signed by the party against whom the same is sought to be enforced. This Section 10.6 itself shall not be waived verbally. This Agreement shall be amended or supplemented only by a written instrument duly executed by or on behalf of the parties hereto, and if and when so supplemented or amended shall include all such supplements and any amendments.

X.7     Construction Against Waiver. No waiver of any term, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such term, provision or condition of this Agreement.

X.8     Notices. All notices permitted or required to be given to the parties of this Agreement shall be in writing and delivered personally or sent by certified or registered airmail, return receipt requested, postage prepaid, by air courier, return receipt requested, or by telegram, telecopy or telex, addressed to the respective parties at the following addresses, unless another address is designated in writing in accordance with this Section 10.8:

UMI:   United Memories, Inc.
       4815 List Drive, Suite 109
       Colorado Springs, Colorado  80919
       Phone:  719-594-4238
       Fax:  719-594-4939
       Attention:  President & CEO

GSI:   GSI Technology, Inc.
       4131 Spicewood Springs Road
       Suite F-2
       Austin, TX  78759
       Phone:  512-346-7180
       Fax:  512-372-0446
       Attention:  David Chapman

Such notices shall be deemed to have been effectively given and received on the day of delivery if delivered personally, or, if by telegram, telecopy, telex, or air courier, on the next day following the sending of such notice by telegram, telecopy, telex, or air courier, and, if mailed, on the seventh (7th) business day following such mailing.

X.9     Attorneys' Fees.  In the event of any controversy, claim or dispute between the parties hereto arising out of or relating to this Agreement, including, but not limited to, a controversy settled by arbitration, the prevailing party shall be entitled to recover from the losing party reasonable expenses, attorneys' fees and costs.

X.10     Acts of God.  If the performance by any party of any of its obligations under this Agreement shall be in any way prevented, interrupted, or hindered as a result of any force majeure, including, without limitation, war, civil disturbance, legislation or restriction of any governmental or other authority, fire, unavailability of materials or finished goods, delay of carriers, Act of God or any other similar circumstances beyond the reasonable control of such party, the obligations of the party concerned shall be wholly or partially suspended during the continuance and to the extent of such prevention, interruption of hindrance; provided, however, that local commercial unavailability of materials or finished goods shall not alone constitute force majeure for purposes hereof if such materials or finished goods are otherwise (even if at a higher cost) available.  A party unable to perform timely its obligations under this Agreement due to any of the foregoing reasons must take all reasonable steps to remedy its nonperformance or delay in performance with the least possible delay, and by doing whatever may reasonably be done to mitigate the adverse affect of its nonperformance upon the other party to this Agreement.  Such delay shall not be excused under this Section 10.10 for longer than sixty (60) days.

X.11     Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute one and the same Agreement.

X.12     Nature of Agreement and Relationship; Public Announcement.  The existence and terms of this Agreement are GSI's Confidential Information.  No public announcement or press release concerning this Agreement shall be made by UMI without GSI's prior written consent.

IN WITNESS WHEREOF, the parties have caused their duly authorized representatives to execute this Agreement as of the date set forth in the preamble hereof.

"GSI"                                              "UMI"

GSI Technology, Inc.                               United Memories, Inc.


By: _____                        By: _____

Name: _____                        Name: _____

Title: _____                        Title: _____

# UMI – GSI Product Design and Development Agreement
## 576 Mb Low Latency DRAM

EXHIBIT A

PROJECT SPECIFICATION

Product Specification shall be as specified on the following two Micron Technologies, Inc. data sheets plus the associated IBIS and BSDL models:

    Micron Data Sheet for Common I/O versions:
    MT49H64M9
    MT49H32M18
    MT49H16M36
    Date 03/08
    Rev. D

    Micron Data Sheet for Separate I/O versions:
    MT49H64M9C
    MT49H32M18C
    Date 09/07
    Rev. B

# UMI – GSI Product Design and Development Agreement
## 576 Mb Low Latency DRAM

EXHIBIT B

PROJECT MILESTONES

| Project Milestone | Date | Payment |
|---|---|---|
| 1. Signing of Contract | May. 01, 2008 | $75K |
| 2. Preliminary Design Review<br>    Chip Architecture Defined<br>    Chip Floor Plan<br>    1st Pass Design of Critical Path Circuits<br>    1st Pass Critical Path Simulation Results<br>    Layout of Some Critical Blocks (Sense Amps, Row Decoder)<br>    Chip Size Estimate<br>    Preliminary Testing Plan | July 15, 2008 | $100K |
| 3. Tape Out of Database<br>    All Circuit Schematics<br>    HSPICE Schematics and Parasitics<br>    LVS Hierarchy<br>    HSPICE Hierarchy<br>    Signal/Circuit Matrix<br>    Pad Locations<br>    Fuse Locations<br>    Full Simulation Files | Oct. 15, 2008 | $150K |
| 4. Final Design Review<br>    All Circuits Designed<br>    Full Chip Simulation Results<br>    Test Circuits Designed<br>    Test Characterization Plan<br>    Final Chip Size | Oct. 30, 2008 | $200K |
| 5. Test Characterization of the Product Meets Target Specs | Jan. 30, 2008 | $250K |
| 6. Manufacturing Release<br>    Yielding within 10 points of ProMOS 512M product in same technology<br>    Passes GSI internal qual | May 1, 2009 | $75k |

**UMI – GSI Product Design and Development Agreement**
**576 Mb Low Latency DRAM**

EXHIBIT C

GSI Personnel Participation in Colorado Springs, CO.

| Type Engineer | Approximate Start Date | Months Duration |
|---|---|---|
| Design | June 15, 2008 | 1.0 |
| Layout | Aug 01, 2008 | 1.0 |
| Product | Nov. 01, 2008 | 0.5 |
| Test | Dec. 01, 2008 | 0.5 |