UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GSI TECHNOLOGY, INC., ) | Case No. 5:13-cv-01081-PSG |
| ) | |
| Plaintiff, ) | **ORDERING DENYING MOTION** |
| v. ) | **FOR SUMMARY JUDGMENT** |
| ) | |
| UNITED MEMORIES, INC., et al., ) | **(Re: Docket No. 320)** |
| ) | |
| Defendants. ) | |

Plaintiff GSI Technology, Inc. has a problem with its trade secret claim against Defendant United Memories, Inc.: GSI doesn't actually own any of the 576 Mb low latency DRAM semiconductor trade secrets that UMI supposedly misappropriated. Or at least that what UMI says in its motion for summary judgment. UMI and GSI were once partners; UMI designed the 576Mb chip for GSI under a now-terminated contract.[1] GSI claims that after the parties' falling out, UMI put 576 Mb trade secrets that belong to GSI into an "Atris" chip database UMI sold to Defendant Integrated Silicon Solutions, Inc.[2]

Because GSI's efforts to protect its claimed secrets remain in genuine dispute, the court DENIES UMI's motion.

---

[1] *See* Docket No. 320-1 at 3.

[2] *See id.*

1

Case No. 5:13-01081-PSG
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

**I.**

UMI is a Colorado company that provides integrated circuit design and layout services.[3] GSI is a California corporation that designs, develops and markets computer memory products.[4] In May 2008, UMI signed an agreement to provide design and layout services for GSI's 576 Mb chip.[5] The parties initially planned to leverage UMI's work in designing a different, more advanced chip called "Atris" that GSI would supply to Cisco Systems.[6] UMI ultimately delivered to GSI a final 576 MB chip design, along with various UMI internal emails and communications, third-party documents, circuit schematics and a library.[7] But the relationship between the parties had run its course and ultimately terminated.[8]

More than three years later, Cisco solicited bids for a supply of Atris chips.[9] GSI submitted a bid, but lost out to ISSI.[10] After GSI learned that ISSI had worked with UMI to prepare its winning bid, GSI filed this suit against UMI with claims for breach of contract, violation of California's Unfair Competition Law and a declaratory judgment as to the rights conferred by the 576Mb agreement.[11]

GSI later amended its complaint, adding ISSI as a party and asserting four more state law causes of action: fraud, false promise, misappropriation of trade secrets and intentional

---

[3] *See* Docket No. 320-1 at 1-2.

[4] *See id.* at 2.

[5] *See id.*

[6] *See* Docket No. 187-4 at ¶¶ 29-30.

[7] *See id.*; Docket No. 284-8 at 2; Docket No. 284-9 at 2; Docket No. 345-5 at 6.

[8] *See* Docket No. 320-1 at 2.

[9] *See id.*; *see also* Docket No. 187-4 at ¶ 63.

[10] *See* Docket No. 187-4 at ¶ 68; Docket No. 245 at ¶ 64.

[11] *See* Cal. Bus. & Prof. Code § 17200; *see also* Docket No. 320-1 at 2. GSI further requested a temporary restraining order against UMI, which the court denied. *See* Docket No. 24. The court later denied GSI's motion for preliminary injunction. *See* Docket Nos. 160, 176, 203.

interference with prospective economic advantage.[12] After the court granted-in-part Defendants' motion to dismiss, a subset of claims remain: GSI's claims for unfair competition and intentional interference with prospective economic advantage against ISSI and GSI's claim for misappropriation of trade secrets against both ISSI and UMI.[13]

The simple matter of identifying the trade secrets at issue has not been simple. For months GSI avoided saying exactly what secrets were taken, pointing to the limited discovery tendered on the subject by UMI. After a hearing last August on seven discovery motions, the court finally ordered GSI to "clearly and specifically identify all its claimed trade secrets to move forward."[14] GSI identified two sets of trade secrets, one for the 576 Mb chip and another for Atris.[15] As to the 576 Mb chip, GSI identified a compilation of roughly 46,000 pages, characterized as "the 576 Mb chip layout, library and schematic database, delivered in the final form of June 9, 2009, as an entire compilation."[16] In addition, GSI identified five designs within the compilation: the "Coherent Register 'write' phase design," "Output Impedance Calibration design," "Boundary scan design," "Reduced latency design" and "Broadside column address design."[17]

Focusing exclusively on GSI's underlying ownership of the 576 Mb trade secrets it identified, and GSI's reasonable efforts to preserve such secrets, UMI now moves for summary judgment on GSI's claim that it misappropriated GSI's secrets.[18]

---

[12] *See* Docket No. 159.

[13] *See* Docket No. 227 at 17. The court dismissed GSI's federal tort claims.

[14] Docket No. 276 at 1.

[15] *See* Docket No. 284-9 at 1, 5; Docket No. 346 at 5.

[16] Docket No. 284-8 at 2; Docket No. 284-9 at 2. In its opposition to the pending motion, GSI tried to trim its definition of its trade secrets, limiting its combination claim (originally the 46,000 page compilation) to include only its grouping of circuit schematics. In response, ISSI filed a motion to enforce the court's August order to hold GSI to its earlier identification. Having warned GSI earlier that it needed to define its secrets once and for all, the court granted ISSI's motion. *See* Docket No. 415.

[17] *See* Docket No. 284-9 at 104; Docket No. 346 at 5-6.

[18] *See* Docket No. 320. A plaintiff must show three elements: the plaintiff's ownership of the secrets, the defendant's acquisition, disclosure or use of the trade secret through improper means

3

Case No. 5:13-01081-PSG
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

**II.**

This court has jurisdiction under 28 U.S.C. § 1367. The parties further consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[19]

**III.**

A court may grant summary judgment when the pleadings, depositions and answers to interrogatories and admissions on file show no genuine dispute of material fact.[20] There is a genuine dispute of material fact when a reasonable jury can return a verdict for the nonmovant based on the evidence.[21] Further, all justified inferences are drawn in favor of the nonmovant.[22] Because a reasonable jury could find that GSI may claim the trade secrets at issue at its own, UMI's motion for summary judgment must be denied.

*First*, GSI has met its burden to show that the parties' agreement assigned all rights in the claimed secrets to GSI.[23] Article III.1, "Ownership," provides that:

> GSI has sole ownership of all deliverables and the Product, and all associated intellectual property rights (excluding solely any Project Patents that UMI owns under the terms of Article IV) and all other works of authorship . . . and other intellectual property rights conceived, developed or reduced to practice by GSI, alone or with others, during the course of the Project (collectively, the "GSI IP"). This includes, without limitation, the following: the specification of the Product, the layout (database) of the Product, circuit simulations and/or HDL descriptions of the Product.[24]

---

and the plaintiff's harm from the defendant's actions. *See Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (citations omitted); *Berster Techs., LLC v. Christmas*, Case No. 11-cv-1541-KJM, 2012 WL 33031, at *9 (E.D. Cal. Jan. 1, 2012).

[19] *See* Docket Nos. 7, 15, 236.

[20] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[21] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).

[22] *See id.* at 255.

[23] Although UMI and GSI disagree as to whether California or Colorado law governs GSI's trade secret claims, both states place the burden of proving ownership on the plaintiff. *See* Cal. Civ. Code § 3426.1(b); Colo. Rev. Stat. Ann. 7-74-102(2).

[24] Docket No. 346-2 at III.1.

4
Case No. 5:13-01081-PSG
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Although "deliverables" is not a defined term, the agreement sets out what UMI was obligated to "deliver" to GSI.[25]  Under the agreement, UMI was to timely "[d]eliver the items listed in Exhibit B."[26]  The deliverables identified in Exhibit B include all circuit and HSPICE schematics.[27]  While UMI protests that Exhibit B merely lists milestones, not deliverables, it ignores the clear distinction in the exhibit between milestones, which are specific points in time during the project, and deliverables, which are the UMI works due.  As the schematics are "deliverables" under the agreement, they are plainly owned by GSI.[28]

The other claimed secrets also are deliverables under the agreement.  For example, the compilation is merely the database of information transferred from UMI to GSI—that is, a collection of the various deliverables.[29]  Because GSI owns the individual deliverables under the agreement, it also owns the deliverables collectively.[30]  Nowhere does the agreement reserve for UMI any intellectual property rights in the compilation as a whole.[31]  Similarly, the library is a deliverable.  The library is included in the layout database, which even UMI admits belongs to GSI

---

[25] *See* Docket No. 346-2 at II.1.1(b).

[26] *Id.*

[27] *See id.* at Ex. B.

[28] *See id.* at II.1.1(b), III.1 and Ex. B.  UMI also makes much of the fact that Exhibit B does not list the layout as a deliverable and so cannot be a deliverable assigned to GSI.  But the layout is specifically called out as being assigned to GSI in the language of Article III.1 itself.  *See* Article III.1.

[29] *See* Docket No. 345-8 at 2-3.

[30] *Cf. Forro Precision, Inc. v. IBM Corp.*, 673 F.2d 1045, 1057 (9th Cir. 1982).

[31] *See* Docket No. 346-2, *passim* and at III.1 (reserving UMI's intellectual property rights with respect to only Project Patents and intellectual property developed prior to or independent of the agreement).

5
Case No. 5:13-01081-PSG
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

under the agreement.[32] And as with the compilation, nowhere does the agreement reserve for UMI ownership in the library.[33]

That GSI owns the 576 Mb trade secrets is clear under an additional provision in the agreement. No party disputes that GSI owns all intellectual property rights, "excluding solely any Project Patents," associated with the deliverables and the product as a whole.[34] Because the trade secret rights "associated" with a deliverable or product cannot refer merely to the deliverable or product itself, it must refer to the information, methods, techniques or processes used to create the product. Nothing in this language limits these rights, as UMI suggests, only to those conceived, developed or reduced to practice by GSI. The provision includes such rights for sure, but it does not exclude all others, as UMI would have it.

UMI contends that GSI's ownership claims are nevertheless undermined by evidence external to the contract, specifically, UMI's labeling of the schematics as "United Memories, Inc. Confidential" and GSI's silence in response despite its review and notice obligation under Article II.7 following delivery.[35] Even so, other extrinsic evidence is consistent with the notion that, before the initiation of litigation, UMI agreed that schematics are "deliverables" under the agreement:

- At the final design review, UMI presented slides identifying "[s]chematics" among the "[d]eliverables" in a slide discussing "[c]ontract items."[36]

- In December 2008, UMI's President Jon Faue identified schematics as "deliverables" under the agreement when transferring the deliverables.[37]

---

[32] *See* Docket No. 346-18 at ¶ 7; Docket No. 243-1 at III.1.

[33] *See* Docket No. 346-2, *passim*; Docket No. 320, *passim*.

[34] "Product" refers to a DRAM chip developed pursuant to the designated specification. *See* Docket No. 346-2 at 1, Recital C.

[35] Docket No. 346-2 at II.7.

[36] Docket No. 345-11, Ex. G, at UMI_0001178.

UMI's final pitch for its interpretation is that at most GSI enjoys a non-exclusive license to the trade secrets at issue. But under Article III.1, GSI's non-exclusive license is to intellectual property that UMI contributed to the product or deliverables and which was developed either prior to the execution of the agreement or independent from the agreement.[38] Under Articles III.1 and IV, GSI also enjoys a non-exclusive license to any patentable inventions developed solely by UMI in the course of the project.[39] And so if UMI brought its own know-how to the project, or solely developed a patentable invention in the course of the project, UMI retained its intellectual property rights, but granted GSI a license to that intellectual property so that GSI may produce the product without infringing. This is anything but, as UMI suggests, a reservation of all intellectual property rights in the product and deliverables, whereby GSI owns the physical copy of what it purchased and nothing else.

*Second*, a reasonable jury could find that GSI took reasonable measures to maintain the confidentiality of the alleged trade secrets.[40] Trade secrets remain protectable so long as the owner has taken "efforts that are *reasonable* under the circumstances to maintain its secrecy."[41] "Efforts at maintaining secrecy need not be extreme, just reasonable under the circumstances."[42] The owner must have "intended its [information] to remain secret and under[taken] steps to secure that end."[43]

---

[37] Docket No. 345-8, Ex. D (including among the "[d]eliverables" transferred to GSI all circuit schematics and HSPICE schematics and parasitics).

[38] *See* Docket No. 346-2 at III.1, IV.

[39] *See id.*

[40] *See Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, Case No. 3:07-cv-00635-JCS, 2008 WL 166950, at *14 (N.D. Cal. Jan. 17, 2008).

[41] Cal. Civ. Code § 3426.1(d) (emphasis added).

[42] *Religious Tech. Ctr. v. Netcom On-Line Comm'ncs Servs., Inc.*, 923 F. Supp. 1231, 1254 (N.D. Cal. 1995); *accord Network Telecomm., Inc. v. Boor-Crepean*, 790 P.2d 901, 902 (Colo. Ct. App. 1990) (efforts need not be extreme or unduly expensive).

[43] *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1523 (1997). "Reasonable efforts" might include advising others of the existence of a trade secret, limiting access to the information on a "need to know basis," or requiring employees to sign confidentiality agreements. *See Courtesy Temporary*

While UMI offers evidence to the contrary,[44] GSI offers enough evidence of its own to carry the day on this issue with a reasonable jury.  For example, knowing that UMI would be the principal designer, but not the owner, of the trade secrets, GSI contractually obligated UMI—the only outside source with access to the trade secrets—to maintain their confidentiality.[45]  Under the agreement, UMI was required to keep confidential information secret and to take "all reasonable steps to prevent unauthorized disclosure or use of the disclosing party's confidential information and to prevent it from falling into the public domain or into the possession of unauthorized persons."[46] UMI could show trade secret information only to persons requiring access to "effect the intent of this Agreement."[47]  All employees of UMI accessing GSI's trade secrets were required to enter into a written confidentiality agreement with UMI.[48]  The agreement further requires UMI to designate written materials and documents containing trade secret information as confidential and secret.[49]  The agreement further protects GSI from UMI's use of trade secret information with a competitor through a five-year non-compete provision.[50]

---

*Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1288 (1990); *MAI Sys. Corp. v. Peak Computer*, 991 F.2d 511, 521 (9th Cir. 1993); *see also Port-a-Pour, Inc. v. Peak Innovations, Inc.*, Case No. 13-cv-01511-WYD, 2014 WL 2766775, at *17-18 (D. Colo. June 17, 2014); *SBM Site Servs., LLC v. Garrett,* 2011 WL 7563785, *10 (D. Colo. June 13, 2011); *see also Mineral Deposits Ltd. v. Zigan*, 773 P.2d 606, 608 (1998).

[44] UMI relies principally on a letter dated in July 2009 in which UMI states that it does not believe that it is in possession of confidential information "given to UMI by GSI" (Docket No. 320 at 23; *see also* Docket No 1, Exhibit B).  UMI asked GSI to respond if the statement were untrue, but GSI said nothing.

[45] *See* Docket No. 345-1 at III.1.

[46] *Id.* at VI.1.

[47] *See id.*

[48] *See id.*

[49] *See id.* at VI.3.

[50] *See id.* at VII.5.

After the trade secrets were transferred to GSI, GSI continued its efforts to protect against disclosure, including limiting access to the schematics on a "need to know basis" and requiring all employees to execute a confidentiality agreement.[51] The confidentiality agreement, among other things, requires employees to maintain the confidentiality of proprietary and trade secret information and prohibits employees from removing such information from the company's premises.[52] GSI also ensures all confidential materials given to customers are marked as confidential.[53]

In sum, a reasonable jury looking at this record could find that GSI owns the rights at issue and took reasonable steps to protect them. Because UMI only challenges GSI's claim on these grounds, summary judgment on the claim is not warranted.

## IV.

UMI's motion for summary judgment is DENIED.

**SO ORDERED.**

Dated: April 20, 2015

                                             PAUL S. GREWAL
                                             United States Magistrate Judge

---

[51] *See* Docket No. 346-16 at ¶ 4; Docket No. 346-18 at ¶ 15.

[52] *See* Docket No. 346-17.

[53] *See* Docket No. 345-13 at 253:2-25; *cf. Morlife*, 56 Cal. App. 4th at 1521 (finding reasonable efforts where company limited circulation of its trade secrets and advised employees in employment agreement and employee handbook that information was confidential); *MAI Sys.*, 991 F.2d at 521 (finding reasonable efforts where company required employees to sign confidentiality agreements regarding trade secrets).