# DKT 629-4

1  JEFFREY M. SHOHET (Cal. Bar No. 067529)
   jeffrey.shohet@dlapiper.com
2  BROOKE KILLIAN KIM (Cal. Bar No. 239298)
   brooke.kim@dlapiper.com
3  VERONICA JACKSON (Cal. Bar No. 243095)
   veronica.jackson@dlapiper.com
4  KELLIN M. CHATFIELD (Cal. Bar No. 288389)
   kellin.chatfield@dlapiper.com
5  **DLA PIPER LLP (US)**
   401 B Street, Suite 1700
6  San Diego, CA  92101-4297
   Tel:  619.699.2700
7  Fax:  619.699.2701

8  RAJIV DHARNIDHARKA (Cal. Bar No. 234756)
   rajiv.dharnidharka@dlapiper.com
9  **DLA PIPER LLP (US)**
   2000 University Avenue
10 East Palo Alto, CA  94303-2214
   Tel:  650.833.2000
11 Fax:  650.833.2001

12 Attorneys for Plaintiff and Counter-Defendant
   GSI Technology, Inc.
13

14                    UNITED STATES DISTRICT COURT

15        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

16

17 GSI TECHNOLOGY, INC., a Delaware          CASE NO.  Civ. Action No. 13-CV-1081-PSG
   Corporation,
18                                           **OPPOSITION OF GSI TECHNOLOGY,**
            Plaintiff and Counter-Defendant, **INC. TO MOTION OF INTEGRATED**
19                                           **SILICON SOLUTION INC.  FOR**
            v.                               **SUMMARY JUDGMENT**
20
   UNITED MEMORIES, INC., a Colorado         Complaint: Filed March 8, 2013
21 Corporation, and INTEGRATED
   SILICON SOLUTION, INC., a Delaware        Courtroom:  5
22 Corporation,                              Judge: Hon. Paul S. Grewal
                                             Hearing Date: June 30, 2015
23          Defendants and Counter-Claimants. Hearing Time: 10:00 a.m.

24

25

26

27

28

WEST\258680456.8

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

I.  INTRODUCTION. ................................................................................................ 1

II.  STATEMENT OF FACTS. ................................................................................. 2

 A.  ISSI Learns GSI is Cisco's "Front runner" and Designing LLDRAM with UMI. .................................................................................................................. 2

 B.  ISSI Learns About the Atris Opportunity in 2009. ................................................ 3

 C.  Atris Is Revived in 2011 and 2012. ...................................................................... 4

 D.  To Resolve the "Major Issue," ISSI Ensures an Unfair Advantage at Cisco........... 5

  1.  The Disparagement Campaign. ...................................................................... 5

  2.  ISSI Enlists UMI's Help to Design Atris. ...................................................... 6

  3.  ISSI Also Enlists Anand Bagchi's Help. ....................................................... 7

 E.  ISSI's Hires GSI's Design Team and Acquires GSI's Schematics Database. ...... 10

 F.  ISSI Wins the Atris Bid. ...................................................................................... 11

 G.  ISSI Agrees to the Transfer Knowing of GSI's Potential Claims......................... 12

III.  THE RECORD FULLY SUPPORTS GSI'S TRADE SECRET CLAIMS..................... 13

 A.  ISSI Knew That It Was Improperly Acquiring GSI's 576Mb Trade Secrets. ...... 13

 B.  ISSI's Misappropriation Was Willful and Malicious........................................... 16

 C.  No Safe Harbor Shields ISSI's Misappropriation from Liability. ........................ 18

IV.  ISSI'S MISAPPROPRIATION SUBSTANTIALLY CONTRIBUTED TO GSI'S LOSS OF THE ATRIS BID AND ISSI'S UNJUST ENRICHMENT. ............................ 20

 A.  <u>Technical Capability and Time to Market</u>: ISSI Lacked the Ability to Bid for the Atris Project Without GSI's 576Mb Trade Secrets and Design Team........................................................................................................................ 21

 B.  <u>Foundry and Pricing</u>:  ISSI's Use of the Atris Trade Secrets Was A Substantial Factor in Cisco's Selection of ISSI. ................................................... 23

V.  GSI'S "UNLAWFUL" AND TIPER CLAIMS ARE NOT PREEMPTED. ................... 24

VI.  GSI'S "UNFAIR" CLAIM SURVIVES ON THE MERITS......................................... 27

 A.  Material Issues of Fact Remain as to GSI's "Unfair" Claims............................... 27

 B.  An Antitrust Violation Is Not Required to Establish "Unfair" Competition. ....... 30

 C.  GSI's "Unfair" Claim is Capable of Remediation. ............................................. 30

VII.  ISSI CANNOT PREVAIL ON ITS ESTOPPEL DEFENSE. .......................................... 32

 A.  GSI Learned of ISSI's Misconduct Only After Commencing Litigation. ............ 33

 B.  GSI Had No Duty to Inform ISSI. ....................................................................... 33

 C.  ISSI Knew the Relevant Facts and Did Not Rely to its Detriment. ...................... 34

 D.  Summary Judgment Is Justified In GSI's Favor on ISSI's Estoppel Defense....................................................................................................................... 34

VIII.  CONCLUSION................................................................................................................. 35

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ajaxo Inc. v. E\*Trade Grp. Inc.,*
   135 Cal. App. 4th 21 (2005)...................................................................... 14, 17, 18

*Allergan, Inc. v. Merz Pharms.,*
   2012 WL 781705 (C.D. Cal. Mar. 9, 2012) ............................................ 16

*Already, LLC v. Nike, Inc.,*
   — U.S. —, 133 S.Ct. 721 (2013) .......................................................... 32

*Ambriz v. Kelegian,*
   146 Cal. App. 4th 1519 (2007)............................................................... 20

*Angelica Textile Servs., Inc. v. Park,*
   220 Cal. App. 4th 495 (2013)............................................................. 25, 26

*Applied Mats., Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.,*
   630 F.Supp.2d 1084 (N.D. Cal. 2009) .................................................. 31

*Bank of Am. v. Lee,*
   2008 WL 4351348 (C.D. Cal. 2008)...................................................... 31

*Bockrath v. Aldrich Chem. Co., Inc.,*
   21 Cal. 4th 71 (1999) ............................................................................ 20

*Bravo v. City of Santa Maria,*
   665 F.3d 1076 (9th Cir. 2011)............................................................... 17

*Butler v. Elle,*
   281 F.3d 1014 (9th Cir. 2002)............................................................... 17

*Campbell v. PricewaterhouseCoopers, LLP,*
   2009 WL 594998 ................................................................................... 35

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.,*
   20 Cal. 4th 163 (1999) .......................................................................... 30

*Cole v. City of Los Angeles,*
   187 Cal. App. 3d 1369 (1986)............................................................... 34

*Corsini v. Canyon Equity,*
   2011 U.S. Dist. LEXIS 54872 (N.D. Cal. May 23, 2011) ..................... 30

1

2

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

3

*CRST Van Expedited, Inc. v. Werner Enter., Inc.*,

4
    479 F.3d 1099 (9th Cir. 2007)............................................................................ 25

5
*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*,
    30 Cal. App. 4th 54 (1994)................................................................................ 32

6

7
*Driscoll v. City of Los Angeles*,
    67 Cal. 2d 297 (1967) ....................................................................................... 32

8
*Egan v. Mut. of Omaha Ins. Co.*,
    24 Cal. 3d 809 (1979) ....................................................................................... 17

9

10
*Energex Enters., Inc. v. Anthony Doors, Inc.*,
    250 F. Supp. 2d 1278 (D. Colo. 2003)............................................................. 31

11

12
*Ferlauto v. Hamsher*,
    74 Cal. App. 4th 1394 (1999)........................................................................... 29

13
*First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*,
    155 F. Supp. 2d 194 (M.D. Pa. 2001) .................................... 1, 14, 18, 23

14

15
*Gabriel Techs. Corp. v. Qualcomm Inc.*,
    2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) ................................................... 26

16

17
*GetFugu, Inc. v. Patton Boggs LLP*,
    220 Cal. App. 4th 141 (2013)........................................................................... 29

18
*Hatfield v. Levy Bros.*,
    18 Cal. 2d 798 (1941) ....................................................................................... 16

19

20
*Hilderman v. Enea TekSci, Inc.*,
    551 F. Supp. 2d 1183 (S.D. Cal. 2008)............................................................ 25

21

22
*In re Marriage of Brinkman*,
    111 Cal. App. 4th 1281(2003)........................................................................... 32

23
*Interinsurance Exch. v. Velji*,
    44 Cal. App. 3d 310 (1975).............................................................................. 33

24

25
*J.R. Norton Co. v. Gen. Teamsters, Warehousemen & Helpers Union*,
    208 Cal. App. 3d 430 (1989)............................................................................ 18

26

27
*JTH Tax, Inc. v. Noor*,
    2012 WL 4473252 (E.D. Va. Sept. 26, 2012).................................................. 32

28

-iii-

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.,*
171 Cal. App. 4th 939 (2009) .............................................................................. 26

*Lamb-Weston, Inc. v. McCain Foods, Ltd.,*
941 F.2d 970 (9th Cir. 1991) ............................................................................... 31

*Leatt Corp. v. Innovative Safety Tech., LLC,*
2010 WL 2803947 (S.D. Cal. July 15, 2010) ..................................................... 25

*Life v. Los Angeles Cnty.,*
227 Cal. App. 3d 894 (1991) ............................................................................... 34

*Longshore v. Cnty. of Ventura,*
25 Cal. 3d 14 (1979) ........................................................................................... 32

*Mattel Inc. v. MGA Entm't, Inc.,*
782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................................. 26

*Meyer v. Glenmoor Homes, Inc.,*
246 Cal. App. 2d 242 (1966) ............................................................................... 33

*Moore v. State Bd. of Control,*
112 Cal. App. 4th 371 (2003) .............................................................................. 33

*Negrete v. Allianz Life Ins. Co. of N. Am.,*
287 F.R.D. 590 (C.D. Cal. 2014) ........................................................................ 34

*O'Riordan v. Fed. Kemper Life Assur.,*
36 Cal. 4th 281 (2005) ........................................................................................ 16

*People v. Forest E. Olson, Inc.,*
137 Cal. App. 3d 137 (1982) ............................................................................... 16

*People v. Holmberg,*
195 Cal. App. 4th 1310 (2011) ............................................................................ 20

*PQ Labs v. Qi,*
2012 WL 2061527 (N.D. Cal. June 7, 2012) ...................................................... 26

*Premier Displays & Exhibits v. Cogswell,*
2009 WL 8623588 (C.D. Cal. Dec. 23, 2009) ..................................................... 20

*Premier Indus. Corp. v. Tex. Indus. Fastener Co.,*
450 F.2d 444 (5th Cir. 1971) ............................................................................... 32

**TABLE OF AUTHORITIES**
(continued)

Page

*Pro Edge L.P. v. Gue,*
411 F. Supp. 2d 1080 (N.D. Iowa 2006) ................................................................ 32

*Ralph Andrews Prods., Inc. v. Paramount Pictures Corp.,*
222 Cal. App. 3d 676 (1990) ...................................................................... 14, 15

*River Colony Estates Gen. P'ship v. Bayview Fin. Trading,*
287 F. Supp. 2d 1213 (S.D. Cal. 2003) .................................................................. 33

*San Jose Constr., Inc., v. S.B.C.C, Inc.,*
155 Cal. App. 4th 1528 (2007) ............................................................................ 22

*Sega Enters. Ltd. v. MAPHIA,*
948 F. Supp. 923 (N.D. Cal. 1996) ...................................................................... 16

*Silvaco Data Sys. v. Intel Corp.,*
184 Cal. App. 4th 210 (2010) ........................................................................ 25, 26

*Simon v. San Paolo U.S. Holding Co., Inc.,*
35 Cal. 4th 1159 (2005) .................................................................................... 17

*Smith v. v. Wells Fargo Bank, N.A.,*
135 Cal. App. 4th 1463 (2005) ............................................................................ 27

*SocialApps, LLC v. Zynga, Inc.,*
2012 WL 381216 (N.D. Cal. Feb. 6, 2012) ......................................................... 26

*SunPower Corp. v. SolarCity Corp.,*
2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ..................................................... 26

*Taylor v. Super. Ct.,*
24 Cal. 3d 890 (1979) ........................................................................................ 17

*Traders & Gen. Ins. Co. v. Pac. Emp'rs Ins. Co.,*
130 Cal. App. 2d 158 (1955) .............................................................................. 34

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.,*
709 F. Supp. 2d 821 (C.D. Cal. 2010) ................................................................. 30

*Wang v. Palo Alto Networks,*
2013 WL 415615 (N.D. Cal. Jan. 31, 2013) ....................................................... 27

# TABLE OF AUTHORITIES
**(continued)**

**Page**

**STATUTES**

Cal. Civ. Code § 2332 ................................................................................................ 16

Cal. Civ. Code § 3426.1(b) ....................................................................................... 19

Cal. Civ. Code § 3426.3 ............................................................................................ 16

Cal. Civ. Code § 3426.3(a) ....................................................................................... 20

Cal. Civ. Code § 3426.3(c) ....................................................................................... 16

Cal. Civ. Code § 3426.7(b) ....................................................................................... 25

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(d) ................................................................................................. 35

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.       INTRODUCTION.**

3       ISSI seeks to dispose of GSI's case by portraying itself as an innocent purchaser, an

4  "undisputed" victim of circumstance.  This portrayal, although artful, is a work of fiction.  Ample

5  evidence exists demonstrating that ISSI, caught between its limitations and its ambitions, was a

6  knowing and conscious actor.  Because this case is anything but "undisputed," none of ISSI's four

7  primary arguments warrant summary judgment.

8       First, ISSI seeks summary judgment as to its misappropriation of GSI's 576Mb and Atris

9  bid trade secrets.  ISSI argues that it was an unwitting and mistaken acquirer of these trade

10  secrets, and that, even after ISSI concedes it had reason to know GSI's claims, ISSI's ongoing

11  misappropriation is shielded from liability under a "safe harbor."  ISSI also contends that its use

12  of these trade secrets was not the cause of GSI's harm.  The facts, however, show ISSI was

13  anything but "unwitting," and demonstrate that, without GSI's trade secrets, ISSI had no hope of

14  designing the Atris chip, let alone winning the bid.

15       Second, ISSI claims that GSI's claims under the "unlawful" prong of Section 17200 of

16  California's Unfair Competition Law ("UCL") and tortious interference with prospective

17  economic advantage ("TIPER") claims are pre-empted by the California Uniform Trade Secrets

18  Act.  But, ISSI's argument, lacking in factual support, fails because GSI's UCL and TIPER

19  claims are based upon improper use of non-trade secret schematics.

20       Third, ISSI argues it is entitled to summary judgment on GSI's claim under the "unfair"

21  prong of Section 17200 because GSI has no available remedies and no triable issues of fact.

22  ISSI's argument, however, applies a disjointed analysis, which fails to consider the entirety of

23  GSI's claims.  Reading GSI's claims as a whole, there are – at a minimum – triable issues of fact

24  as to GSI's claims, and available remedies exist.

25       Finally, ISSI contends GSI is estopped from pursuing its claims because GSI did not

26  notify ISSI about its trade secret misappropriation in 2012.  However, ISSI is not entitled to

27  summary judgment on its defense because the facts show that ISSI knew of its misappropriation

28  before GSI.  On the other hand, GSI is entitled to summary judgment in its favor on this defense.

II.     **STATEMENT OF FACTS.**

A.     **ISSI Learns GSI is Cisco's "Front runner" and Designing LLDRAM with UMI.**

In June 2008, ISSI was looking for ways to get its foot in the door at Cisco.  During meetings with Cisco in June 2008, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[4]

But, ISSI ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

_____

[1] Dkt. 564, MSJ Ex. 23.
[2] *Id.*
[3] *Id.*
[4] *See*, *e.g.*, *id.*, MSJ Ex. 24 ("████████████████████████████").
[5] Declaration of Brooke Kim ("Kim Decl."), Ex. 1, P. Lasserre DT, at 429:24-430:11.
[6] Dkt. 564, MSJ Ex. 26, at 0160846.
[7] In response to the Court's June 10 Order (Dkt. No. 600), ISSI agreed to produce Dr. Song as a Rule 30(b)(6) witness regarding ISSI knowledge of UMI's prior work for GSI (Topics 11 & 12).
[8] Dkt. 564, MSJ Ex. 26, at 0160846; MSJ Ex. 27, at 11 (identifying Dr. Song's executive position); MSJ Ex. 28, at ISSI_0160838; MSJ Ex. 26, at ISSI_0160845; MSJ Ex. 29, at ISSI_0297420-22; MSJ Ex. 4; MSJ Ex. 30; Kim Decl., Ex. 2, Howarth DT, at 43:7-89:23.
[9] Dkt. 564, MSJ Ex. 26 at 0160845.
[10] *Id.*; *see also id.*, Ex. 2, Howarth DT, at 65:25-67:17, 70:4-11; Dkt. 564, MSJ Ex. 4.
[11] Dkt. 564, MSJ Ex. 4, at ISSI_022846.
[12] *Id* ████████████████████████████████████████████████████████ *See* Dkt. 564, MSJ Ex. 23, at ISSI_0164389; MSJ Ex. 31, at ISSI_0228571; MSJ Ex. 4; Kim Decl., Ex. 3, Bagchi DT, at 36:12-37:6; Ex. 4, Silva DT, at 25:4-6.

1   Mr. Gower told ISSI of its non-compete obligations, "████████████████████

2   ████████████████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████[17]

12      When Mr. Gower reported to Dr. Song that his team had developed a paper design for a

13  1.2 G RLDRAM for the "████████████████"[18] ISSI already knew that Cisco had used two suppliers

14  to ████████████████████████████████████████ at Cisco.[19]

15      **B.    ISSI Learns About the Atris Opportunity in 2009.**

16      Just a few months after learning about GSI's 576Mb chip and ████████████████████████

17  ███████████████████████████████████████████████████████[20] Stymied

18  by the "████████████████████████████████████████████████████████████████

19  ████   This was a lost cause.  As ISSI's CEO testified, ████████████████████████

20

---

21  [13]  Dkt. 564, MSJ Ex. 4, at ISSI_0228846.

    [14]  *Id.*

22  [15]  ISSI suggests it could not have known about the non-compete between GSI and UMI because
    the 576Mb Agreement contains a confidentiality provision which prevents UMI from disclosing

23  the agreement.  (Mot. at 12:20-25, 13:10-11.)  But, that provision was intended to prevent a press
    release; not to prevent UMI from disclosing its inability to compete with GSI. ████████████████

24  ████████████████████████████████████████████████ (Dkt. 564, MSJ Ex. 4, at
    ISSI_0228846.)

25  [16]  Kim Decl., Ex. 1, P. Lasserre DT, at 267:3-268:13; *see also* Ex. 5, UMI_0012863-68 at 64
    (████████████████████████), Ex. 6, ISSI_0512506-16 at §9(1), Ex. 7, ISSI_0512651-65

26  at §10.6.
    [17]  Kim Decl., Ex. 8, HARDEE000046-63 at 46.

27  [18]  Atris is referred to as both a 1.2G and a 1G RLDRAM.  *See* Kim Decl., Ex. 9, ISSI_0228495,
    Ex. 10, ISSI_00228557, Ex. 3, Bagchi DT, at 36:12-37:6.

28  [19]  Dkt. 564, Ex. 23, ISSI_064388-90 at 89.
    [20]  Kim Decl., Ex. 10, ISSI_0228557.

1  ██████████████████████████ [21]

2  In 2010, ████████████████████████████████████████

3  ████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  █████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ███████████████ GSI's position as a leader in LLDRAM and UMI's prior work for GSI

12 remained very much on ISSI's mind.

**C.    Atris Is Revived in 2011 and 2012.**

14 The opportunity to become the s██████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ███████████████████████████████████████████████ [9]

19 With this in mind, ██████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

[21] Kim Decl., Ex. 2, Howarth DT, at 91:14-92:12.
[22] Dkt. 564, MSJ Ex. 32.
[23] Dkt. 564, MSJ Ex. 33.
[24] Dkt. 564, MSJ Ex. 34, GSIvUMI-ISSI 3DP 000333-340, at 334, 337.
[25] *Id.*; *see also* Kim Decl., Ex. 11, 4/2/15 Kalakuntla DT, at 144:24-146:19 (███████████
████████████████████████████████).
[26] Dkt. 564, MSJ Ex. 36.
[27] Dkt. 564, MSJ Ex. 24.
[28] Kim Decl., Ex. 12, ISSI_0021482 at 90 ████████████████████████████████); Ex. 13,
ISSI_0021338, at 451██████████████████████████████████████████.
    Kim Decl., Ex. 2, Howarth DT, at 31:13-20; Ex. 11, 4/2/15 Kalakuntla DT, at 27:5-13; 48:13-
19; Ex. 1, 4/21/15 P. Lasserre DT, at 441:21-443:1.

**D.     To Resolve the "Major Issue," ISSI Ensures an Unfair Advantage at Cisco.**

**1.     The Disparagement Campaign.**

Concerned by the threat GSI posed, ISSI began a disparagement campaign in 2012.

[30] *See, e.g.*,  Dkt. 564, MSJ Ex. 24 ("███████████████████████████").

[31] Dkt. 564, MSJ Ex. 40; Kim Decl., Ex. 1, P. Lasserre DT, at 429:9-22; Ex. 2, Howarth DT, at 91:14-92:12.

[32] Kim Decl., Ex. 1, 4/21/15 P. Lasserre DT, at 429:9-22.

[33] *Id.*; Kim Decl., Ex. 11, 4/2/15 Kalakuntla DT, at 126:13-16; Dkt. 564, MSJ Exs. 40, 41.

[34] Kim Decl., Ex. 14, 3/25/15 Shu DT, at 279:15-280:1, 281:7-11; Ex. 15, Senechal DT, at 78:12-80:3; Ex. 1, P. Lasserre DT, at 96:15-97:16; Dkt. 82, Pl Ex. X; Dkt. 564, MSJ Ex. 42 (████████████████████████████████████████████████████████████; MSJ Ex. 43 (██████████████████████████████████████████████████████).

[35] Kim Decl., Ex. 4, Silva DT, at 14:16-19, Ex. 16, ISSI_0165282-83, Ex. 17, ISSI_0165450-56, Ex. 18, ISSI_0165520-23.

[36] *Id.*, Ex. 16, ISSI_0165282-83; Ex. 17, ISSI_0165450-56; Ex. 18, ISSI_0165520-23.

[37] Kim Decl., Ex. 16, ISSI_0165282-83.  The article Ms. Silva forwards discusses GSI's recent victories in the ITC proceeding, and optimism it would be resolved favorable.  *Id.*

1

2

3

4

5

6

7

8

9

10

11

12 Similar

13 statements were made to GSI customers and investors from April to late 2012.[43]

14         **2.**      **ISSI Enlists UMI's Help to Design Atris.**

15

16

17

18

19 UMI, the little known, near bankrupt

20 design shop in Colorado Springs, not a Silicon Valley powerhouse.  Even though it had never

21 directly worked with UMI,

22 [47]

23

24     [38] *Id*. at ISSI_0165282.
25 [39] *Id*. at ISSI_0165282-83 (emphasis added).
[40] *Id.*, Kim Decl., Ex. 17, ISSI_0165450-56.
[41] *Id.* at ISSI_0165450.
[42] *Id.*
[43] Kim Decl., Ex. 19, GSI's Response to Interrogatory No. 10.
[44] Kim Decl., Ex. 20, 6/12/13 Kalakuntla DT, at 89:17-21.
[45] Dkt. 564, MSJ Exs. 40, 46, 47.
[46] Kim Decl., Ex. 20, 6/12/13 Kalakuntla DT, at 103:21-23; Dkt. 82, PI Ex. AA.
[47] Kim Decl., Ex. 11, 4/2/15 Kalakuntla DT, at 96:6-99:11, 99:19-100:3.

1    UMI responded to ISSI's overture with alacrity, ███████████████████████

2    ██████████████████████████████████████████████████████████

3    ██████████████████████████████████████████████████████████

4    ██████████████████████████████████████████████████

5    ██████████████████████████████████████████████████████████

6    ██████████████████████████████████████████████████████████

7    ████████████████████████████████████████████.[50]

8    Mr. Kalakuntla, as the executive in charge of ISSI's Atris bid, ████████████

9    ██████████████████████████████████████████████████████

10   ██████████████████████████████████████████████████████

11   ██████████████████████████████████████████████████████████

12   ████.[53]  If Mr. Kalakuntla did not ask what UMI meant in 2012, it is because he already knew.

13   Indeed, although ISSI – a publicly traded Silicon Valley-based company – claims it ██

14   ████████████████████████████████████████████████

15   ██████████████████████████████████████████████████████

16   ██████████████████████████████████████████████████████████

17   ██████████████████████████████████████████████████████████

18   ██████████████████████████████████████████████████████████

19   ██████████████.[56]

20   **3.    ISSI Also Enlists Anand Bagchi's Help.**

21   In August 2012, about the time ISSI began discussions with UMI, ISSI seized on another



[48] Dkt. 564, MSJ Ex. 50, at UMI_0012675.
[49] Kim Decl., Ex. 21, UMI_0012601.
[50] Kim Decl., Ex. 22, 4/3/15 ISSI DT, at 53:12-54:7.
[51] *Id.* at 45:23-48:24.
[52] Dkt. 564, MSJ Ex. 33.
[53] *See* Section II.A, *supra*.
[54] Dkt. 82, PI Ex. AC.
[55] Dkt. 564, MSJ Ex. 49, at ISSI_0156241.
[56] *Compare* Kim Decl., Ex. 11, 4/2/15 Kalakuntla DT, at 233:13-24, *and* Dkt. 564, MSJ Ex. 50, at UMI_0012675, MSJ Ex. 49, at ISSI_0156241.  ISSI's claim of innocence is also contrary to common sense. ██████████████████████████████████████. (Kim Decl., Ex. 5, UMI_0012863-68, at §2.)  It is unreasonable to presume ISSI would pay that price without knowing exactly what UMI's prior experience was, especially UMI's own statements.

opportunity to obtain an unfair advantage against GSI by hiring former Cisco employee Anand Bagchi. [57]  From 2011 to 2012, Mr. Bagchi had been in charge of communicating with ISSI and GSI about their Atris bids on behalf of Cisco. [58]

Before leaving Cisco, Mr. Bagchi (who later directly reported to ISSI's Ron Kalakuntla) became aware of UMI's prior work with GSI, learning that "UMI [was] partner to GSI during the early days of ATRIS."[64]  Mr. Bagchi expressed his apparent concern to the co-worker taking over his Atris-related duties who later wrote,

> "[w]ould you like to have a 3 way discussion with ISSI & UMI (before we sign 3 way NDA) on Atris 2nd source.  I was told UMI is the partner that GSI used in the original Atris design.  Since ISSI likes to utilize UMI for Atris 2nd source, it would be good for us to have the discussion to understand more."[65]

In fact, Cisco called such a meeting, on October 16, 2012, to understand more about the relationship.[66]  Notes from the meeting indicate that UMI's 72nm RLDRAM design—that is, the chip GSI paid UMI to design—was discussed.[67]  While ISSI now cannot remember what was said, Cisco's notes make it clear that UMI's prior work on the 72nm RLDRAM product was

---

[57] Dkt. 564, MSJ Exs. 53, 54.
[58] *E.g.*, Dkt. 564, MSJ Exs. 51, 52.
[59] Dkt. 564, MSJ Exs. 54, 55, 56, at 16:11-13; Kim Decl., Ex. 1, P. Lasserre DT, at 451:8-19; 467:18-22; Ex. 2, Howarth DT, at 366:25-367:6 ("███████████████"), Ex. 11, 4/2/15 Kalakuntla DT, at 193:15-20.
[60] Dkt. 564, MSJ Ex. 57.
[61] Dkt. 564-13, ¶ 6.
[62] *Id.*, ¶ 7.
[63] *Id.*, ¶ 8.
[64] Dkt. 564, MSJ Ex. 58.
[65] Dkt. 564, MSJ Ex. 59.
[66] Dkt. 564, MSJ Ex. 60.
[67] *Id.*

1  discussed in the context of ISSI's Atris bid.[68]  ISSI understood this 72nm database would be used

2  to design ISSI's Atris chip.[69]  Mr. Kalakuntla admitted that, as of October 2012, he understood

3  that the 72nm database was either designed for ProMOS or GSI.[70]

4  

5  

6  

7  

8  [73]

9  After Mr. Bagchi left Cisco,

10  

11  

12  

13  

14  

15  

16  

17  

18  

19  Moreover, when ISSI revised its Atris bid under Mr. Bagchi's guidance,

20  

21  

22  [68] Kim Decl., Ex. 22, 4/3/15 ISSI DT, at 90:15-22, 93:19-94:16; Dkt. 564, MSJ Ex. 60

23  

24  . Kim Decl., Ex. 22, 4/3/15 ISSI DT, at 90:15-94:2.
    Dkt. 564, MSJ Ex. 60; Kim Decl., Ex. 23, ISSI_0277112-21 at 13.

25  [70] Kim Decl., Ex. 11, Kalakuntla 4/2/15 DT, at 260:5-10.
    [71] Dkt. 564, MSJ Ex. 59.

26  [72] Kim Decl., Ex. 3, Bagchi DT, at 272:2-12.
    [73] *Id.* at 253:3-255:9, 272:2-12; *compare* Dkt. 564, MSJ Ex. 49, at 242, *and* MSJ Ex. 61.

27  [74] Dkt. 564, MSJ Exs. 62, 63, 64, 65.
    [75] Dkt. 564, MSJ Ex. 62.

28  [76] Kim Decl., Ex. 11, 4/2/15 Kalakuntla DT, at 271:5-272:6.
    [77] Dkt. 564, MSJ Exs. 64, 49, at ISSI_0156243.

-9-

1 ████████████████ █████████████████████████████ ██ █

2 █████████████████████████████████████████████████████

3 ███████████████. The removal of this information confirms ISSI knew it was

4 misusing GSI's trade secrets and did not want Cisco to know how far it was crossing the line.

5    **E.    ISSI's Hires GSI's Design Team and Acquires GSI's Schematics Database.**

6       In December 2012, shortly after learning it won the Atris bid, ISSI's strategy changed.

7 Instead of partnering with UMI, ISSI would acquire UMI's prior design work and hire UMI's key

8 employees.[80] In early 2013, ISSI hired six UMI employees, i████████████████████████

9 ███████████████ to create its Atris design.[81] ████████████████████████

10 █████████████████████████████████████████████████████

11 █████████████████████████████████████████████████████

12 █████████████████████████████████████████████ █ ██

13 █████████████████████████████████████████████████████

14 █████████████████████████████████████████████ █ ██

15 ████████████████████████████████████████████

16 ████████████████████████████ █ ███████████████████

17 ████████████████████████████████████████████████

18 ██████████████████████████████ (Coincidentally, "acquire" is a term with special

19 meaning in the trade secret context.)

20       At a deposition occurring a matter of months after the deal closed, █████████

21 █████████████████████████████████████████████████████

22 ███████████████████████ █ █████████████████████████

23 ─────────────────────
   [78] Kim Decl., Ex. 24, ISSI_0289403-414 at 410.

24 [79] Dkt. 564, MSJ Ex. 49.
   [80] Dkt. 564, MSJ Ex. 66.
   [81] *Id.*; MSJ Ex. 16 (██████████████████████████████████████.

25 [82] Dkt. 564, MSJ Ex. 67, at ISSI_0475010.
   [83] Dkt. 564, MSJ Ex. 66 at ISSI_0223086.

26 [84] Dkt. 564, MSJ Ex. 68, at ISSI_0275847.
   [85] Kim Decl., Ex. 22, 4/3/15 ISSI DT, at 260:8-22.

27 [86] *Compare* Kim Decl., Ex. 20, 6/12/13 Kalakuntla DT, at 172:12-173:13 *and* Dkt. 564, MSJ
   Ex. 70 ("████████████████████"), MSJ Ex. 71 (██████████████████████); Kim Decl.,

28 Ex. 22, 4/3/2015 ISSI DT, at 273:20-24.

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\258680456.8

GSI'S MSJ AGAINST ISSI
CASE NO. 13-CV-1081-PSG



[87] But this does not make sense either:

[89]

When ISSI received the schematics,

[93]

### F.    ISSI Wins the Atris Bid.

On December 4, 2012, Cisco selected ISSI for the second source supplier award.[94] Cisco weighed several factors in its Atris decision, including technical capability, time to market, price, and foundry partner;[95] ISSI cheated with GSI trade secrets and property on all four. By far, the most important factor to Cisco was whether the company could design the chip.[96] Cisco confirmed that ISSI's decision to work with UMI was a "major factor" in selecting ISSI, and that it was "comfortable" knowing that UMI would assist with the design.[97] ISSI admits, without UMI, it could not meet the specification or Cisco's timeline.[98]

ISSI downplays the importance of time to market in awarding the bid, but Cisco

[87] Kim Decl., Ex. 22, 4/3/2015 ISSI DT, at 273:16-19.
[88] *Id.* at 273:25-274:2.
[89] Dkt. 564, MSJ Ex. 4, at ISSI_0228486.
[90] Dkt. 564, MSJ Ex. 72.
[91] Dkt. 564, MSJ Ex. 73, at MLB-CIS-00000236_006 (listing only one RLDRAM project); MSJ Ex. 26, at ISSI_0160845 (████████████████████████████████).
[92] Dkt. 564, MSJ Ex. 22, at ¶¶51-54, 57, 63-69.
[93] *Id.* at ¶¶51-54, 57.
[94] Dkt. 82, PI Ex. AE.
[95] Kim Decl., Ex. 25, Tong DT, at 46:1-47:4, 57:25-58:5, 149:10-16.
[96] *Id.* at 27:4-28:12, 52:20-53:7; 69:20-25.
[97] *Id.* at 68:22-69:18; Dkt. 82, PI Ex. AE.
[98] Kim Decl., Ex.20, 6/12/13 Kalakuntla DT, at 89:17-21.

considered the schedule in its decision.[99]  Cisco required a second source to balance risks and ensure supply, and also to drive price competition with its first source.[100]  Indeed, Cisco pushed ISSI to provide concrete timelines during the bidding process and compared the prospective supplier's timelines, demonstrating the importance of a reasonable timeline for production.[101] Cisco also confirmed that factors such as fab selection and price were not determinative in its selection process.[102]  In fact, pricing, while important, ranked the lowest of these factors.[103]

ISSI incorrectly asserts in its brief that Cisco "did not express any concern about ISSI's pricing."[104]

### G.    ISSI Agrees to the Transfer Knowing of GSI's Potential Claims.

In January 2013, GSI sent UMI a letter reminding UMI about its non-compete obligations, attaching the Agreement.[107]

---

[99] Kim Decl., Ex. 26, Markevitch DT, at 117:2-118:8; Ex. 25, Tong DT, at 149:10-16.
[100] Id., Ex. 25, Tong DT, at 48:1-13; 149:17-19.; 48:14-17; 149:20-150:1.
[101] Dkt. 564, MSJ Ex. 81 at 5; Kim Decl., Ex. 27, UMI_0013532-35 at 34.
[102] Kim Decl., Ex. 25, Tong DT, at 46:1-47:7; 149:4-16.
[103] Id. at 161:22-162:14.
[104] Mot. at 7:23-24.
[105] Kim Decl. Ex. 28, ISSI_0278661.
[106] Kim Decl. Exs. 29, ISSI_0172638-41 (January 2012 pricing); Ex. 30, ISSI_0167981-7984 (September 2012 pricing); Dkt. 564, MSJ Ex. 49 at ISSI 0156242 (final pricing).
[107] Kim Decl., Ex. 8, HARDEE000046-63 at 46.
[108] Id., Ex. 31, Hardee DT, at 255:10-256:17.
[109] Kim Decl., Ex. 8, HARDEE000046-63 at 46.
[110] Id. at 46, Ex. 31, Hardee DT, at 256:23-257:9.
[111] Kim Decl., Ex. 32, ISSI_0474932-36; also compare Dkt. 564, MSJ Ex. 66, at ISSI_2203087 (listing transferring employees) and Ex. 16, at UMI_00011822 (designers on GSI's 576Mb chip).



Only after the former UMI employees were at ISSI did the schematic "asset transfer"

## III. THE RECORD FULLY SUPPORTS GSI'S TRADE SECRET CLAIMS.

GSI asserts two sets of trade secrets:  (1) 25 schematics UMI designed for GSI (the "576Mb Trade Secrets") located within current ISSI's Atris chip design; and (2) certain GSI bid information relating to Atris, specifically GSI's choice of fab and pricing strategy.[118]  ISSI attacks the 576Mb Trade Secrets on the grounds that it did not unlawfully obtain them; the GSI bid trade secrets are addressed in subsequent sections.

### A. ISSI Knew That It Was Improperly Acquiring GSI's 576Mb Trade Secrets.

Summary judgment as to ISSI's "knowledge" is inappropriate.  GSI need not prove actual or express knowledge, although those facts exist, to survive summary judgment.  Rather, it must only demonstrate a triable issue of fact that ISSI **knew or had reason to know** that the trade

---

[112] Dkt. 564, MSJ Ex. 75.
[113] *Id.*
[114] Kim Decl., Ex. 33, UMI_0013138, Ex. 34, EATON_000679.
[115] Kim Decl., Ex. 22, 4/3/15 ISSI DT, at 279:14-17, 280:2-18, Ex. 35, ISSI_0172644-45.
[116] Dkt. 564, MSJ Ex. 75.
[117] Kim Decl., Ex. 22, 4/3/15 ISSI DT, at 280:2-18.
[118] Dkt. No. 564, Ex. 77 at pp. 1-7.

1   secrets were acquired by improper means.  *Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal. App. 4th 21,

2   66 (2005).  This "reason to know" standard has also been described as a "reason to suspect," and

3   a plaintiff may prove its case by showing facts which would have made a reasonably prudent

4   purchaser suspicious.  *See Ralph Andrews Prods., Inc. v. Paramount Pictures Corp.*, 222 Cal.

5   App. 3d 676, 685 (1990).  A purchaser may not escape liability by burying its head in the sand

6   and asking no questions; or shielding high level executives from the knowledge of employees

7   tasked with developing the product and using the trade secrets.  *See First Health Grp. Corp. v.*

8   *Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 227-28 (M.D. Pa. 2001) (defendant should

9   have known, because of its knowledge of the industry and previous bids, that employee's

10  contributions to its bid proposal included the plaintiff's trade secrets).

11      ISSI knew or should have known that it was purchasing GSI's trade secrets before it

12  executed or completed the acquisition.[119]  In 2009, ███████████████████████████████

13  ████████████████████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████████████████

17  ██████████████████████████████████████.[122]  This alone raises a triable issue that

18  ISSI knew, or should have suspected, UMI was in possession of GSI's 576Mb Trade Secrets.

19      Once ISSI began working with UMI (before the deal was signed or closed), ISSI's

20  suspicions should have been on alert.  ████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  █████████████████████████████████████████████████

---

[119] Confusingly, ISSI tries to hinge its knowledge of the trade secrets to its knowledge of the non-compete, but, GSI's misappropriation claim against ISSI is separate and distinct from ISSI's knowledge of the non-compete between UMI and GSI.

[120] Dkt. 564, MSJ Ex. 26 at 0160845; Kim Decl., Ex. 36, ISSI_0160843.

[121] Dkt. 564, MSJ Ex. 4, at ISSI_0228486.

[122] Kim Decl., Ex. 1, P. Lasserre DT, at 97:2-16, 429:3-430:11, 437:17- 438:2, 442:12-443:1; Ex. 11, 4/2/15 Kalakuntla DT, 103:21-23.

[123] Kim Decl., Ex. 37, GSIvUMI-ISSI 3DP 000542.

[124]

The warning signs continued.  First, in the midst of ISSI's discussions with UMI, ISSI hired Anand Bagchi who knew that "UMI was partner to GSI during the early days of Atris."[125] Second, Cisco also called a meeting with UMI and ISSI to discuss their relationship in light of the prior design UMI did for GSI.[126]  If *Cisco* was concerned enough to raise such questions, ISSI should have been as well.  *See Ralph Andrews,* 222 Cal. App. 3d at 685.  Rather than investigate further,

[129]

ISSI's own conduct confirms its knowledge.

[132]

More, ISSI hired several former UMI designers – the same designers who worked on the 576Mb and Atris chips for GSI – to work on ISSI's Atris design.[133]

–

---

[124] Dkt. 564, MSJ Ex. 66 at ISSI_0223086, Kim Decl., Ex. 22, 4/3/15 ISSI DT, at 273:25-275:16.
[125] Dkt. 564, MSJ Exs. 55, 58, 59; Kim Decl., Ex. 38, ISSI_0171715.
[126] Dkt. 564, MSJ Ex. 59; Kim Decl., Ex. 39, ISSI_0165768-69.
[127] Dkt. 564, MSJ Ex. 49 at ISSI_0156241.
[128] *Id.,* MSJ Ex. 72; Kim Decl., Ex. 2, Howarth DT, at 191:7-14; 193:6-195:8.
[129] Dkt. 564, MSJ Ex. 26 at 0160845; Kim Decl., Ex. 2, Howarth DT, at 192:7-13.  Further, based on its knowledge of the industry, ISSI should have been on notice that it was purchasing GSI's trade secrets.                                                                    *Id.* at 139:19-24; 177:15-178:7, 179:24-180:1.
[130] Dkt. 564, Ex. 68, at ISSI_0275847.
[131] Kim Decl., Ex. 40, McNeillie DT, at 21:18-25, 22:19-20, 156:6-9, 160:4-10.
[132] Kim Decl., Ex. 41, ISSI_0288114.
[133] Dkt. 564, MSJ Ex. 66 at ISSI_0223087.

1  ████████████████████████████████████████████████████

2  ████████████████████,"[134]   A company is deemed to have notice of any facts its

3  employees or agents "ought, in good faith and the exercise of ordinary care and diligence, to

4  communicate to the [company]."  Cal. Civ. Code § 2332; *see also Hatfield v. Levy Bros.*, 18 Cal.

5  2d 798, 806 (1941) (where employee, acting within the scope of his employment, had knowledge,

6  the employer cannot assert he had no knowledge; knowledge is imputed).  If the employee had

7  such a duty, the fact that the employee did not actually communicate the information is irrelevant;

8  knowledge is imputed.  *O'Riordan v. Fed. Kemper Life Assur.*, 36 Cal. 4th 281, 288 (2005);

9  *People v. Forest E. Olson, Inc.*, 137 Cal. App. 3d 137, 139-40 (1982); *Allergan, Inc. v. Merz*

10  *Pharms.*, 2012 WL 781705, at *12-13 (C.D. Cal. Mar. 9, 2012) (holding employer liable for

11  misappropriation).  A company cannot escape liability "by not letting its right hand know what is

12  in its left hand."  *Forest E. Olson, Inc.*, 137 Cal. App. 3d at 140.

13       ISSI's engineers—former UMI engineers—were acutely aware of the misappropriation

14  and had a duty to convey that information to ISSI.  Knowledge is imputed.  *See O'Riordan*, 36

15  Cal. 4th at 288.  And ISSI's employees *did* convey the information.  When former UMI lead

16  designer ████████████████████████████████████████

17  ███████████████████████████████████[135]   Instead, it

18  chose to avoid asking any questions which would interfere with its plan to hire UMI.  ISSI's

19  protestations of innocence do not remove the triable issues raised by these facts.  A jury should

20  weigh the credibility of ISSI's witnesses against the facts shown by the documents.

21      **B.**    **ISSI's Misappropriation Was Willful and Malicious.**

22       There is also – at a minimum – a genuine issue of material fact as to whether GSI is

23  entitled to exemplary damages under California Civil Code § 3426.3.  Exemplary damages are

24  appropriate where a plaintiff can show willful and malicious misappropriation.  Cal. Civ. Code §

25  3426.3(c).  This is a factual inquiry for the jury, one that generally should not be determined on

26  summary judgment.  *Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp. 923, 936 (N.D. Cal. 1996); *see*

---

[134] Kim Decl., Ex. 8, HARDEE000046-63.
[135] Dkt. 564, MSJ Ex. 67 at ISSI_0475010.

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\258680456.8

GSI'S MSJ AGAINST ISSI
CASE NO. 13-CV-1081-PSG

1  *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1087 (9th Cir. 2011) ("State of mind is for the

2  jury.") (quoting *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002)).  This is particularly true

3  here, where the record demonstrates material facts showing both willfulness and malice.

4      Willfulness is defined as "willingness to commit the act or engage in the conduct in

5  question." *Ajaxo,* 135 Cal. App. 4th at 66.

6

7

8

9

10      Yet, despite the numerous red flags discussed herein, ISSI continued to

11  engage with UMI, either with actual knowledge of the relevant facts or because it actively

12  avoided any facts which might disrupt its plan to hire UMI and obtain GSI's trade secrets.

13  Further, standing alone,

14

15

16  [136]  *See id.* at 65-67 (finding willfulness premised upon circumstantial evidence of

17  willingness to engage in conduct).

18      To prove malice, a plaintiff must show only the defendant's "conscious disregard" for the

19  rights of others.  *Simon v. San Paolo U.S. Holding Co., Inc.,* 35 Cal. 4th 1159, 1181 (2005).

20  "Conscious disregard" exists where the defendant was aware of the probable consequences of his

21  actions and willfully and deliberately failed to avoid them.  *Taylor v. Super. Ct.*, 24 Cal. 3d 890,

22  895-96 (1979).  Conscious disregard may be proven with circumstantial evidence.  *See Ajaxo*, 135

23  Cal. App. 4th at 66-67; *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 828 (1979).

24      The record here contains sufficient direct and circumstantial evidence showing that ISSI

25  knew it was improperly acquiring GSI's trade secrets, and embarked on a course to hide its

26  conscious disregard for GSI's property.

27

28  [136] Kim Decl., Ex. 22, 4/3/15 ISSI DT, at 278:19-279:17; Ex. 35, ISSI_0172644.

[138] ISSI pilfered a third party's trade secrets and "thereby intended to cause injury to the true/owner developer of that technology." *Ajaxo,* 135 Cal. App. 4th at 67.

Further, malice can be shown by a defendant's knowledge of and failure to avoid undue consequences. *See J.R. Norton Co. v. Gen. Teamsters, Warehousemen & Helpers Union,* 208 Cal. App. 3d 430, 444-45 (1989). Circumstantial evidence indicating a defendant was aware of a fact, but avoided learning its full extent and failed to take action is sufficient to meet this threshold. *Id.* Willful blindness cannot shield a party from a finding of malice. *See id.* ISSI received repeated warning signs that it was acquiring GSI's trade secrets. Rather than investigate and avoid the consequences, ISSI consciously elected not to ask questions which may have upset its plan to hire UMI and obtain GSI's trade secrets.[139]

ISSI's course of conduct is sufficient to sustain a finding that ISSI acted in conscious disregard of GSI's trade secret rights. *See id.* The Court should deny ISSI's motion for summary judgment on the issue of exemplary damages.

### C.   No Safe Harbor Shields ISSI's Misappropriation from Liability.

The so-called "safe harbor" defense is unavailable to ISSI for three reasons. <u>First</u>, as this Court previously explained, there is no "safe harbor" defense under CUTSA: "even if Section

---

[137] Dkt. 564, MSJ Ex. 75.
[138] Kim Decl., Ex. 22, 4/3/15 ISSI DT, at 278:19-279:17; Ex. 35, ISSI_0172644.
[139] *See, e.g.,* Kim Decl., Ex. 22, 4/3/15 ISSI DT, at 273:25-275:16.

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\258680456.8

GSI'S MSJ AGAINST ISSI
CASE NO. 13-CV-1081-PSG

3426.1(b)(2)(C) did apply, ISSI has pointed to no case law indicating that that section operates as a 'safe harbor,' and the requirements of that provision do not seem to fit the facts at hand."[140] Not surprisingly, ISSI is still unable to cite a single case supporting its application.[141]

    <u>Second</u>, ISSI did not plead a "safe harbor" defense.[142] ISSI's "safe harbor" theory is, therefore, simply a recasting of ISSI's failed argument that GSI has not met its burden of showing ISSI knew or should have known it was acquiring GSI's trade secrets.  CUTSA's knowledge requirement does not obligate GSI to prove that ISSI did not "material[ly] change" is position.  *See* Cal. Civ. Code § 3426.1(b).  Thus, ISSI's arguments that it changed position, or could not unwind its agreement with UMI is irrelevant.

    <u>Third</u>, ISSI was aware of the trade secret claim before it entered into the contracts with UMI, and it is undisputed that ████████████████████████████████ ████████████████████.[143]  Thus, ISSI completed the transaction with full knowledge.

    Contrary to the evidence, ISSI complains that GSI failed to give ISSI notice because the lawsuit did not assert trade secret claims.[144]  ISSI did not need notice—it already knew, █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████—GSI became aware only after ISSI produced the database it received from UMI in 2014.[146]

    Though it knew the March 2013 complaint involved "IP" rights, ████████████████████ ███████████████████████████████████.[147]  Tellingly, *Cisco*—a third party—identified the IP problems immediately after it was subpoenaed and

---

[140] Dkt. 227 at 13, n.76.
[141] Mot. at 23-24.
[142] Dkt. 242.
[143] Kim Decl., Ex. 8, HARDEE000046-63, Ex. 31, Hardee DT, at 256:23-257:9, Ex. 22, 4/3/15 ISSI DT, at 279:14-17, 280:2-18; Dkt. 564, MSJ Ex. 75.
[144] Mot. at 23:21-23.
[145] Dkt. 564, MSJ Ex. 75.
[146] *Compare* Dkt. 564, MSJ Ex. 72 (████████████████████████: Kim Decl., Ex. 21, UMI_0012601-10, at 0012606 (████████████████), Dkt. 564, MSJ Ex. 26, at 0160845 ███████████████████, *and* Kim Decl., Ex. 42, 10/31/14 Baskin Letter █████████████████████████████████).
[147] Kim Decl., Ex. 43, ISSI_0156044.

DLA PIPER LLP (US)
EAST PALO ALTO

GSI'S MSJ AGAINST ISSI
CASE NO. 13-CV-1081-PSG

1   learned of the lawsuit in May 2013.  ISSI cannot credibly claim it remained ignorant when it

2   received the same information months prior.[148]

3         Even if ISSI could credibly claim it was not aware of GSI's trade secret claim, it had the

4   power to unwind the transaction at any time, ████████████████████████████████████

5   ████████████████████████████  Likewise, even though ISSI had hired UMI's

6   employees by early 2013, it does not follow that ISSI had to use GSI's trade secrets. That was a

7   choice ISSI made separate and apart from its need for manpower to design Atris.

## IV.   ISSI'S MISAPPROPRIATION SUBSTANTIALLY CONTRIBUTED TO GSI'S LOSS OF THE ATRIS BID AND ISSI'S UNJUST ENRICHMENT.

10         As a direct result of ISSI's misappropriation, ISSI ousted GSI from the Atris award in a

11   head-to-head competition.  Accordingly, ISSI's causation arguments fail.  Under California's

12   "substantial factor" test, GSI must prove only that ISSI's conduct contributed to Cisco's decision.

13   *See People v. Holmberg*, 195 Cal. App. 4th 1310, 1321-22 (2011); *Premier Displays & Exhibits v.*

14   *Cogswell*, 2009 WL 8623588, at *10 (C.D. Cal. Dec. 23, 2009); 1-4400 CACI No. 4401; *c.f.* Cal.

15   Civ. Code § 3426.3(a) (a plaintiff may recover for unjust enrichment caused by misappropriation).

16   The "substantial factor standard is a relatively broad one, requiring only that the contribution of the

17   individual cause be more than negligible or theoretical."  *Holmberg*, 195 Cal. App. 4th at 1321.  A

18   "very minor force that does cause harm is a substantial factor."  *Bockrath v. Aldrich Chem. Co.,*

19   *Inc.*, 21 Cal. 4th 71, 79 (1999).  Causation "is ordinarily a question of fact which cannot be

20   resolved by summary judgment."  *Cogswell*, 2009 WL 8623588 at *10 (quoting *Ambriz v.*

21   *Kelegian*, 146 Cal. App. 4th 1519, 1531-32 (2007)).  Summary judgment is proper "only if, under

22   undisputed facts, there is no room for a reasonable difference of opinion."  *Id.*

23         In the instant case, there is substantial room for a reasonable difference of opinion.  Cisco

---

[148] ISSI tries to shift the blame for its incomplete removal of the UMI "logic" because GSI did not provide ISSI with a list of its trade secrets until August 2014.  (Mot. at 23:21-25.)  The ownership provision—of which ISSI was aware as soon as GSI filed suit—gives GSI ownership over the entire database, so ISSI was on notice that the relevant inquiry was what data UMI sent to ISSI derived from UMI's work for GSI.  Disclosure of which portions of those databases are trade secret it irrelevant, because GSI owns all of the data UMI sent it.  No safe harbor protects ISSI from its failure to properly remove all of GSI's property and trade secrets when it knew, or had reason to suspect, that GSI owns them in their entirety.
[149] Dkt. 564, MSJ Ex. 66 at, at § 4.6(c).

-20-

considered several factors in its Atris decision, namely technical capability, time to market, price, and foundry partner.[150]  For each of these factors, ISSI's misappropriation of GSI's trade secrets contributed to ISSI's ability not only to win the Atris bid, but to even compete for the project.

A.   **Technical Capability and Time to Market:** ISSI Lacked the Ability to Bid for the Atris Project Without GSI's 576Mb Trade Secrets and Design Team.

Without GSI's 576Mb trade secrets, ISSI would have been unable even to participate in the bidding for Atris.  Technical capability was the most important factor in Cisco's decision.[151]



[158]

Contrary to ISSI's assertions, the available evidence demonstrates that



[150] Kim Decl., Ex. 25, Tong DT, at 46:1-47:4, 57:25-58:5, 149:10-16; Ex. 26, Markevitch DT, at 117:7-118:8.
[152] Kim Decl., Ex. 1, P. Lasserre DT, at 97:2-16, 429:3-430:11, 437:17- 438:2, 442:12-443:1.
[152] Kim Decl., Ex. 1, P. Lasserre DT, at 97:2-16, 429:3-430:11, 437:17- 438:2, 442:12-443:1.
[153] *Id.*, Ex. 2, Howarth DT, at 91:14-20.
[154] *Id.* at 91:21-92:12.
[155] *Id.*, Ex. 1, P. Lasserre DT, at 97:2-16, 429:3-430:11, 437:17- 438:2, 442:12-443:1.
[156] *Id.*
[157] Dkt. 564, MSJ Ex. 46; Kim Decl., Ex. 44, ISSI_0294817-18, Ex. 45, ISSI_0244422-29.
[158] Kim Decl., Ex. 2, Howarth DT, at 128:21-129:3; *id.* Ex. 46 ISSI_0277877-878 at 77.
[159] Mot. at 19:6-9.
[160] Dkt. 564, MSJ Ex. 60; Kim Decl., Ex. 23, ISSI_0277112- 21 at 13 ███████████████

1

2

3  ,,[162]

4      Cisco also contemplated ISSI's use of UMI's previous work for GSI.  In October 2012,

5  Cisco noted that UMI had a nearly complete 576Mb RLDRAM design, paying particular

6  attention to the fact that the Verilog design was finished.[163]  Completing the Verilog design had

7  been an important issue for Cisco during the Atris first source discussion in 2008.[164]  Mary Tong,

8  a Cisco employee involved in the Atris bid decision, explained that ISSI's partnership with UMI

9  was a "major" factor in its selection because of UMI's design expertise.[165]

10

11

12

13

14

15      ISSI makes the same ill-fated argument that the defendant tried in *San Jose Constr., Inc.,*

16  *v. S.B.C.C, Inc.*, 155 Cal. App. 4th 1528 (2007).  ISSI argues that it won the bid because Cisco

17  simply liked UMI, unrelated to its RLDRAM experience or its available design.  Similarly, the

18  defendant in *San Jose* argued that the reason the plaintiff lost its bid/customer was that it fired its

19  employee who the customer liked.  *Id.* at 1540.  The Court in *San Jose* found that a triable issue

20  existed as to whether the customer did not want a delay and it was the employee's knowledge of

21  trade secrets and other information that prevented the delay.  *Id.* at 1540-41.

22      The same is true in the instant situation.

23

24  ---

[161] Dkt. 564, MSJ Ex. 60.

25  [162] Dkt. 564, MSJ Ex. 68.

[163] Kim Decl., Ex. 47, MLB-CIS-00000276.

26  [164] *Id.*, Ex. 48, MLB-CIS-00000181; Dkt. 82, PI Ex. N.

[165] Kim Decl., Ex. 25, 4/17/15 Tong DT, at 68:22-69:18.

27  [166] Dkt. 564, MSJ Ex. 60 (referencing UMI's 72nm RLDRAM); Kim Decl., Ex. 2, Howarth DT, at 78:13-18.

28  [167] Kim Decl., Ex. 1, P. Lasserre DT, at 429:9-22, 430:23-431:18, Ex. 20, 6/12/13 Kalakuntla DT, at 89:17-21.

DLA Piper LLP (US)
East Palo Alto

WEST\258680456.8

1

2

3      ▮▮▮▮  Although ISSI now tries to dismiss the importance of time to market in the bidding

4      process, it was a factor Cisco considered in its selection of the second source supplier, and an

5      issue on which Cisco questioned ISSI.[170]  ISSI itself characterized the timeline for executing the

6      project as "very critical from Cisco's point of view."[171]

7          **B.**      **Foundry and Pricing:  ISSI's Use of the Atris Trade Secrets Was A
                  Substantial Factor in Cisco's Selection of ISSI.**

8

9          ISSI does not dispute that it came into possession of GSI's pricing strategy and fab

10     selection related to the Atris bid.  GSI shared these trade secrets with then-Cisco employee Anand

11     Bagchi during the Atris bidding process.  ISSI disputes that it acted upon that information or that it

12     mattered to Cisco's decision.  Triable issues of fact exist regarding both issues.

13          First, there is ample evidence that ISSI used GSI's trade secret information.  With respect

14     to foundry selection, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15

16

17

18

19

20

21

22

23     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮  The only reasonable inference:  ISSI

168 Dkt. 564, MSJ Ex. 81, at 005.
169 Kim Decl., Ex. 11, 4/2/15 Kalakuntla DT, at 221:13-224:19; 225:14-24; Dkt. 82, PI Ex. AC.
170 Kim Decl., Ex. 27, UMI_0013532- 35, at UMI_0013534.
171 Id., Ex. 11, 4/2/15 Kalakuntla DT, at 155:12-19.
172 Id., Ex. 49, GSIvUMI-ISSI 3DP 000518.
173 Dkt. 564, MSJ Ex. 62, MSJ Exs. 63, 64, 65; see also Kim Decl., Ex. 50, ISSI_0156258-60.
174 Dkt. 564, MSJ Ex. 62; Kim Decl., Ex. 50, ISSI_0156258-60.
175 Kim Decl., Ex. 11, 4/2/15 Kalakuntla DT, at 275: 19-22; 271:1-272:4-6.
176 Id. at 271:5-272:6;  Dkt. 564, MSJ Exs. 65, 49 at ISSI_0156243.

changed its position in response to the emails to improve its chances of winning the bid.

ISSI also used GSI's pricing information. ████████████████████████████

████████████████████████████████████████████████████████

███████████ ████████████████████████████████████████████████

███████ ████ ███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████ ████ ███████████████████████████████████████████

███ ████ ████ If ISSI had learned this information from Cisco, ████████, [181] and

not surreptitiously, ISSI would have included this information in its revised bid.

Second, the misappropriated information mattered to Cisco. ISSI mistakenly concludes that it was always the Cisco favorite for Atris due to its low pricing. But Cisco stated that price was only one factor in its overall decision.[182] According to Cisco, price could be the dispositive factor in its selection **only if all things – "everything" – were equal**.[183] But all things were not equal. GSI was proposing a tape out date that was seven months in advance of ISSI's.[184] Without a doubt, a triable issue of fact exists as to whether ISSI's misappropriation of GSI's trade secrets substantially contributed to GSI's loss of the Atris bid and ISSI's unjust enrichment.

## V.  GSI'S "UNLAWFUL" AND TIPER CLAIMS ARE NOT PREEMPTED.

ISSI tries to get rid of GSI's "unlawful" prong UCL and TIPER claims as preempted by CUTSA. The Court already rejected this argument.[185] Though long on a policy discussion, ISSI fails to cite a single fact identified during discovery supporting a change in the Court's prior analysis. This is not surprising, as GSI's UCL and TIPER claims are not based on trade secret

[177] Kim Decl., Ex. 22, 4/3/15 ISSI DT, at 138:25-139:9; Ex. 51, ISSI_0289415-416 (showing Mr. Bagchi's work on Atris), Ex. 3, Bagchi DT, at 272:2-12.

[178] Kim Decl., at 253:3-255:9; 272:2-12; *compare* Dkt. 564, MSJ Ex. 49, *and* MSJ Ex. 61.

[179] Kim Decl., Ex. 3, Bagchi DT, at 255:10-258:3, Ex. 11, 4/2/15 Kalakuntla DT, 312:10-17; Dkt. 564, MSJ Ex. 49.

[180] Dkt. 564, MSJ Ex. 49.

[181] Kim Decl., Ex. 11, 4/2/15 Kalakuntla DT, at 313:4-9.

[182] *Id.*, Ex. 25, Tong DT, at 46:1-8.

[183] *Id.* at 161:22-162:14

[184] *Id.* at 151:2-17.

[185] Mot. at 27:17-20; Dkt. 227 at 17; Dkt. 206 at 22-24 (ISSI motion to dismiss).

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\258680456.8

1   claims.  The "unlawful" and TIPER claims are premised upon: (1) ISSI and UMI's conversion of

2   GSI's 273 schematics *not* claimed as trade secrets;[186] and (2) ISSI and UMI's unlawful acts under

3   the "unfair" prong of the UCL, discussed above and discussed further in Sections V and VI.[187]

4          GSI's claims based upon non-trade secret schematics fall "well outside the reach of

5   CUTSA supersession."  *See Silvaco Data Sys. v. Intel Corp.,* 184 Cal. App. 4th 210, 242 (2010);

6   *Leatt Corp. v. Innovative Safety Tech., LLC*, 2010 WL 2803947 at *6 (S.D. Cal. July 15, 2010).

7   CUTSA expressly exempts from preemption: (1) contractual remedies, whether or not based upon

8   misappropriation; (2) ***other civil remedies that are not based upon misappropriation***; and

9   (3) criminal remedies, whether or not based upon misappropriation.  Cal. Civ. Code § 3426.7(b).

10  Under the second exception, which ISSI ignores, there is no preemption for claims "that, although

11  related to a trade secret misappropriation, are independent and based on facts distinct from the

12  facts that support the misappropriation claim."  *Angelica Textile Servs., Inc. v. Park*, 220 Cal.

13  App. 4th 495, 506 (2013); *see Silvaco*, 184 Cal. App. 4th at 241.

14         GSI's claims relating to the non-trade secret schematics are factually distinct from GSI's

15  trade secret claims, and fall within this exception.  GSI's claim for misappropriation of 25 trade

16  secret schematics does not form the basis of GSI's "unlawful" or TIPER claims.[188]  Rather, GSI

17  has identified 273 *non-trade* secret schematics, which it owns under the 576Mb Agreement.[189]

18  GSI has a right to seek protection of these schematics separate and apart from the value the

19  materials derive from being secret:  GSI is entitled to protect them, not under trade secret law, but

20  because it owns them—GSI can protect its trade secrets to the same extent it can protect tangible

21  property it owns.  ISSI's liability for converting these schematics does not depend upon their

22  confidentiality, which prevents preemption.  *See Angelica Textile Servs.,* 220 Cal. App. 4th at

23  506.

24         Moreover, these schematics have value regardless of whether they are treated as

---

[186] Kim Decl., Ex. 52, GSI's Response to ISSI's Interrogatory No. 13; Ex. 53, GSI's Response to ISSI's Interrogatory No. 25.

[187] A violation of the "unfair" prong may support an unlawful act under the "unlawful prong" of the UCL.  *Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1197 (S.D. Cal. 2008) (citing *CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1110 (9th Cir. 2007)).

[188] Dkt. 564, MSJ Ex. 22, at ¶ 42.

[189] Kim Decl., Ex. 53, GSI's Response to ISSI's Interrogatory No. 25; Dkt. 450, MSJ Order.

1  confidential, because they are tangible documents that provide the blueprint for GSI's chip.

2  Courts refuse to find preemption where the claim is not premised on the confidentiality of

3  documents, designs, or sketches the plaintiff seeks to protect.  *SocialApps, LLC v. Zynga, Inc.*,

4  2012 WL 381216 at *3-4 (N.D. Cal. Feb. 6, 2012) (no preemption where claims were not based

5  upon trade secrets); *Angelica Textile,* 220 Cal. App. 4th at 506-07 (no preemption for claim of

6  conversion of documents, because they were tangible property which could be converted

7  regardless of whether they were trade secrets).

8         Indeed, ISSI's own cases demonstrate that preemption is not appropriate.  In *SunPower*

9  *Corp. v. SolarCity Corp.*, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012), in finding that claims for

10 non-trade secret misappropriation were preempted where unsupported by an *alternative legal*

11 *claim* to ownership, the Court noted that preemption would be inappropriate where the plaintiff

12 could show it owned the property under some positive law, or, where it invested time and money

13 to develop the property.  *Id.* at *4, *12.  Here, GSI has a legal claim to ownership outside of trade

14 secret law – the 576Mb Agreement.[190]  And, GSI paid UMI to develop the non-trade secret

15 schematics over a period of approximately two years in total.

16        Likewise, in *Mattel Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 996-97 (C.D. Cal.

17 2011), the court refused to find preemption over claims relating to the ownership of sketches for

18 the Bratz dolls because these sketches had value apart from being protected as confidential

19 information.  Their value was in the fact that they depicted how to design the doll and Mattel was

20 able to have physical dominion over them.  *Id.*  That is the same value presented by the non-trade

21 secret schematics, which are a blueprint for the final chip.

22        In the cases cited by ISSI, the facts supporting the tort claims are indistinguishable from

23 the trade secret claim, and without the misappropriation, no facts existed to support a cause of

24 action.[191]  Unlike these cases, GSI has pleaded substantively unique claims alleging alternative

25 _____
[190] Dkt. 450, at 4-7.

26 [191] *See Silvaco Data Sys.*, 184 Cal. App. 4th at 236 (common law claims recited property interests from trade secret claim); *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*, 171 Cal. App.

27 4th 939, 957-60 (2009) (each claim hinged on trade secret claim); *PQ Labs v. Qi*, 2012 WL 2061527, *4-6 (N.D. Cal. June 7, 2012) (same identification of property in misappropriation and

28 TIPER claims); *Gabriel Techs. Corp. v. Qualcomm Inc.*, 2009 WL 3326631, at *12 (S.D. Cal. Sept. 3, 2009) (conversion claims based upon same facts as trade secret misappropriation, and,

-26-

1    grounds on which to protect its non-trade secret property.[192]  GSI is not, as ISSI suggests,

2    pleading around the limitations of CUTSA.  This is not a situation where GSI seeks tort relief to

3    the extent the Court rules GSI's trade secrets are not trade secrets.  GSI does not identify, or try to

4    claim, the non-trade secret schematics as trade secrets.  And, the Court has never ruled that any

5    individual schematic is or is not a trade secret.[193]  Accordingly, the claims are not preempted.[194]

6    **VI.    GSI'S "UNFAIR" CLAIM SURVIVES ON THE MERITS.**

7        Straining to seek summary judgment on ISSI's "unfair" UCL claim on the grounds that

8    GSI is entitled to no relief, ISSI fails to consider the entirety of GSI's claims.  Reading GSI's

9    claims as a whole and considering all facts, triable issues remain.

10       **A.    Material Issues of Fact Remain as to GSI's "Unfair" Claims.**

11       ISSI argues that each fact supporting GSI's "unfair" UCL claim, standing in isolation, is

12   insufficient to state a claim under the antitrust laws.[195]  This is the wrong analysis.  GSI does not

13   contend any one fact establishes a claim for unfair competition; ISSI's conduct collectively

14   threatens harm to competition because it was motivated by a desire to – and did – bar GSI from

15   the LL/RLDRAM market.[196]

16       ISSI tried the same tactic at the motion to dismiss stage.[197]  The Court rejected ISSI's

17   without trade secret allegations, complaint would not state a cause of action); *Wang v. Palo Alto
     Networks*, 2013 WL 415615, at \*4 (N.D. Cal. Jan. 31, 2013) (breach of confidence claim based
18   upon disclosure of "confidential" information and pleaded in alternative, if that information was
     not deemed a trade secret under the trade secret claim).
19   [192] Defendants' misuse of the non-trade secret schematics supports multiple causes of action
     against ISSI: conversion, TIPER, UCL, intentional interference with contract, and inducing
20   breach of contact.  The act of conversion is an independent wrong supporting a TIPER and UCL
     claim, but is not being pursed as an independent cause of action because it would not add any
21   non-duplicative relief available by other causes of action.
     [193] The Court's March 19, 2015 Order, among other things, ruled that GSI could not pursue the
22   entire set of approximately 700 schematics that UMI created for GSI to be a new or narrower
     compilation trade secret.  (Dkt. No. 415.)  The Court never ruled that individual schematics from
23   this set could not be pursued as non-trade secrets.  (*See id.*)
     [194] ISSI suggests that the "independent wrong" supporting GSI's claims can be only a stand-alone
24   claim pleaded in the SAC.  Not so.  "[T]he test of the adequacy of a complaint is whether it
     alleges sufficient *facts* to support a particular cause of action and not whether it expressly alleges
25   legal theories of liability underlying a cause of action."  *Smith v. v. Wells Fargo Bank, N.A.*, 135
     Cal. App. 4th 1463, 1485 (2005) (would have been error to dismiss UCL claims without leave to
26   amend where facts supporting unlawful act were alleged, even if no independent cause of action
     was alleged; plaintiff did not waive legal theories of liability by not raising them in complaint).
27   [195] Mot. at 28-30.
     [196] Dkt. 227 at 16:7-17; Kim Decl., Ex. 54, GSI's Response to Interrogatory No. 20.
28   [197] Dkt. 206 at 22-23.

piecemeal approach, explaining that Defendants' conduct "smacks of antitrust-like misconduct, although it does not meet the full requirements for a federal antitrust claim, such that it is appropriately considered under an unfair competition claim between competitors."[198]  That "antitrust like" misconduct the Court observed has not disappeared.  If anything, discovery has revealed more misconduct than was alleged in the SAC.

Discovery established what GSI suspected in 2013:

[REDACTED]

[REDACTED] ISSI thus removed a key competitor, and simultaneously ensured it could enter the market ahead of GSI.  This left ISSI free to target GSI.

The Atris bid was central to keeping GSI from the LL/RLDRAM market.

[REDACTED]

---

[198] Dkt. 227 at 16:12-14.
[199] *See* Section II.A, *supra*.
[200] *See* Section II.B, *supra*.
[201] *See* Kim Decl., Ex. 8, HARDEE000046-63 at 59.
[202] Dkt. 564, MSJ Exs. 40, 42 [REDACTED]
Exs. 43, 45 [REDACTED]; Kim Decl., Ex. 1, P. Lasserre DT, at 96:15-97:16, 429:9-22, Ex. 2, Howarth DT, at 91:14-92:12, Ex. 15, Senechal DT, at 78:12-80:3.
[203] Kim Decl., Ex. 12, ISSI_0021482-97, at 90 [REDACTED]; Ex. 13, ISSI_0021338-465, at 451 [REDACTED].
[204] *Id.*, Ex. 2, Howarth DT, at 31:13-20, Ex. 11, 4/2/15 Kalakuntla DT, at 27:5-13; 48:13-19, Ex. 1, 4/21/15 P. Lasserre DT, at 441:21-443:1.
[205] Kim Decl., Ex. 55, ISSI_0002443-529 at 468; Ex. 46 ISSI_0277877-78 at 77.

DLA PIPER LLP (US)
EAST PALO ALTO

GSI'S MSJ AGAINST ISSI
CASE NO. 13-CV-1081-PSG

3    Around the same time, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, ISSI devised a

plan to partner with GSI's design partner, UMI, and use the schematics UMI designed for GSI –

including the non-trade secret schematics – to compete against GSI.  ISSI did so despite being

aware that GSI owned the schematics and UMI owed GSI an obligation not to compete.

ISSI argues that it did not know of the express terms of the GSI-UMI non-compete or that

it was in effect in 2012.[208]  Not true.  Section II.G reviews the substantial evidence that ISSI knew

of the Agreement and its express terms.  But even if not, the unfair prong is not bound by strict

knowledge requirements, so long as ISSI intended to exclude GSI from the Atris bid and

LL/RLDRAM market.  As described in Section VI.A, there is no question that was ISSI's intent.

Worried its activities were insufficient to remove the threat of competition, ISSI tried to

eliminate GSI by making acquisition overtures.[209]  ISSI submits self-serving declarations stating

it offered to acquire GSI for legitimate business purposes, but the timing remains suspect and an

issue of fact: especially the failure of the bids to make any reference to the elephant in the room –

Atris and Cisco, an obvious enticement for the acquisition *at that specific time*.[210]

All of this conduct, taken together, reveals an intent to exclude GSI from the

LL/RLDRAM market and steal the Atris bid.  This misconduct threatens competition. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮  ISSI already entered that market by partnering with Micron,

[206] *Id.*, Ex. 16, ISSI_0165282-83, Ex. 17, ISSI_0165450-56, Ex. 18, ISSI 0165520-23.

[207] *Id.*, Ex. 16, ISSI_0165282-83.  ISSI contends these facts cannot support GSI's claims because they do not support an independent claim for disparagement.  (Mot. at 29-30.)  But, these are just part of a pattern of behavior which "smacks of antitrust like misconduct."  (Dkt 272 at 16:12-14.)  Moreover, ISSI's cases are not relevant, because they involve statements which are not directly contrary to the facts.  *See GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 156 (2013); *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1404 (1999).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Mot. at 28:25-29:5.

[209] Dkt. 560-53, Howarth Decl., Exs. B & C.

[210] *Id.* at ¶4.

[211] Kim Decl., Ex. 55, ISSI_0002443-529 at 68 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), Ex. 12, ISSI_0021482-97 at 90 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. 13, ISSI_0021338-465 at 451 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

-29-

1    simultaneously removing a competitor.  By snatching the bid from GSI, ISSI was able to delay

2    GSI's entry into the LL/RLDRAM Market.  This, even though ISSI's products are inferior. ████

3    ████████████████████████████████████████████████████████████████████████████████[212]  Triable

4    issues exists as to whether there is an imminent harm to competition.

5              **B.      An Antitrust Violation Is Not Required to Establish "Unfair" Competition.**

6              ISSI also argues GSI cannot sustain a claim under the "unfair" prong because the Court

7    previously dismissed GSI's antitrust claims.[213]  But, the Court already rejected this argument at

8    the dismissal stage, allowing GSI's "unfair" claims to proceed, "the conduct alleged constitutes

9    precisely the type of behavior that the UCL was aimed at: a scheme of sufficient originality that it

10   may not be precisely illegal under a standard theory of liability."[214]

11             The UCL is "sweeping, embracing 'anything that can properly be called a business

12   practice and that at the same time is forbidden by law.'"  *Cel-Tech Comms., Inc. v. Los Angeles*

13   *Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  It is intended to reach unfair and unlawful

14   practices that may not fall within the precise contours of existing torts and statutory violations.

15   *Id*. at 181.  ISSI's cases do not suggest otherwise.  *Corsini v. Canyon Equity*, 2011 U.S. Dist.

16   LEXIS 54872, at *15 (N.D. Cal. May 23, 2011), concerned a claim under the "unlawful" prong –

17   not the "unfair" prong.  In *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 838

18   (C.D. Cal. 2010), the court dismissed the UCL claims, stating without analysis that they were

19   based on the same facts as the failed Sherman and Cartwright Act claims.  Here, however, the

20   Court already determined that the claims survived dismissal as an original scheme.[215]

21   Accordingly, the dismissal of separate antitrust claims is not grounds for summary judgment.

22             **C.      GSI's "Unfair" Claim is Capable of Remediation.**

23             In a last-ditch effort to eliminate GSI's UCL claim, ISSI contends there is no remedy

---

████████████████████████████████████████████; Ex. 22, 4/3/15 ISSI DT, at 131:13-132:4, Ex. 46,
ISSI_0277877-78 at 77.
[212] *Id*., Ex. 16, ISSI_0165282-83, Ex. 17, ISSI_0165450-56, Ex. 18, ISSI_0165520-23.
[213] Mot. at 29:6-9.
[214] Dkt. 227 at 16:10-12.
[215] Dkt. 227 at 16:7-17.

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\258680456.8

GSI'S MSJ AGAINST ISSI
CASE NO. 13-CV-1081-PSG

1   available to GSI for violations of the "unfair" prong, "because there is nothing to enjoin."[216]  This

2   is incorrect. ████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████  This conduct can, and should, be enjoined by an

5   order requiring ISSI to cease working with UMI and return GSI's property.

6       ISSI contends an injunction is not warranted because the non-compete is unenforceable,

7   and expired, but ISSI is incorrect.  As described more fully in GSI's summary judgment motion

8   against UMI, the non-compete provision is valid under Colorado law.[217]  California courts

9   recognize the same trade secret exception as Colorado.  *See Bank of Am. v. Lee,* 2008 WL

10  4351348, at *5 (C.D. Cal. 2008); *Applied Mats., Inc. v. Advanced Micro-Fabrication Equip.*

11  *(Shanghai) Co.*, 630 F.Supp.2d 1084, 1090 n.7 (N.D. Cal. 2009).  ISSI ignores this exception in

12  its brief.  But, in the regular course of business, ISSI takes advantage of this exception to include

13  non-competes in its own design and licensing agreements, governed by California law.[218]

14      Moreover, it is significant that GSI is not seeking to enforce a non-compete within

15  California: GSI seeks to enforce a valid non-compete under Colorado, a state where such non-

16  competes are valid.  The only relief against ISSI is indirect – asking that ISSI cease assisting that

17  Colorado company with breaching the non-compete in Colorado.  ISSI chose to go to Colorado

18  and engage in conduct in Colorado which induced UMI to breach its non-compete agreement.  It

19  cannot violate California policy to enforce the laws of California, which prohibit ISSI from

20  interfering with a contract with is valid and lawful under the law selected by the parties.

21      Further, ISSI is incorrect that an injunction cannot extend the non-compete.  "[A] court

22  has equitable powers to enjoin defendants for a time beyond the expiration of covenants not to

23  compete to effectuate relief for the time they violated the covenants."  *Lamb-Weston, Inc. v.*

---

24  [216] It is unclear whether ISSI limits this argument to the claims under the "unfair" prong, or
    Section 17200 as a whole.  Regardless, GSI is entitled to injunctive relief for either claim.

25  [217] Dkt. 566, at 17:13-20:3; *see also Energex Enters., Inc. v. Anthony Doors, Inc.*, 250 F. Supp. 2d
    1278, 1281-83 (D. Colo. 2003); Dkt. 176 at 13 (applying Colorado's trade secret exception to

26  non-compete).  To the extent the result would be different under California law, the Colorado
    choice of law provision in the Agreement governs.  Dkt. 566 at 28, n. 155.

27  [218] Kim Decl., Ex. 1, P. Lasserre DT, at 267:3-268:13; *see also* Ex. 5, UMI_0012863-68 at 64
    (Section 1.2, including non-compete), Ex. 6, ISSI_0512506-16 at §9(1), Ex. 7, ISSI_0512651-65

28  at §10.6.

1   *McCain Foods, Ltd.*, 941 F.2d 970, 975 (9th Cir. 1991) (citing *Premier Indus. Corp. v. Tex.*

2   *Indus. Fastener Co.*, 450 F.2d 444, 448 (5th Cir. 1971)); *see also Pro Edge L.P. v. Gue*, 411 F.

3   Supp. 2d 1080, 1092 (N.D. Iowa 2006) (noting equity demands that those who breach covenants

4   are not rewarded, and extending non-compete); *JTH Tax, Inc. v. Noor,* 2012 WL 4473252, *4-5

5   (E.D. Va. Sept. 26, 2012) (extending non-compete).  It would be inequitable for ISSI and UMI to

6   evade the scope of the non-compete because this litigation extended beyond its term.

7           To the extent ISSI contends no injunction is necessary because ISSI voluntarily stopped

8   disparaging GSI, this Court need not assume that ISSI's conduct would not resume post-litigation,

9   when the Court is no longer watching.  *See Already, LLC v. Nike, Inc.,* — U.S. —, 133 S.Ct. 721,

10  727 (2013).  ISSI fails to show that its conduct would not resume.  Rather,

11  

12  

13  

14                                                                                                                      [220]

15  Thus, while ISSI has taken steps to improve its litigation position, it has no intention of competing

16  fairly.  An injunction would thus be proper.

17  **VII.    ISSI CANNOT PREVAIL ON ITS ESTOPPEL DEFENSE.**

18          ISSI is not entitled to summary judgment on this defense because the facts show that ISSI

19  knew of its misappropriation before GSI.  The essential ingredients of estoppel are (1) the party to

20  be estopped must be apprised of the facts; (2) it must intend that its conduct be acted upon; (3) the

21  other party must be ignorant of the true state of facts; and (4) the other party must rely on the

22  conduct to its injury.  *Longshore v. Cnty. of Ventura*, 25 Cal. 3d 14, 28 (1979).  The party seeking

23  to assert estoppel must prove all of the necessary elements by clear and convincing evidence.  *In*

24  *re Marriage of Brinkman*, 111 Cal. App. 4th 1281(2003).  Estoppel is a fact question to be

25  determined by the trial court in accordance with applicable law.  *DRG/Beverly Hills, Ltd. v.*

26  *Chopstix Dim Sum Cafe & Takeout III, Ltd.,* 30 Cal. App. 4th 54, 61 (1994); *see Driscoll v. City*

27  

28  [219] *See* Sections II.C & D, *supra*.
    [220] Dkt. 564, MSJ Ex. 22, at ¶¶ 57-58, 70-71; Kim Decl., Ex. 43, ISSI_0156044.

1   *of Los Angeles,* 67 Cal. 2d 297, 305 (1967).

2       **A.      GSI Learned of ISSI's Misconduct Only After Commencing Litigation.**

3       Equitable estoppel requires a showing of actual, not imputed or constructive, knowledge.

4   *Meyer v. Glenmoor Homes, Inc.*, 246 Cal. App. 2d 242, 264 (1966).  The party to be estopped

5   must have been fully advised of the facts.  *Interinsurance Exch. v. Velji*, 44 Cal. App. 3d 310, 319

6   (1975).  ISSI claims that GSI knew of ISSI's intentions in mid-to-late 2012.  This is untrue.  No

7   evidence exists that GSI actually knew that ISSI and UMI were working together in 2012.[221]

8

9

10

11

12   – GSI did not learn of the transfer until after the fact.[224]

13       **B.      GSI Had No Duty to Inform ISSI.**

14       When estoppel is based on silence or a failure to disclose a material fact, the party alleging

15   estoppel must show that a duty to disclose the fact existed.  *Moore v. State Bd. of Control*, 112

16   Cal. App. 4th 371, 385 (2003).  This requires "a showing of special circumstances, such as a

17   confidential or fiduciary relationship or an undertaking to provide advice by one who claims to be

18   informed and knowledgeable in the matter."  *Id.*  ISSI has failed to establish that GSI had any

19   duty to disclose.  ISSI states, without any legal support, that GSI assumed such a duty because its

20   contract with UMI included a provision prohibiting UMI from disclosing the nature of its

21   relationship with GSI in a press release.  This provision does not create a confidential or fiduciary

22   relationship between GSI and ISSI – competitors – nor a duty on GSI's part.  Courts are hesitant

23   to read a fiduciary duty in where none is expressly provided.  *See, e.g.,  River Colony Estates*

24   *Gen. P'ship v. Bayview Fin. Trading*, 287 F. Supp. 2d 1213, 1224 (S.D. Cal. 2003) (applying

25   _____

26   [221] Dkt. 624-1, Ex. Q.
    [222] Kim Decl., Ex. 56, 4/23/15 Didier Lasserre DT, at 45:8-19; Ex. 57, 5/31/13 Lasserre DT, at
    90:7-25, Ex. 15, Senechal DT, at 23:21-24:22; Ex. 58, GSI10544593-97 at 93.

27   [223] *Id.*, Ex. 59, GSI10568114-116; Ex. 56, 4/23/15 Didier Lasserre DT, at 14:16-16:2; Ex. 57,
    5/31/13 Didier Lasserre DT, at 77:5-25, 95:5-25, 96:20-97:16; Dkt. 624-1, Ex. Q.

28   [224] Dkt. 564, MSJ Ex. 75; Kim Decl., Ex 56, 4/23/15 Didier Lasserre DT, at 14:16-16:2.

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\258680456.8

GSI'S MSJ AGAINST ISSI
CASE NO. 13-CV-1081-PSG

California law).  Moreover, notwithstanding the provision, UMI informed ISSI of its "conflict."

ISSI hinges its estoppel argument on the purported "damning admission" of GSI's CEO, Lee-Lean Shu.[225]  However, the only "damning" thing about the "admission" is ISSI's failure to provide the proper context of the quotation.  Mr. Shu testified that GSI was not certain ISSI was involved with Atris, had no idea a contract existed (or was contemplated) between UMI and ISSI, and desired to remedy the situation by approaching GSI's former design partner, UMI, rather than the company making hostile acquisition bids.[226]

### C.   ISSI Knew the Relevant Facts and Did Not Rely to its Detriment.

Equitable estoppel requires that the party asserting estoppel be ignorant of material facts which the other party misrepresented or concealed.  The ignorance of the party asserting equitable estoppel must be both actual and permissible.  *Life v. Los Angeles Cnty.*, 227 Cal. App. 3d 894, 902 (1991).  Evidence must show that the party asserting estoppel not only lacked actual knowledge of the facts, but that he did not have notice of the facts sufficient to put a reasonably prudent person on inquiry.  *Cole v. City of Los Angeles*, 187 Cal. App. 3d 1369, 1374 (1986).

ISSI cannot meet this burden.  As described in Section II.G, the evidence shows that ISSI had *actual* knowledge of the facts and its wrongdoing before GSI did.  ISSI learned of the contract terms no later than January 2013,[227] and of the lawsuit in March 2013,[228] whereas GSI did not confirm ISSI's misconduct until discovery commenced.

Further, a party asserting equitable estoppel must also change its position in reliance on something said or done by the other party.  *Traders & Gen. Ins. Co. v. Pac. Emp'rs Ins. Co.*, 130 Cal. App. 2d 158, 164 (1955).  ISSI did not rely on GSI's silence to its detriment.  As described in Section II.G, ISSI received the last block of schematics and completed its transaction with UMI with full knowledge of GSI's claims.

### D.   Summary Judgment Is Justified In GSI's Favor on ISSI's Estoppel Defense.

A party may cross-move for summary judgment on an affirmative defense.[229]  As shown

---

[225] Motion at 14, 33.
[226] Dkt. 560-19 at 104:1-107:10.
[227] Kim Decl., Ex. 8, HARDEE000046-63 at 46.
[228] Dkt. 564, MSJ Ex. 75.
[229] *See, e.g., Negrete v. Allianz Life Ins. Co. of N. Am.,* 287 F.R.D. 590, 594 (C.D. Cal. 2014)

1   above, (1) ISSI was aware of the non-compete before GSI knew ISSI and UMI were working

2   together; (2) with full knowledge of GSI's claims, ISSI completed its transaction with UMI; and

3   (3) as a matter of law, GSI had no fiduciary or other special relationship with ISSI, a competitor,

4   giving rise to a duty to inform.  As such, GSI requests that this Court grant summary judgment in

5   its favor on ISSI's estoppel defense.

6   **VIII.   CONCLUSION.**

7         GSI respectfully requests that the Court deny ISSI's motion for summary judgment in its

8   entirety.  Further, to the extent Court is inclined to grant ISSI's motion for summary judgment,

9   GSI asks that the Court, pursuant to Federal Rule of Civil Procedure 56(d), defer considering the

10  motion or deny it with regard to information GSI expects to discover from a properly prepared

11  ISSI 30(b)(6) witness on topics such as ISSI's use of GSI's schematics, the Atris redesign, ISSI's

12  current Atris design, and ISSI's knowledge of the GSI-UMI non-compete agreement and

13  ownership provision.  Pursuant to this Court's Order, an additional ISSI 30(b)(6) deposition will

14  occur shortly on these topics.[230]  Finally, GSI requests that the Court enter summary judgment in

15  its favor on ISSI's equitable estoppel defense.

16  Dated:  June 19, 2015                    DLA PIPER LLP (US)

17

18                                          By  /s/ Brooke Killian Kim
                                               JEFFREY M. SHOHET
19                                             RAJIV DHARNIDHARKA
                                               BROOKE KILLIAN KIM
20                                             VERONICA L.JACKSON
                                               KELLIN CHATFIELD
21
                                               Attorneys for Plaintiff
22

23

---

24  (denying summary judgment motion and granting cross-motion for summary judgment on an
    affirmative defense); *Campbell v. PricewaterhouseCoopers, LLP*, 2009 WL 594998, at *1 (E.D.
25  Cal. Mar. 5, 2009) (noting that plaintiffs filed a summary judgment motion on an affirmative
    defense in September 2008 and the defendant filed a cross-motion for summary judgment on the
26  same affirmative defense in October 2008).
    [230] On June 11, 2015, ISSI offered to produce Paul Song (one of its 30(b)(6) designees) on June
27  16th or 17th.  However, the timeframe was unworkable due the present briefing schedule, GSI's
    motion for leave to file an amended complaint, and the need to oppose UMI's motion to
28  reconsider the Court's June 11 Order to produce the Hardee Document.