1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GSI TECHNOLOGY, INC., | Case No. 5:13-cv-01081-PSG |
| Plaintiff, | **ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER** |
| v. | |
| UNITED MEMORIES INC., et al., | |
| Defendants. | |
| | **(Re:  Docket Nos. 561, 563, 564, 566, 632, 650, 723, 726)** |

About three years ago, Cisco Systems, Inc. picked Defendant Integrated Silicon Solutions, Inc. over Plaintiff GSI Technology, Inc. for a contract to supply 1.2Gb reduced latency dynamic random access memory chips. Losing the bid was bad enough for GSI; even worse was learning that ISSI prepared its winning bid with the help of Defendant United Memories, Inc.—a former GSI partner. GSI responded with this suit against UMI, and later ISSI, essentially charging both UMI and ISSI with foul play. All three parties now seek summary judgment on a wide swath of claims and underlying issues that survived an initial set of dispositive motions. The parties also dispute certain evidence related to their summary judgment motions, GSI seeks sanctions for ISSI's alleged violation of this court's June 11, 2015 order, and ISSI seeks a protective order regarding the same.

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

Because the court finds certain issues may be resolved as a matter of law, the court GRANTS summary judgment that:

1.  ISSI's proposal of Nanya as the Atris chip foundry was neither a GSI trade secret nor misappropriated by ISSI.

2.  ISSI did not misappropriate any ISSI pricing data.

3.  ISSI's alleged misappropriation of GSI's purported circuit schematic trade secrets in February 2013 did not cause Cisco to choose ISSI's Atris bid in December 2012.

4.  GSI's "unlawful" Section 17200 claim is preempted.

5.  The disputed schematics were not available to UMI through reverse engineering.

The court also GRANTS GSI's motion to strike the declaration of Dennis Wilson and GRANTS-IN-PART ISSI's motion for a protective order. All other relief requested is DENIED.

**I.**

GSI is a Delaware corporation that designs, develops and markets high-performance computer memory, including static random access memory and reduced latency dynamic random access memory products.[1] UMI is a Colorado company that provides integrated circuit design and layout services.[2] UMI is a wholly-owned subsidiary of Taiwan-based ProMos Technologies, Inc.[3]

In 2007, GSI approached UMI with a proposal to design to provide design and layout services for a 576 Mb reduced latency DRAM chip to supply to Cisco.[4] A short while later, Cisco issued a request for information for a separate project, a 1.2 Gb RLDRAM chip that Cisco would later name "Atris."[5] After receiving the RFI, GSI contacted UMI to gauge its interest in aiding GSI with this

_____

[1] *See* Docket No. 196 at ¶ 4.

[2] *See id.* at ¶ 5.

[3] *See* Docket No. 109-3 ¶¶ 3,8.

[4] *See* Docket No. 568-8, Ex. 2; Docket No. 568-9, Ex. 3; Docket No. 623-7, Ex. A at 52:3-53:4.

[5] *See* Docket No. 82, Ex. A.

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

**United States District Court**
For the Northern District of California

1   project as well.[6] UMI told GSI that Cisco had approached it separately about Atris, and agreed with GSI

2   that the 576 Mb chip project and the Atris project were similar and involved the same DRAM

3   specification.[7] The parties decided to work together to try to leverage the two design projects.[8] At first,

4   the collaboration was a success: Cisco awarded GSI one of two Atris supply contracts.[9]

5          In 2008, GSI and UMI signed a formal agreement that focused on the 576 Mb chip work.

6   The agreement established six Project Milestones as well as a "Confidentiality Provision" governing

7   the use of any proprietary information exchanged by the parties: "The Receiving Party shall keep

8   in confidence all of the Disclosing Party's Confidential Information received by it. All Confidential

9   Information received by the Receiving Party shall be kept strictly confidential and shall not be used

10  or disclosed to any person or entity by the Receiving Party except as necessary to exercise its rights

11  and fulfill its obligations under this Agreement. The Receiving Party shall take all reasonable steps

12  to prevent unauthorized disclosure or use of the Disclosing Party's Confidential Information and to

13  prevent it from falling into the public domain or into the possession of unauthorized persons."[10]

14         Under an "IP Ownership Clause," GSI was to assume ownership of the product to be

15  designed and delivered by UMI: "GSI shall have sole ownership of all deliverables and the

16  Product, and all associated intellectual property rights [excluding only Project Patents owned by

17  UMI not applicable here] and all other works of authorship, information fixed in any tangible

18  medium of expression (whether or not protectable under copyright laws), inventions (whether or

19  _____

20  [6] *See id.*, Exs. A, B.

21  [7] *See id.*, Exs. A, B, L, N, O; Docket No. 568-16, Ex. 10.

22  [8] *See id.*, Exs. A, B, C;

23  [9] *See* Docket No. 568-15, Ex. 9.

24  [10]  Docket No. 196, Ex. 1 at § VI.1. "Confidential Information" is defined as "[a]ll non-public
    information that the party disclosing the information (the "Disclosing Party") designates at the time
25  of disclosure as being confidential, or if disclosed orally or visually is identified as such prior to the
    receiving party (the "Receiving Party") within thirty (30) days, or which, under the circumstances
26  surrounding disclosure, the Receiving Party knows or has reason to know should be treated as
    confidential without the need to be marked as "confidential." *Id.* at § I.1.
27

28

    Case No. 5:13-cv-01081-PSG
    ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-
    PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-
    PART MOTION FOR PROTECTIVE ORDER

United States District Court
For the Northern District of California

1   not protectable under patent laws), discoveries, designs, developments, suggestions, ideas,

2   improvements, know-how, and other intellectual property rights conceived, developed or reduced

3   to practice by GSI, alone or with others, during the course of the Project."[11]

4        The parties also included a non-compete clause. The non-compete reads:

5        [Except for the Product being designed and developed by UMI for GSI
         hereunder,] UMI agrees it shall not, directly or indirectly, design or develop, or
6        contribute to the design or development of, a Low Latency DRAM Product (as
         defined below) during the term of this Agreement. "Low Latency DRAM
7        Product" means a latency optimized and/or address rate optimized memory
         product that employs a capacitive charge-based memory cell technology,
8        including, but not limited to, RLDRAM and FCRAM products.[12]

9   The "term" of the Agreement is defined as beginning on the effective date of the Agreement and

10  ending "at the close of business on the day five (5) years from the Effective Date unless earlier

11  terminated by either party pursuant to this Article VII."[13]

12       Work on both the 576 Mb chip and Atris proceeded together.[14] UMI successfully met the

13  first four milestones set out in the agreement, but problems arose at the fifth milestone, which

14  required actual tests of the design specifications.[15] GSI was supposed to provide sufficient wafer

15  starts for UMI to conduct the chip testing before the testing commenced.[16] For reasons the parties

16  dispute, the materials were never produced.[17] In any event, after GSI learned that ProMos was

17  insolvent and was seeking money from the Taiwanese government, GSI grew concerned whether

18

19

20  _____

    [11] *Id.* at § III.1.

21
    [12] *Id.* at § III.6.
22
    [13] *Id.* at § VII.2.
23
    [14] *See* Docket No. 568-14 at UMI_0012352-53.
24
    [15] *See* Docket No. 1 at ¶¶ 24-27.
25
    [16] Docket No. 196, Ex. 1 at § II.1.2(a).
26
    [17] *See* Docket No. 82, Ex. V
27

28                                                4
    Case No. 5:13-cv-01081-PSG
    ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-
    PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-
    PART MOTION FOR PROTECTIVE ORDER

**United States District Court**
For the Northern District of California

1   UMI and ProMos could continue with the project.[18] UMI told GSI that ProMos believed that "the

2   current government strategy is to let the DRAM guys fail and then buy their assets after they go

3   bankrupt," which would include ProMos.[19] UMI also admitted that the future of the ProMos

4   foundry was uncertain.[20] Not looking to take any chances, GSI decided that it would not make

5   sense for UMI to continue designing the 576 Mb chip, which was designed specifically to be

6   manufactured by ProMos.[21]

7           After GSI told UMI that it was dropping the joint project, UMI offered to sell GSI all of the

8   Atris design work it had completed and maintained in a schematics database until that date for

9   $42,000.[22] GSI's Vice President of Marketing recommended to GSI's management team that GSI

10  make the purchase: "Work on the [Atris] design is continuing . . . Cadence schematic are now

11  complete from pads to core . . . We do not yet own those schematics. The proposed price for them

12  is $42k. They will pass on to the new owners of UMI unless we secure them."[23] GSI also

13  considered purchasing UMI outright.[24] During this exchange, GSI never told UMI that the

14  schematics database was confidential or was GSI's intellectual property.[25] GSI decided not to

15  purchase the database from UMI.

16

17

18  _____

19  [18] *See* Docket No. 568-39, Ex. 31; Docket No. 568-41, Ex. 33; Docket No. 623-7, Ex. A at 169:2-
    172:11, 255:21-256:16.

20
    [19] *See* Docket No. 82, Ex. AS.
21

22  [20] *See* Docket No. 623-7, Ex. A at 169:2-172:11, 250:2-5.

23  [21] *See* Docket No. 82, Ex. I. at 88:21-90:8, Ex. F. at 133:13-34.

24  [22] *See* Docket No. 109-1, Exs. G at 181:12-182:4; Ex. K at 132:8-24, 247:4-248:19, P, V-Z.

25  [23] *See id.*, Exs. V, Z.

26  [24] *See id.*, Ex. P.

27  [25] *See* Docket No. 109-3 ¶¶ 10-12.

28
    Case No. 5:13-cv-01081-PSG
    ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-
    PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-
    PART MOTION FOR PROTECTIVE ORDER

Several months later, UMI sent GSI a letter to formally terminate the 576 Mb Agreement 30 days after GSI's receipt of the letter.[26] UMI's letter purported to terminate because "[i]t is apparent that the intent of the agreement [no] longer exist[s] and that GSI does not plan to satisfy section II.1.2 (a) Provide sufficient wafer starts."[27] The letter also stated that "[t]o the best of [UMI's] knowledge, no GSI confidential information has been given to UMI by GSI. If this is not a true statement please identify the confidential material(s) and we will promptly return them to GSI."[28] GSI did not respond and continued on its own to develop both the 576 Mb chip and Atris. Ultimately, GSI selected a different foundry and process technology.[29] The redesign, however, delayed GSI's progress—GSI made the 576 Mb chip available for customer sampling only in May 2011.[30] By that time, Cisco told GSI that because of GSI's 576 Mb chip delays, it would not be using GSI as an Atris supplier.[31]

By 2012, Cisco became concerned that it did not have a second supplier for Atris and issued another RFI to find one.[32] Along with its competitor ISSI, GSI submitted a proposal in response to the new RFI, and the decision appears to have come down to a choice between the two based on foundry, price, schedule, and strength of supplier.[33] As negotiations between Cisco and both GSI and ISSI got underway, Anand Bagchi, a Cisco employee, called a meeting with

---

[26] *See* Docket No. 82-1, Ex. V.

[27] *Id.*

[28] *Id.*

[29] *See id.*, Ex. D at 78:4-79:3, Ex. I at 110:21-112:23.

[30] *See id.*, Ex. X.

[31] *See id.*, Ex. F at 180:24-181:24, 183:20-185:6; Ex. Y at 81:18-83:1.

[32] *See* Docket No. 560-7, Ex. A at 79:2-22; Docket No. 560-9, Ex. B at 210:14-211:5.

[33] *See* Docket No. 560-7, Ex. A at 79:2-22; Docket No. 560-9, Ex. B at 210:14-211:5; Docket No. 560-11, Ex. C at 127:10-129:22.

6

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

representatives of GSI and sought a variety of details about GSI's Atris bid.[34] Unbeknownst to

GSI, Bagchi already had an offer to leave Cisco and join ISSI, which he accepted.[35] Bagchi then

became ISSI's point person on the Atris bid negotiations, and even continued to receive a number

of emails from Cisco that addressed GSI's bid.[36]

Around the same time, ISSI approached UMI and ProMos about helping with its Atris bid.

ISSI was well aware of UMI's work for Cisco.[37] ISSI told Cisco that it was "co-developing" the

Atris chip with UMI, which would help it "accelerate time-to-market."[38] UMI participated in

several pitch meetings between ISSI and Cisco.[39] Sometime during the bidding process, ISSI

expressed interest in acquiring GSI, but talks were unsuccessful and the idea was abandoned.[40] In

discussion with others, ISSI predicted that GSI would not win a pending lawsuit with Cypress

Semiconductor.[41] After reviewing both GSI and ISSI's proposals, including Cisco's revised

proposal to use Nanya Technology Corporation rather than Powerchip Technology Corporation as

its foundry, Cisco picked ISSI.[42]

When Nanya subsequently complained to ISSI that it could not work with UMI, a ProMos

subsidiary, ISSI hired UMI employees to work on the project.[43] ISSI and UMI then executed an

---

[34] *See* Docket No. 564-13, Lasserre Decl. at ¶ 6.

[35] *See* Docket No. 568-78, Ex. 65.

[36] *See* Docket No. 560-27, Ex. K at 94:10-99:25, 108:12-121:12.

[37] *See* Docket No. 570-9, Ex. 4 at 0160845-86; Docket No. 570-35, Ex. 25 at 65:25-67:17, 70:4-11.

[38] *See* Docket No. 82-1, Ex. AC.

[39] *See, e.g.*, Docket No. 570-69, Ex. 59; Docket No. .

[40] *See* Docket No. 560-13, Ex. D at 33:9-34:22.

[41] *See* Docket No. 560-13, Ex. D at 208:18-215:2.

[42] *See* Docket No. 560-35, Ex. O at 117:2-119:23; 126:2-131:8.

[43] *See* Docket No. 560-23, Ex. I at 185:7-186:5.

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-
PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-
PART MOTION FOR PROTECTIVE ORDER

Asset Transfer Agreement, whereby five UMI employees "temporarily" resigned from UMI and were offered work at ISSI with an expected end date of October 30, 2013, or the approximate end of the employees' expected work on the Atris project.[44] Those five employees nevertheless continued to maintain ties with UMI. ISSI would pay their salaries and benefits, but each employee would continue to work in their UMI office space, using their UMI telephone number and computer.[45] The Asset Transfer Agreement also transferred an Atris project database compiled by UMI in 2008 and 2009.[46]

GSI soon discovered that ISSI had been working with UMI and filed this suit against UMI for breach of contract, violation of California's Unfair Competition Law and a declaratory judgment as to the rights conferred by the 576Mb Agreement.[47] Among other things, GSI claimed that UMI transferred to ISSI nearly 300 GSI schematics developed under the 576 Mb Agreement.[48] GSI later amended its complaint, adding ISSI as a party and four more state law causes of action: fraud, false promise, misappropriation of trade secrets and intentional interference with prospective economic advantage.[49] After the court granted-in-part Defendants' motion to dismiss, a subset of claims remain: GSI's claims for unfair competition and intentional interference with prospective

---

[44] *See* Docket No. 570-76, Ex. 66.

[45] *See* Dkt. 82-1, Ex. AI at ¶ 7.1 (indicating that the employees have only "temporarily" resigned from UMI); Ex. AJ; Ex. U at 181:9-16, 184:24-186:13, 186:24-187:16, 189:19-190:21, 193:14-194:25, 195:10-196:11, 197:1-18, 208:24-209:12, 211:18-212:9; *see also, e.g.*, Docket No. 82-1, Ex. AT, at UMI_0012974 (tying "expected end date" to Atris project end date of October 30, 2013).

[46] *See* Docket No. 570-76, Ex. 66.

[47] *See* Docket No. 1. GSI moved for a temporary restraining order against UMI, which the court denied. *See* Docket No. 24. The court later denied GSI's motion for preliminary injunction. *See* Docket Nos. 160, 176, 203.

[48] *See* Docket No. 570-31, Ex. 22 at ¶¶ 51-54, 57, 63-69.

[49] *See* Docket No. 159.

8

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

1    economic advantage against ISSI and GSI's claim for misappropriation of trade secrets against

2    both ISSI and UMI.[50]

3          UMI filed an initial motion for summary judgment on GSI's claim that it misappropriated

4    GSI's secrets, focusing exclusively on GSI's underlying ownership of the 576 Mb trade secrets

5    GSI identified, and GSI's reasonable efforts to preserve these secrets.[51] The court denied UMI's

6    motion, and denied UMI's later motion for reconsideration.[52]

7          All parties now seek summary judgment.[53] GSI further requests that the court strike the

8    declaration of Theresa Chen, filed in support of ISSI's motion for summary judgment,[54] and the

9    declaration of Dennis Wilson,[55] filed in support of UMI's motion for summary judgment, and grant

10    sanctions against ISSI for failure to properly respond to GSI's interrogatory no. 13.[56] As to

11    interrogatory no. 13, ISSI moves for a protective order.[57]

## II.

13          This court has jurisdiction under 28 U.S.C. § 1331. The parties further consented to the

14    jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[58]

---

[50] *See* Docket No. 227 at 17. The court dismissed GSI's federal RICO and antitrust claims but retained supplemental jurisdiction under 28 U.S.C. § 1367.  *See id.* at 6-11.

[51] *See* Docket No. 320.

[52] *See* Docket Nos. 320, 450, 554, 717.

[53] *See* Docket No. 561; Docket No. 560-5 at 1; Docket No. 564; Docket No. 570-5 at 1; Docket No. 563-4 at 1; Docket No. 566; Docket No. 568-5 at 1.

[54] *See* Docket No. 632.

[55] *See* Docket No. 650.

[56] *See* Docket No. 723.

[57] *See* Docket No. 726.

[58] *See* Docket No. 236 at 11.

9

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

*(left margin, vertical text)* **United States District Court** For the Northern District of California

United States District Court
For the Northern District of California

1    Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no

2  genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

3  law." Material facts are those that may affect the outcome of the case.[59] A dispute as to a material

4  fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

5  non-moving party.[60] All evidence must be viewed in the light most favorable to the non-moving

6  party.[61] At this stage, a court "does not assess credibility or weigh the evidence, but simply

7  determines whether there is a genuine factual issue for trial."[62] Initially, the moving party bears the

8  burden to show that no genuine issue of material fact exists.[63] If this burden is met, the burden

9  shifts to the non-moving party.[64] Applying these standards to the claims, defenses and evidence in

10  the record, no reasonable jury could dispute a discrete set of issues contested by the parties, as

11  outlined below.

12                                              **III.**

13    ISSI seeks summary judgment on: (1) GSI's trade secret claims as to the 2012 Atris bid; (2)

14  GSI's technology trade secret claims; (3) GSI's "unlawful" Section 17200 claim and its tortious

15  interference with prospective economic advantage claim; (4) GSI's "unfair" Section 17200 claim;

16  and (5) ISSI's estoppel defense.[65] A few discrete issues within these topics are not in genuine

17  dispute; the rest are.

---

[59] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that
may affect the outcome of the suit under governing law will properly preclude the entry of
summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[60] See id.

[61] *See Anderson*, 477 U.S. at 248; *see also Bierman v. Int'l Bus. Mach. Corp.*, Case No. 10-cv-
4199-PJH, 2012 WL 506562, at *5 (N.D. Cal. Feb. 15, 2012).

[62] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

[63] *See Celotex Corp. v. Caltrett*, 477 U.S. 317, 323-24 (1986).

[64] See *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

[65] *See* Docket No. 561; Docket No. 560-5 at 1.

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-
PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-
PART MOTION FOR PROTECTIVE ORDER

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*First*, no reasonable jury could find that proposing Nanya as the Atris chip foundry is a GSI trade secret that ISSI misappropriated after Bagchi joined ISSI from Cisco. To establish that ISSI's switch to Nanya misappropriated a GSI trade secret, GSI must establish that ISSI did not independently derive the idea.[66] GSI admits that Nanya and Powerchip were the only two viable foundry choices.[67] GSI also admits that until Cisco made it clear that it would not accept it, GSI had long proposed Powerchip's 63 nanometer foundry technology, including in the proposals referenced in the emails that Bagchi received.[68]

Critically, there is no dispute that by the third quarter of 2012, Cisco expressed concerns about using Powerchip and asked ISSI if it could use the Nanya foundry in July 2012, well before Bagchi joined ISSI in October 2012 and allegedly conveyed GSI's bid information.[69] GSI itself recognized Cisco's concerns.[70] When Cisco made this request, ISSI already was using Nanya for another project and began investigating switching the Atris project to Nanya to stay in Cisco's good graces.[71] While ISSI did not formally switch its proposal to Nanya until later, ISSI's shift towards Nanya is reflected in August 2 and October 3, 2012 emails.[72] On September 27, 2012,

---

[66] *See* Cal. Civ. Code § 3426.1(a) (explicitly excluding independent derivation from the acts that may constitute misappropriation); *Sargent Fletcher, Inc. v. Abie Corp.*, 110 Cal.App.4th 1658, 1659 (2003).

[67] *See* Docket No. 560-15, Ex. E at 56:20-57:14.

[68] *See* Docket No. 570-72, Ex. 62.

[69] *See* Docket No. 560-7, Ex. A at 92:25-93:13, 289:7-19.

[70] *See* Docket Nos. 560-13 at 63:15-64:23 and 560-19 at 66:2-11, 69:1-24.

[71] *See* Docket No. 560-25, Ex. J at 306:14-311:8; Docket No. 560-51, Han Decl.; Docket No. 560-53, Howarth Decl. at ¶ 6.

[72] *See* Docket No. 560-25, Ex. J at 308:24-311:8 (Aug. 2, 2012; "K.Y. told me Nanya will be the foundry Fab."), 306:14-308:23 (Oct. 3, 2012; ISSI told United Memories, "From the process point of view, we are leaning towards NTC 42-nanometers."); Docket No. 560-53, Ex. A at ISSI_0481478 (October 3, 2012; an ISSI executive wrote, "I suggest to have Cisco project to be on NTC's fab ! We need to have backup source in case PSC experience trouble and this might be the good candidate to try it out !"; ISSI's CEO responded, "I agree. Cisco prefers NTC, and this will be

11

United States District Court
For the Northern District of California

Cisco asked ISSI to confirm that Nanya would "support the foundry business."[73] By October 5, 2012, ISSI asked Nanya for its design kit "[a]s early as possible" and "by end of Oct." to evaluate whether Nanya's design information could meet "the product spec."[74] GSI's own Vice President testified that using Powerchip or Nanya for foundry services is not GSI's intellectual property.[75] In short, even if Cisco's foundry preference could be somehow be claimed as a trade secret belonging to GSI, GSI offers nothing to disprove that ISSI independently derived its choice to propose Nanya.[76]

   *Second*, no reasonable jury could find that ISSI misappropriated any GSI trade secret in its pricing proposal to Cisco or that any such misappropriation influenced Cisco's decision. GSI alleges ISSI acquired GSI's pricing proposal in October 2012 when Bagchi joined ISSI and later received the Cisco emails, and then used the information to raise ISSI's price but still keep it lower than GSI's.[77] Bagchi may have coordinated ISSI's bid revision process[78] and have known GSI's pricing proposal when ISSI revised its bid.[79] But throughout 2012 ISSI's prices were always lower than GSI's,[80] both before and after Bagchi joined:

---

a good opportunity to work with them on design and provide another foundry for long-term support.").

[73] Docket No. 560-55, Ex. B at ISSI_0268496-97, Ex. C. at ISSI_0244405-06.

[74] Docket No. 560-51, Ex. B at ISSI_0493128-29; Docket No. 560-49, Ex. A at ISSI_0493128-29.

[75] *See* Docket No. 560-15, Ex. E at 53:1-21; Docket No. 560-13, Ex. D at 80:8-18.

[76] *Cf. CQ, Inc. v. TXU Mining Co., L.P.*, 565 F.3d 268, 275 (5th Cir. 2009) (finding no trade secret in strategic recommendation between two generally known alternatives).

[77] *See* Docket No. 629-4 at 7-10.

[78] *See* Docket No. 629-29, Ex. 22 at 138:25-139:20.

[79] *See* Docket No. 629-8, Ex. 3 at 272:2-12. In the absence of imminent harm, mere possession of trade secrets is not enough. *See FLIR Sys., Inc. v. Parish*, 174 Cal. App. 4th 1270, 1279 (2009).

[80] *See* Docket No. 560-47, Ex. F at 0155469; Docket No. 560-31, Ex. M at 10099382.

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

| Quarter | ISSI | GSI |
|---------|------|-----|
| 1 | ███ | ███ |
| 2 | ███ | ███ |
| 3 | ███ | ███ |
| 4 | ███ | ███ |
| 5 | ███ | ███ |
| 6 | ███ | ███ |
| 7 | ███ | ███ |
| 8 | ███ | ███ |
| 9 | ███ | ███ |
| 10 | ███ | ███ |
| 11 | ███ | ███ |
| 12 | ███ | ███ |

There is no evidence that ISSI ever considered prices as high as the lowest quarterly price that GSI proposed (*i.e.*, ███).

More importantly, GSI offers no evidence whatsoever—circumstantial or otherwise—that Bagchi disclosed GSI's pricing to anyone else at ISSI, let alone to Ron Kalakuntla, the ISSI executive responsible for raising ISSI's prices in the final Cisco bid.[81] Nor does GSI offer any evidence that any particular gap between GSI and ISSI's price was key to winning the bid. Mere speculation is not enough.[82]

***Third***, no reasonable jury could find that a substantial factor in GSI's losing the Cisco bid in 2012 was ISSI's alleged acquisition of its trade secrets when it bought UMI's schematics database in 2013. An alleged misappropriation must cause the claimed injury,[83] and it must be a

---

[81] *See* Docket No. 560-33, Ex. N at 294:1-25; Docket No. 560-27, Ex. K at 268:23-275:6.

[82] *See Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

[83] *See, e.g.*, *Integral Dev. Corp. v. Tolat*, No. C 12-06575 JSW, 2014 WL 721844 (N.D. Cal. Feb. 24, 2014).

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

1    substantial factor.[84] The "substantial factor standard is a relatively broad one, requiring only that

2    the contribution of the individual cause be more than negligible or theoretical."[85]

3         The undisputed evidence from Cisco is there was a "strong consensus on ISSI/Nanya," that

4    "the pricing was just hugely different," and that "pricing" and "perceived risk of the supply

5    chain"—*i.e.*, the foundry choice—were factors in the decision.[86] Cisco explained that ISSI

6    proposing Nanya "was an advantage to ISSI," "because it spread our exposure to another foundry":

7    that is, the first source Atris supplier might use Powerchip.[87] Cisco was concerned about the

8    Powerchip foundry, and thought that Nanya was in a better financial condition.[88] "Pricing [wa]s

9    always important for Cisco," and "ISSI ha[d] a more competitive pricing than GSI."[89] And while

10   GSI proposed a faster time-to-market schedule, this timeline was less important to Cisco, because

11   Cisco already had a first-source supplier in place.[90] ISSI's having UMI on the design team also was

12   a major factor.[91] When asked why Cisco selected ISSI, Cisco answered that it was due to price, the

13   foundry selection of Nanya, and that Cisco had "confidence" that ISSI "has the technical

14   capability."[92] Cisco felt that GSI lacked DRAM experience compared to ISSI.[93]

---

15   [84] *See* CACI § 4401 (model trade secret jury instruction); Witkin, Summary of California Law,
16   *Torts* § 18 (2014).

17   [85] *People v. Holmberg*, 195 Cal. App. 4th 1310, 1321 (2011); *see also Premier Displays & Exhibits
     v. Cogswell*, No. SACV 09–354 JVS (ANx), 2009 WL 8623588, at *10 (C.D.Cal. Dec. 23, 2009).
18

19   [86] *See* Docket No. 560-35, Ex. O at 126:2-127:3, 117:2-119:23 ("a large part was based on pricing,
     and a large part was based on the full supply chain that the vendor had.")
20

21   [87] *Id.* at 130:12-131:14.

22   [88] *See* Docket No. 560-29, Ex. L at 15:6-19; 32:17-33:17.

23   [89] *Id.* at 41:11-14; 44:25-45:5.

24   [90] *Id.* at 47:8-48:4; 48:19-49:2.

25   [91] *Id.* at 68:22-69:18.

26   [92] *Id.* at 51:13-52:19.

27   [93] *Id.* at 83:12-84:17.

28
Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-
PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-
PART MOTION FOR PROTECTIVE ORDER

*United States District Court*
For the Northern District of California

GSI alleges that ISSI knew it would lack the technical capabilities to bid for the Atris contract without GSI's schematics.[94] But even if that were undisputed, it would not establish that any future misappropriation influenced Cisco's decision, nor could it. Cisco would have needed to be aware that ISSI would use GSI's trade secrets to develop its Atris chip. None of GSI's evidence supports that inference. The best GSI can do is point to evidence that Cisco knew that ISSI intended to partner with UMI and Cisco viewed UMI's prior experience designing RLDRAM chips as a positive feature of ISSI's bid.[95] Valuing UMI's experience designing chips for GSI is a far cry from believing that UMI would illegally use GSI trade secrets on future projects.[96] There is simply no evidence of any such causation.

GSI's reliance on *San Jose Construction, Inc. v. S.B.C.C, Inc.*[97] is not helpful. In that case, the defendant hired one of the plaintiff's former employees.[98] The employee allegedly pilfered the plaintiff's trade secrets to help poach the plaintiff's clients.[99] The alleged misappropriation occurred before the plaintiff lost clients but arguably caused injury by reducing transition delays normally associated with clients switching companies.[100] The court found a triable issue as to whether the reduction in delays was caused by misappropriation or by the clients' affinities for the employee.[101] The case stands for the unremarkable notion that a party's presentation of evidence supporting an alternative explanation for an injury does not preclude a reasonable jury from finding

---

[94] *See* Docket No. 629-4 at 21-22.

[95] *See* Docket No. 229-33, Ex. 25 at 68:22-69:25.

[96] *See Morlife, Inc. v. Perry*, 66 Cal. Rptr. 2d 731, 737 (1997) (distinguishing trade secrets from the "general knowledge, skill, and experience" gained from working for prior employers).

[97] 67 Cal. Rptr. 3d 54 (2007).

[98] *See id.* at 57-60.

[99] *See id.* at 60-61.

[100] *See id.*

[101] *See id.* at 64-65.

15

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

United States District Court
For the Northern District of California

that misappropriation caused the injury.[102] But nothing in *San Jose Construction* suggests causation is a triable issue where a plaintiff presents no evidence that future misappropriation caused its injury.

      *Fourth*, GSI's "unlawful" Section 17200 claim is preempted. To prevail on its claim, GSI must prove, among other things, an independently unlawful act.[103] At the same time, California law creates a comprehensive scheme to regulate claims concerning alleged misuse of confidential business information.[104] As a result, the California UTSA preempts any "claims that are based on the same nucleus of facts as the misappropriation of trade secret claims for relief."[105]

      To avoid this fate, GSI characterizes the underlying offense as conversion of "273 *non-trade* secret schematics" that GSI owns under the 576 Mb Agreement and that have value "because they are tangible documents that provide the blueprint for GSI's chip."[106] Even if the contract gave GSI ownership of the electronic schematic files under the terms of the agreement—an issue the court previously found to be in genuine dispute[107]—an ownership contract is insufficient to prevent preemption of tort claims like the "unlawful claim" Section 17200 here.[108] In addition, a party cannot escape the UTSA's preemptive effect merely by labeling the information it seeks to protect

---

[102] *See id.* (reversing summary judgment because a triable issue existed as to whether misappropriation or some alternative explanation caused the plaintiff's injury ).

[103] *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-40 (1999) ("By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable.") (citing *State Farm Fire & Cas. Co. v. Superior Court*, 53 Cal. Rptr. 229, 234 (1996)); *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 902 P.2d 740, 751 (1995).

[104] *See* Cal. Civ. Proc. Code §§ 3426-3426.11.

[105] *See* Cal. Civ. Code § 3426.7(b); *see also Lifeline Food Co. v. Gilman Cheese Corp.,* Case No. 5:15-CV-00034-PSG, 2015 WL 2357246, at *5 (N.D. Cal. May 15, 2015).

[106] *See* Docket No. 629-4 at 25-26.

[107] *See* Docket No. 450.

[108] *See* Cal. Civ. Code § 3426.7(b).

16

United States District Court
For the Northern District of California

1    as something other than a trade secret.[109] While GSI professes a desire to protect its physical, rather

2    than any intellectual, property, its claim plainly arises from the same nucleus of fact as a potential

3    trade secret claim. GSI cites to *Mattel Inc. v. MGA Entertainment, Inc.*, in which the court held that

4    UTSA preemption does not preclude conversion claims predicated on dominion over physical

5    works.[110] What GSI ignores, however, is the key paragraph in *Mattel* that explains that preemption

6    still applies if the physical works lack any value separate from the information contained within

7    them.[111] There is no evidence in the record here that the schematics have any value separate from

8    the information that they contain.[112]

9         GSI's assertion that its "unfair" Section 17200 claim can support its "unlawful" Section

10   17200 similarly is unpersuasive. The "unfair" prong and "unlawful" prongs of Section 17200 are

---

[109] While certain states take a different approach, California courts follow the majority view. *See, e.g.*, *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.*, 90 Cal. Rptr. 3d 247, 264 (2009); *Silvaco Data Sys. v. Intel Corp.*, 109 Cal. Rptr. 3d 27, 53 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 246 P.3d 877 (2011) (same). The majority of federal decisions applying California law follow *K.C. Multimedia*, including *SunPower Corp. v. SolarCity Corp.*, No. 12–CV–00694–LHK, 2012 WL 6160472, at *1, 3-9 (N.D. Cal. Dec. 11, 2012) (comprehensive preemption ruling rejecting rulings that pre-dated or ignored *Silvaco* and *K.C. Multimedia*); *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 986-87 (C.D. Cal. 2011) ("UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret."); *Wang v. Palo Alto Networks*, No. 12–05579 WHA, 2013 WL 415615, at *4 (N.D. Cal. Jan. 31, 2013) (rejecting ruling that "conflicts with *K.C. Multimedia*"). *See also In re Salazar*, 470 B.R. 557, 561 (S.D. Cal. 2012) (quoting *Hayes v. County of San Diego*, 658 F.3d 867, 870 (9th Cir. 2011)) ("In deciding an issue of state law, when there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it.").

[110] 782 F. Supp. 2d 911, 997 (C.D. Cal. 2011).

[111] *See id.*

[112] *Cf. NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834-35 (N.D. Cal. 2014); *SunPower Corp. v. SolarCity Corp.*, No. 12–CV–00694–LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012); *AirDefense, Inc. v. AirTight Networks, Inc.*, No. C 05-04615JF, 2006 WL 2092053 (N.D. Cal. Jul. 26, 2006); *Digital Envoy, Inc. v. Google*, 370 F. Supp. 2d 1025 (N.D. Cal. 2005); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210 (2010).

17

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

both means of establishing that unfair competition has occurred.[113] Once unfair competition is established, the remedies afforded to a claim relying on either prong are identical.[114] Usually when a party asserts both "unfair" and "unlawful" Section 17200 claims, the conduct that forms the basis for each claim is different. As a result, a party may be able to receive different remedies from the two claims.[115] But where, as here, an "unfair" Section 17200 claim underlies the "unlawful" Section 17200 claim, both claims establish that the same conduct is unfair competition. In that scenario, any injunction or restitution recoverable through the "unlawful" claim already is recoverable through the "unfair" claim.[116]

As for the remainder of GSI's claims against ISSI, genuine disputes remain that require a trial to sort out. For example, a genuine dispute exists as to whether ISSI acquired GSI's "commingled" circuit schematics while having reason to know that the information was a trade secret.[117] ISSI is right that a party has reason to know that information is a trade secret only if known facts would have made a reasonably prudent acquirer suspicious.[118] The knowledge that GSI previously worked with UMI would not by itself be enough for a reasonably prudent person to

---

[113] *See* Cal. Bus. & Prof. Code § 17200.

[114] *See id.* at §§ 17206-07.

[115] *See* Cal. Bus. & Prof. Code. § 17205 (remedies under Section 17200 are cumulative).

[116] In contrast, there is precedent for parties to base TIPER claims on underlying Section 17200 violations. *See Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1197 (S.D. Cal. 2008). Because GSI shows there is a dispute of material fact as to its Section 17200 "unfair" claim, as discussed below, ISSI is not entitled to summary judgment on GSI's TIPER claim.

[117] *See* Cal. Civ. Code § 3426.1(a)-(b); *Ajaxo Inc. v. E*Trade Grp., Inc.*, 135 Cal. App. 4th 21, 66 (2005).

[118] *See* Cal. Civ. Code § 19; *Ralph Andrews Prods., Inc. v. Paramount Pictures Corp.*, 271 Cal. Rptr. 797, 800 (1990), *modified* (Aug. 8, 1990) (citing *Hobart v. Hobart Estate Co.*, 159 P.2d 958 (1945)) (equating facts that a reasonably prudent person would have suspected as information that the party should have known); *Mediostream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012) (holding that plaintiff failed to allege that purchaser had reason to know that information it acquired from co-defendant included the plaintiff's trade secrets).

18

suspect that UMI would transfer GSI trade secrets.[119] But GSI presents more than enough evidence for a reasonable jury to find that by the time the schematics were transferred, ISSI's employees—the same designers who worked for UMI on GSI's Atris project—knew that they were getting UMI secrets.[120] A company is deemed to have notice of any facts its employees or agents "ought, in good faith and the exercise of ordinary care and diligence, to communicate to the [company]."[121]

Similarly, a material dispute exists as to whether ISSI's combined conduct was "unfair" under Section 17200 by threatening competition in the RLDRAM market. An unfair business practice is conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."[122] GSI presents evidence that goes

---

[119] In California, parties cannot substantiate trade secret misappropriation claims against a competitor solely on the basis that a former employee now works for a competitor. *See, e.g.*, *Cypress Semi. v. Maxim Integrated Prod., Inc.*, 186 Cal. Rptr. 3d 486, 504 (2015).

[120] *See, e.g.*, Docket No. 629-12, Ex. 8 at HARDEE000046-63; Docket No. 629-44, Ex. 37. *See also* Docket No. 570-76, Ex. 66; Docket No. 570-77, Ex. 67. For this same reason, even if California law offers ISSI a safe harbor under Section 3426.1(b)(2)(C), ISSI also is not entitled to summary judgment that it qualifies for the safe harbor provision, nor is it entitled to summary judgment that it did not engage in "willful and malicious misappropriation."  *See* Docket No. 560-5 at 23-24. *See Ajaxo*, 135 Cal. App. 4th at 65-67.

[121] Cal. Civ. Code § 2332. *See also Hatfield v. Levy Bros.*, 18 Cal. 2d 798, 806 (1941) (where employee, acting within the scope of his employment, had knowledge, the employer cannot assert he had no knowledge; knowledge is imputed). If the employee had such a duty, the fact that the employee did not actually communicate the information is irrelevant; knowledge is imputed. *O'Riordan v. Fed. Kemper Life Assur.*, 36 Cal. 4th 281, 288 (2005); *People v. Forest E. Olson, Inc.*, 137 Cal. App. 3d 137, 139-40 (1982); *Allergan, Inc. v. Merz Pharms.*, No. SACV 11–446 AG (Ex), 2012 WL 781705, at *12-13 (C.D. Cal. Mar. 9, 2012) (holding employer liable for misappropriation).

[122] *See Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105,1133-34 (2014) (stating rule); *Wilson v. Hynek*, 207 Cal. App. 4th 999, 1007-08 (2012). *See also Cel-Tech*, 973 P.2d at 544-68 (applying Section 17200 by assessing the impact of alleged conduct on market competition); *ProconGPS, Inc. v. Star Sensor LLC*, Case No. 11-cv-03975-SI, 2011 WL 5975271, at *3 (N.D. Cal. Nov. 29, 2011) ("Harm to a competitor is not the same as harm to competition, and Skypatrol must allege conduct that significantly threatens or harms competition in order to state a claim.") (citing *Watson Labs, Inc. v. Rhone-Poulenc, Inc.*, 178 F. Supp. 2d 1099, 1118-19 (C.D. Cal. 2001)).

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

1    beyond ISSI leveraging GSI trade secret assets to cement its position with Cisco, including ISSI's

2    licensing practices and acquisition strategy.[123]  GSI also presents evidence that ISSI knew UMI

3    could not design a RLDRAM chip for ISSI because of its "conflict" arising from its work with

4    GSI.[124] As shown in documents produced by ISSI (and former UMI) employee Kim Hardee, there

5    is evidence that ISSI knew of the exact terms of the 576Mb Agreement, had a marked up copy of

6    the Agreement in January 2013, and specifically made notes on its copy of the Agreement about its

7    ownership and non-compete provisions.[125] In addition, while GSI does not contest that its

8    disparagement allegations are insufficient to support a Section 17200 claim by themselves, GSI

9    offers evidence that ISSI's allegedly disparaging remarks are part of a pattern of conduct that

10   shows intent to exclude GSI from the RLDRAM market. A reasonable jury could infer from this

11   combined conduct that ISSI violated Section 17200's "unfair" prong.[126]

12        There also are genuine issues regarding ISSI's estoppel defense, including whether GSI had

13   a duty to disclose the existence of its non-compete agreement with UMI.[127] As just one example,

14   ISSI argues that, even though GSI and ISSI did not have a fiduciary relationship, GSI delegated to

15   itself the duty to inform others about the non-compete when it precluded UMI from doing so

16   through a non-disclosure agreement.[128] But ISSI cites no case law supporting its position that the

17   ─────────────────

18   [123] *See* Docket No. 629-4 at 28-29.

19   [124] *See* Docket No. 570-9, Ex. 4 at ISSI_0228486.

20   [125] *See* Docket No. 629-12, Ex. 8.

21   [126] ISSI also argues it is entitled to summary judgment on GSI's unfair competition claim because
     GSI cannot prove ISSI had the knowledge or intent to interfere with the GSI-UMI non-compete
22   agreement. *See* Docket No. 654-4 at 14-17. But Section 17200 does not require proof of intent,  *see*
     *Cel-Tech*, 973 P.2d at 533, 568 (affirming the lower court's decision that unfair competition claims
23   do not require proof of "injurious intent"), and GSI's Section 17200 claim is based on conduct
     beyond ISSI's alleged interference with the GSI-UMI non-compete agreement.

24   [127] *See Moore v. State Bd. of Control*, 112 Cal. App. 4th 371, 385 (2003) (requiring "a showing of
25   special circumstances, such as a confidential or fiduciary relationship or an undertaking to provide
     advice by one who claims to be informed and knowledgeable in the matter").
26

27   [128] *See* Docket No. 654-4 at 19-20.

                                                    20
28   Case No. 5:13-cv-01081-PSG
     ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-
     PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-
     PART MOTION FOR PROTECTIVE ORDER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

existence of a non-disclosure agreement creates an obligation to disclose the object of the non-disclosure agreement. That is unsurprising; nondisclosure agreements would have little use if they automatically created a duty to disclose the material they purport to keep secret. There also is a genuine dispute whether ISSI knew certain relevant facts, as discussed above, such that it could be fairly be said to have relied on GSI's silence to its detriment.[129]

## IV.

GSI in turn requests summary judgment against ISSI on (1) ISSI's affirmative claim seeking a bad faith determination and related attorney's fees and costs, pursuant to Cal Civ. Code § 3426.4; and (2) ISSI's "readily ascertainable" affirmative defense.[130] Once again, genuine issues remain in dispute that preclude summary judgment.

**First**, summary judgment is not warranted as to ISSI's affirmative claim for a bad faith determination and related attorneys' fees and costs.[131] A trade secret defendant is entitled to fees and costs when the plaintiff has (1) initiated or (2) maintained a trade secret lawsuit in "bad faith."[132] The statute serves to punish trade secret plaintiffs who bring or maintain cases for ulterior, anticompetitive purposes.[133]

In California, a two-prong test is used to establish bad faith: (1) objective speciousness of the claim, and (2) subjective bad faith in bringing or maintaining the claim.[134] "Objective speciousness exists where the action superficially appears to have merit but there is a complete lack

---

[129] See *Life v. Los Angeles Cnty*, 227 Cal. App. 3d 894, 902 (1991); *Traders & Gen. Ins. Co. v. Pac. Emp'rs Ins. Co.*, 130 Cal. App. 2d 158, 164 (1955).

[130] See Docket No. 570-5 at 1.

[131] See Cal. Civ. Code § 3426.4.

[132] *Id.*

[133] See *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1262 (2002) (noting that the legislature enacted the statute to deter "specious" actions).

[134] *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1275 (2009).

21

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

United States District Court
For the Northern District of California

1   of evidence to support the claim."[135] A plaintiff's "reasonable suspicion" of wrongdoing does not

2   prevent a finding of bad faith[136] and nor do instances of wrongdoing on the part of a defendant.[137]

3   Subjective bad faith "means the action was commenced or continued for an improper purpose, such

4   as harassment, delay, or to thwart competition."[138] Conduct constituting subjective bad faith must

5   be "at least reckless or grossly negligent, if not intentional and willful."[139] A plaintiff's "subjective

6   belief in the merits" does not preclude a finding of bad faith.[140]

7          The parties' respective papers make clear a host of underlying factual issues remain in

8   dispute. The court has already ruled that no reasonable jury could find in GSI's favor on certain

9   trade secret and Section 17200 claims. And ISSI has presented significant evidence that GSI never

10  had documents or testimony to support certain elements of these claims, acted with improper

11  motive, maintained allegations that it knows to be false, and improperly amended its trade secret

12  claims to thwart ISSI's redesign efforts.[141]

13         **Second**, a reasonable jury could find for ISSI on its fifth affirmative defense that the trade

14  secret information is readily ascertainable. The readily ascertainable test asks whether the

15  [135] *Id.* at 1276.

16  [136] *See id.* at 1278 n.4.

17  [137] *See id.* at 1279; *SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 842, 847-48, *as modified
18  on denial of reh'g* (Aug. 7, 2012).

19  [138] *SASCO*, 207 Cal. App. 4th at 847 (citations omitted).

20  [139] *Gemini*, 95 Cal. App. 4th at 1261; *accord Stilwell Dev., Inc. v. Chen*, No. CV86-4487-GHK,
21  1989 WL 418783, at *3 (C.D. Cal. Apr. 25, 1989).

22  [140] *Cypress*, 186 Cal. Rptr. 3d 486.

23  [141] *See, e.g.*, Docket No. 626-5 at 9-15; Docket No. 560-43, Ex. V at 270:12-271:25, Depo. Ex. 41
    at 1-6 ("If UMI is involved, that would delay ISSI by yet another 6 months. And I wiill [sic] be
24  very happy to tell Cisco if this is the case. . . . I would love nothing more than [to] threaten a
    lawsuit and let ISSI and Cisco know so we can tip the scales back in our favor."); Docket No. 560-
25  13 at 93:23-94:19, 98:4-99:4, Depo. Ex. 504 at GSI10051765-70 (same); *id.* at 100:5-103:4 ("Our
    hope was that UMI couldn't aid ISSI, and ISSI would either be left on their own or delayed, and
26  that would make our bid look more attractive."); *id.* at 105:20-106:20, Depo. Ex. 505 at
27  GSI10133901 ("We may get UMI out of the equation, not just delayed, with this plan.").

28
    Case No. 5:13-cv-01081-PSG
    ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-
    PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-
    PART MOTION FOR PROTECTIVE ORDER

United States District Court
For the Northern District of California

information, even if not found in one single published source, nonetheless can easily be gathered together from various sources through a minimum of time and labor.[142] The more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely it is to not be readily ascertainable.[143]

GSI says ISSI did not obtain a copy of the chip to conduct a reverse engineering analysis, cannot establish that the trade secrets can be reverse engineered without undue burden and expense, and has no evidence that the trade secrets are readily ascertainable.[144] GSI also contends that ISSI's actions undercut its defense: that is, because ISSI purchased designs from UMI rather than creating its own, because ISSI does not have an Atris on the market yet, and because ISSI claims its schematics are AEO, so such schematics must not be readily ascertainable.[145]

GSI may be right that ISSI has not substantiated any reverse engineering claims.[146] But ISSI presents more than sufficient evidence that even if certain circuit schematics that GSI claims as trade secrets really are secret, each would nonetheless have been readily ascertainable by ISSI by gathering together certain materials available to ISSI at the time.[147] This is more than enough to create a genuine issue of material fact.

**V.**

In its second round of requests, UMI seeks summary judgment that (1) it did not breach the non-compete provision of the 2008 agreement, because that provision terminated with the contract

---

[142] *See* Pooley et al., TRADE SECRET PRACTICE IN CALIFORNIA § 1.8A (CEB 2012).

[143] *See Morlife, Inc. v. Perry,* 56 Cal. App. 4th 1514, 1522 (1997).

[144] *See* Docket No. 570-5 at 19-23.

[145] *See* Docket No. 669-5 at 14-15.

[146] *See* Docket No. 626-5 at 2; Docket No. 242 at 43-44.

[147] *See, e.g.*, Docket No. 626-23, Ex. LL at ¶ 585 ("[T]o the extent any claimed circuit schematic nevertheless otherwise constitutes a trade secret, all 25 of the claimed circuit schematics are at least readily ascertainable to ISSI through relevant product specifications, patents, textbooks, and past designs that are readily at hand to ISSI.").

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

1    no later than August 2009, and so UMI's activities, years later, could not, as a matter of law,

2    breach an expired obligation; (2) that even if the non-compete provision was in effect in the August

3    2012-March 2013 time frame, GSI waived arguing that the Atris chip at issue is an LLDRAM

4    subject to the contract's non-compete provision, because GSI had encouraged UMI to continue to

5    work on an Atris design during the parties' contractual relationship (even though the contract at

6    issue prohibited UMI from either directly or indirectly designing, developing or contributing to the

7    design or development of an LLDRAM other than the 576 Mb product); (3) GSI's

8    misappropriation of trade secrets claim is time-barred under the three-year statute of limitations for

9    misappropriation of trade secrets and (4) GSI suffered no cognizable damages as a result of UMI's

10   conduct.[148] Once again, the record confirms that genuine issues of material fact are disputed,

11   precluding summary judgment.

12       **First**, because the non-compete provision survived UMI's efforts to terminate the

13   agreement, a reasonable jury could find that UMI breached it. Contract interpretation usually is a

14   matter of law to be determined from the writing alone.[149] In ascertaining whether a contract's

15   language is ambiguous, courts look to the "instrument's language."[150] Extrinsic evidence may only

16   be considered if a contract is ambiguous.[151] A contract is ambiguous when it is susceptible to more

---

[148] *See* Docket No. 563-4 at 2.

[149] See Cal. Civ. Code § 1639; *Ad Two, Inc. v. City of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000).

[150] *Ad Two, Inc.*, 9 P.3d at 376.

[151] *See* Cal. Civ. Code § 1639; *Chambliss/Jenkins Assocs. v. Forster*, 650 P.2d 1315, 1318 (Colo. App. 1982) ("[W]ritten documents containing ambiguities or unclear language must be construed in accordance with the intent of the parties, and relevant extraneous evidence may be considered to resolve the factual questions of the parties' intent.").

24
Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

United States District Court
For the Northern District of California

1    than one reasonable interpretation.[152] The fact that parties may have different interpretations of the

2    contract does not by itself create an ambiguity justifying consideration of parole evidence.[153]

3            Here, the plain language of Section VII.5 makes clear the non-compete provision survives

4    any purported termination; parole evidence is neither required nor permitted. The survival

5    provision provides: "the provisions of Articles III [including the non-compete obligation], IV and

6    V of this Agreement shall survive expiration or termination of this Agreement permanently."[154]

7    UMI is right that under the term provision, "[t]he term of this Agreement shall commence on the

8    Effective Date and shall expire and be ended at the close of business on the day (5) years from the

9    Effective Date, unless earlier terminated by either party pursuant to this Article VII."[155] But the

10   only reasonable way to read the term provision is that it is subject to and modified by the survival

11   provision. In other words, the survival provision provides that certain provisions do not expire

12   along with the term upon a party's termination pursuant to Article VII. For the non-compete

13   provision, that means that upon termination UMI may not compete for the full five years. UMI's

14   read would undercut any meaning to the survival provision, something this court must strive to

15   avoid.[156]

16           UMI maintains that even if the non-compete survived, GSI waived it by permitted UMI to

17   partner with it on Atris in 2008 and 2009. To establish waiver, UMI must prove by clear and

18
19   [152] *See Browder v. U.S. Fid. & Guar. Co.*, 893 P.2d 132, 133 (Colo. 1995*), overruled on other
     grounds by Hoang v. Assuance Co. of Am.*, 149 P.3d 798 (Colo. 2007).

20   [153] *See USI Properties E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997).

21   [154] Docket No. 196, Ex. 1 at § VII.5.

22   [155] Docket No. 196, Ex. 1 at § VII.2.

23   [156] *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect
24   to every part, if reasonably practicable, each clause helping to interpret the other."); *Concerning
     Application for Water Rights v. N. Colo. Water Conservancy Dist.*, 677 P.2d 320, 326 (Colo. 1984)
25   (same). Even if there were a conflict between the survival and term provisions, the more specific
     survival provision controls the more general "term" provision. *See* Cal. Civ. Proc. Code § 1859;
26   *Kavruck v. Blue Cross of Cal.*, 108 Cal. App. 4th 773, 781 (2003); Restatement (Second) of
27   Contracts § 203(c); *Holland v. Bd. of Cnty.Comm'rs*, 883 P.2d 500, 505 (Colo. App. 1994)

28
     Case No. 5:13-cv-01081-PSG
     ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-
     PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-
     PART MOTION FOR PROTECTIVE ORDER

United States District Court
For the Northern District of California

convincing evidence that (1) GSI knew UMI was required to not engage in Atris design activities for others; and (2) GSI freely and knowingly gave up its right to prohibit UMI from engaging in Atris design activities in 2012.[157] But even before considering how knowledge of UMI's Atris activities for GSI could effect a waiver of UMI's Atris activities for ISSI, the language of Section X.7 makes clear that no waiver in 2008 or 2009 continues in 2012: "[n]o waiver of any term, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such term, provision or condition of this Agreement."[158]

**Second**, a reasonable jury could find that GSI's trade secrets claim against UMI is timely. UMI provides evidence that GSI should have anticipated that by April 2009 that UMI would engage in any misappropriation, and therefore, GSI's misappropriation claim was time-barred as of April 2012.[159] But there is other evidence that GSI learned of UMI's alleged misappropriation only within the limitations period.[160] For example, GSI presents evidence that it only learned of the purported trade secret misappropriation when UMI produced the Asset Transfer Agreement between UMI and ISSI in the course of this litigation in May 2013.[161]  A statutory period does not begin to run until the plaintiff knew or should have known that a violation actually occurred.[162] A reasonable fact finder could go either way.

---

[157] *See DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 61 (1994).

[158] Docket No. 196, Ex. 1 at § X.7. The same evidence precludes summary judgment on UMI's alternative theory of equitable estoppel.

[159] *See* Docket No. 563-4 at 12-15.

[160] *See* Docket No. 624-18, Ex. Q at 13 ("GSI was unaware that UMI transferred GSI's 576 Mb Trade Secrets to ISSI until 2013.").

[161] *See, e.g.*, *id.*; Docket No. 623-22, Ex. R.

[162] *See Menefee v. Ostawari*, 228 Cal. App. 3d 239, 245 (1991) ("a cause of action accrues when, under the substantive law, the wrongful act is done and liability arises, i.e., when a suit may be brought"); *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1217 (Colo. 2000) (statute of

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

**United States District Court**
For the Northern District of California

***Third***, a reasonable jury could find that GSI suffered harm as a result of UMI's alleged misconduct. UMI argues GSI's claim of "about $40 million,... based on lost sales of Atris chips to Cisco as its second source supplier" does not prove actual damages[163] because Cisco's independent choice of ISSI broke the chain of causation.[164] UMI also argues GSI's claim that "UMI's fraudulent conduct also induced GSI to make payments to UMI totaling $542,400" is belied by the evidence because UMI granted GSI a license to UMI's material and completed its end of the bargain.[165] But GSI presents sufficient evidence that it would not have worked with UMI on Atris but for its promise not to compete,[166] and a defendant's wrongful act need not be the sole and only cause of the injury.[167] Contribution to injury is enough unless the intervening act is wholly unforeseeable.[168] GSI also presents sufficient evidence that without UMI's contributions, ISSI would not have been able to meet Cisco's timeline or complete Atris.[169] A jury must decide.

limitations does not begin to run until the plaintiff "learns a defendant improperly disclosed trade secrets").

[163] *See* Docket No. 563-4 at 15; Docket No. 563-12, Ex. 40 at 52.

[164] *See* Docket No. 563-4 at 15.

[165] *See* Docket No. 563-4 at 16; Docket No. 563-22, Ex. 41; Docket No. 563-12, Ex. 39 at 47-49; Docket No. 563-8, Ex. 17 at 264-265, 314; Docket No. 563-22, Ex. 42 at ¶¶ 15, 17.

[166] *See* Docket No. 196, Ex. 1 at § G.

[167] *See Third Eye Blind, Inc. v. Near N. Entm't Ins. Servs., LLC*, 127 Cal. App. 4th 1311, 1319-21 (2005); *Brown v. Silvern*, 45 P.3d 749 (Colo. App. 2001); *Schrimsher v. Bryson*, 58 Cal. App. 3d 660, 664 (1976); *Sanders v. Acclaim Entm't, Inc.*, 188 F. Supp. 2d 1264, 1276 (D. Colo. 2002). To the extent causation was addressed in the court's order on Defendants' motions to dismiss, GSI correctly notes that it was in the context of standing to pursue an antitrust injury, not under traditional tort theories. *See* Docket No. 227 at 8.

[168] *See Charles O. Bradley Trust v. Zenith Capital LLC*, No. 04-cv-02239, 2008 WL 3400340, at *5 (N.D. Cal. Aug. 11, 2008); *Schrimsher*, 58 Cal. App. 3rd at 664; *Sanders*, 188 F. Supp. 2d at 1276.

[169] *See* Docket No. 623-19, Ex. L at 89; Docket No. 624-14, Ex. M at 429. As noted above, GSI also presents sufficient evidence that it would never have hired UMI—and consequently, would have never made payments to UMI under the Agreement—if GSI had known UMI intended to compete against it. *See, e.g.*, Docket No. 196, Ex. 1 at § G. Payments made pursuant to a contract are permitted as damages in an action involving fraudulent inducement to enter a contract. *See,*

27

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

## VI.

GSI requests summary judgment against UMI on (1) five discrete issues within its breach of contract claim, namely, that the non-compete provision is valid and lasts for a duration of five years, the non-compete provision applies to Atris as an LLDRAM product, UMI's activities with respect to Atris were in breach of the contract's non-compete provision, UMI breached the confidentiality provision as a matter of law, and GSI owns the schematics at issue in the lawsuit; (2) four elements of GSI's ninth cause of action for fraud—falsity, knowledge of falsity, intent to induce reliance, and actual reliance; and (3) UMI's "readily ascertainable" affirmative defense, or in the alternative, the reverse engineering portion of that defense.[170] Once again, summary judgment as to certain issues is warranted; as to the rest, it is not.

**First**, there is no genuine dispute that the non-compete provision is valid. Plainly there was consideration for the non-compete.[171] While Colorado law limits non-compete covenants that restrict an individual from an entire profession, non-compete covenants involving businesses that do not entirely restrain a business are not suspect or prohibited.[172] Even if Colorado's restrictions

---

*e.g.*, *Denevi v. LGCC*, 121 Cal. App. 4th 1211, 1220 (2004); *Elk River Assocs. v. Huskin*, 691 P.2d 1148, 1153 (Colo. App. 1984).

[170] *See* Docket No. 566; Docket No. 568-5 at 1.

[171] "[A]ny benefit to a promisor or any detriment to a promisee at the time of the contract—no matter how slight—constitutes adequate consideration." *Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1061 (Colo. 2011) (upholding non-compete executed two years after employment agreement). UMI suggests that it received no consideration for the non-compete agreement because the parties intended the non-compete agreement to last beyond the design phase of the contract, into a support period, and the agreement obligated GSI to provide separate consideration for support provided during that period. Although GSI agreed to pay separate consideration for services provided during a three-year support period, that consideration was specifically for "support of failure analysis" services. Docket No. 196, Ex. 1 at § II.1.1(d). The non-compete agreement is supported by the original consideration of the Agreement, "[i]n the absence of the [non-compete] restrictions contained in this Agreement, GSI would not have considered selecting UMI." *Id.* at § G.

[172] *See* *Energex Enters., Inc. v. Anthony Doors, Inc.*, 250 F. Supp. 2d 1278, 1281 (D. Colo. 2003) (limiting Colorado's statutory prohibition against covenants not to compete to contracts involving individuals); *see also* Colo. Rev. Stat. § 8-2-113(2) (voiding any term which "restricts the right of

28

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    did apply here, UMI presents no evidence that it was entirely restrained from its business. The only

2    evidence shows that it was at most restricted from designing an LLDRAM chip as defined in the

3    agreement, while remaining free to pursue other DRAM opportunities. And there is no

4    requirement, as UMI suggests, that a non-compete agreement explicitly list the trade secrets it is

5    designed to protect.[173]

6            There also is no genuine dispute that the non-compete provision did not terminate along

7    with the "term of the contract" in 2009 when the parties' relationship dissolved. As discussed

8    above, the contract's non-compete and survival provisions are clear.[174]

9            There is, however, a genuine dispute as to whether the contract provision applies to Atris as

10   a LLDRAM product. GSI used a different definition of "LLDRAM" in its related agreement with

11   ProMOS (concerning fabrication of the 576Mb chip).[175] There also is conflicting evidence whether

12   Atris is "latency optimized" and/or "address rate optimized," as the LLDRAM definition in the

13   agreement requires.[176] A jury must decide.

14   _____

15   any *person* to receive compensation for performance of skilled or unskilled labor for any
     *employer*" (emphasis added)).

16

17   [173] *See DoubleClick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1254, 1257-58 (D. Colo. 2005)
     (upholding non-compete which "*generally* prohibited [the defendant] from ever disclosing [the

18   plaintiff's] confidential information" under the trade secret exception); *Energex*, 250 F. Supp. 2d at
     1281-82 (noting that trade secret exception would save non-compete designed to prevent disclosure

19   of "Confidential Information," defined in the contract as including "trade secrets," with no further
     explanation of those trade secrets). UMI also incorrectly cites *Saturn Sys., Inc. v. Militare*, 252

20   P.3d 516, 527-28 (Colo. App. 2011), as holding a "non-compete agreement enforceable only
     because the trade secrets were expressly and unambiguously identified in the contract clause at

21   issue." Docket No. 636-4 at 15. What *Saturn* held is that the non-compete at issue in that case was
     enforceable because (1) it was not a standalone provision, separate from the non-disclosure clause;

22   and (2) it was not a "naked covenant restricting all competition" and instead was a "narrowly
     tailored provision restricting [the defendant] only from soliciting [the plaintiff's] clients as a way of

23   protecting [the plaintiff's] trade secrets and confidential information." 252 P.3d at 527-28.

24   [174] *See* Section V, *supra*; Docket No. 196, Ex. 1 at § VII.5; Docket No. 176 at 15-16.

25

26   [175] *See* Docket No. 636-29, Ex. K at Art. 1.7.

27   [176] *See* Docket No. 636-25, Ex. J at ¶¶ 11-13.

28
                                                    29
     Case No. 5:13-cv-01081-PSG
     ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-
     PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-
     PART MOTION FOR PROTECTIVE ORDER

United States District Court
For the Northern District of California

1      A genuine dispute also exists as to whether UMI breached its confidentiality agreement.

2  The contract itself does not exactly specify what falls under "confidential information."[177] The

3  parties genuinely dispute what constitutes GSI's confidential information: increments of

4  schematics, schematics themselves, or the entire chip design.[178] UMI also provides sufficient

5  evidence that it made reasonable efforts to protect the confidentiality of whatever GSI confidential

6  information UMI may have had in its possession.[179]

7      *Second*, a genuine dispute exists as to GSI's fraud claim. Among other things, the parties

8  genuinely dispute whether they planned to enter into a separate Atris contract and whether GSI

9  should have paid for UMI's Atris if GSI wanted it.[180] They further genuinely dispute whether GSI

10 got its bargain for the full benefit of UMI's 576 Mb chip design work, and the meaning of GSI's

11 declining UMI's Atris offer.[181]  It also is genuinely disputed whether GSI's claimed injuries arise

12 from UMI's conduct.[182]

13      *Third*, with one exception, a genuine dispute exists as to UMI's readily ascertainable

14 affirmative defense. A reasonable jury could find that the 25 schematics claimed by GSI "standing

15 alone" and isolated from a chip design layout are readily ascertainable by UMI and others having

16 access to UMI's independently-created commodity DRAM designs and publicly available

17 materials, including patents.[183] The one exception concerns reverse engineering, which UMI does

18 not address anywhere in its papers at all.

19 [177] *See* Docket No. 636-4 at 2-3; Docket No. 196, Ex. 1 at §§ I.1, VI.2.

20 [178] *See* Docket No. 658-4 at 9-10.

21 [179] *See* Docket No. 636-4 at 22-24.

22 [180] *See* Docket No. 563-10, Ex. 28 at GSI0030485-86.

23 [181] *See* Docket No. 176 at 7; Docket No. 245 at ¶ 64; Docket No. 563-8, Ex. 17 at 335:1-336:11,
24 336:17-23

25 [182] *See* Docket No. 227 at 14; Docket No. 563-12, Ex. 40; Docket No. 563-12, Exhibit 39 at 47-49;
26 Docket No. 563-8, Ex. 17 at 264:21-256:27, 20, 314:1-11, 14; Docket No. 196, Ex. 1 at § G.

27 [183] *See* Docket No. 636-4 at 4-5.

28
Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-
PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-
PART MOTION FOR PROTECTIVE ORDER

**VII.**

GSI also moves for issue and evidence sanctions, or in the alternative, to compel ISSI to comply with the court's June 11 order regarding its interrogatory no. 13, and to allow the supplemental opinion of Robert Murphy.[184] GSI claims ISSI violated the court's order granting GSI's motion to compel ISSI to ""[d]escribe in detail, all work product [ISSI] ha[s] created or developed that incorporates or leverages the information transferred to [ISSI] pursuant to the February 1, 2013 Asset Transfer Agreement" ("ATA") with United Memories, Inc. ("UMI")."[185] GSI further requests an order that says (1) ISSI incorporated or leveraged at least 190 GSI schematics it acquired from UMI into its final Atris design; (2) ISSI incorporated into its Atris design, but then later removed, at least 30 other GSI schematics ISSI acquired from UMI; and (3) ISSI is barred from introducing any fact or expert evidence at trial or other proceedings to show ISSI did not incorporate or leverage GSI-owned schematics in its Atris design.[186] Alternatively, GSI seeks an order compelling ISSI to comply with the order regarding interrogatory no. 13 and to allow its expert Murphy to supplement his May 8, 2015 expert report to address ISSI's further response.[187]

ISSI, for its part, moves for a protective order preventing GSI from seeking any further discovery from ISSI, whether regarding interrogatory no. 13 or any other topic.[188]

ISSI's response to interrogatory no. 13 is comprehensive. ISSI tasked five engineers to spend over two days creating a 16-page, substantive response to one interrogatory.[189] GSI's requests that the court find GSI owns certain circuit schematics are too drastic, and the court has

---

[184] *See* Docket Nos. 723, 722-4.

[185] *See* Docket No. 722-4 at 1; Docket No. 601.

[186] *See* Docket No. 722-4 at 1.

[187] *See id.*

[188] *See* Docket No. 727-3 at 3.

[189] *See* Docket No. 743 at 2.

31

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

1   already stricken GSI's attempts to supplement the Murphy report as untimely.[190] Sanctions are

2   unwarranted. GSI's motion accordingly is DENIED, and ISSI's motion is GRANTED-IN-PART as

3   to interrogatory no. 13.

4   **VIII.**

5       Finally, GSI's motion to strike the declaration of Theresa Chen on the grounds that Chen

6   was never disclosed as a potential witness in ISSI's initial disclosures[191] is DENIED as not

7   contained within the opposition brief,[192] as "the additional or corrective information [was]

8   otherwise . . . made known to [GSI] during the discovery process or in writing."[193]

9       GSI's motion to strike the declaration of Dennis Wilson on the grounds that UMI failed to

10  disclose Wilson as an expert[194] is GRANTED.[195]

**United States District Court**
For the Northern District of California

---

[190] *See* Docket No. 722-4 at 1; Docket No. 600.

[191] *See* Docket No. 632.

[192] *See Apple, Inc. v. Samsung Elecs., Ltd.*, Case No. 11-cv-01846-LHK, 2011 WL 7036077 at *3 (N.D. Cal. Dec. 2, 2011) (denying defendant's separate motion to exclude declaration in support of plaintiff's summary judgment motion on the grounds that it was not contained within defendant's opposition brief and thus failed to comply with Civ. L.R. 7-3(a)), *aff'd-in-part, vacated-in-part on other grounds*, 678 F.3d 1314 (Fed. Cir. 2012).

[193] Fed. R. Civ. P. 26(e)(1)(A); *see also Tumbling v. Merced Irrigation Dist.*, No. 08-cv-1801-LJO, 2010 U.S. Dist. LEXIS 101404, at *56-57 (E.D. Cal. Sept. 27, 2010); *SEC v. Berry*, No. 07-cv-04431-RMW, 2011 U.S. Dist. LEXIS 64436, at *4-5 (N.D. Cal. June 16, 2011) (holding that a witness had been "otherwise made known" to defendant through plaintiff's interrogatory response); Docket No. 657-3, Baskin Decl. Ex. A; Docket No. 657-5, Baskin Decl. Ex. B at 238:3-13; *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Two express exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless.")

[194] *See* Docket No. 650.

[195] *See* Docket No. 553 at 2:5. Wilson's declaration does not qualify as an expert report because it does not purport to contain "a complete statement of all opinions the witness will express," as Rule 26(a)(2)(B)(i) requires. *See* Docket Nos. 636-25, 636-26, 636-27. Second, few of Wilson's opinions supply "the facts or data considered by the witness in forming them," as Rule 26(a)(2)(B)(ii) requires. *Id.* Under Rule 26(a)(2)(B)(ii), each opinion must be substantiated with the precise "reasoning and thought process that led to the ultimate decision," and an expert's general qualifications are insufficient. *See Henson v. Baker School Dist. No. 12 Bd. of Trustees*, 2013 WL 5786592, at *3 (D. Mont. Oct. 28, 2013) (quoting *United States v. GC Quality Lubricants, Inc.*,

Case No. 5:13-cv-01081-PSG
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-PART MOTION FOR PROTECTIVE ORDER

1

2    **SO ORDERED.**

3    Dated:  September 21, 2015

4                                                    PAUL S. GREWAL

5                                                    United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    2002 WL 34376587, at *2 (M.D. Ga.Sept. 27, 2002)). Third, the declaration is missing "a list of all
      publications authored in the previous 10 years," as Rule 26(a)(2)(B)(iv) requires. See Docket Nos.
25    636-25, 636-26, 636-27. Fourth, the declaration fails to list "all other cases in which, during the
      previous 4 years, the witness testified as an expert at trial or by deposition," as Rule 26(a)(2)(B)(v)
26    requires. *Id*. Finally, the declaration omits "a statement of the compensation to be paid for the study
      and testimony in the case," as Rule 26(a)(2)(B)(vi) requires. *Id*.
27

28
                                                   33
      Case No. 5:13-cv-01081-PSG
      ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, GRANTING-IN-
      PART MOTIONS TO STRIKE, DENYING MOTION FOR SANCTIONS AND GRANTING-IN-
      PART MOTION FOR PROTECTIVE ORDER

**United States District Court**
For the Northern District of California