CONSTANCE F. RAMOS (Bar No. 203637)
cframos@winston.com
THOMAS J. KEARNEY (Bar No. 267087)
tkearney@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400

KORULA T. CHERIAN (Bar No. 133967)
sunnyc@ruyakcherian.com
ROBERT F. RUYAK (*pro hac vice*)
robertr@ruyakcherian.com
RUYAK CHERIAN LLP
1776 Eye Street, NW, Suite 750
Washington, DC 20006
Telephone:    (202) 838-1560

Attorneys for Defendant
UNITED MEMORIES, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| GSI TECHNOLOGY, INC., a Delaware Corporation,<br><br>                    Plaintiff,<br>          v.<br><br>UNITED MEMORIES, INC., a Colorado Corporation, and INTEGRATED SILICON SOLUTION, Inc., a Delaware Corporation,<br><br>                    Defendants.<br><br>_____<br><br>UNITED MEMORIES, INC., a Colorado Corporation,<br><br>                    Counterclaim-Plaintiff,<br>          v.<br><br>GSI TECHNOLOGY, INC., a Delaware Corporation,<br>                    Counterclaim-Defendant. | Case No.  13-CV-1081-PSG<br><br><br>**DEFENDANT UNITED MEMORIES, INC. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES (FED. R. CIV. P. 56)**<br><br>Complaint: Filed March 8, 2013<br>Judge: Hon. Paul S. Grewal<br><br>Hearing:      February 16, 2016<br>Time:          10:00 a.m.<br>Courtroom:   5<br>Location:     280 S. 1st Street<br>               San Jose, CA 95113 |

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

**TABLE OF CONTENTS**

Page

I.  LITIGATION HISTORY ................................................................................ 1

II.  BACKGROUND FACTS ............................................................................ 3

III.  UMI IS ENTITLED TO RECOVER ITS REASONABLE ATTORNEYS' FEES
AND EXPENSES IN DEFENDING ITSELF IN THIS ACTION ............................ 9

    A.  The Contract At Issue Provides for Reasonable Attorney's Fees and Expenses
to the Prevailing Party for All Disputes Relating to or Arising From It .................... 9

    B.  All Causes Of Action Alleged Against UMI Related To The Contract At Issue ...... 10

        1.  GSI's Claims for Temporary Emergency and Preliminary Injunctive
Relief ........................................................................................ 10

        2.  Sherman Act, Section 1 (15 U.S.C. § 1) and RICO Act (18 U.S.C. §§
1962(c) and 1962(d)) .................................................................. 10

        3.  Declaratory Judgment (28 USC §2201) and Breach of Contract Claims ....... 12

        4.  Unfair Competition under California Business and Professions Code §
17200 and/or Colorado Revised Statute §§ 6-1-101 ....................... 12

        5.  Fraud and False Promise .............................................................. 12

        6.  Misappropriation of Trade Secrets ................................................ 13

        7.  Intentional Interference with Prospective Economic Advantage .................. 13

    C.  UMI Is The Prevailing Party On All Causes Of Action ............................ 13

        1.  Determining "Prevailing Party" Under Colorado Law. ................... 14

        2.  UMI is Prevailing Party On the Initial TRO and Preliminary Injunction
Phase of this Case ....................................................................... 15

        3.  UMI is Prevailing Party For All Causes of Action. ....................... 16

    D.  Reasonable Attorneys' Fees Are Based On The Lodestar Method ............... 21

    E.  Attorney's Rates Were Reasonable ..................................................... 22

    F.  Legal Work Performed In Defending Against The Injunction Proceedings and
10 Causes Of Action Were Reasonable .................................................. 23

    G.  Legal Expenses Incurred Were Reasonable .......................................... 24

IV.  CONCLUSION ....................................................................................... 25

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anderson v. Pursell*,
  244 P.3d 1188 (Colo. 2010) ......................................................................... passim

*Archer v. Farmer Bros.*,
  90 P.3d 228 (Colo. 2004) ...............................................................14, 15, 17, 18

*Children's Hosp. & Med. Ctr. v. Bonta*,
  97 Cal. App. 4th 740 (2002) ...................................................................................23

*Dubray v. Intertribal Bison Co-op.*,
  192 P.3d 604 (Colo. App.2008) .............................................................................22

*Ferrell v. Glenwood Brokers, Ltd.*,
  848 P.2d 936 (Colo. 1993) ....................................................................................10

*Gonzales v. Windlan*,
  --- P.3d ---- (2014), 2014 WL 7447196 (Colo. 2014) ..........................................17

*Hensley v. Eckerhart*,
  461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ..........................................21

*NWS Corp. v. Dish Network, LLC*,
  2014 WL 769175 (S.D. Cal. 2014) ....................................................10, 14, 15, 18

*Payan v. Nash Finch Co.*,
  310 P.3d 212 (Colo. App. 2012) ...........................................................................21

*Roa v. Miller*,
  784 P.2d 826 (Colo. App. 1989) ...........................................................................10

*Sherman v. U.S.*,
  801 F.2d 1133 (9th Cir. 1986) ...............................................................................17

*Sims Snowboards, Inc. v. Kelly*,
  863 F.2d 643 (9th Cir.1988) ..................................................................................14

*Spencer Contractor, Inc. v. City of Aurora*,
  884 P.2d 326 (Colo. 1994) ....................................................................................19

*Tallitsch v. Child Support Servs., Inc.*,
  926 P.2d 143 (Colo. App. 1996) ...........................................................................21

*The Guidiville Rancheria of California et al. v. United States*,
  2015 WL 4934408 (N. D. Cal. Aug. 18, 2015) ....................................................24

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

ii

**STATUTES**

28 USC §2201 ..................................................................................................................12

Cal. Bus. & Prof. Code § 17200 ........................................................................4, 5, 12, 17

Cal. Civ. P. Code § 2019.210 .............................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50(b) ..............................................................................................2, 6, 9, 19

Fed. R. Civ. P. 54 ..................................................................................................... passim

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5802**

DEFENDANT UNITED MEMORIES, INC. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  MOTION FOR ATTORNEYS' FEES AND EXPENSES - CASE NO. 13-CV-1081-PSG

# I.     LITIGATION HISTORY

Plaintiff GSI Technology, Inc. ("GSI") filed its original complaint against Defendant United Memories, Inc. ("UMI") on March 8, 2013, along with an *ex parte* application for a temporary restraining order.  The complaint alleged that UMI had breached several obligations under a long-expired contract between the parties, and that UMI had additionally engaged in unfair competition under the same set of facts.  GSI's request for a temporary restraining order was heard shortly thereafter, on March 28, 2013.  GSI's requested relief included:

> 1.  Enjoining Defendant from directly or indirectly, designing or developing, or contributing to the design or development of any Low Latency DRAM Product for which Defendant has been retained to provide such services.
>
> 2.  Enjoining Defendant from using GSI IP.
>
> 3.  Enjoining Defendant from using, divulging, furnishing, or otherwise making accessible to any person GSI Tech's confidential information or trade secrets.

Doc. 9 at 2.

At the hearing, the Court pointedly asked GSI to identify the trade secrets or other confidential information GSI believed UMI had taken which belonged to GSI.  GSI replied that it was "flying blind," and could not identify any.[1]  The Court then promptly denied GSI's request for a temporary restraining order against UMI, but issued an order to show cause as to why GSI should be entitled to a preliminary injunction.[2]

A period of expedited discovery ensued.  A hearing was held on GSI's motion for a preliminary injunction to "to prevent [UMI] and those acting in concert with UMI from designing or contributing to the design of a specialty low-latency DRAM chip called 'Atris,' and from disclosing or using GSI Tech's proprietary and confidential information."[3]  GSI argued (among other things) that "GSI Tech's business will be irreparably harmed if UMI is permitted to continue to assist [co-defendant Integrated Silicon Solutions Inc.] in breach of the non-compete obligation" that admittedly had already expired.[4]  GSI argued that a preliminary injunction was necessary because "these guys

---

[1] Ramos Declaration filed herewith ("Ramos Decl."), Ex. I (3/28/13 Hr'g Tr.) at 34:23-35:4.
[2] Doc. 24 (Order Denying Request for Temporary Restraining Order).
[3] Doc. 82 (GSI Memorandum of Points and Authorities ISO Mot. Prelim. Inj.) at 1.
[4] *Id.* at 18-20.

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

can't pay a judgment.  There's no question about that."[5]  The court denied GSI's motion, explaining that GSI had failed to show "irreparable harm" for a possible past breach of an expired contract obligation, or that continuing activities were likely to be in breach of an alleged confidentiality obligation.[6]

GSI subsequently filed two amended complaints:  After UMI expended substantial time and money on a motion to dismiss the first amended complaint, GSI chose not to oppose it; instead, GSI filed a second amended complaint ("SAC"), in which GSI alleged thirteen separate causes of action—naming Integrated Silicon Solutions, Inc. ("ISSI") as a co-defendant on several of them— and adding federal antitrust and racketeering claims against both defendants.  Additionally, a multitude of state tort claims were alleged against UMI.  GSI's second amended complaint alleged at least ten causes of action against UMI.  All this on the heels of informing the Court (correctly) that UMI would be unable to pay a judgment if litigation were to proceed on merely the breach of contract claims and unfair competition claim lodged in the original complaint.[7]

The Court dismissed those federal claims for failure to state a claim, prompted by motions filed by both UMI and ISSI.[8]  GSI decided not to amend its complaint.[9]

After some 30+ months of litigation, and a trial spanning nearly five weeks, the Court entered a non-final judgment on the jury's Special Form of Verdict that GSI was *not* entitled to recover the vast amount of its requested monetary relief, namely, $40 million in alleged "lost profits."[10]  No injunction was entered.  The jury found GSI had suffered monetary harm for breach of contract only—$535,400 in general damages, and $421,000 in special damages—but, for reasons described herein,[11] GSI cannot recover any of it, because (a) GSI expressly waived and affirmatively

_____

[5] Ramos Decl., Ex. J (6/27/13 Hr'g Tr.) at 60:6-8.
[6] Doc. 176 (Order Denying Preliminary Injunction) at 20-23.
[7] UMI's annual revenues during the relevant time frame (2007-2009) were about $5-$10 million; GSI's were ten times as much ($50-$100 million) in that same time period.  *See* Trial Tr. at 1234:18-1235:5 (Gower); 915:2-6 (Chapman).
[8] Doc. 227 (Order Granting-in-Part Motions to Dismiss).
[9] GSI failed to amend its complaint to address its deficiencies within the court-ordered deadline.
[10] Doc. 1055 (Jury Verdict); the jury found $535,000 in general damages, and $421,000 in special damages for breach of contract (approx. 2.5% of the monetary relief GSI sought), but as explained in UMI's concurrently filed motions under Federal Rules of Civil Procedure 50(b) and 59(e), GSI is not entitled to recover either of those amounts, and UMI is entitled to a verdict in its favor on the breach of contract claim.
[11] *See also* UMI's concurrently filed Motion for Judgment as a Matter of Law (Rule 50(b)) and

2

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

disclaimed any right to recover general damages for breach of contract, and (b) a limitations of liability provision in the contract at issue precludes GSI from recovering any special damages for any claim (tort or contract) arising out of the agreement, aside from breach of the confidentiality provision.  The trial evidence established that UMI never breached the confidentiality provision, and special damages are not recoverable.

Both GSI and UMI pleaded for relief to include awards of  "attorneys' fees and costs," as well as "pre-and post-judgment interest."[12]  While GSI made no express claim for recovery of fees and expenses under the fee-shifting provision of the contract at issue, UMI specifically counterclaimed for fees and expenses under Article X.9, which provides (in part): "In any dispute arising from or relating to this Agreement, the prevailing party *shall be entitled to recover from the losing party its reasonable fees and expenses.*"[13]

UMI now moves for an award of its attorneys' fees ($ 6,694,562) and expenses incurred ($ 648,166) in defending itself in this litigation, as the prevailing party in this case and pursuant to Article X.9 of the contract at issue.[14]

## II.    BACKGROUND FACTS

The Court is intimately familiar with the background facts of this case.  On or around May 1, 2008, GSI and UMI entered into a written contract for UMI's design and layout services, for a very specific DRAM product—a "576 RLDRAM"—according to a publicly available, third party specification.[15]  UMI created the chip layout contemplated by the Contract, delivering a complete version of it (along with other materials) in December 2008.  GSI, however, did not perform all of its obligations under the Contract.[16]  The parties' contractual relationship ended no later than August

---

Motion to Revise or Amend Judgment (Rules 52, 54, 58 and 59(e)).
[12] Doc. 196 (SAC) at 51-52 (Prayer for Relief); Doc. 243 (UMI Answer and Counterclaims) ¶¶ 92-94 (Fifth Counterclaim) and at 41-42 (Prayer for Relief).
[13] Ramos Decl., Ex. K (Trial Ex. 4013, "Contract") at 14 (emphasis added).
[14] The Court has yet to resolve certain issues raised in post-trial motions under Rules 50(b), 52, 54, 58 and 59(e), which are filed concurrently herewith; thus, the amounts requested at this juncture will require subsequent updating, in order to include additional fees and expenses not yet invoiced. See Ramos Decl., ¶ 3.
[15] *See* Ramos Decl., Ex. K (Contract) at 1 (Recitals) and 15 (Ex. A, listing Micron Technology Inc.'s publicly available RLDRAM-II chip specifications dated 3/08 and 9/07).
[16] SAC ¶¶ 56, 58.

3

2009, and no actual DRAM product was ever made using UMI's 576 RLDRAM layout.[17]

*Fast forward three-and-a-half years.*  In late 2012, GSI lost a bid it made to Cisco Systems, Inc. ("Cisco") to become a Cisco "second supplier" of a *different memory chip* known as "Atris." Atris was not the subject of the Contract, but UMI had worked on its design previously to, contemporaneously with, and after completing its design of the 576 RLDRAM.[18]  Even though UMI is not a competitor of GSI, GSI suspected that UMI was somehow involved in the bidding process (it was not).  Acting on that suspicion, in March 2013, filed the present lawsuit against UMI, alleging breach of the long-expired Contract and asserting three inter-related causes of action, each one based on the parties' contractual relationship.  And, as described above, GSI also filed an unsubstantiated request for a temporary restraining order.

UMI immediately engaged its long-standing patent firm, Hogan Lovells LLP ("Hogan"), to respond to the temporary restraining order.[19]  At the hearing on GSI's motion, the Court, UMI, *and GSI* had no idea what relief was being sought:

> THE COURT:  So, standing here today on March 28th, 2013, **what's the confidential information that they have misappropriated or misused or trade secret** that you believe they have taken that belongs to you?
>
> GSI:  Well, we'd like to get some expedited discovery to be able to answer that question. **We're kind of flying blind.**[20]

Hogan continued to represent UMI during a court-ordered expedited discovery period on GSI's breach of contract, declaratory judgment on GSI's material breach of the contract, and unfair competition claims (under California Business and Professions Code § 17200), and continued to represent UMI through a preliminary injunction phase of the litigation, on which UMI also ultimately prevailed.[21]

During the hearing on preliminary injunction, GSI argued that since UMI would be unable to pay a judgment, should GSI prevail on its claims ("There's no question about that.")[22]  The Court

---

[17] SAC ¶¶  53-54; 56-59.
[18] *See* Trial Tr. at 1232-1338 (Gower testimony, uncontroverted).
[19] Doc. 24 (Order re TRO, Preliminary Injunction and Expedited Discovery).
[20] Ramos Decl., Ex. I (Doc. 27, 3/28/13 Hr'g Tr.) at 34:23-35:4.
[21] *See* Doc. 176 (Order Denying Preliminary Injunction).
[22] Ramos Decl., Ex. J (6/27/13 Hr'g Tr.) at 60:7-8.

4

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

rejected GSI's arguments and denied the motion.

GSI amended its complaint on August 20, 2013.[23]  UMI timely filed a motion to dismiss.[24] Rather than oppose that motion, on October 3, 2013, GSI added co-defendant ISSI by second amended complaint ("SAC"). The SAC alleged nearly a dozen discrete causes of action against UMI, including, federal antitrust and racketeering claims under the Sherman Act (15 U.S.C. § 1) and RICO Act (18 U.S.C. §§ 1962(c) and 1962(d)); a breach of contract claim based on three separate contractual provisions, and a related declaratory judgment claim that GSI did not commit a material breach itself; unfair competition under California Business and Professions Code § 17200 and/or Colorado Revised Statute §§ 6-1-101; fraud; false promise; misappropriation of trade secrets; and intentional interference with prospective economic advantage. [25]

Every single cause of action alleged against UMI in the SAC either arose from the Contract, or related to the GSI-UMI contractual relationship.  GSI's SAC contended that GSI lost a business opportunity with Cisco to become an "Atris second source supplier" largely because UMI breached its obligations under the Contract, and, as a result of that lost opportunity, GSI suffered actionable injury—to the tune of $40 million—as a direct consequence.[26]

UMI successfully moved the Court to dismiss the Sherman and RICO Act claims against it.[27] Following that dismissal, the Court scheduled its initial case management conference (over a year after the action had begun).  It was at about that time that UMI's counsel (K.T. Cherian and Constance Ramos) moved to Winston & Strawn LLP ("Winston").  Winston began its representation of UMI in the litigation on May 1, 2014.  Once Winston became involved, Hogan's activities ceased. UMI incurred **$1,676,177** in fees and **$81,338** in expenses[28] during Hogan's representation (January 2013-April 2014), and had prevailed at every major turn.[29]

---

[23] Doc. 159 (First Amended Complaint).
[24] Doc. 171 (Motion to Dismiss).
[25] The Court dismissed the federal claims in early 2014.  *See* Doc. 227 (Order Granting-in-Part Motions to Dismiss).
[26] SAC ¶¶ 221-224; 229-230.
[27] Doc. 227 (Order Granting-in-Part Motions to Dismiss).
[28] Including $6,250 in expert fees and expenses (Dennis Wilson).
[29] The fees and expenses incurred during Hogan's representation of UMI are partitioned into the following phases: Pre-Suit Investigations, Response To Complaint And Request For Temporary Restraining Order, Expedited Discovery/Permanent Injunction, Motion To Dismiss First Amended Complaint, Motion To Dismiss Second Amended Complaint.  *See* Ramos Decl.,¶ 6, Ex. A, filed

5

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Represented by Winston, on June 2, 2014, UMI answered GSI's complaint and filed

counterclaims.[30]  Discovery on GSI's remaining claims also commenced in June 2014, with the

service of written discovery and a request for GSI's pre-discovery identification of trade secrets

under California Code of Civil Procedure §2019.210.[31]

For nearly 10 full months—from June 2014 until late April 2015—GSI was unable to

identify any of its alleged trade secrets at issue with the "reasonable particularity" required under

California law, or any specific confidential information that GSI alleged was *not* (a) in UMI's pre-

existing designs, (b) publicly available information, or (c) otherwise known or readily ascertainable

to those in the DRAM design industry.  The vast majority of UMI's litigation activity that occurred

during this 10-month time period—perhaps 90% of it—focused on discovery and related motion

practice revolving around the identification of GSI's alleged "trade secrets," and allegations of

misappropriation.[32]

Whether GSI had any viable cause action against UMI, as alleged and prosecuted in this

action, required a finding that under the Contract: (1) GSI owned all of the alleged "trade secret"

and/or "confidential" information at issue (which, the Court will recall, was like an ever-changing

amoeba that GSI simply could not meaningfully identify, even at trial);[33] (2) UMI had used such

alleged GSI proprietary information in creating its "Atris" chip design, which it later sold to ISSI;

and/or (3) "Atris" was intended by the parties to be included in the definition of "Low Latency

DRAM" (included in Article III.6 of the Contract and an invented term).  Resolution of these three

issues, underlying all pending claims against UMI (tort and contract), hinged upon the meaning and

scope of the parties' obligations under Articles II, III, VI, and VII of the Contract,[34] and the

---

concurrently herewith.  UMI prevailed on all of these disputed matters, and seeks all of its attorneys'
fees and expenses incurred under its representation by Hogan in this discrete phase of the litigation.

[30] Doc. 235 (redacted); filed unredacted on June 23, 2014 at Doc. 243.

[31] Cal. Code. Civ. P. ("CCP") § 2019.210 states: "In any action alleging the misappropriation of a
trade secret under the Uniform Trade Secrets Act [..], before commencing discovery relating to the
trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable
particularity…"

[32] *See* Ramos Decl., ¶ 16 and Ex. H (enumerating discovery motions, summary judgment motion,
and hearings relating to the CCP 2019.210 dispute).

[33] *See* Ramos Decl., Ex. H (chart listing all letter briefs and motions on trade secrets); *See also*
concurrently filed Motion for Judgment as a Matter of Law (Rule 50(b)) and Motion to Revise or
Amend Judgment (Rules 54, 59(e)).

[34] See Doc. 351 (UMI Reply Br. In support of December 2014 Summary Judgment Motion) at 3-5

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

definitions—express or implied—of at least the following Contract terms: (1) "Confidential Information" (Article I.1); (2) "Trade Secrets" (Article I.8); (3) "deliverables" (not expressly defined, but used in Article III.1); (4) "Low Latency DRAM" (Article III.6); (5) "Milestones" (as distinguished from "deliverables," not expressly defined but used in the Contract); (6) "term" (as used in Article III.6, "during the term of this Agreement"); and (7) "permanently" (as used in Article VII.5, "shall survive permanently").

In December 2014, GSI requested a 10-week extension of the trial date, with an amended discovery schedule, on grounds that GSI's expert had suffered the loss if his spouse 6 months before trial was originally scheduled to commence, and so he was unable to do the work he had been engaged to perform in a timely manner.[35]  GSI requested that the February 2015 trial date be moved to July.  Under vociferous protest from UMI, the Court granted GSI's request and more.[36]  All discovery and other deadlines were moved as GSI had asked, but the trial date was pushed out even further—until late October 2015.  That protracted schedule necessarily caused substantial additional expense to UMI.[37]

At the time GSI had requested modification of the schedule (December 15, 2014), it still had no idea what its trade secrets were.  That request was filed within days of, and apparently in response to, UMI's filing a summary judgment motion—per the Court's invitation—arguing that GSI could not possibly prove ownership or secrecy of the information GSI had claimed as its trade secrets.  That purported "trade secret information" included a *46,000+-page compilation* of material that encompassed: (a) roughly 1,130 pages of internal UMI communications (in which GSI had no involvement); (b) numerous third-party documents, clearly labeled as such; and (c) hundreds of pages of materials marked proprietary and confidential to UMI.[38]

GSI also contended that various sub-compilations of the 576 RLDRAM schematics (which GSI conceded were solely created by UMI) comprised GSI trade secrets, notwithstanding the fact

---

(summarizing Articles at issue) and Ramos Decl., Ex. K (Contract) at 2-6, 9-12.
[35] Doc. 312 (Mot. to Extend Deadlines).
[36] Doc. 342 (Order Amending Schedule and setting trial for October 26, 2015).
[37] *See* Ramos Decl., ¶¶ 5, 7 and Ex. A (describing activities in the February 2015-July 2015 time-frame).
[38] *See* Doc. 284-4 ¶ 3 (describing content of GSI's alleged trade secrets); *see also* Doc. 292 at 2-3 (GSI acquiescing to same); *see also* Doc. 320-1 (UMI 2014 Motion for Summary Judgment)).

DEFENDANT UNITED MEMORIES, INC. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  MOTION FOR ATTORNEYS' FEES AND COSTS - CASE NO. 13-CV-1081-PSG

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

that every single page of those schematics was labeled UMI Confidential, and GSI knew that the schematics were largely created from UMI's patented and pre-existing know-how.[39]

Substantial discovery on GSI's incomprehensible and unjustifiable trade secrets allegations occurred in the 13-month period from June 2014 to the close of discovery in July 2015. The total amounts of legal fees and law firm expenses incurred during this period of Winston's representation were $1,292,535 (legal fees) and $ 175,734 (law firm expenses).[40]

UMI attempted to settle this case on numerous occasions.  There were two formal mediations involving all parties:  A court-ordered Early Neutral Evaluation in November 2014, and a voluntary JAMS mediation in August 2015, after the close of discovery and before the pre-trial submissions required significant attention.[41]  By then, GSI knew full-well that UMI had no money to pay any judgment, and that it the astronomical costs of this lawsuit were crushing.[42]  Nonetheless, GSI refused to settle with UMI.  UMI was forced to prepare for trial shortly thereafter on less than a shoestring budget.

Robert Ruyak, a seasoned trial lawyer at Winston, entered an appearance in this case in August 2015.  In October 2015, just before trial commenced, Mr. Ruyak and Mr. Cherian separated from Winston to create their own firm—Ruyak Cherian LLP ("Ruyak Cherian")—which served as co-counsel with Winston throughout trial and to this day.

Trial commenced on October 26, 2015.  The jury returned a verdict a month later.  Of the 25 individual schematics it was asked to consider, ***only four were found to be owned by GSI.****[43]*  While the jury found that those four were entitled to trade secret protection, it also found ***no damages*** for misappropriation.[44]  UMI therefore prevailed on that claim for relief, which was the primary focus of discovery during the June 2014 – July 2015 time frame.

UMI also prevailed on GSI's claims for fraud, false promise, and intentional interference

---

[39] Doc. 249 (July 18, 2014 Faue Decl. In Support of Motion to Compel Trade Secret Identification).
[40] *See* Ramos Decl., ¶¶ 5,  7 and Ex. A (summarizing totals for legal fees and law firm expenses, June 2014-July 2015).
[41] The Court's June 2014 Standing Order enumerates some 12 categories of pre-trial submissions.
[42] *See e.g.* Doc. 782 (GSI's Motion in Limine re Fees and Expenses).
[43] Doc. 1055 (Verdict) at 4.
[44] *Id.* at 3:14.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

with prospective economic advantage.[45]  The jury also found that UMI has committed no unfair acts that would predicate a finding of liability under GSI's unfair competition claim.[46]  Thus, it is undisputable that UMI prevailed on all of GSI's other tort claims against it.

With respect to the three breach of contract allegations (GSI's Sixth Claim for Relief), while the jury found liability and amounts for general damages ($535,400) and special damages ($421,000), none of it is recoverable.  General damages are not recoverable because GSI expressly waived its right to recover any.[47]  Special damages are not recoverable because Article V.3 of the Contract clearly states that no special damages can be recovered for any breach of contract other than a breach of the confidentiality obligation under Article VI, ***and all the evidence shows that UMI had no confidentiality obligation under that section***, due to the fact that UMI had created all of the materials at issue "without use or reference to any Confidential Information of [GSI]."[48]  Under the express terms of the Contract, GSI's "Confidential Information" is defined as material that GSI would have had to provide to UMI, and all of the evidence shows it never did.  Thus GSI can recover no special damages as a matter of law, and UMI is the prevailing party.[49]

The total amounts of attorneys's fees and expenses incurred for pre-trial and trial activities (August 1, 2015- November 25, 2015) were as follows: Winston - $1,460,718; Ruyak Cherian - $803,475.  UMI seeks recovery of all of these trial-related fees and all related expenses.

## III.   UMI IS ENTITLED TO RECOVER ITS REASONABLE ATTORNEYS' FEES AND EXPENSES IN DEFENDING ITSELF IN THIS ACTION

### A.   The Contract At Issue Provides for Reasonable Attorney's Fees and Expenses to the Prevailing Party for All Disputes Relating to or Arising From It

Article X.9 of the Contract provides that "[i]n the event of any controversy, claim or dispute between the parties hereto arising out of or relating to this Agreement, […], the prevailing party shall

---

[45] *Id.* at 15, 27, 31.
[46] *Id.* at 15.
[47] *See* concurrently filed Motion for Judgment as a Matter of Law (Rule 50(b)) and Motion to Revise or Amend Judgment (Rules 54, 59(e)).
[48] Ramos Decl., Ex. K (Contract) at Article VI.3 (No confidentiality obligation for 7 categories of information); *see also* concurrently filed motions for judgment as a matter of law under Rule 50(b) and motion to revise and/or amend judgment under Rules 52, 54, 58 and 59(e).
[49] But even if GSI were to recover the damages amount from the jury verdict, GSI did not obtain anywhere near the substantial relief requested ($40 M in alleged lost profits), and so UMI would still be considered the "prevailing party" on the breach of contract claim. *See infra.*

9

be entitled to recover from the losing party reasonable expenses, attorneys' fees and costs."[50]  This

includes the litigation of the lawsuit and the futile claims made by GSI in its ill-fated proceedings

claiming emergency and preliminary injunctive relief.

Fee-shifting provisions in contracts are enforceable under Colorado law, which governs the

analysis.[51]  *Anderson v. Pursell*, 244 P.3d 1188, 1194-95 (Colo. 2010) (contractual fee-shifting

provision on claims "arising out of" the contract to "prevailing party" enforceable under Colorado

law); *Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 942 (Colo. 1993) (contractual fee-shifting

provision enforceable under Colorado law); *Roa v. Miller*, 784 P.2d 826, 829 (Colo. App. 1989)

(where an award of attorney fees is authorized by statute or by contract, […], a determination of the

propriety of an award of fees need not be made until that litigation is completed and the result is

known"); *see also NWS Corp. v. Dish Network, LLC*, 2014 WL 769175 (S.D. Cal. 2014) (enforcing

fee-shifting provision under Colorado law similarly drawn to both contract and tort claims arising

from the contract).

**B.      All Causes Of Action Alleged Against UMI Related To The Contract At Issue**

As explained below, all claims for relief alleged, including GSI's failed claims for

emergency and preliminary injunctive relief, against UMI in this action relate or arise from the

contract at issue, and thus trigger the Attorney's Fees provision of Article X.9.

**1.      GSI's Claims for Temporary Emergency and Preliminary Injunctive Relief**

As described above, GSI's claims for emergency and preliminary injunctive relief arose and

related to the Contract, specifically, GSI's allegation in its original complaint that UMI had

breached, and/or would continue to breach its confidentiality and non-compete obligations defined in

Articles VI and III.6.[52]

**2.      Sherman Act, Section 1 (15 U.S.C. § 1) and RICO Act (18 U.S.C. §§ 1962(c) and 1962(d))**

GSI's allegations relating to its federal claims under the Sherman Act and RICO Act

---

[50] Ramos Decl., Ex. K (Contract) at Article X.9.

[51] *See* Ramos Decl., Ex. K (Contract) at Article X.5 ("**Governing Law.** This Agreement shall take effect under, be construed and enforced according to, and be governed by, the laws of the State of Colorado.").

[52] *See supra*, Introduction, at 1-2.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

included the following:

a)  In February 2007, Cisco Systems, Inc. ("Cisco") issued a request for information ("RFI") regarding an LLDRAM chip that was a "more advanced chip" than the 576Mb chip, namely, "Atris."  At the time, Cisco sought two secure suppliers for the Atris chip and, in 2007, selected plaintiff GSI and third party Renesas as its suppliers.[53]

b)  Approximately two years later, in the second half of 2009, Cisco terminated its relationship with GSI as a second source supplier for Atris, "due to delays and uncertainties in the completion of the design work."[54]

c)  Then, three years later, in mid-2012, Cisco issued another RFI for a second source supplier. GSI submitted a bid in response.  Cisco, however, awarded the bid to ISSI around early November 2012.[55]

d)  GSI asserts that on or around August 2, 2012, a RICO enterprise, previously formed in 2009 by UMI and its CEO (John Faue), was "expanded to include [ISSI] … for the ongoing common purpose of harming [GSI's] business relationship with Cisco, misappropriating [GSI's] confidential and proprietary information, and confusing, misleading, and deceiving Cisco into believing that the development of the Atris chip stemmed from the sole creative efforts and proprietary information of [ISSI] and [UMI].[56]

e)  GSI also asserts that Cisco awarded ISSI an Atris "second source supplier award, in large part, because of pricing."[57]  GSI asserts that ISSI "was able to underbid GSI [] because it had the benefit of United Memories' know-how—*which was gained at [GSI's] expense*—and the Atris schematic database, library, and layout, *which incorporated [GSI's] IP*."[58]  GSI further asserts that "[w]ithout GSI's confidential information, trade secrets, and intellectual property, [ISSI] and UMI/ProMOS would not have been able to keep GSI Tech from winning the Cisco contract and effectively entering the market for high-performance DRAM."[59]  GSI asserts that "*[UMI] would*

[53] SAC ¶¶ 28, 32, 240.
[54] SAC ¶¶ 62, 240.
[55] SAC ¶¶ 63, 66, 74, 75.
[56] SAC ¶ 141.
[57] SAC ¶ 212.
[58] *Id.* (emphasis added).
[59] SAC ¶ 103.

11

DEFENDANT UNITED MEMORIES, INC. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  MOTION
FOR ATTORNEYS' FEES AND COSTS - CASE NO. 13-CV-1081-PSG

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1   *never have been in a position to assist* **[ISSI]**—much less sell to [ISSI] a layout, library, and

2   schematic database for Atris—***but for GSI Tech's involving [UMI] in the original Atris project in***

3   ***2007-2009 and in the 576Mb chip project*.**[60]   The "576MB chip project" was the project

4   specifically contemplated by (and defined in) the Contract.

5          Clearly, GSI's Sherman Act and RICO Act alleged causes of action against UMI all arise or

6   relate to the contractual relationship between GSI and UMI, thus triggering the Attorneys Fees

7   provision (Article X.9) of the Contract.

8          **3.   Declaratory Judgment (28 USC §2201) and Breach of Contract Claims**

9   GSI's Fifth and Sixth Claim for Relief expressly concerned breach of the Contract.[61]

10          **4.   Unfair Competition under California Business and Professions Code § 17200**
            **and/or Colorado Revised Statute §§ 6-1-101**

11

12          GSI's Seventh Claim for Relief alleged that an Atris schematics database was derived from

13   GSI IP, as that term is defined in the Contract, and that, in negotiating the Contract, UMI made a

14   "false promise that UMI would protect GSI confidential/proprietary information and would not assist

15   a competitor," under the express terms of the Contract.[62]

16          **5.   Fraud and False Promise**

17          GSI's Ninth and Tenth Claims for Relief alleged that UMI repeatedly represented to GSI (in

18   2007-2009) that its work on Atris was in collaboration with and for the benefit of GSI, and that GSI

19   relied on this representation when it agreed to enter into the Contract at issue.  GSI further alleged

20   that UMI "lulled" GSI into permitting UMI to incorporate GSI IP (as that term is defined in the

21   Contract) into the Atris schematics that it later sold to ISSI.  GSI also alleged that UMI made its non-

22   compete promise to GSI (memorialized in Article III.6 of the Contract) with no intent to keep it, and

23   that GSI reasonably relied on this false promise, and would not have entered the Contract

24   otherwise.[63]

25

26

27   ───────────────
     [60] SAC ¶ 177 (emphasis added).
     [61] SAC ¶¶ 157-169 (Fifth and Sixth Claims for Relief).
     [62] SAC ¶¶ 170-181 (Seventh Claim for Relief).
28   [63] SAC ¶¶ 190-213 (Ninth and Tenth Claims for Relief).

### 6.  Misappropriation of Trade Secrets

The term "Trade Secret" is defined it the Contract (Article I.8), and GSI claimed that the protection of its alleged trade secrets through the use of a non-compete agreement (allegedly breached by UMI) was a significant factor in entering into the Contract.[64]  GSI's Eleventh Claim for Relief on Misappropriation of Trade Secrets (UTSA) alleged that: (a) the 576 RLDRAM schematics and layout, which UMI had created and/or compiled in furtherance of the Contract, were GSI trade secrets; (b) UMI misappropriated that material by incorporating it into the Atris schematics and layout, and then selling that Atris work to co-defendant ISSI (in other words, the same basic acts underlying GSI's allegations of breach of contract); and that (c) UMI knew that the alleged "GSI trade secrets" would be used to compete against GSI in the LLDRAM market—in violation of the Article III.6 of the Contract—where "LLDRAM" was also a defined term in the Contract.[65]

### 7.  Intentional Interference with Prospective Economic Advantage

GSI's Thirteenth Claim for Relief—Intentional Interference with Prospective Economic Advantage—alleged that UMI and ISSI intended to disrupt a  known relationship between Cisco and GSI, and that UMI's "wrongful conduct" to disrupt the relationship was its breach of contract and misappropriation of trade secrets—the same alleged "trade secrets" that were purportedly embodied in the 576 RLDRAM design that UMI created and/or compiled in furtherance with the Contract.[66]

***

Given all of the above, quite clearly every single cause of action alleged against UMI arose from or related to the Contract, and so the entire case is subject to an award of attorneys' fees and costs to the prevailing party.

### C.    UMI Is The Prevailing Party On All Causes Of Action

The Contract's "Governing Law" provision, Article X.5, states, "This Agreement shall take effect under, be construed and enforced according to, and be governed by, the laws of the State of Colorado."  Here, UMI seeks its reasonable expenses and attorneys' fees as prevailing party, under the Contract's fee-shifting provision (Article X.9).  Since the Contract contains a Colorado choice of

---

[64] Ramos Decl., Ex. K (Contract) at Recital G.
[65] SAC ¶¶ 214-230 (Eleventh Claim for Relief).
[66] SAC ¶¶ 238-248 (Thirteenth Claim for Relief).

13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

law provision as to any claims between the parties, and the Court is to interpret the attorney fee provision in the Contract, this choice of law provision should be considered.

In California,[67] when "a choice of law provision has been negotiated at arm's length, the law of the state chosen by the parties will apply as long as the chosen state has a substantial relationship to the parties or their transaction or there is any other reasonable basis for the parties' choice of law and, as long as the chosen state's law is not contrary to a fundamental policy of California." *NWS Corp.*, 2014 WL 769175 at *4 (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 466, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992). "A substantial relationship is present when at least one of the parties resides in the chosen state." *Id.* Since UMI is a Colorado corporation residing in Colorado Springs, such is the case here.[68] Moreover, it is undisputed that all of UMI's alleged misconduct occurred at its company headquarters in Colorado.

Thus, the determinations of who is "prevailing party" and what are "reasonable" fees and expenses are to be guided by Colorado law.

### 1.      Determining "Prevailing Party" Under Colorado Law.

"A trial court is given broad discretion to determine who is a prevailing party in multiple claim cases because of its unique opportunity to observe the course of the litigation." *Archer v. Farmer Bros.*, 90 P.3d 228, 231 (Colo. 2004) (citing *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 504 (Colo.App.2003); *Phetosomphone v. Allison Reed Group, Inc.*, 984 F.2d 4, 9–10 (1st Cir.1993)). "In multiple claim cases, where either party could arguably be considered the 'prevailing party,' the trial court is in the best position to evaluate the relative strengths and weaknesses of each party's claims, the significance of each party's successes in the context of the overall litigation, and the time devoted to each claim. *Archer* at 231. "In order to be a 'prevailing party,' a party must succeed on a significant issue in the litigation and achieve some of the benefits sought." *Anderson*, 244 P.3d at 1194 (quoting *In re Water Rights of Bd. of Cnty. Comm'rs of Cnty. of Arapahoe*, 891 P.2d 981, 984 (Colo.1995), and citing *Odenbaugh v. Cnty. of Weld*, 809 P.2d 1059, 1063 (Colo. App. 1990)). The

---

[67] Because this is a diversity case, the choice of law rules of the forum state (California) is to be applied. *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 645 (9th Cir.1988). *See also NWS Corp.*, 2014 WL 769175 (2014) at *4.
[68] Doc. 243 (UMI Answer and Counterclaims) at ¶ 5.

14

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

- Case 5:13-cv-01081-PSG   Document 1074-1   Filed 12/23/15   Page 19 of 30

issue on which the party prevails "need not be the central issue in the litigation, only a significant

one." *Id.* (internal quotations omitted). "The court should examine the overall context of the case,

and should consider where in the case the parties spent the majority of their time and resources." *Id.,*

citing *Munoz v. Measner*, 214 P.3d 510, 515 (Colo. App. 2009); *Archer*, 90 P.3d at 231-32 (Colo.

2004).

In *Anderson*, Colorado's Supreme Court held that defendant was entitled to reasonable

attorneys' fees and expenses pursuant to a contractual fee-shifting provision, explaining:

> In *Archer*, we held that a party was a "prevailing party" under C.R.C.P. 54(d) and
> entitled to costs even though there had been an adverse judgment against it. *Id.*
> There, although the other party had prevailed on one claim, we determined that
> the "vast majority of the time and resources of the litigation were devoted to" the
> claims that were dismissed against the party. *Id.* Thus, we held that the party was
> entitled to costs as the prevailing party despite the adverse judgment against it.

*Anderson*, 244 P.3d at 1194.  *See also NWS Corp.* 2014 WL 769175 at *5 (enforcing fee

shifting provision under the holdings of *Anderson* and *Archer).*

Relevant to the instant action, UMI successfully defended itself against an onslaught

of at least ten complex claims catapulted against it—including federal antitrust and

racketeering claims—and two proceedings seeking unfounded emergency and preliminary

injunctive relief, in a case of first impression in this court, and where apparently no other

court in the country (state or federal) has faced a similar situation—namely, where defendant

was accused of misappropriating its own information and intellectual property, and where no

damages or other relief could be obtained as a matter of law on all but one claim (breach of a

contractual confidentiality provision).[69]

Under the above controlling law and factual circumstances, UMI is prevailing party

for all causes of action.

### 2.   UMI is Prevailing Party On the Initial TRO and Preliminary Injunction Phase of this Case

As set forth is the table below, UMI prevailed on all aspects of the litigation handled by

Hogan attorneys:

---

[69] *See* Doc. 1055 (jury verdict that GSI does not own 21 out of 25 alleged "trade secrets"), Ramos
Decl., Ex. K (Contract) at Article V.3 limitation of liability.

15

DEFENDANT UNITED MEMORIES, INC. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES AND COSTS - CASE NO. 13-CV-1081-PSG

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

| Activity / Litigation Phase | Fees Incurred[70] | Outcome |
|---|---|---|
| Pre-Suit Investigations—Response to litigation threat from GSI counsel (DLA Piper) on expired contract and unenforceable contractual obligations (January 2013) | *These fees are not included in UMI's fee request* | GSI fails to identify alleged "confidential information" at issue; instead, lawsuit is filed, and a temporary restraining order (TRO) requested although GSI was admittedly "flying blind" |
| Initial case management activities and response to request for temporary restraining order (March 11, 2013- April 8/ 2013) | $105,325 | GSI's request for TRO DENIED |
| Court ordered expedited discovery re motion for preliminary injunction; briefing and hearing GSI's request for a preliminary injunction | $1,016,952.50 | GSI's request for preliminary injunction DENIED |
| Response to First Amended Complaint (Motion to Dismiss) (July 23, 2013 – October 3, 2013) | $ 206,949.50 | GSI WITHDRAWS First Amended Complaint – files Second Amended Complaint (SAC) |
| Partial Motion to Dismiss Second Amended Complaint (Federal Claims and Misappropriation of Trade Secrets) (October 4, 2013 – April 30, 2014) | $ 567, 177.50 | FEDERAL CLAIMS DISMISSED – SAC becomes the operative complaint, with 10 causes of action alleged against UMI |

As such, UMI is entitled to recover all fees (**$1,676,177.50**) and expenses (**$75,088**) incurred on these preliminary disputes arising from the Contract.  Undeniably, UMI PREVAILED in these proceedings.

**3.**     **UMI is Prevailing Party For All Causes of Action.**

**Sherman Act, RICO, Fraud, False Promise, and Intentional Interference.**  The can be no genuine dispute that UMI PREVAILED on each of these claims.[71]  UMI will also prevail on the Unfair Competition claims, which must now be decided as a matter of law by the Court.

**Unfair Competition.**  Judgment has not been entered on the two unfair competition claims alleged against UMI under the California and Colorado statutes.  For reasons set forth in UMI's concurrently filed Motions To Revise Or Amend The Judgment Under Rules 52, 54, 58 and 59(e),

---

[70] Total expenses incurred by Hogan were $75,088, which can also be individually assessed by date and therefore phase. *See* Ramos Decl., Ex. E. (Hogan Cost Summary).

[71] Doc. 1055 (Jury Verdict) at 15, 27, 31.

the Court should enter judgment in UMI's favor.  <u>First</u>, GSI conceded before trial that, in order to prevail on its California Business and Professions Code § 17200 claim for unfair competition, GSI must prove that defendants' alleged conduct significantly threatens or harms competition.[72]  There was simply no evidence adduced at trial of such harm.  <u>Second</u>, the jury verdict on GSI's intentional interference with prospective economic advantage claim was in favor of Defendants; the jury found that no unfair conduct had occurred.[73]  <u>Finally</u>, GSI essentially failed to prosecute its claims for unfair competition, which dictates dismissal of that claim.  *Sherman v. U.S.*, 801 F.2d 1133, 1133 (9th Cir. 1986) ("It is well established that a judge may dismiss a case when the plaintiff fails to prosecute.")  For all of these reasons, UMI PREVAILED on GSI's unfair competition claims.

**Misappropriation of Trade Secrets.**  UMI is also the prevailing party on GSI's misappropriation of trade secrets claim.  The jury found that only four of the 25 schematics were even owned by GSI, let alone misappropriated by UMI.[74]  The jury also found NO DAMAGES for misappropriation.[75]  Under these circumstances, UMI prevailed on this tort claim as well.  *See Gonzales v. Windlan*, --- P.3d ---- (2014), 2014 WL 7447196 (Colo. 2014) (trial court acted within its discretion in determining that defendant motorist was the prevailing party, as would support award of costs, in plaintiff motorist's negligence action out of vehicle collision, even though jury awarded plaintiff motorist $640 in economic damages; the $640 award was far less than the amount of claimed medical expenses, and jury awarded no damages for noneconomic losses or physical impairment.); *see also Archer*, 90 P.3d at 229 (affirming determination that defendants were the "prevailing parties" entitling them to costs, despite the fact that plaintiff had prevailed on a single issue in the case:  Federal claims were dismissed, no liability was found with respect to others, and damages award was "1/24th the size of that against [co-defendant], and was not attended by findings of "fraud, malice, or willful and wanton conduct.")

---

[72] *See* Ramos Decl., Ex. L (10/9/15 Hr'g Tr.) at 11:1-16:5 (GSI agreeing that "TIPER" claim requires finding of unfair competition)—*see also* UMI's Motion to Revise and/or Amend Judgment (Rules 52, 54, 58, 59(e)).
[73] Doc. 1055 (Jury Verdict) at 15.
[74] *Id.* at 4.
[75] *Id.* at 13.

"A 'prevailing party' is one who prevails on a significant issue in the litigation and derives some of the benefits sought by the litigation. *Archer*, 90 P.3d at 230; *Anderson,* 244 P.3d at 1194; *NWS*, 2014 WL 769175 (2014) at * 6 (awarding fees and expenses to defendant under Colorado law, where defendant succeeded to defeat motion of injunctive relief and to dismiss claims; defendant prevailed "on the bulk of the litigation," and thus was entitled to reasonable fees and expenses under a contractual fee-shifting provision in the contract at issue).  Here, UMI was facing a claim for $40 million in damages on speculative lost profits, a trebled damages award for alleged misconduct,[76] punitive and exemplary damages, and a prayer for permanent injunction.  GSI was awarded none of that relief.  UMI PREVAILED.

The Court will recall that from June 2014 until the first hearing on UMI's motion for summary judgment in February 2015—i.e., for *eight months*—UMI was defending against allegations that 46,000+-pages of information were "misappropriated trade secrets."[77]  Significant time, money, and Herculean efforts were spent on defeating those serious allegations.[78]  It was not until the day before the summary judgment hearing that GSI narrowed down its claims.[79]  After all the evidence was heard, the jury verdict found *only 4 pages* contained information owned by GSI. No ownership means no standing to sue for misappropriation.[80]  *Four out of forty-six thousand* (the number of trade secrets litigated for eight full months) amounts to 0.0087%.  Essentially nothing.

The verdict on GSI's misappropriation of trade secrets claim was also in UMI's favor because the Contract's limitations of liability clause (Article V.3) meant that GSI never had a case on any claim for lost profits aside from breach of confidentiality.[81]  As explained in UMI's

---

[76] *See* Doc. 196 (SAC), ¶¶ 1, 121, 151, 156, 181 and Prayer for Relief.
[77] *See* Ramos Decl., Ex. H (letter brief chart showing motions relating to GSI's failure to identify trade secrets with particularity).
[78] *See* Ramos Decl., Exs. E, F, and G (summaries of legal expenses).
[79] *See* Ramos Decl., Ex. M (2/3/15 Hr'g Tr.) at 71:3-13 (GSI admitting same).
[80] *See* Doc. 320-1 (UMI Memo. of Points & Auth.) at 12:16-13:8 (citing to authority and arguing same).
[81] See Ramos Decl., Ex. K (Contract) at Article V.3 ("Except for a breach of confidentiality obligations under Article 6 or a claim for indemnification made under Section 5.5, a party shall not be liable to the other for any consequential, incidental, special or punitive losses or damages under any circumstances whatever, whether asserted as a claim in contract, tort, negligence, product liability or strict liability and whether arising out of or resulting from any matter, information or thing made available or not made available under this Agreement or the use thereof.").

18

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1  concurrently filed Motion for Judgment as a Matter of Law and Motion to Revise or Amend

2  Judgment, GSI never asserted (and waived) any claim for general damages.[82]

3        UMI has moved for judgment as a matter of law that the jury's verdict on misappropriation

4  of trade secrets should be overturned.  *See* UMI's Motion and Memorandum of Points and

5  Authorities In Support of Renewed Motion for Judgment As A Matter of Law (Fed. R. Civ. P. 50(b))

6  ("UMI's JMOL Motion,") filed concurrently herewith.  For all of the reasons set forth in that

7  motion, UMI is entitled to a judgment that it is not liable for misappropriation of trade secrets.

8        UMI PREVAILED on GSI's misappropriation of trade secret claim.  Under Article X.9 of

9  the Contract, it is therefore entitled to recover fees and costs in litigating that issue.

10       **Breach of Contract.**  *See* UMI's concurrently filed Motion for Judgment as a Matter of Law

11 Under Rule 50(b) and Motion to Revise or Amend Judgment Under Rules 54, 58 and 59(e).  With no

12 recoverable damages, GSI cannot be considered to have prevailed on this claim.[83]

13       GSI can hardly argue that it "prevailed" on a significant issue in the litigation, when it sought

14 $40 million in damages for alleged lost profits (*in addition to* a prayer for treble and punitive

15 _____

16 [82] *See* Trial Tr. at 3708:22-3710:12; 3712:14-17; 3713:9-17; 3714:10-13, 21-22; *see also* generally *id.* 3711-3722:14; 3728:4-3729:10.
   [83] The Colorado Supreme Court opinion in *Spencer Contractor, Inc. v. City of Aurora*, 884 P.2d 326

17 (Colo. 1994), reversing an award of attorneys' fees to a defendant who had been found liable on all

18 causes of action against it (breach of a settlement agreement which led to a breach of a construction contract) is distinguished from the facts here. The *Spencer* court was concerned with the "absurd"

19 inequity of awarding attorneys' fees to a city defendant found to violated both contracts at issue, by rote application of a general rule, *i.e.*, that a party cannot be held to "prevail" on its claim for the

20 purpose of obtaining a fee award if it obtained no damages award: "Following the trial, the jury returned a special verdict finding that Aurora had breached both the construction contract and the

21 settlement agreement.  The jury additionally concluded that [Plaintiff] Spencer Contractor had incurred actual damages of $57,000 as a result of Aurora's breach of the construction contract. The

22 jury found that Aurora had breached the settlement agreement but did not award any damages to Spencer Contractor on the settlement agreement."  *Spencer* at 327-328.  "The jury concluded that

23 Spencer incurred damages [] under the construction contract in which the breach of the settlement agreement gave rise to the breach of the construction contract.  We conclude that it would be an

24 unjust result to uphold an award of attorney fees to Aurora where Spencer Contractor, the innocent party, was required to pay attorney fees to the breaching party."  *Id.* at *333*.  The lack of jury award

25 on the second agreement was strictly because, as a matter of law, plaintiff was not allowed to obtain a duplicative damages award. ("The jury was instructed under Instruction No. 40 that it could award

26 damages only once for the same losses. The jury adhered to this instruction and was therefore prohibited in Instruction No. 41 from awarding damages on both contracts since Aurora's conduct in

27 breaching the settlement agreement gave rise to the breach of the construction contract.16 Therefore, the special verdict for damages in the breach of the construction contract implicitly includes

28 damages attributable to the breach of the settlement agreement.") *Id.* at 334.  The *Spencer* facts bear no similarity to the facts in the instant action.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1    damages as well), and waived its right to seek any general damages for breach of contract.  GSI

2    furthermore seeks nearly $10,000,000 in attorneys' fees and expenses incurred in achieving a jury

3    verdict of less than 10% that amount—more than half of which it clearly cannot recover (due to

4    GSI's express waiver).  The jury finding of breach of contract was insignificant when considered

5    against the litigation as a whole.  As described above, the vast majority of time in this litigation was

6    spent on the trade secrets issues.[84]  In fact, GSI sought a ten-week continuance in the trial date,

7    purportedly due to its inability to obtain a timely expert opinion on the trade secret misappropriation

8    claim against both defendants (a claim which, by then, had been pending for over a year).  The Court

9    granted that request.  Because nearly all of the discovery on GSI's breach of contract claim had been

10   obtained in the approximately 8-week expedited discovery phase of the case in April-June 2013, and

11   because co-defendant ISSI was not accused of breaching that agreement, the two-year period from

12   June 2013-July 2015 focused primarily on the trade secrets cause of action.

13            Examining the overall context of this case, the facts and allegations underlying GSI's breach

14   of contract claim were aimed primarily at putting an end to the UMI-ISSI business relationship:  GSI

15   sought a temporary restraining order, and preliminary and permanent injunctions against UMI, all of

16   which were denied.  It also sought $40 million in damages from UMI—also denied. And it sought

17   punitive damages—again denied.  GSI alleged numerous intentional torts (fraud, false promise,

18   intentional interference of prospective economic advantage), all of which were denied, and made

19   serious (but wholly unfounded) charges of anticompetitive conduct under federal and state laws,

20   including racketeering charges under the RICO Act—a set of laws meant to stop and deter organized

21   crime—which UMI was forced to move the Court to dismiss.  All of these facts are highly

22   condemning of GSI's complaint overall, and demonstrate UMI's position as prevailing party in this

23   action.

24            UMI, on the other hand, successfully demonstrated at trial that it had engaged in no unfair

25   conduct, no actionable misappropriation of trade secrets (because there were no  damages), and no

26   other intentional torts as alleged.  UMI successfully demonstrated that nearly all of the materials that

27

28   [84] *See* Ramos Decl., ¶ 7 (fn. 1) and Exs. A, H (showing hours spend during discovery phase and
     pleadings filed).

DEFENDANT UNITED MEMORIES, INC. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  MOTION
FOR ATTORNEYS' FEES AND COSTS - CASE NO. 13-CV-1081-PSG

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

GSI had alleged at trial were "misappropriated" were not even owned by GSI.  UMI had explicitly raised lack of ownership and no damages in its answer and counterclaims, and had also filed summary judgment motions on those two issues. [85, 86]  The jury largely found in its favor.

In determining the prevailing party in this case for the purpose of a fee award, the Court "should examine the overall context of the case, and should consider where in the case the parties spent the majority of their time and resources," *See Anderson*, 244 P.3d at 1194 (citing *Munoz*, 214 P.3d at 515 and *Archer*, 90 P.3d at 232).  Considering of all of the above, even if the Court were to deny UMI's motions for a directed verdict on breach of contract and/or damages, UMI should nonetheless be held as "prevailing party" on that issue, or at least the prevailing party in this litigation overall. "The court should examine the overall context of the case, and should consider where in the case the parties spent the majority of their time and resources." *Anderson* at 1194.  As such, UMI is entitled to recover its attorneys' fees and reasonable expenses incurred in defending itself through trial (and post-trial motion practice).

**D.     Reasonable Attorneys' Fees Are Based On The Lodestar Method**

In calculating attorney's fees, the lodestar method is used. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Payan v. Nash Finch Co.*, 310 P.3d 212, 217 (Colo. App. 2012). The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 147 (Colo. App. 1996). The trial court has discretion in making a determination on attorney's fees. *Payan*, 310 P.3d at 217. "The determination of reasonableness of attorney fees is a question of fact for the trial court, and its ruling will not be disturbed on review unless patently erroneous and unsupported by the evidence." *Id.* (citing *Tallitsch* at 147 ).  The court's calculation of the lodestar amount is entitled to a strong presumption of reasonableness. *Id.*

In its lodestar calculation, the court should exclude hours that were not "reasonably expended" and exclude hours that are excessive, redundant, otherwise unnecessary...." *Hensley*, 461 U.S. at 4343. The lodestar may then "be adjusted based upon several factors, including the amount in

---

[85] *See e.g.* Doc. 243, ¶¶ 30-34, and Counterclaim Two and Four.
[86] Doc. 320 (December 2014 MSJ) and Doc. 563-4 (May 2015 MSJ).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, and the degree of success achieved. *Dubray v. Intertribal Bison Co-op.*, 192 P.3d 604, 608 (Colo. App.2008) (citing *Tallitsch*, 926 P.2d at 147.))

### E.     Attorney's Rates Were Reasonable

From the very beginning of this litigation, UMI's counsel made tremendous efforts—successfully—to keep the litigation expenses to a bare minimum.  Both Hogan an Winston provided UMI with substantial discounts (15%)[87] on its hourly fees and, once the expedited discovery period had ended, the litigation team comprised essentially two active attorneys (K. T. Cherian and Sarah Jalali at Hogan; K.T. Cherian and Constance Ramos at Winston) and one paralegal (Yinglin Steinberg), up until pre-trial submission deadlines loomed in September 2015.  Even then, the trial team remained lean (two attorneys from Winston, four attorneys from Ruyak Cherian, and two paralegals).

Unable to afford the expense of an expert witness, throughout the entire litigation, UMI's CEO (Jon Faue) bore the responsibility of assisting principal litigation counsel—Mr. Cherian and Ms. Ramos—on the technical issues raised by GSI's allegations. Both Mr. Cherian and Ms. Ramos have post-graduate degrees in relevant physical sciences, and decades of experience litigating complex patent matters in the semiconductor and other related industries.  Given the legal and technical expertise of the individual attorneys, and their dedication to minimize the number of attorneys and staff involved on the case (substantially increasing the amount of late-night hours burning the midnight oil), the attorneys' hourly rates were eminently reasonable.

A "reasonable hourly rate" is the attorneys' market rate, or the prevailing rate charged by attorneys of similar skill and experience in the relevant community.  *Anderson*, 244 P.3d  at 1197 ("To calculate a reasonable fee, a trial court shall start by multiplying the number of hours reasonably expended on the matter by a reasonable hourly rate.  In determining a reasonable hourly rate, the trial court should look at the rates charged by attorneys of comparable skill, experience, and reputation in light of community standards in a reasonable community.") (citing *Am. Water Dev.,*

[87] Ramos Decl. ¶ 10.

22

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

*Inc. v. City of Alamosa*, 874 P.2d 352, 386-387 (Colo. 1994); s*ee also e.g. PCLM Group v. Drexler*, 22 Cal. 4th 1084, 1095.   Rates will be deemed reasonable for the relevant community if they are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (2002);  *see also Anderson*, 244 P.3d  at 1197.

Winston's Director of Pricing, Ms. Keri S. Gavin, reviews Pricewaterhouse Coopers' ("PwC") Billing Rate and Associate Salary Survey ("BRASS") for the AmLaw 50 and other peer law firm groups as part of her job duties.  Declaration of Keri S. Gavin ("Gavin Decl.") at ¶ 2. Ms. Gavin created a chart with PwC's BRASS median billing rates for AmLaw 50 San Francisco. *See* Gavin Decl., Ex. A. Ms. Gavin also created a chart of the names, positions, years of experience and billing rates for UMI's primary  litigation team at Winston during calendar years 2014 and 2015. *See* Gavin Decl., Ex. B.  The concurrently filed Declaration of Robert Ruyak provides similar information with respect to the Ruyak Cherian firm.[88]

### F.    Legal Work Performed In Defending Against The Injunction Proceedings and 10 Causes Of Action Were Reasonable

GSI instigated this case in March 2103.  After 33 months of litigation, the case culminated in a jury trial that spanned over 5 weeks.  UMI's defense required thousands of hours of attorney time.[89]  As described above, GSI's litigation tactics were relentless.  GSI produced over 775,000 Bates stamped pages of documentation, and the parties collectively produced over a 1.3 million pages of Bates stamped materials.[90]  Thirty-four (34) depositions were taken, nearly all of them for a full day (or more), as permitted under the Federal Rules.  The court docket topped off at over 1050 entries as of December 21, 2015.

As explained above, and as the Court is intimately aware, this was a case of first impression. UMI had been accused of misappropriating and misusing its own materials and intellectual property to which GSI had only obtained a limited, non-exclusive license under the unambiguous terms of the contract at issue.  UMI contended from the very beginning of the litigation that all of that

---

[88] Hourly rates for UMI's litigation team while at Hogan were comparable to those at Winston.
[89] *See* Ramos Decl, Ex. A.
[90] *See* Ramos Decl., ¶ 16.

23

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

information GSI had alleged it owned and was improperly used and/or disclosed by UMI to ISSI was either publicly available, generally known in the industry, and/or part of UMI's special knowledge in the industry prior to the parties' contractual relationship in 2008.[91]

GSI's second amended complaint raised highly complex allegations of intentional violations of numerous statutes (Sherman Act, RICO, California and Colorado Unfair Competition Statutes, Trade Secrets statutes) concerning materials developed by but claimed by GSI as its own.  In the end, what started out as over 46,000 pages of "trade secrets" became only twenty-five that GSI actually prosecuted at trial, only four of which the jury found were GSI's.  The complexity and enormity of GSI's allegations under these circumstances significantly increased the cost of the litigation to UMI.

With a lean litigation team and essentially no budget, UMI's counsel made effective use of joinders to co-defendant ISSI's submissions, where appropriate, to limit the attorney time spent drafting similar pleadings.[92]

Reviewing time entries from 33 months of invoices, UMI's counsel identified twenty-four (24) separate tasks that litigation counsel performed in this action.[93]  In addition, to facilitate this Court's review of the time entries, UMI counsel has summarized the services that were provided during discrete phases of the litigation, and has summarized the number of hours and various tasks that each of attorney worked on each significant task and/or litigation phase.[94]  UMI's counsel did not expend any unnecessary hours on those litigation tasks—they are of the sort that would be reasonably billed to other similarly situated clients.  Thus, the number of hours billed for the tasks completed was reasonable.  *Cf. The Guidiville Rancheria of California et al. v. United States*, 2015 WL 4934408 (N. D. Cal. Aug. 18, 2015) .

### G.    Legal Expenses Incurred Were Reasonable

Given the length of this protracted litigation, the litigation and trial expenses incurred were also reasonable.  Although a Colorado company, UMI engaged local counsel in the Northern District

---

[91] *See e.g.* Doc. 243 (UMI's Answer and Counterclaims) and Doc 249 (July 2014 Faue Decl.).
[92] *See e.g.* Docs. 507, 794, 808, 810, 851, 853, 876 (UMI's filed joinders).
[93] *See* Ramos Decl., ¶ 11, Ex. D.
[94] *See* Ramos Decl., ¶¶ 5-8, 10, 11, and Ex. A (Chart summarizing litigation activities per phase or task and explanations of same).

24

of California to handle the litigation, thus reducing travel costs to attend hearings, depositions, and client meetings. Additional cost-cutting efforts included, among other things, not engaging a technical expert for trial (Mr. Faue, UMI's CEO, had first-hand knowledge of all accused and pre-existing chip designs at issue, had invented numerous technologies at issue, and was one of only a few at UMI who had first-hand knowledge of the development of Atris specification and design central to the allegations GSI had made in its complaint). Given the high cost of e-discovery, UMI cut costs by producing many designs and other documents in native format, so as to minimize total processing costs, producing them on single CD when feasible.

As of December 15, 2015, the total amounts of expenses incurred by the three different law firms involved in UMI's defensive case were: **$75,088** (Hogan) and **$533,066** (Winston) (Ruyak Cherian's expenses were invoiced to Winston). Expert fees and expenses incurred in this lawsuit were **$6250** (Dennis Wilson) and **$32,762** (Nisha Mody at OSKR).[95]

## IV.   CONCLUSION

For all of the above reasons, UMI respectfully requests that the Court declare UMI the prevailing party in this action, and award its reasonable expenses and attorneys' fees under Article X.9 of the contract at issue. Subject to further revision to include amounts incurred in connection with the (and other) post-trial motions, and expense invoices not yet received, those amounts are currently computed as:

|  | ***Hogan*** | ***Winston*** | ***Ruyak Cherian*** |
|---|---|---|---|
| **Fees:** | $ 1,676,177 | $ 4,214,910 | $ 803, 475 |
| **Expenses:** | $  82,338[96] | $ 565,828[97] | $ |
| **TOTAL** | **$1,758,515** | **$4,780,738** | **$ 803,475** |

Subject to further revisions to include fees and expenses incurred for post-trial activities and other amounts not yet invoices, the total fees UMI requests by this motion is **$ 6,694,562** and the total amount for reasonable expenses is **$ 648,166**.

---

[95] Ramos Decl., ¶ 15.
[96] Includes $6,240 to expert Mr. Wilson (2013).
[97] Includes $32,762 to expert Dr. Mody (2015).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

25

Dated:  December 23, 2015

Respectfully submitted,

WINSTON & STRAWN LLP

By: /s/  *Constance F. Ramos*
     Constance F. Ramos

Attorneys for Defendant
United Memories, Inc.

DEFENDANT UNITED MEMORIES, INC. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  MOTION
FOR ATTORNEYS' FEES AND COSTS - CASE NO. 13-CV-1081-PSG

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA  94111-5802**