1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7   GSI TECHNOLOGY, INC.,

Case No. 5:13-cv-01081-PSG

8                       Plaintiff,

**ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE 50(b) MOTION**

9           v.
10  UNITED MEMORIES, INC., et al.,

**(Re:  Docket Nos. 1062, 1073)**

11                      Defendants.
12

13          Four years ago, Plaintiff GSI Technology, Inc. inked a deal with Defendant United

14  Memories, Inc. to design a low-latency DRAM chip.  The project never really got off the ground,

15  however, and the companies later parted ways.  After GSI came to learn that UMI had teamed up

16  with GSI's rival Integrated Silicon Solutions, Inc. for another DRAM project, it filed suit against

17  UMI and, later, ISSI, alleging that their venture constituted trade secret misappropriation, breach

18  of contract, and various other bad acts.  A jury rejected most, but not all, of GSI's claims, finding

19  that while UMI had misappropriated a small number of secrets and breached its contract, the

20  damage to GSI was relatively slight.

21          GSI and UMI now renew their motions for judgment as a matter of law, with GSI seeking

22  to overturn the jury's verdict that it did not own trade secret information in 21 of 25 circuit

23  schematics,[1] and UMI seeking to overturn the jury's verdict that it misappropriated GSI's trade

24  secret information in four others.[2]  UMI also seeks JMOL that it did not breach its contract with

---

[1] *See* Docket No. 1063.

[2] *See* Docket No. 1073-1 at 6-11.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE
50(b) MOTION

United States District Court
Northern District of California

GSI and that even if it did, GSI is not entitled to any damages at all.[3]  GSI's motion is DENIED.

UMI's motion is GRANTED as to contract damages but DENIED as to the trade secret

misappropriation and breach of contract claims.

## I.

Fed. R. Civ. P. 50(b) provides that, upon a renewed motion for judgment as a matter of

law, the court may: (1) "allow judgment on the verdict, if the jury returned a verdict," (2) "order a

new trial" or (3) "direct the entry of judgment as a matter of law."  Before granting a Rule 50(b)

motion, the court must determine that "the evidence, construed in the light most favorable to the

nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the

jury's verdict."[4]  In other words, to set aside the verdict, the movant must show a lack of

"substantial evidence"—meaning "evidence adequate to support the jury's conclusion, even if it is

also possible to draw a contrary conclusion from the same evidence."[5]  "Substantial evidence"

must be "more than a mere scintilla."[6]  In reviewing a motion for judgment as a matter of law, the

court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all

reasonable inferences in that party's favor."[7]  "In ruling on such a motion, the trial court may not

weigh the evidence or assess the credibility of witnesses in determining whether substantial

evidence exists to support the verdict."[8]

---

[3] *See* Docket No. 1073-1 at 2-6, 11-22.

[4] *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

[5] *SEC v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011) (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994); *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007)).

[6] *Chisholm Bros. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[7] *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000)).

[8] *Boston Sci. Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1109 (N.D. Cal. 2008) (citing

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE 50(b) MOTION

1   GSI is a California corporation that designs, develops and markets computer memory

2   products.[9]  UMI is a Colorado company that provides integrated circuit design and layout

3   services.[10]  In May 2008, UMI agreed to provide design and layout services for GSI's 576 Mb

4   chip.[11]  After exchanging various drafts, the parties sealed their deal with a written agreement that

5   contained terms governing the ownership of the circuit schematics and associated intellectual

6   property rights, UMI's ability to do other LLDRAM design work while working for GSI, the use

7   of confidential information and liability arising out of this project.[12]

8   Section III.1, the ownership clause, provides that

9   GSI shall have sole ownership of all deliverables and the Product, and all associated
10  intellectual property rights (excluding solely any Project Patents that UMI owns
    under the terms of Article IV) and all other works of authorship, information fixed
    in any tangible medium of expression (whether or not protectable under copyright
11  laws), inventions (whether or not protectable under patent laws), discoveries,
    designs, developments, suggestions, ideas, improvements, know-how, and other
12  intellectual property rights conceived, developed or reduced to practice by GSI,
    alone or with others, during the course of the Project (collectively, the "GSI IP")
13  This includes, without limitation, the following: the specification of the Product, the
    layout (database) of the Product, circuit simulations and/or HDL descriptions of the
14  Product. UMI hereby irrevocably transfers, conveys and assigns to GSI all of its
    right, title and interest in and to all GSI IP. . . . UMI hereby grants to GSI, under all
15  of UMI's intellectual property rights, a worldwide, non-exclusive, perpetual,
    irrevocable, fully paid, royalty-free, transferable license, under all UMI's
16  intellectual property rights (including, without limitation, any Project Patents) to (a)
    make, have made, use, offer for sale, sell, have sold and import products and to
17  practice any methods, and (b) use, reproduce, modify, distribute, perform, display,
    create derivative works of, offer for sale, sell, have sold, import, make, have made
18  and otherwise fully exploit any and all intellectual property that has been created,
    conceived, developed, reduce [sic] to practice, licensed, or otherwise acquired by
19  UMI prior to the execution of, or independent from, this Agreement that is
    incorporated by UMI into the Product or other deliverables owned by GSI
20  hereunder in any manner and through any medium, whether known or to become

21

22  *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984)).

23  [9] *See* Docket No. 320-1 at 2.

24  [10] *See id.* at 1-2.

25  [11] *See id.*

26  [12] *See* Docket No. 196, Ex. 1.

27                                          3

United States District Court
Northern District of California

known.[13]

Section III.6, the non-compete clause, provides that

> [Except for the Product being designed and developed by UMI for GSI hereunder,] UMI agrees it shall not, directly or indirectly, design or develop, or contribute to the design or development of, a Low Latency DRAM Product (as defined below) during the term of this Agreement.  "Low Latency DRAM Product" means a latency optimized and/or address rate optimized memory product that employs a capacitive charge-based memory cell technology, including, but not limited to, RLDRAM and FCRAM products.[14]

Two clauses deal with confidential information.  Section I.1 defines "Confidential Information" as

> all non-public information that the party disclosing the information (the "Disclosing Party") designates at the time of disclosure as being confidential, or if disclosed orally or visually is identified as such prior to disclosure and summarized, in writing, by the Disclosing Party to the receiving party (the "Receiving Party") within thirty (30) days, or which, under the circumstances surrounding disclosure, the Receiving Party knows or has reason to know should be treated as confidential without the need to be marked as "confidential."[15]

Section VI.1 establishes the parties' obligations with respect to Confidential Information:

> The Receiving Party shall keep in confidence all of the Disclosing Party's Confidential Information received by it.  All Confidential Information received by the Receiving Party shall be kept strictly confidential and shall not be used or disclosed to any person or entity by the Receiving Party except as necessary to exercise its rights and fulfill its obligations under this Agreement.  The Receiving Party shall take all reasonable steps to prevent unauthorized disclosure or use of the Disclosing Party's Confidential Information and to prevent it from falling into the public domain or into the possession of unauthorized persons.[16]

GSI and UMI also agreed to limit their liability:

> Except for a breach of confidentiality obligations under Article 6 [or another clause

---

[13] *Id.* at § III.1.

[14] *Id.* at § III.6.  The "term" of the Agreement is defined as beginning on the effective date of the Agreement and ending "at the close of business on the day five (5) years from the Effective Date unless earlier terminated by either party pursuant to this Article VII."  *Id.* at § VII.2.

[15] *Id.* at § I.1.

[16] *Id.* at § VI.1.  This provision also established additional duties not relevant to GSI's and UMI's Rule 50(b) motions.

4

not at issue], a party shall not be liable to the other for any consequential, incidental, special or punitive losses or damages under any circumstances whatever, whether asserted as a claim in contract, tort, negligence, product liability or strict liability and whether arising out of or resulting from any matter, information or thing made available or not made available under this Agreement or the use thereof.[17]

The parties initially planned to leverage UMI's work in designing a different, more advanced chip called "Atris" that GSI would supply to Cisco Systems, Inc.[18]  UMI ultimately delivered to GSI a final 576 Mb chip design, along with various UMI internal emails and communications, third-party documents, circuit schematics and a library.[19]  But the relationship between the parties had run its course and ultimately terminated.[20]

More than three years later, Cisco solicited bids for a supply of Atris chips.[21]  GSI submitted a bid, but lost out to ISSI.[22]  After GSI learned that ISSI had worked with UMI to prepare its winning bid, GSI filed this suit against UMI with claims for breach of contract, violation of California's Unfair Competition Law and a declaratory judgment as to the rights conferred by the 576 Mb agreement.[23]

GSI later amended its complaint, adding ISSI as a party and asserting four more state law causes of action: fraud, false promise, misappropriation of trade secrets and intentional interference with prospective economic advantage.[24]  After the court granted-in-part Defendants'

---

[17] *Id.* at § V.3.

[18] *See* Docket No. 187-4 at ¶¶ 29-30.

[19] *See id.*; Docket No. 284-8 at 2; Docket No. 284-9 at 2; Docket No. 345-5 at 6.

[20] *See* Docket No. 320-1 at 2.

[21] *See id.*; *see also* Docket No. 187-4 at ¶ 63.

[22] *See* Docket No. 187-4 at ¶ 68; Docket No. 245 at ¶ 64.

[23] *See* Cal. Bus. & Prof. Code § 17200; *see also* Docket No. 320-1 at 2.  GSI further requested a temporary restraining order against UMI, which the court denied.  *See* Docket No. 24.  The court later denied GSI's motion for preliminary injunction.  *See* Docket Nos. 160, 176, 203.

[24] *See* Docket No. 159.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE 50(b) MOTION

United States District Court
Northern District of California

motions to dismiss and ISSI's motion for summary judgment, a subset of GSI's claims remained: misappropriation of trade secrets, intentional interference with prospective economic advantage and unfair competition against both ISSI and UMI, and fraud, false promise and breach of contract against UMI for violation of the non-compete clause, the confidentiality clause and the ownership clause.[25]   At trial, GSI sought an injunction, as well as over $40 million in actual damages.[26]

On the trade secret misappropriation claim, the jury found that GSI "owned the information in" four of the 25 circuit schematics (chcon, rclk, rclk_match and dmmatch), but not the remaining 21.[27]

**A. GSI's Misappropriation of Trade Secrets Claims: Preliminary Questions**

1. Do you find by a preponderance of the evidence that GSI owned the information in any of the following 25 circuit schematics?

| | | Yes | No |
|---|---|---|---|
| 1 | chcon | ✔ | |
| 2 | rclk | ✔ | |
| 3 | rclk_match | ✔ | |
| 4 | dmmatch | ✔ | |
| 5 | wclk | | ✔ |
| 6 | rcbufwrc | | ✔ |
| 7 | wbkcom | | ✔ |
| 8 | qcalblk | | ✔ |
| 9 | qcal | | ✔ |
| 10 | qcaladj | | ✔ |
| 11 | qcals | | ✔ |
| 12 | pcalreg | | ✔ |
| 13 | ncalreg | | ✔ |
| 14 | fidec | | ✔ |
| 15 | gclk | | ✔ |
| 16 | yclkmix | | ✔ |
| 17 | rl3buf | | ✔ |
| 18 | rbuf | | ✔ |
| 19 | bnkcon | | ✔ |
| 20 | yclkclk | | ✔ |
| 21 | lwrite | | ✔ |
| 22 | pretimer | | ✔ |
| 23 | bab_s80 | | ✔ |
| 24 | lread | | ✔ |
| 25 | rcbuf | | ✔ |

If you answered "No" for the information in **all** of the schematics, proceed to section I.M. If you answered "Yes" for the information in **any** of the schematics, then answer the next question.

---

[25] *See* Docket No. 227; Docket No. 807; Docket No. 1055 at 4-14, 23-26; Docket No. 1047 at 36. GSI also pursued several other claims, which neither party challenges in its post-trial motions and thus are not discussed here.  After the trial, GSI and ISSI reached a final settlement in this matter. *See* Docket No. 1098.

[26] *See* Docket No. 799-4 at 14, 21, 26.

[27] Docket No. 1055 at 4.

6

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE
50(b) MOTION

*United States District Court*
*Northern District of California*

1

2  The jury also found that "the information in" these four circuit schematics (but not the other 21)

3  "was a trade secret at the time of the claimed misappropriation," and that UMI had "improperly

4  used or disclosed the trade secret information in" those four schematics.[28]   Although the jury

5  found that UMI's misappropriation "was a substantial factor in causing GSI to suffer harm," it

6  awarded $0 in general damages.[29]

7      On the breach of contract claim, the jury found that GSI and UMI had "enter[ed] into a

8  contract" and that UMI "fail[ed] to comply with its obligations under the contract," which

9  "cause[d] GSI damage."[30]   The jury rejected UMI's affirmative defenses of unclean hands,

10  estoppel, waiver, statute of limitations and mitigation,[31] and awarded GSI general damages of

11  $532,400 and special damages of $421,000, for a total award of $953,400.[32]

12      During trial, both GSI and UMI moved for judgment as a matter of law under Fed. R. Civ.

13  P. 50(a).  GSI moved for judgment as a matter of law against UMI on UMI's affirmative defenses,

14  and on the following affirmative claims: breach of the contract's non-compete provision, breach of

15  the contract's ownership provision and breach of the contract's confidentiality provision.[33]   UMI

16

---

17  [28] *Id.* at 5-6.

18  [29] *Id.* at 7, 13.  The jury rejected UMI's affirmative defenses of unclean hands, ready ascertainability, estoppel and the statute of limitations.  *Id.* at 7-9.

19  [30] *Id.* at 23.

20  [31] *See id.* at 23-26

21

22  [32] *See id.* at 26.  As for the other disputed claims, the jury found that ISSI had not misappropriated GSI's trade secrets and that GSI had not brought the misappropriation claim in bad faith.  *See id.* at 10, 14.  On the intentional interference with prospective economic relations claims against UMI and ISSI, the jury found that neither UMI nor ISSI had engaged in unfair competition.  *See id.* at 15, 19.  On the fraud claim against UMI, the jury found that UMI had not made a false representation to GSI, and on the false promise claim against UMI, the jury found that although UMI had made a promise to GSI, UMI had intended to perform the promise when UMI made it. *See id.* at 27, 31.

26

27  [33] *See* Docket Nos. 1016, 1040.

28  Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE 50(b) MOTION

United States District Court
Northern District of California

1    moved for judgment as a matter of law against GSI on several grounds; the ones relevant here are

2    trade secret misappropriation, damages, breach of the non-compete provision and breach of the

3    confidentiality provision.[34]

4        GSI and UMI now renew their motions for judgment as a matter of law under Fed. R. Civ.

5    P. 50(b).  GSI argues that it owns trade secrets in all 25 schematics.[35]  UMI renews its motion for

6    judgment as a matter of law on the trade secret misappropriation claim, damages, breach of the

7    non-compete provision and breach of the confidentiality provision.[36]

8                                          **II.**

9        This court has jurisdiction under 28 U.S.C. § 1331. The parties further consented to the

10   jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P.

11   72(a).[37]

12                                         **III.**

13       GSI and UMI's JMOL motions on misappropriation ask essentially the same question: was

14   it consistent for the jury to find that the information in some schematics was a trade secret and that

15   the information in other schematics was not?  And based on substantial evidence, the answer is

16   yes: there is no inconsistency in the jury's findings.

17       ***First***, under Section III.1, if the information in a schematic was a trade secret developed as

18   part of the project, then GSI owns it.  Section III.1 gives GSI sole ownership of the schematics and

19   "all associated intellectual property rights" (subject to the Project Patent carveout).[38]  Trade secret

20   _____

21   [34] *See* Docket Nos. 1013, 1034.

22   [35] *See id.* at 2, 8.

23   [36] *See* Docket No. 1073-1.

24   [37] *See* Docket No. 236 at 11.

25   [38] Docket No. 1063 at 4 (quoting Docket No. 196, Ex. 1 at § III.1).  Section III.1 further provides
26   that to the extent that UMI incorporated any of its proprietary intellectual property into the project,
     GSI enjoys a non-exclusive license to that intellectual property.  *Cf. Non-Exclusive License*,
27   *Black's Law Dictionary* (8th ed. 2004); *Diodem, LLC v. Lumenis, Inc.*, Case No. CV 03-2142-

8

28   Case No. 5:13-cv-01081-PSG
     ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE
     50(b) MOTION

United States District Court
Northern District of California

United States District Court
Northern District of California

rights are plainly intellectual property rights. The key issue for the jury thus was whether the information in any schematic was a project trade secret.  The jury's finding was that the information in four schematics—chcon, rclk, rclk_match and dmmatch—was a project trade secret such that GSI owned that information—but that the information in the other 21 schematics was not.[39]

GSI and UMI both argue that the jury logically should have treated the information in all of the schematics the same way:  the jury should either have found that the information in all of the schematics was a project trade secret (GSI) or that the information in none of the schematics was a project trade secret (UMI).  The assumption underlying these arguments is that there was no way for the jury to distinguish the four schematics from the other 21.  A key piece of evidence dismantles both GSI's and UMI's positions: ISSI's technical expert, Carl Sechen, testified that the

---

GAF, 2005 U.S. Dist. LEXIS 46865, at *17 (C.D. Cal. Sept. 16, 2005) ("In other words '[a] non-exclusive or bare licensee is one who has received only the patentee's promise that he will not be sued for infringement.") (citing *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 305 F. Supp. 2d 939, 951 (E.D. Wis. 2004), *aff'd in part and rev'd in part on other grounds*, 402 F.3d 1198 (Fed. Cir. 2005); *Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007) (copyright) ("[a] non-exclusive license conveys no ownership interest").

[39] *See* Docket No. 1055 at 4-5.  The jury was instructed that

> To prove a trade secret in the information in any of the 25 schematics, GSI must prove all of the following:
>
> 1. That the information was secret;
>
> 2. That the information had actual or potential independent economic value because it was secret; and
>
> 3. That GSI made reasonable efforts to keep the information secret.

Docket No. 1043 at 17; *see also* Cal. Civ. Code § 3426.1(d) (defining trade secret as "information . . . that (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."); CACI 4402 (model jury instruction on definition of trade secret).

9

information in the four schematics was distinct from that in the 21.

Sechen initially testified that all 25 schematics were identical or functionally equivalent to older UMI designs, all 25 schematics were "straightforward implementations of" either "the [publicly available Micron] specification requirements" or "generic and well-known designs," and that the information in all 25 schematics was publicly available in textbooks and UMI patents.[40] However, the jury submitted a question for Sechen that drew out a difference between the four schematics and the 21: "Did you find those four schematics, as opposed to the functionality of those schematics, anywhere in the public domain, in any of the ISSI sources, or anywhere else?" Sechen answered, "Not the identical schematic, no."[41]  This testimony plainly distinguished the information in the four schematics from that in the other 21 schematics; whatever a different jury or judge might conclude, there is nothing unreasonable in relying on that.[42]

UMI makes two primary arguments against the jury's finding on the information in the four schematics:  that GSI provided no evidence showing that it owned the information in the four schematics and that it was improper for the jury to find in GSI's favor by relying on evidence put

---

[40] *See* Trial Tr. at 3166:10-3170:14 (testimony on eleven write caching schematics, seven of which were identical or functionally equivalent to older UMI designs), 3170:15-3173:11 (testimony on six output calibration schematics, all of which were identical or functionally equivalent to older UMI designs), 3173:12-3175:25 (testimony on eight control logic schematics, all of which were identical or functionally equivalent to older UMI designs).   UMI's Jon Faue similarly testified that the information in all of the schematics consisted of proprietary UMI designs as well as publicly known information.  *See id.* at 1595:4-17, 1596:7-14, 1599:6-1600:22, 2957:3-2960:9, 2961:14-2962:25, 2964:13-2971:2.

[41] *Id.* at 3214:6-10.

[42] Additional evidence from GSI fact witness Paul Chiang also supports the jury's finding.  Chiang testified that the schematics were "confidential documents that have a specific implementation of 576 RLDRAM, which have not been done by any other people.  So we want to keep it confidential.  Nobody is going to see it or use it."  *Id.* at 1736:12-15.  He also testified to the measures taken by GSI to maintain the secrecy of the schematics and the information in them, including keeping the schematics on a limited-access, password-protected, secure server and having GSI's DRAM design team sign nondisclosure agreements.  *See id.* at 1730:18-1731:24.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE 50(b) MOTION

United States District Court
Northern District of California

1    forward by UMI and ISSI.[43]   Neither is persuasive.

2         UMI is right that GSI had the burden of proof on the issue of ownership.  But UMI is

3    wrong that GSI provided no evidence showing that it owned the information in the four

4    schematics.  For example, Chiang testified that UMI designed five categories of RLDRAM

5    features for the first time for its project with GSI, and that the coherency control block (chcon),

6    rkcl, rkcl match (rkcl_match) and data mask match (dmmatch) schematics implemented those

7    categories.[44]  Faue, Sechen or others may have said something to the contrary, but the jury was

8    entitled to credit Chiang more.  Weighing conflicting testimony is the essence of what juries are

9    called to do.

10        As for UMI's assertion that the jury could only rely on GSI's evidence to find for GSI and

11   could not rely on UMI's or ISSI's evidence, there is no authority for that position.  Furthermore,

12   the jury was instructed to "base [its] decision on all of the evidence, regardless of which party

13   presented it."[45]  This instruction was based on the Ninth Circuit Manual of Model Jury

14   Instructions,[46] and UMI did not object.[47]

15                                        **IV.**

16        UMI advances several arguments in support of its motion for JMOL on GSI's contract

17   claim: first, that the jury could only have found a breach of contract based on a breach of the

18   confidentiality clause or the non-compete clause, and second, that substantial evidence does not

19

20   ――――――――――――――――
     [43] *See* Docket No. 1073-1 at 7-9.

21
22   [44] *See* Trial Tr. at 1736:17-1743:17.  Chiang also testified to the secrecy measures GSI took, as
     discussed above.  *See supra* at n.42.

23   [45] *See* Docket No. 1043 at 4-5.

24   [46] *See* "No. 1.3 Burden of Proof—Preponderance of the Evidence," *in* Ninth Circuit Manual of
25   Model Jury Instructions 8 (2007), *available at* http://www3.ce9.uscourts.gov/jury-
     instructions/sites/default/files/WPD/Civil_Instructions_2016_4.pdf.

26   [47] *See* Trial Tr. at 3417-3749 (no objections from any party to Jury Instructions No. 2, 3).

27                                         11

28   Case No. 5:13-cv-01081-PSG
     ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE
     50(b) MOTION

United States District Court
Northern District of California

support a verdict of breach based on either.[48]   The jury was instructed that a breach could be based

on either of these clauses, as well as a third clause regarding ownership:

> For GSI to recover from the [sic] UMI on GSI's claim of breach of contract, you
> must find either [sic] of the following have [sic] been proved by a preponderance of
> the evidence:
>
> 1.      UMI failed to comply with its obligation not to compete with GSI, directly
> or indirectly, for the design of an LLDRAM chip;
>
> 2.      UMI failed to protect confidential information in GSI's schematics; or
>
> 3.      UMI allowed ISSI to access and use circuit schematics and associated
> intellectual property owned by GSI.[49]

While UMI is correct that there is not substantial evidence supporting a breach verdict based on

the confidentiality clause, the jury verdict stands unchallenged based on the ownership clause, and

there is substantial evidence to support a breach verdict based on the non-compete.

       ***First***, UMI does not seek judgment as a matter of law that it did not breach the ownership

clause, and it cannot, because it did not present a Rule 50(a) motion on that issue.[50]   The

ownership clause thus stands as an unchallenged basis for the jury's verdict that UMI breached the

contract.  UMI tries to mount a flank attack by arguing that "there are only two possible claims for

breach of contract: either a breach by UMI of the contract's Confidentiality Provision, Article VI,

and/or a breach of the contract's Non-compete Provision, Section III.6"[51]  But UMI's naked

assertion cannot make it so: the ownership claim does not disappear as a basis for the jury's

verdict just because UMI ignores it.  Because UMI does not challenge the ownership clause—a

clause the court specifically identified to the jury, and a clause that on its own could have led the

jury to find UMI liable for breach of contract[52]—the court does not overturn the jury's verdict on

---

[48] *See* Docket No. 1073-1 at 11-22.

[49] Docket No. 1047 at 36.

[50] *See* Docket No. 1013 at 4-5.

[51] Docket No. 1073-1 at 11.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE
50(b) MOTION

United States District Court
Northern District of California

breach of contract.

**Second**, substantial evidence exists to support a verdict of breach based on the non-compete clause.  The purpose of a non-compete agreement is to protect one party from competition by others and/or to protect trade secrets.[53]  UMI argues that the non-compete clause here was ambiguous, and that the parties interpreted it as expiring when the contract ended.[54]  As a consequence, UMI argues that the court erred in instructing the jury that the non-compete was valid and lasted for five years.[55]  UMI's final challenge to the non-compete is that there is no substantial evidence supporting the jury's rejection of its statute of limitations and equitable estoppel defenses.[56]

UMI's interpretation of the duration and validity of the non-compete remains unpersuasive.  Like the Black Knight defending his bridge, UMI clings to its position that the non-compete expired when the contract ended—which, according to UMI, occurred in 2009.[57]  However, UMI's argument still has no legs.  UMI and GSI both moved for summary judgment on the validity and duration of the non-compete before trial,[58] and the court explicitly held that "the

---

[52] Tellingly, UMI's reply brief does not respond to GSI's argument on this point but merely "rests on its prior briefing."  Docket No. 1106 at 15; *see* Docket No. 1091 at 10.

[53] *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1133 (10th Cir. 2003); *DoubleClick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1257-58 (D. Colo. 2005); *Energex Enters., Inc. v. Anthony Doors, Inc.*, 250 F. Supp. 2d 1278, 1281-2183 (D. Colo. 2003); *Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc.*, Case No. 06-cv-01212-WYD-BNB, 2006 WL 8251823, at *4 (D. Colo. Dec. 8, 2006).

[54] *See* Docket No. 1073-1 at 15-17.

[55] *See id.* at 17-18.

[56] *See id.* at 19-22.

[57] *See id.* at 15-17.

[58] *See* Docket No. 563-4 at 5-9; Docket No. 568-5 at 12-15.

13

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE 50(b) MOTION

non-compete provision survived UMI's efforts to terminate the agreement."[59]   The court also held

that "the contract's non-compete and survival provisions are clear"[60] and that it could not consider

parol evidence extrinsic to the contract because the contract was unambiguous.[61]   Accordingly, the

court instructed the jury that, as a matter of law, "UMI agreed . . . not to compete with GSI . . .

until at least April 30, 2013."[62]

UMI nevertheless points to trial testimony from representatives of both parties about their

intent when crafting the non-compete clause.[63]   But the court already has ruled that it cannot

consider this parol evidence because the contract is unambiguous.[64]   Moreover, under Colorado

law, the court may not consider extrinsic evidence in deciding whether a contract is ambiguous.[65]

The trial evidence therefore cannot affect the court's earlier ruling on the validity and duration of

the non-compete.   As a result, the jury instruction on the non-compete provision was consistent

with the applicable law, and the jury heard substantial evidence from which it could find that UMI

---

[59] Docket No. 807 at 24, 28-29.  UMI has argued that this ruling was not binding because it only denied summary judgment to UMI on the issue.  *See, e.g.*, Docket No. 1028 at 1-3; *see also* Civ. L.R. 56-3 ("Statements contained in an order of the Court denying a motion for summary judgment or summary adjudication shall not constitute issues deemed established for purposes of the trial of the case, unless the Court so specifies.").  But GSI moved for summary judgment "that the non-compete provision is valid and lasts for a duration of five years," and the court held that there was "no genuine dispute" on either of these issues.  Docket No. 807 at 28-29.

[60] Docket No. 807 at 29.

[61] *See id.* at 24-25, 29.  While the court analyzed the unambiguous nature of the non-compete and the survival clauses in denying UMI's motion for summary judgment, the court relied on and incorporated that reasoning by reference in the portion of its order granting GSI's motion for summary judgment.  *See id.* at 24-25, 29.

[62] Docket No. 1047 at 36.

[63] *See* Docket No. 1073-1 at 15-17.

[64] *See* Docket No. 807 at 25, 29.

[65] *See Bledsoe Land Co. LLLP v. Forest Oil Corp.*, 277 P.3d 838, 843 (Colo. App. 2011) (quoting *Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993)).

14

1  breached the terms of the provision.[66]

2  As for UMI's related arguments on the statute of limitations and equitable estoppel,

3  substantial evidence supports the jury's rejection of these defenses.  The non-compete barred UMI

4  from "design[ing] or develop[ing], or contribut[ing] to the design or development of, a Low

5  Latency DRAM Product."[67]  The contract further defined "Low Latency DRAM Product" as "a

6  latency optimized and/or optimized memory product that employs a capacitive charge-based

7  memory cell technology including, but not limited to, RLDRAM and FCRAM products."[68]  To

8  find that UMI violated the provision, the jury reasonably concluded that the Atris chip that UMI

9  developed with ISSI was a "Low Latency DRAM Product."

10  UMI's position is that UMI had done some work on the Atris project from 2007 to 2009,[69]

11  well before the statute of limitations period began,[70] and that GSI knew about this work and said

12  nothing.[71]  As a result, UMI contends that if UMI is liable for breach of contract based on the non-

13  compete clause, that claim should be barred by both the statute of limitations and equitable

14  estoppel.[72]

15  The problem for UMI is that between 2007 and 2009, UMI was cooperating with several

[66] UMI does not challenge the sufficiency of the evidence supporting a breach of the non-compete clause, only the validity and duration of the non-compete.

[67] Docket No. 196, Ex. 1 at § III.6.

[68] *Id.*

[69] *See* Trial Tr. at 641:11-643:15, 721:11-23, 892:1-893:18; 1308:14-1310:14; 1314:25-1318:12, 1410:14-23.

[70] In Colorado, the statute of limitations for breach of contract is three years.  *See* Colo. Rev. Stat. § 13-80-101(1)(a).  Because this suit was filed in March 2013, *see* Docket No. 1, the statute of limitations period began in March 2010.

[71] *See* Trial Tr. at 642:2-643:7, 664:23-665:8; 1317:18-1318:12.

[72] *See* Docket No. 1073-1 at 19-22.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE 50(b) MOTION

United States District Court
Northern District of California

1    other companies—including GSI—to develop the Atris specification.[73]  All of these companies

2    signed a non-disclosure agreement related to this work in May 2007,[74] and the project was well

3    under way by the time that GSI and UMI agreed to the non-compete provision in May 2008.[75]

4    Reading the non-compete provision to cover UMI's work on the Atris specification would make

5    no sense in light of this history.  Because "[t]he [c]ourt must construe a contract in a manner that

6    avoids an absurd result,"[76] it cannot interpret the non-compete clause to cover the work on the

7    specification.  This is consistent with the verdict; the jury reasonably could have treated co-

8    developing a product specification with GSI differently from designing a product for a direct

9    competitor.[77]  Substantial evidence thus supports breach of the non-compete claim as a basis for

10   the jury's verdict finding breach of contract, and the jury's rejection of UMI's affirmative

11   defenses.

12         ***Third***, unlike the ownership and non-compete provisions, GSI's claim for breach of

13   contract based on the confidentiality clause stands on shakier ground.  The confidentiality clause

14   required UMI to "keep in confidence all of [GSI's] Confidential Information received by

_____

17   [73] *See* Trial Tr. at 641:11-643:15, 721:11-25.  The parties dispute whether UMI actually was
     working for GSI at this point, but it is immaterial to the result.  *See id.* at 721:11-17; 892:3-893:20.

18   [74] *See id.* at 1318:13-22.

19   [75] *See id.* at 1410:2-23.

21   [76] *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 935 F. Supp. 2d 1069, 1085 (D. Colo. 2013) (citing
     *Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 793 (Colo. Ct. App. 2001), *abrogated
22   on other grounds by Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P. 3d 116, 124-26 (Colo.
     2007)).

23   [77] To be precise, the jury could have found that UMI's work with ISSI on an Atris chip constituted
24   "design[ing] or develop[ing], or contribut[ing] to the design or development of, a Low Latency
     DRAM Product," while also finding that UMI's work on the Atris specification did not fall into
25   that category because the specification was not a "memory product" or because UMI's
     contributions to the specification were not "design" or "develop[ment]."  Docket No. 196, Ex. 1 at
26   § III.6.

16

28   Case No. 5:13-cv-01081-PSG
     ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE
     50(b) MOTION

1    [UMI]."[78]  "Confidential Information" is defined as

2        all non-public information that the party disclosing the information (the
         "Disclosing Party") designates at the time of disclosure as being confidential, or if
3        disclosed orally or visually is identified as such prior to disclosure and
         summarized, in writing, by the Disclosing Party to the receiving party (the
4        "Receiving Party") within thirty (30) days, or which, under the circumstances
         surrounding disclosure, the Receiving Party knows or has reason to know should
5        be treated as confidential without the need to be marked as "confidential."[79]

6    Under the contract, GSI's confidential information could be only information flowing from GSI to

7    UMI.

8        But at trial, the jury heard no evidence of any specific confidential information that GSI

9    gave to UMI.  Instead, GSI points to the broad testimony of its witness, David Chapman, that

10   "everything related to the project" and "every professional conversation" between GSI and UMI

11   employees was confidential.[80]  On cross-examination, though, Chapman acknowledged that the

12   project was based on a public specification[81] and that several of these conversations involved

13   public knowledge.[82]  Chapman also mentioned "the intelligence gained in conversations with

14   Cisco,"[83] a third-party customer, but information coming from a stranger to the contract does not

15   meet the contract's definition of confidential information.  GSI also suggests that its employees'

16   long-term presence at UMI's premises[84] necessarily exposed UMI to confidential information, but

17   GSI does not identify what that information might be.  Even viewing the record in the light most

18   favorable to GSI, the only evidence supporting a breach of the confidentiality provision is

19

20   _____
     [78] *Id.* at § VI.1.

21   [79] *Id.* at § I.1.

22   [80] Trial Tr. at 824:3-8, 825:24-826:6.

23   [81] *See id.* at 824:9-825:6.

24   [82] *See id.* at 826:9-12, 829:12-15.

25   [83] *Id.* at 826:16-19.

26   [84] *See id.* at 1014:1-1015:8; 1729:2-21.

27                                                              17

28   Case No. 5:13-cv-01081-PSG
     ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE
     50(b) MOTION

1   insufficient.  Because "the jury could have relied only on speculation to reach its verdict,"[85] the

2   court GRANTS judgment as a matter of law to UMI on the issue of whether it breached the

3   confidentiality clause.

4        GSI argues that UMI gave the 576 Mb schematics to ISSI, and that this violated the

5   confidentiality clause.[86]  The court admittedly instructed the jury that it could find that UMI

6   breached the contract if it found that UMI "failed to protect confidential information in GSI's

7   schematics."[87]  However, the schematics do not meet the definition of confidential information

8   established in Section I.1, because they were created by UMI for GSI, rather than disclosed by

9   GSI to UMI.[88]  The handover of the schematics thus could not constitute a breach of the

10  confidentiality provision.

11                                                **V.**

12       Finally, UMI seeks judgment as a matter of law on the damages the jury awarded GSI for

13  breach of contract: $532,400 in general damages and $421,000 in special damages.[89]  UMI is

14  correct that GSI waived and affirmatively disclaimed any general damages for breach of contract

15  and that the special damages award was improper.[90]

---

[85] *Lakeside-Scott v. Multnomah County*, 556 F.3d 797, 802-03 (9th Cir. 2009).

[86] *See* Docket No. 1091 at 14.

[87] Docket No. 1047 at 36.

[88] UMI objected this jury instruction.  *See* Docket No. 1028 at 8.  To the extent that the court's instruction was erroneous, it makes no difference to the outcome, because the court now rules in UMI's favor on the confidentiality provision.  However, the jury's verdict that UMI breached the contract stands, because, as discussed above, UMI does not challenge the ownership clause as a basis for the jury's finding of breach, and substantial evidence supports a jury finding of breach of contract based on the non-compete provision.  Moreover, neither party has moved for a new trial on the basis of this portion of the instruction.

[89] *See* Docket No. 1055 at 26; Docket No. 1073-1 at 2-6.

[90] Because special damages should not have been awarded, the court does not address UMI's argument that the testimony of GSI's damages expert, James Malackowski, does not support the special damages award.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE 50(b) MOTION

1          **First**, GSI explicitly waived general damages for breach of contract on several occasions.

2  For example, when UMI proposed a jury instruction on general damages for breach of contract,

3  GSI objected that UMI's proposed instruction was improper because it "addresse[d] general

4  damages, but GSI seeks only special damages."[91]  GSI also never sought a jury instruction on

5  general damages for breach of contract.  Later on, GSI's counsel informed the court, "[W]e don't

6  claim general damages on breach of contract."[92]  The court thus did not instruct the jury on general

7  damages for a breach of contract.[93]  However, over UMI's objection, the verdict form included a

8  blank space for general damages for breach of contract, and the jury filled it out.[94]  GSI argues that

9  its second amended complaint alleged general damages for breach of contract,[95] but it cites no

10  authority for the proposition that an allegation in a complaint renders ineffective any future

11  waiver.  In light of GSI's unambiguous waiver of general damages,[96] GSI was not entitled to

12  general damages for breach of contract.[97]

13          **Second**, GSI is not entitled to special damages for breach of contract.  The contract's

14

---

15  [91] Docket No. 834-2 at 70.

16  [92] Trial Tr. at 3714:12-13.

17

18  [93] *See* Docket No. 1043 at 43-46.

19  [94] *See* Docket No. 1036 at 3 ("UMI objects to [jury question 51] . . . on grounds that . . . [s]ince GSI has not claimed general damages, any damages question related to UMI is inappropriate.");

20  Docket No. 1044 at 26 (including a blank space in the final verdict form for the jury to enter general damages for breach of contract); Docket No. 1055 at 26.

21  [95] *See* Docket No. 1091 at 2.

22

23  [96] To give credit where credit is due, GSI's waiver of general damages for contract was part of a successful effort to preserve general damages on its trade secret misappropriation claim.  *See* Trial

24  Tr. at 3714:2-24.  This was a hollow victory, however, because the jury awarded GSI $0 in general damages for trade secret misappropriation.  *See* Docket No. 1055 at 13.

25  [97] *See Morse-Starrett Products Co. v. Steccone*, 86 F. Supp. 796, 806 (N.D. Cal. 1949) (holding

26  that "since plaintiff waived its claim for damages at the commencement of the trial, no damages should be awarded").

27

28  Case No. 5:13-cv-01081-PSG
  ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE 50(b) MOTION

United States District Court
Northern District of California

1   liability limitation clause explicitly limits "consequential, incidental, special or punitive losses or

2   damages . . . whether asserted as a claim in contract, tort, negligence, product liability or strict

3   liability."[98]   Special damages are only allowed "for a breach of confidentiality obligations under

4   Article 6 [or another clause not at issue]."[99]   The court thus instructed the jury that

5            GSI claims damages for lost profits.  These are special damages.

6            Under the limitation of liability provision in Section V.3 of the agreement, GSI may
        only recover lost profits for breach of the confidentiality provision in Article VI of
7        the agreement.[100]

8   The court has ruled above as a matter of law that UMI did not breach the confidentiality provision

9   of the contract.  As a result, the liability limitation clause bars any special damages.

10           Furthermore, the jury's special damages award of $421,000 is not supported by the

11  evidence.  It is true, as GSI argues, that certain trial exhibits showed that UMI received that sum

12  from ISSI in a services agreement and an asset purchase agreement.[101]   But any amounts that ISSI

13  paid to UMI are irrelevant to GSI's lost profits.  GSI never suggested at trial that it would have

14  earned that $421,000 from ISSI if UMI had not breached the contract, and offered no proof of the

15  costs that must be deducted from revenues to calculate profits.[102]   GSI now contends that the jury

16  _____

17  [98] Docket No. 196, Ex. 1 at § V.3.

18  [99] *Id.*

19  [100] Docket No. 1043 at 44.

20  [101] *See* Trial Tr. at 1546:5-1549:16; Trial Exs. 408, 2204, 2550, 4170.

21  [102] Instead, in closing argument, GSI's counsel asked the jury to consider "the money that UMI
22  was actually paid for its work"—$542,400 from GSI under the contract, and $421,000 from ISSI
    for the later agreements.  Trial Tr. at 3515:5-12.  The jury awarded almost exactly those amounts
23  in damages.  *See also Coates v. Lake View Oil & Refining Co.*, 20 Cal. App. 2d 113, 119 (Cal. Ct.
    App. 1937) ("To allow plaintiff to recover a judgment based in part on his gross profits would
24  result in his unjust enrichment.  If he is entitled to recover at all, because of his loss of profits,
    such recovery must be confined to his net profits."); *Gerwin v. Southeastern Cal. Assn. of Seventh
25  Day Adventists*, 14 Cal. App. 3d 209, 222 (Cal. Ct. App. 1971) ("When loss of anticipated profits
    is an element of damages, it means net and not gross profits"); *Fitzgerald v. Mountain States Tel.
26  & Tel. Co.*, 68 F.3d 1257, 1262 (10th Cir. 1995) ("Colorado law is quite clear that only net profits
27  are recoverable") (internal citations omitted); *US Welding, Inc. v. B&C Steel, Inc.*, 261 P.3d 513,

28  Case No. 5:13-cv-01081-PSG
    ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE
    50(b) MOTION

United States District Court
Northern District of California

1  could have awarded that amount as unjust enrichment or disgorgement.  Even if Colorado law

2  allows the disgorgement remedy,[103] GSI never sought it from the court, the court did not instruct

3  the jury on it and the jury could not have awarded it to GSI.

**VI.**

5       GSI's motion is DENIED: it owns trade secrets in the information in only the four

6  schematics the jury identified: chcon, rclk, rclk_match and dmmatch.  UMI's motion is

7  GRANTED-IN-PART: substantial evidence does not support the jury's award of general or

8  special damages.  Substantial evidence does support the jury's finding of breach of contract based

9  on breach of the non-compete clause, the jury's verdict on the equitable estoppel and statute of

10  limitations defenses to breach of the non-compete, and the jury's verdict on the trade secret

11  misappropriation claim.

12  **SO ORDERED.**

13  Dated: May 26, 2016

14                         PAUL S. GREWAL

15                         United States Magistrate Judge

United States District Court
Northern District of California

514 (Colo. App. 2011) ("Under Colorado law, damages for lost profits means the loss of net, not gross profits.") (internal citations omitted).

[103] *See Watson v. Cal-Three, LLC*, 254 P.3d 1189, 1195-96 (Colo. App. 2011) (citing *EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*, 900 P.2d 113, 118-19 (Colo. 1995)).

21

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S RULE 50(b) MOTION AND GRANTING-IN-PART UMI'S RULE 50(b) MOTION