1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GSI TECHNOLOGY, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED MEMORIES, INC., et al.,<br><br>　　　　　Defendants. | Case No. 5:13-cv-01081-PSG<br><br>**ORDER DENYING GSI'S MOTION FOR NEW TRIAL**<br><br>**(Re:  Docket No. 1071)** |

　　　　Plaintiff GSI Technology, Inc. moves for a new trial under Fed. R. Civ. P. 59.[1]  GSI's motion is DENIED.

**I.**

　　　　The background of this dispute is described in the accompanying order on GSI and Defendant United Memories, Inc.'s renewed motions for judgment as a matter of law.[2]  The facts underlying each of GSI's arguments for a new trial are discussed below where relevant.

**II.**

　　　　This court has jurisdiction under 28 U.S.C. § 1331. The parties further consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[3]

　　　　Fed. R. Civ. P. 59(a)(1)(A) provides that the court may order a new trial "for any reason

---

[1] *See* Docket No. 1071.

[2] *See* Docket No. 1118 at 3-8.

[3] *See* Docket No. 236 at 11.

for which a new trial has heretofore been granted in an action at law in federal court."  Although "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized."[4]  These grounds "include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'"[5]  The Ninth Circuit has elaborated that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."[6]  "Therefore, in a nutshell, the district court may grant a new trial '[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"[7]

In making this determination, the court "is not required to view the trial evidence in the light most favorable to the verdict."[8]  "Instead, the district court can weigh the evidence and assess the credibility of the witnesses."[9]  The court may "set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence."[10]  However, "a district court may not grant a new

---

[4] *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003).

[5] *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

[6] *Id.* (quoting *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000))).

[7] *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1087-88 (9th Cir. 2009) (alterations in original) (quoting *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987)).

[8] *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014) (citing *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010) (per curiam)).

[9] *Id.*

[10] *Molski*, 481 F.3d at 729 (alteration in original) (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

United States District Court
Northern District of California

trial simply because it would have arrived at a different verdict."[11]

### III.

GSI argues that the court committed several errors that require a new trial.  None of them, however, satisfies the threshold for that relief.

*First*, the court's decision to try ISSI's bad faith contention in the same proceeding as GSI's trade secret misappropriation claims does not merit a new trial.  As a procedural note, the court addresses this argument even though GSI and ISSI have settled,[12] because GSI argues that trying the bad faith contention affected the jury's ability to fairly consider the misappropriation claims, which were against UMI as well as ISSI.[13]

By way of recap: after GSI sued UMI and ISSI for trade secret misappropriation,[14] ISSI responded that GSI's misappropriation claim was raised in bad faith within the meaning of Cal. Civ. Code § 3426.4.[15]  GSI moved for summary judgment on the bad faith contention, but the court denied summary judgment because "a host of underlying factual issues remain[ed] in dispute."[16]  In its trial brief, GSI then asked the court to decide the bad faith contention after the trial, because presenting the bad faith contention to the jury would distract and bias them on an issue that GSI argued was not relevant to Defendants' liability.[17]  At the same time, GSI moved in limine to exclude evidence and argument about GSI's reasons for filing suit, arguing that evidence about its motivations was not relevant to any facts at issue before the jury (because the bad faith

---

[11] *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

[12] *See* Docket No. 1098 at 2.

[13] *See* Docket No. 1105 at 1.

[14] *See* Docket No. 196 at ¶¶ 214-230.

[15] *See* Docket No. 242 at 44-45.

[16] *See* Docket No. 570-5 at 11-18; Docket No. 807 at 21-22.

[17] *See* Docket No. 799-4 at 22-23.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

United States District Court
Northern District of California

contention should not go to the jury) and was prejudicial (because the bad faith contention, if presented to the jury, would bias the jury against GSI).[18]   The court ruled that the bad faith contention would be presented to the jury and denied GSI's motion in limine because the evidence might be probative of bad faith, as well as Defendants' affirmative defenses.[19]   At trial, the jury found that GSI owned four trade secrets, which UMI had misappropriated, and that ISSI had not misappropriated any of GSI's trade secrets.[20]   The jury then found that GSI had not "initiate[d] and/or maintain[ed] its claim of trade secret misappropriation against ISSI in bad faith."[21]

GSI now makes three arguments that the court committed prejudicial error by not trying bad faith separately.   The first is that in *Cargill v. Progressive Dairy Solutions, Inc.*, the Ninth Circuit cautioned against trying bad faith with the plaintiff's claims.[22]   *Cargill*, however, is an unpublished, non-precedential decision.[23]   Moreover, *Cargill* held that the district court did not abuse its discretion in submitting the bad faith contention and the plaintiff's claims to the jury at the same time, because the verdict form clearly directed the jury "to consider first the merits of Cargill's misappropriation claim and second—and only if the jury rejected the misappropriation claim on its merits—Cargill's putative bad faith in bringing this claim."[24]   In GSI's case, the verdict form also directed the jury to consider the merits of GSI's misappropriation claims first, and to consider the bad faith contention only if it rejected the misappropriation claims.[25]

---

[18] *See* Docket No. 769.

[19] *See* Docket No. 906 at 61:5-8; Docket No. 896 at 1-2.

[20] *See* Docket No. 1055 at 4-6.

[21] *Id.* at 14.

[22] 362 Fed. App'x 731 (9th Cir. 2010); *see* Docket No. 1070 at 1-2.

[23] *See* Ninth Circuit Rule 36-3.

[24] *See Cargill*, 362 Fed. App'x at 734.

[25] *See* Docket No. 1055 at 4-14.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

United States District Court
Northern District of California

1    GSI's second argument is that because the court did not try bad faith in a separate

2  proceeding, it erroneously denied GSI's motion in limine to exclude evidence and argument of its

3  iterative trade secret disclosures, narrowed claims or dismissed claims.[26]  GSI argues that pretrial

4  orders dismissing or narrowing GSI's claims should have been excluded because they were not

5  relevant, because the jury might have given the court's rulings excessive weight and accepted

6  them as true without doing its own fact-finding, and because UMI and ISSI selectively quoted the

7  court's orders at trial to portray GSI in a bad light and insinuate that its claims were invalid.[27]

8        The court denied GSI's motion in limine because the evidence "[might] be probative of

9  ISSI's claim of bad faith . . . and UMI's defense of unclean hands and defenses against trade secret

10  misappropriation."[28]  Because the bad faith contention went to the jury, ISSI was entitled to

11  present evidence relevant to that contention.  The court's pretrial orders were relevant evidence

12  because a plaintiff's conduct both in bringing and maintaining its trade secret claims—including

13  claims that ultimately are dismissed—is evidence that can be considered in deciding bad faith

14  under Cal. Civ. Code § 3426.4.[29]  GSI cites two cases holding that evidence of dismissed claims is

15  not relevant, but those cases are factually inapposite.[30]  Evidence of dismissed claims may be

16

17    [26] *See* Docket No. 1070 at 2-4.

18    [27] *See id.*

19    [28] Docket No. 896 at 1-2.

20    [29] *See VSL Corp. v. Gen. Tech.*, Inc., 46 U.S.P.Q.2d 1356, 1359 (N.D. Cal. 1998) (bad faith to
      claim secrets in product already marketed and information freely disclosed by plaintiff); *Stilwell
21    Dev., Inc. v. Chen*, 11 U.S.P.Q. 2d 1328, 1331 (C.D. Cal. 1989) (bad faith to assert secrets in a
      product already sold to customers before alleged misappropriation); *FLIR Systems, Inc. v. Parrish*,
22    174 Cal. App. 4th 1270, 1281 (2009) ("Subjective bad faith was also established by appellants'
      failure to identify what trade secrets would be subject to the permanent injunction. Appellants'
23    experts testified that appellants had a mix of trade secrets and nonsecret information and that no
      list was prepared to identify the trade secrets."); *Computer Economics, Inc. v. Gartner Group,
24    Inc.*, Case No. 98-cv-0312 TW (CGA), 1999 U.S. Dist. LEXIS 22204, at *20–21 (S.D. Cal. Dec.
      14, 1999) (one factor in the finding of bad faith was that the plaintiff had resisted the defendant's
25    efforts to identify the alleged trade secrets).

26

27    [30] *See* Docket No. 1070 at 2 (citing *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, Case No. C 12-
      1971 CW, 2014 WL 4090550, at *13 (N.D. Cal. Aug. 19, 2014) (excluding mention of the court's

28
      Case No. 5:13-cv-01081-PSG
      ORDER DENYING GSI'S MOTION FOR NEW TRIAL

United States District Court
Northern District of California

1    irrelevant if no aspect of those claims is at issue—but where the plaintiff's bad faith in bringing

2    dismissed claims to begin with is disputed, the evidence of those claims is clearly relevant.

3          In the face of the relevance of the evidence of the dismissed and narrowed claims, GSI's

4    argument that the jury could have given the court's orders too much weight and failed to do its

5    own fact-finding also flops.  GSI does not cite a single case that is binding on this court or that

6    presents similar facts for this proposition.[31]  GSI also does not present any evidence even hinting

7    that the jury abdicated its fact-finding and analytical responsibilities.  While excluding evidence of

8    prior rulings may be appropriate in some cases,[32] in this case, where the evidence was relevant to a

9    disputed issue, GSI needed to prove that the probative value of the evidence was "substantially

10

11    prior rulings because dismissed claims were not relevant to remaining patent infringement claims);
      *Brown v. Kavanaugh*, Case No. 1:08-CV-01764-LJO, 2013 WL 1819796, at *2 (E.D. Cal. Apr.
12    30, 2013) (granting-in-part motion in limine to exclude evidence relating to dismissed claims in a
      retaliation case—but allowing plaintiff to present evidence of the dismissed claims to explain what
13    defendants were allegedly retaliating against)).

14    [31] *See* Docket No. 1070 at 2-3.  GSI cites several cases, but none of them apply to this situation,
15    where the evidence that GSI wanted excluded clearly was relevant.  Taking GSI's citations in
      order: GSI distorts the holding of *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1566-67 (7th Cir. 1987),
16    describing it as holding that it is "court policy to prevent juries from hearing statements by courts
      because of the risk juries will gave [sic] such statements undue weight," when the court actually
17    held that the district court, in a bench trial, did not err in relying on a judgment in another case to
      determine damages.  Docket No. 1070 at 2.  In GSI's sole N.D. Cal. case, *Digital Reg*, the court
18    denied defendant's request to present the court's claim construction order at trial because "[t]his
      would confuse the jury; one object of claim construction is to simplify the definitions of these
19    terms for the jury."  2014 WL 4090550, at *13.  GSI does not suggest, however, how the court's
      orders in this case could have confused the jury.  *Krys v. Aaron*, Case No. CIV.A. 14-2098 JBS,
20    2015 WL 3857085, at *3 (D.N.J. June 22, 2015), excluded evidence of dismissed claims as unduly
21    prejudicial under Fed. R. Evid. 403—because the evidence was not at all relevant, which is not the
      case here.  *Wilson v. Hartford Ins. Co. of the Midwest*, Case No. C10-993RAJ, 2011 WL 2670199,
22    at *4 (W.D. Wash. July 7, 2011), excluded evidence of the court's summary judgment rulings
23    without any discussion of why.

24    [32] GSI argues that "[e]xcluding evidence of prior rulings is sound, accepted trial practice."  Docket
      No. 1070 at 3 (citing *Silicon Knights, Inc. v. Epic Games, Inc.*, Case No. 5:07-CV-275-D, 2011
25    WL 5439156, at *5 (E.D.N.C. Nov. 8, 2011)).  In *Silicon Knights*, the court's reasoning for
26    excluding its summary judgment rulings was that both parties asked for that relief.  Here, ISSI and
      UMI strenuously opposed GSI's motion in limine.  *See* Docket No. 829 at 1-3; Docket No. 835-4
27    at 13-15.

28

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

United States District Court
Northern District of California

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[33] And it did not.  At best, GSI has suggested that there might have been a danger of the Rule 403 risks, but it has not shown that those risks outweighed the probative value of the evidence, let alone substantially outweighed it.  GSI complains that UMI and ISSI selectively quoted bits of the court's pretrial orders and created a "circus-like trial;"[34] while the court strives for decorum in its proceedings, no rule of procedure or evidence bars a looser atmosphere.  Moreover, GSI also took advantage of the court's motion in limine ruling to question witnesses about pretrial orders.[35]

GSI's third argument on the bad faith contention is that the court improperly asked fact witnesses Mary Tong, a Cisco executive, and Scott Howarth, ISSI's CEO, questions seeking a legal opinion on the bad faith contention.  The witness testimony was proper under Fed. R. Evid. 701, was not unfairly prejudicial and does not warrant a new trial.

Fed. R. Evid. 701 governs opinion testimony by lay witnesses.  It says,

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The jury submitted a question to the court for Tong: "Do you believe GSI brought this lawsuit in good faith? If not, why not?"[36]  GSI objected because the question asked a lay witness

---

[33] Fed. R. Evid. 403.

[34] Docket No. 1070 at 3.

[35] *See* Trial Tr. at 2113:6-2114:7.

[36] Trial Tr. at 2579:7-8.

United States District Court
Northern District of California

7

1   to give a legal opinion and called for speculation, and because Tong did "not have all the facts."[37]

2   The court proceeded with the question and asked Tong, "Do you believe that GSI brought this

3   lawsuit in good faith?"[38]   Tong answered,

> I don't know GSI's intent of this lawsuit. I don't know the good faith of that. I just
> – I just don't see – Cisco does have a lot of award of business to our suppliers.  If
> every supplier sues the suppliers and started to have a lawsuit, it is very concerning.
> So I can't say it's good faith. I just think it's unusual to, to be — to be to that
> extent.[39]

It is not even clear that Tong offered an opinion on GSI's intent; at most, she suggested

that this lawsuit was "unusual."[40]   Assuming she did, however, her testimony passes Fed. R. Evid.

701: the testimony was helpful to determining GSI's motivations and was not based on scientific,

technical or other specialized knowledge within Fed. R. Evid. 702.  The strongest challenge to

Tong's opinion is that she lacked personal knowledge of behavior among suppliers—despite her

position as director of Cisco's global supply management division[41]—but GSI did not make that

objection at trial and so waived it.

The jury also submitted a question to the court for Howarth: "Why do you think GSI

brought this lawsuit against ISSI?"[42]  GSI objected that the question called for speculation, and the

court said it would ask the question in a way that would address the speculation concern.[43]  The

court asked Howarth, "Do you have any understanding why GSI brought this lawsuit against

ISSI?"[44]  Howarth answered,

---

[37] *Id.* at 2580:12-15.

[38] *Id.* at 2585:16-17.

[39] *Id.* at 2585:20-2586:2.

[40] *Id.*

[41] *See id.* at 2537:7-11.

[42] *Id.* at 3112:13-14.

[43] *See id.* at 3112:16-19.

[44] *Id.* at 3119:19-20.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

United States District Court
Northern District of California

Well, my, my personal opinion is that . . . they lost the Cisco bid, so the only way that they felt they could try to get it back was by filing a lawsuit. That's the only conclusion I can come up with. This is clearly just to block us from delivering to Cisco. I can't come up with any other conclusion at this point.

. . . [W]hen they filed the case, there was three months left on their non-compete agreement. That's really insignificant at that point in time.

Anybody could have communicated with me. Pat Lasserre knew me. Leelean knew me. Doug, their CFO, knew me. Didier knew me and [k]new people inside our company.

Anybody could have reached out and said, look, we see there's a legal problem here or we see there's a conflict, and we would have done everything to avoid it.

So the only conclusion I have is their intent was to disrupt our design to Cisco, try to win it back themselves, and do everything they could then to block us.[45]

The court then asked, "Do you base any of your conclusions on any statements you have heard from GSI?"[46]

Howarth answered,

I did have a conversation with Didier Lasserre, and I think this was in 2013, at an investor conference, B. Riley in southern California, and I think—I approached him, he and Doug, and I said, look, is there a way that we can settle this? I don't want to see us keep wasting money on the lawsuit.

And Didier's response to me said, well, we want Atris. I said, I can't give that to you. That was Cisco's decision.

He said, well, that's the only way we'll be able to settle this.[47]

Howarth's testimony also passes Fed. R. Evid. 701.  When asked for the basis of his conclusions, he testified that it was based on a personal conversation with Didier Lasserre (GSI's vice president of sales).  His testimony about GSI's motivations was helpful to determining GSI's motivations and was not based on scientific, technical or other specialized knowledge within Fed. R. Evid. 702.  Because Tong and Howarth's testimony was proper, it did not taint the jury and prevent them from considering GSI's misappropriation claims fairly and neutrally.

---

[45] *Id.* at 3119:21-3120:14.

[46] *Id.* at 3120:21-22.

[47] *Id.* at 3120:23-3121:7.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   ***Second***, GSI argues that the court erred in both instructions that it denied and instructions that it gave.[48]  "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are . . . bases for a new trial."[49]  "Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading."[50]  The court may not reject a proposed jury instruction "if it is supported by law and has foundation in the evidence."[51]  A new trial is not required, however, if the error in the jury instruction was harmless.[52]  "In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered."[53]  Under these standards, neither the jury instructions that the court gave nor the ones it declined to give warrants a new trial.

   The court denied several proposed instructions from all parties, and GSI challenges the denial of its proposed instructions on agency and partial use misappropriation.[54]  The agency instructions were directed at ISSI's liability, and since GSI and ISSI have settled, GSI no longer pursues this argument.[55]

---

[48] *See* Docket No. 1070 at 7-17.

[49] *Murphy*, 914 F.2d at 187.

[50] *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).

[51] *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) (quoting *Dang v. Cross*, 422 F.3d 800, 804-05 (9th Cir. 2005)).

[52] *See id.* (quoting *Dang*, 422 F.3d at 805).

[53] *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) (quoting *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001)).

[54] *See* Docket No. 1070 at 9-12, 15-17.

[55] *See* Docket No. 1105 at 5 n.2.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

As for the partial use instruction, GSI proposed this instruction on misappropriation by use of a portion of a trade secret:

> Misappropriation by use includes employing GSI's trade secrets in manufacturing, production, research or development, or marketing goods that embody the trade secret. GSI need not establish that defendants copied every element of GSI's trade secrets. Use of any substantial portion of a trade secret constitutes misappropriation.[56]

The court did not err in denying this instruction. GSI argues that misappropriation can occur by partial use in some circumstances,[57] but the instruction was overbroad and incorrect for this case. GSI claimed that each schematic was a trade secret, and testimony at trial showed that the schematics contained UMI intellectual property and publicly available information. The proposed instruction states that use of any substantial portion of a claimed trade secret—i.e., part of a schematic—is misappropriation, but in this case, that would have encompassed making UMI or ISSI liable for using the parts of the schematics that are UMI intellectual property or publicly available information.

As for the instructions that the court gave, GSI challenges three of them: amended jury instruction no. 33 on breach of contract and amended jury instructions nos. 26.1 and 26.2 on damages.

GSI argues that amended jury instruction no. 33 misinterprets the contract between GSI and UMI.[58] Instruction no. 33 states, in relevant part,

> I have already found that GSI entered into a contract with UMI in which UMI agreed (1) not to compete with GSI, directly or indirectly, for the design of a LLDRAM chip until at least April 30, 2013; (2) to protect GSI's confidential information; and (3) that GSI would own all circuit schematics and associated intellectual property, excluding Project Patents and intellectual property developed prior to or independent from the contract between GSI and UMI, as "deliverables" under the contract.[59]

---

[56] Docket No. 834-1 at 93.

[57] Docket No. 1070 at 16.

[58] *See* Docket No. 1070 at 7-9.

[59] Docket No. 1047 at 36.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

United States District Court
Northern District of California

GSI objects to part (3), which excludes "intellectual property developed prior to or independent from the contract between GSI and UMI" excluded from the "associated intellectual property" that GSI owns.[60]  GSI asserts that the contract's ownership clause gives it ownership of all intellectual property rights associated with the deliverables, including UMI intellectual property incorporated into the schematics, and excludes only UMI's Project Patents.[61]  The court's instruction, says GSI, "affected GSI's contract claim" and contributed to the jury finding that GSI owned the information in only four schematics.[62]

Section III.1, the ownership clause, explicitly grants GSI a non-exclusive license to UMI intellectual property incorporated in the Product or deliverables,[63] meaning GSI holds only a non-

---

[60] *See* Docket No. 1070 at 7-9; Docket No. 1047 at 36.

[61] *See* Docket No. 1070 at 7-9.

[62] *Id.* at 9.

[63] *See* Docket No. 196, Ex. 1 at § III.1

  ("GSI shall have sole ownership of all deliverables and the Product, and all associated intellectual property rights (excluding solely any Project Patents that UMI owns under the terms of Article IV) and all other works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyright laws), inventions (whether or not protectable under patent laws), discoveries, designs, developments, suggestions, ideas, improvements, know-how, and other intellectual property rights conceived, developed or reduced to practice by GSI, alone or with others, during the course of the Project (collectively, the "GSI IP") This includes, without limitation, the following: the specification of the Product, the layout (database) of the Product, circuit simulations and/or HDL descriptions of the Product. UMI hereby irrevocably transfers, conveys and assigns to GSI all of its right, title and interest in and to all GSI IP. . . . *UMI hereby grants to GSI*, under all of UMI's intellectual property rights, *a worldwide, non-exclusive, perpetual, irrevocable, fully paid, royalty-free, transferable license*, under all UMI's intellectual property rights (including, without limitation, any Project Patents) *to* (a) make, have made, use, offer for sale, sell, have sold and import products and to practice any methods, and (b) use, reproduce, modify, distribute, perform, display, create derivative works of, offer for sale, sell, have sold, import, make, have made and otherwise fully exploit any and all *intellectual property that has been created, conceived, developed, reduce [sic] to practice, licensed, or otherwise acquired by UMI prior to the execution of, or independent from, this Agreement that is incorporated by UMI into the Product or other deliverables*

12

United States District Court
Northern District of California

exclusive license to UMI intellectual property incorporated in the schematics, rather than owning it outright.  GSI tries to nullify the meaning of this license by arguing that Section III.1 granted it "sole ownership of all deliverables and the Product, and all associated intellectual property rights (excluding solely any Project Patents that UMI owns under the terms of article IV)."[64]  GSI must own all the information in the schematics, and the non-exclusive license merely overlaps with GSI's ownership, goes GSI's argument.[65]  The license clause clearly states, however, that it grants GSI a license to UMI intellectual property "that is incorporated by UMI into the Product or other deliverables owned by GSI."[66]  When all clauses of Section III.1 are read together, the effect is that GSI owns the schematics as deliverables, but to the extent that information contained in the schematics is UMI intellectual property that was "created, conceived, developed, reduce [sic] to practice, licensed, or otherwise acquired by UMI prior to the execution of, or independent from" the contract, UMI retains ownership over that information as UMI intellectual property, and GSI holds only a non-exclusive license to that information.[67]  GSI's interpretation of Section III.1 would remove all meaning to the licensing clause, because if GSI had sole ownership over both the schematics and the UMI intellectual property contained in them, then UMI could not grant GSI a license to that intellectual property, and GSI would not need the license anyway.  GSI's own argument shows the problem with its interpretation of the licensing clause: "what the license does is give GSI the right to use UMI's intellectual property outside the 576Mb schematics. . . . The notion that GSI could own a schematic but not the information in it makes no sense and is contrary

---

*owned by GSI* hereunder in any manner and through any medium, whether known or to become known.")

(emphasis added).

[64] Docket No. 196, Ex. 1 at § III.1.

[65] *See* Docket No. 1101 at 3.

[66] Docket No. 196, Ex. 1 at § III.1.

[67] Docket No. 196, Ex. 1 at § III.1.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

United States District Court
Northern District of California

to the terms of the agreement."[68]  If GSI owned all the information in the schematics, including UMI intellectual property, then it would not need a license to use that information in other projects, and the licensing clause would be devoid of meaning.  Such a result is something this court must strive to avoid.[69]  Amended jury instruction no. 33 correctly stated the terms of the ownership clause.

GSI also objects to amended jury instructions nos. 26.1 and 26.2, on damages for trade secret misappropriation.  These instructions implicate Section V.3 of the contract, a liability limitation clause:

> Except for a breach of confidentiality obligations under Article 6 [or another clause not at issue], a party shall not be liable to the other for any consequential, incidental, special or punitive losses or damages under any circumstances whatever, whether asserted as a claim in contract, tort, negligence, product liability or strict liability and whether arising out of or resulting from any matter, information or thing made available or not made available under this Agreement or the use thereof.[70]

Neither UMI nor GSI raised the liability clause at any point before trial.  It first arose when UMI cross-examined GSI's damages expert, James Malackowski, about how the liability clause affected GSI's damages and how he had failed to consider the clause in his damages opinion.[71]  At the time, GSI did not make any objections based on the arguments it makes in its motion for new trial; it raised the issue of surprise several days later, during jury deliberations.[72]

---

[68] Docket No. 1070 at 8.

[69] *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  *Concerning Application for Water Rights v. N. Colo. Water Conservancy Dist.*, 677 P.2d 320, 326 (Colo. 1984) (same).

[70] *Id.* at § V.3.

[71] *See* Trial Transcript at 2805:3-2812:9.

[72] GSI's sole objection during cross-examination was that UMI's questioning was based on motions and other matters "irrelevant to the loss and the size of the loss."  Trial Tr. at 2810:10-25. *See* Trial Tr. at 3729:12-17 (GSI arguing during deliberations that Section V.3 had not been raised prior to trial).

14

United States District Court
Northern District of California

At UMI's urging, the court later held that the liability clause limited consequential damages, including lost profits and unjust enrichment, arising out of any trade secret misappropriation.[73]  In the final verdict form, the court only asked the jury about "general damages" for misappropriation by UMI,[74] removing a pair of questions about UMI's unjust enrichment arising from the misappropriation.[75]  GSI objected to that omission, and the court overruled the objection.[76]  Despite that decision, however, the court's final instructions to the jury retained references to damages against UMI for lost profits and unjust enrichment.[77]  (UMI had filed written objections to these instructions when they were proposed by the court.[78])

A few days into deliberations, the jury asked how to "calculate GSI's general damages for misappropriation of trade secrets" and, more specifically, for a "definition of general damages."[79] After consulting with the parties, and over GSI's strenuous objections,[80] the court told the jury to disregard jury instruction no. 26—which covered lost profits arising from UMI's misappropriation—and provided new amended jury instructions nos. 26.1 and 26.2.[81]  Amended jury instruction no. 26.1 said,

> If GSI proves that UMI misappropriated a GSI trade secret, then GSI is entitled to

---

[73] *See* Docket No. 1061 at 57:19-22.

[74] Docket No. 1044 at 25.

[75] *See* Docket No. 1023 at 13.

[76] *See* Trial Transcript at 3441:23-3442:24.

[77] *See* Docket No. 1043 at 29-30.

[78] *See* Docket No. 1028 at 7-8 (objecting to proposed final jury instructions nos. 25, 26).  For proposed final jury instructions nos. 25, 26, *see* Docket No. 1018 at 28-29.

[79] Docket No. 1054, Note 2.

[80] *See* Trial Transcript at 3728:5-3732:15.

[81] *See id.*; Docket No. 1050.

15

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

recover damages if the misappropriation caused GSI to suffer an actual loss.[82] Amended jury instruction no. 26.2 said,

> Actual loss means any loss to GSI caused by any misappropriation, excluding any GSI lost profits or unjust enrichment.[83]

The jury promptly returned a verdict in which it found that UMI had misappropriated four GSI trade secrets, but awarded GSI no general damages for the misappropriation.[84]

GSI argues that amended jury instruction nos. 26.1 and 26.2 were prejudicial for three reasons: first, they contradicted jury instructions nos. 24, 26 and 27.[85]  Second, they disregarded evidence presented at trial of agency liability.[86]  Third, amended jury instruction 26.2 removed lost profits as a form of damages, based on Section V.3, but UMI should not have been allowed to raise Section V.3 at trial.[87]

For its first argument, GSI relies on *Pollock v. Koehring Co.*[88] and argues that the inconsistency of the jury instructions was prejudicial error, and that the error was exacerbated because the amended jury instructions were issued during deliberations.[89]  The dispute in *Pollock* centered on the district court's instructions on the burden of proof with respect to assumption of risk.[90]  Although part of the instructions were correct, the district court also gave two incorrect instructions and then "compounded the error" by misstating the law in response to a jury question

---

[82] Docket No. 1050 at 2.

[83] *Id.* at 3.

[84] *See* Docket No. 1055 at 6, 13.

[85] *See* Docket No. 1070 at 12-13.

[86] *See id.* at 13.

[87] *See id.* at 13-15.

[88] 540 F.2d 425 (9th Cir. 1976).

[89] *See* Docket No. 1070 at 12-13.

[90] *See Pollock*, 540 F.2d at 426.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

near the close of evidence.[91]  The Ninth Circuit noted that "both inconsistent or equivocal instructions and incorrect statements of the law may be prejudicially erroneous" and that "the portions of the instructions read shortly before the jury retires are critical."[92]  Because the district court had given instructions that, "[t]aken as a whole, . . . were both erroneous and inconsistent," the Ninth Circuit ordered a retrial.[93]

*Pollock* does not govern here: although the first set of instructions was inconsistent with the verdict form, the court's response to the jury questions was unambiguous.  More importantly, in contrast to *Pollock*, the court's amended instructions gave the correct law.  GSI's contention that the second set of instructions confused the jury gives the jury too little credit and it is belied by the result.  The jury's award of no general damages obviously excluded the lost profits and unjust enrichment that the court had instructed the jury to leave out.  Far from being confused, the jury appears to have followed the court's second set of instructions and thus the correct law.  Any error in the court's instructions was not prejudicial to the outcome.

In its second challenge to the amended instructions, GSI argues that the court's instructions cutting off lost profits and unjust enrichment disregarded evidence presented at trial showing that UMI and ISSI were in an agency relationship, and so both UMI and ISSI should be liable for lost profits and unjust enrichment.[94]  However, as discussed below, Section V.3 limited UMI's liability, and amended instructions nos. 26.1 and 26.2 reflect that.[95]  And because GSI and ISSI have settled, ISSI's agency liability no longer is at issue.[96]

---

[91] *Id.*

[92] *Id.* at 426-27 (citations omitted).

[93] *Id.* at 427.

[94] *See* Docket No. 1070 at 13.

[95] *See infra* at 18-20.

[96] *See* Docket No. 1105 at 5 n.2

17

United States District Court
Northern District of California

1    GSI's third argument on the amended instructions is that the court should not have

2    excluded lost profits and unjust enrichment based on the liability clause, because UMI had not

3    raised it prior to trial, this was trial by ambush and Colorado law considers lost profits a form of

4    direct damages.[97]

5    GSI is correct that UMI never raised the liability clause in its answer, motion to dismiss,

6    summary judgment motion, trial brief or anywhere else prior to trial.[98]  However, GSI does not

7    identify any positive obligation UMI had to raise the liability clause sooner.  GSI cites several

8    cases where a court barred a defendant from introducing an affirmative defense for the first time at

9    trial,[99] but it points to no precedent for the proposition that a liability clause is an affirmative

10    defense subject to waiver if not timely raised.  GSI also cites *Royalty Petroleum Co. v. Arkla, Inc.*,

11    in which the Western District of Oklahoma prohibited the defendant from bringing in new

12    evidence at trial that it had not previously produced even though it was responsive to an

13    interrogatory.[100]  Here, by contrast, GSI has not identified any discovery responses in which UMI

14    was obligated to raise the liability clause.  GSI also complains that the clause was just a single

15    sentence "buried in a long warranty disclaimer provision" within a "17-page, single-spaced

16    contract with 10 articles,"[101] but the court is not persuaded that GSI could not have found the

17    provision—which appears a few pages into a contract that GSI negotiated and attached to every

18    version of its complaint[102]—without UMI's help.  GSI's argument is further weakened by the fact

---

[97] *See* Docket No. 1070 at 13-15.

[98] *See* Docket No. 563-4 at 15-17.

[99] *See Katt v. City of New York*, 151 F. Supp. 2d 313, 347-50 (S.D.N.Y. 2001); *In re Snelson*, 305 B.R. 255, 263-64 (Bankr. N.D. Tex. 2003).

[100] 129 F.R.D. 674, 675-78 (W.D. Okla. 1990).

[101] Docket No. 1105 at 8.

[102] *See* Docket Nos. 1, 159, 196.

18

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

United States District Court
Northern District of California

1   that the same law firm advised GSI on the contract negotiations and represented GSI in this

2   lawsuit.[103]

3       GSI also is right to point out that the Federal Rules of Civil Procedure sought to eliminate

4   what GSI calls trial by ambush.[104]  It does not follow, however, that courts have unlimited

5   discretion to preclude any maneuvers that a party finds unfair.  Instead, the Federal Rules simply

6   give parties tools to counteract these tactics.  For example, in *Walker*, the only Ninth Circuit case

7   that GSI cites, the district court's pretrial order exhaustively listed each of the numerous injuries

8   that the plaintiff allegedly had suffered.[105]  When the plaintiff tried to introduce evidence of a

9   different injury at trial, the defendants persuaded the district court and then the Ninth Circuit to bar

10  the attempt under Fed. R. Civ. P 16(d),[106] which provides that a pretrial order "controls the course

11  of the action unless the court modifies it."  Similarly, if GSI had propounded an interrogatory

12  asking about UMI's theories for limiting damages and UMI had omitted the contract clause, GSI

13  could have moved under Rule 37(c)(1) to preclude UMI from introducing it at trial.  But it is not

14  enough for GSI to merely allude to the general spirit of the Federal Rules.

15      GSI also argues that the amended instructions were improper because the liability clause

16  does not bar lost profits under Colorado law, but UMI has the better case on the merits, too.  The

17  contract clause permits "general" damages while disallowing "special" or "consequential"

18

19

20  [103] *See* Docket No. 900 at 1 ("former GSI Vice President of Marketing David Chapman negotiated the 576Mb Agreement between UMI and GSI . . . . GSI's counsel at the time was DLA Piper, and the DLA Piper attorneys who advised Mr. Chapman as negotiator for GSI were Messrs. Shohet and Aronson.").

21

22  [104] *See Walker v. W. Coast Fast Freight, Inc.*, 233 F.2d 939, 941 (9th Cir. 1956) (alteration in original) (quoting *Burton v. Weyerhaeuser Timber Co.*, 1 F.R.D. 571, 572 (D. Or. 1941)) ("The District of Oregon has strictly required the disclosure of 'all legal and fact issues' at the pre-trial conference since 'surprise, both as a weapon of attack and defense, is not to be tolerated under the . . . Federal procedure' and the 'rules outlaw the sporting theory of justice from Federal courts.'").

23

24

25

26  [105] *See id.* at 941.

27  [106] *See id.* at 941-42.

28

United States District Court
Northern District of California

19

damages.[107]  GSI observes that, under Colorado law, the lost profits and unjust enrichment damages that the court barred are not always considered special or consequential damages.[108]  GSI raised the same argument at trial,[109] and the court remains unconvinced.  In Colorado, as elsewhere, when a plaintiff contracts with a defendant to help the plaintiff earn profits, and the defendant's breach of that contract prevents the plaintiff from realizing those profits, the profits that the plaintiff lost may be considered direct or general damages.[110]  The lost profits from an unrealized future contract, and certainly the defendant's unjust enrichment, fall well outside that scope.  The clause plainly bars the lost profits and unjust enrichment that GSI sought.

*Third*, GSI argues that it suffered prejudicial error because the court gave GSI less time for its case than UMI and ISSI.[111]  GSI argues that the harm from the time allocation was exacerbated by the court's decision to include the bad faith contention in the trial and by the court's denial of summary judgment that GSI owned the schematics under the contract.[112]

GSI received more time—30 hours—than either UMI or ISSI, who each received 20 hours. While Defendants received more time total than GSI, GSI cites no authority for the proposition that in a multi-party trial, each side must be given the same amount of time.  And GSI did not even

---

[107] Docket No. 159, Ex. A at § V.3.

[108] *See Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1156 (10th Cir. 2007); *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, Case No. 11-cv-01468, 2015 WL 515221, at *1-2 (D. Colo. Feb. 5, 2015).

[109] *See* Docket No. 1029 at 6-8.

[110] *See Penncro*, 499 F.3d at 1156 ("Thus, for example, if a services contract is breached and the plaintiff anticipated a profit under the contract, those profits would be recoverable as a component of direct, benefit of the bargain damages.  If that same breach had the knock-on effect of causing the plaintiff to close its doors, precluding it from performing other work for which it had contracted and from which it expected to make a profit, those lost profits might be recovered as 'consequential' to the breach.").

[111] *See* Docket No. 1070 at 17.

[112] *See id.* at 17-20.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

use all of its time.[113]

*Fourth*, GSI challenges the admission of testimony from Jon Faue, UMI's president.[114] Although Faue testified as a fact witness, GSI argues that he testified as an undisclosed technical expert; as a rebuttal expert against GSI's technical expert, Robert J. Murphy; and beyond the scope of UMI's interrogatory responses.[115]   None of these arguments is persuasive: GSI does not identify any testimony that was expert opinion testimony subject to disclosure under Fed. R. Civ. P. 26(a)(2)(C).  GSI broadly objects to the majority of Faue's trial testimony, but does not explain why any portion of that testimony is either an expert opinion within Fed. R. Evid. 702, 703 or 705, or a lay opinion within Fed. R. Evid. 701.  GSI describes line 2920:22 of the trial transcript as offering expert testimony not based on Faue's personal knowledge,[116] but that citation is a question from UMI's counsel,[117] and Faue's answer to the question was a description of the design process he participated in and within his personal knowledge.[118]

Faue's testimony on comparing several older UMI schematics with UMI's Atris schematics[119] also was not improper rebuttal expert testimony, because his testimony was based on matters within his personal knowledge.  Faue participated in designing the Atris schematics,[120] and the testimony GSI objects to as rebuttal expert testimony discussed his design work: what he

---

[113] *See* Docket No. 1046 at 1.

[114] *See* Docket No. 1070 at 20-23.

[115] *See id.*

[116] *See id.* at 21.

[117] *See* Trial Tr. at 2920:22.

[118] *See id.* at 2920:23-25.

[119] *See* Trial Tr. at 2966:9-2971:2.

[120] *See id.* T 1588:5-15 ("[Q.]  Did you have a specific role in . . . the design of the 576 GSI copycat DRAM?  A.  Yeah.  My role was the chief circuit designer.").

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

United States District Court
Northern District of California

incorporated from previous designs, what changes he made and what he put into subcircuits.[121]
All of this testimony was within his personal knowledge and is not rebuttal expert testimony, even if it has the effect of showing an origin story for the Atris schematics that contradicts Murphy's.

Faue's testimony also was within the scope of UMI's responses to GSI's interrogatories. GSI objects that Faue's testimony on U.S. Patent No. 7,298,669 went beyond UMI's supplemental responses to GSI's interrogatories nos. 12 and 13,[122] but it does not: the interrogatory response identifies "[c]ol 3 lines 5-10," "[c]ol 4 lines 50-52," "[c]ol 5 lines 3-6," "Fig. 2," "Fig. 3A," "Fig. 3B" and "Fig. 3C" as describing methods, functions, circuitry, logic and concepts that are "relevant to GSI's allegation that the following circuit schematics are GSI's trade secrets: BNKCON, PRETIMER, BAB_S80, YCLKMIX and YCLKCLK . . . . Circuit schematics for SLOW, FICLK are related to the YCLKCLK circuit."[123]   Faue's trial testimony identified the columns and figures delineated in the interrogatory response as "technology that we were able to pull from and put together [in] the schematics down below, and in particular, the bank come [sic], the pretimer, the bab, the yclk."[124]   Faue's testimony referred only to the columns and figures identified in the interrogatory response, and connected them only to the schematics identified in the interrogatory response.  GSI argues that UMI's statement that those columns and figures were "relevant" to GSI's trade secret allegations about specific schematics is insufficient to "link any" of the columns and figures to those schematics, but UMI's statement was sufficient to put GSI on notice of the connection between the patent and the specific schematics.  The same is true for Faue's testimony on the Micron DDR2 and DDR3 datasheets: UMI's supplemental interrogatory responses identified specific functions from the datasheets as relevant to GSI's claims of trade

---

[121] *See id.*

[122] *See* Docket No. 1070 at 22.

[123] Docket No. 486-24 at ECF p. 33.

[124] Trial Tr. at 2927:21-2928:1.

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

1   secrets in specific schematics.[125]  Faue's testimony at trial was that UMI had used functions

2   described in the Micron data sheet when designing the schematics.[126]  No part of his trial

3   testimony went beyond UMI's interrogatory responses.

4       **Fifth**, UMI's references to GSI fact witness David Chapman's assertion of the attorney-

5   client privilege during deposition and to GSI counsel Jeffrey Shohet do not warrant a new trial.

6   During trial, UMI played a video clip of Chapman's deposition, in which UMI asked Chapman

7   about the contract negotiations with UMI.[127]  UMI asked Chapman about his concerns about the

8   non-compete provisions in the contract and their compliance with California law, and Chapman's

9   lawyer, Shohet, instructed Chapman not to answer "to the extent that there was anything in the

10  disclosure of counsel.  If your concerns were based on anything you learned from your

11  counsel."[128]  UMI also displayed a photo of Shohet, taken from DLA Piper's website, for the

12  jury.[129]  Over GSI's objection, the photo was used but not admitted into evidence.[130]  GSI argues

13  that the evidence of the invocation of the attorney-client privilege caused the jury to draw an

14  adverse inference based on the assertion, and that the photo and other references to Shohet

15  suggested to the jury that the privileged communications between GSI and its attorneys concealed

16  negative information.[131]

17       Neither of GSI's arguments is persuasive.  GSI cites a number of cases holding that it is

18  impermissible to draw an adverse inference from the assertion of the attorney-client privilege;[132]

19  _____

20  [125] *See* Docket No. 486-24 at ECF p. 41-42.

21  [126] *See* Trial Tr. at 2931:18-2932:13.

22  [127] *See id.* at 749:11-20, 751:2-6, 753:8-754:1,

23  [128] *Id.* at 753:8-20.

24  [129] *See id.* at 955:17-956:12.

25  [130] *See id.*

26  [131] *See* Docket No. 1070 at 25.

27  [132] *See id.* at 24 (citing *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000)

28  Case No. 5:13-cv-01081-PSG

23

ORDER DENYING GSI'S MOTION FOR NEW TRIAL

United States District Court
Northern District of California

United States District Court
Northern District of California

1    GSI does not cite, however, any cases holding that evidence of the assertion of the privilege causes

2    a jury to draw an adverse inference.  GSI identifies only one instance of UMI referring to GSI's

3    invocation of the privilege,[133] and UMI did not comment on or characterize GSI's invocation in

4    any way.  Based on these facts, it is implausible that the assertion of the privilege caused the jury

5    to draw an adverse inference—and in the end, Chapman's invocation of the privilege occurred

6    during his testimony on the contract negotiations, and the jury found for GSI on the breach of

7    contract claim, suggesting that they did not draw any adverse inference.

8         GSI also does not provide any basis for finding that displaying Shohet's photo or referring

9    to his communications with his client, GSI, warrants a new trial.  GSI argues that UMI showed the

10   photo to suggest to the jury that privileged communications between GSI and its counsel

11   concealed "some negative information,"[134] but GSI points to no precedent and to no behavior by

12   UMI that explains how showing this photo created that suggestion.  The photo was from DLA

13   Piper's website and was not an inappropriate or demeaning photo.[135]  Moreover, the photo was

14   used during testimony but not admitted into evidence, limiting whatever impact it might have had

15   on the jury.

16   _____

17   ("[A]n adverse inference from an assertion of one's privilege not to reveal information is too high a price to pay"); *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 226 (2nd Cir. 1999) ("[W]e know of no precedent supporting such an [adverse] inference based on the invocation of the attorney-client privilege."), *overruled on other grounds*; *Moseley v. Secret Catalogue*, 537 U.S. 418 (2003); *Knorr-Bremse Sys. Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) ("no adverse inference shall arise from invocation of the attorney-client and/or work product privilege"); *Parker v. Prudential Ins. Co.*, 900 F.2d 772, 775 (4th Cir.1990) (no negative inference permitted from assertion of attorney-client privilege); *In re Tudor Assocs Ltd. III.*, 20 F.3d 115, 120 (4th Cir. 1994) ("A negative inference should not be drawn from the proper invocation of the attorney-client privilege."); *Sand Hill Advisors, LLC v. Sand Hill Advisors LLC*, Case No. C 08-5016 SBA MEJ, 2010 WL 3702372, at *5 (N.D. Cal. June 1, 2010) (refusing to draw adverse inference from invocation of privilege), 2010 WL 8500520 (N.D. Cal. Sept. 20, 2010) (report and recommendation adopted)).

[133] *See* Docket No. 1070 at 25.

[134] *Id.*

[135] *See* Trial Tr. at 956:3-10.

24

**SO ORDERED.**

Dated: May 26, 2016

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No. 5:13-cv-01081-PSG
ORDER DENYING GSI'S MOTION FOR NEW TRIAL

United States District Court
Northern District of California